Patrick J. Neligan, Jr.
David Ellerbe
Nancy Ribaudo
NELIGAN FOLEY LLP
Republic Centre
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: (214) 840-5300
Facsimile: (214) 840-5301

PROPOSED COUNSEL FOR DEBTOR AND
DEBTOR-IN-POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KEYS FITNESS PRODUCTS, LP** | § | **CASE NO.  08-31790-HDH-11** |
| | § | |
| DEBTOR. | § | **CHAPTER 11** |
| | § | |
| | § | **HEARING: 4/17/08** |
| | § | **TIME:    2:00 P.M.** |

## MOTION FOR AUTHORITY TO CONTINUE
## CERTAIN CUSTOMER PROGRAMS AND PRACTICES

TO THE HONORABLE HARLIN D. HALE, UNITED STATES BANKRUPTCY JUDGE:

Keys Fitness Products, LP ("Keys" or the "Debtor"), as debtor in possession, files this motion (the "Motion") for authority to continue certain customer programs and practices, and respectfully represents as follows:

### I.
### JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 105, 363, 365 and 507(a)(7).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**II.**
**INTRODUCTION**

2. On April 14, 2008 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to section 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its properties, affairs and assets as debtor-in-possession.

**III.**
**BACKGROUND**

3. Keys is a Texas limited partnership formed in 1988 with its principal place of business in Garland, Texas. Keys began as an importer of weightlifting equipment and quickly expanded its product line to include treadmills, elliptical machines, stationary exercise bikes, home gym weight machines, and other exercise equipment. By 1996, Keys' sales had grown to $50 million per year. In 1997, Keys opened a manufacturing facility in Tyler Texas. At its peak, Keys employed over 120 people and Keys Backyard, L.P. ("Backyard"), a separate but related company, employed over 170 people. Currently Keys has approximately 90 employees.

4. In 2003, Keys began exploring ways to reduce its costs due to increasing competition. In 2004, Keys began outsourcing the manufacture of its treadmills to China and by 2005, Keys closed its Tyler manufacturing facility. Keys explored other avenues to reduce costs, e.g., using temporary employees to handle a seasonal surge of sales.

5. In December 2005, Keys expanded its product line by establishing Backyard to purchase a spa business from Icon Health & Fitness, Inc., though its subsidiary, Jumpking, Inc. ("Icon"). By 2006, Keys' annual sales exceeded $100 million. However, competition in Keys' industries increased dramatically during the last 10 years. Profit margins steadily declined, even as sales steadily increased. Keys exploited additional sales opportunities such as Internet sales,

which now account for 20% of sales. Nonetheless, falling profit margins left no room for error. Furthermore, spa industry sales have retracted by an estimated 30% over the past two years.

6.      Further, Keys' major customers have liberal return policies. Key's largest customer requires its vendors to accept the return of any product, even if the product is not defective. To continue doing business with the major retailers, Keys and Backyard were required to honor returns and pay for defects, which included defects related to the spa business Backyard purchased. Problems with the Icon spas produced substantially higher return costs than had been reserved. Thus, in 2006 the spa business, which was operated by Backyard, lost $7 million. These losses continued throughout 2007. Keys also encountered increased raw material and freight costs during the last several years.

7.      By late 2007, Keys (and Backyard) was in default under its secured working capital loan obligations to Bank of America ("BoA"), the company's secured lender. In December 2007, BoA notified Keys that it would no longer advance funds to Keys. In mid-December 2007, JP KFP Acquisition, L.P. ("JP Acquisition") began negotiations with BoA to acquire the secured loan facility. In January 2008, JP Acquisition purchased the secured working capital loan facility from BoA and stepped into BoA's position as Keys' secured prepetition lender. Thereafter, JP Acquisition and Keys entered into a number of forbearance agreements that allowed Keys to continue operating. These difficulties, and Keys' desire to restructure its debt, led Keys to file this voluntary chapter 11 case.

## IV.
## RELIEF REQUESTED

8.      By this Motion, Keys seeks authority to allow it to (a) honor returns and exchanges pursuant to Keys' return policy; and (b) honor and redeem prepetition service warranties.

*A.     Warranties, Exchanges and Returns*

9.     Keys sells to several nationwide retailers, including Costco, Wal-Mart, Amazon.com, Fitness Club Warehouse, and Home Depot (each a "Retailer" and collectively the "Retailers"). Keys honors the individual product warranty and exchange policies of inventory from Retailers consistent with the Retailers' return policies to their customers ("Return Policy").[1] Under the Return Policy, Keys will work with the Retailer to repair any defective item ("Customer Warranty"). If a customer is not satisfied with a product, or if it cannot be repaired, the customer can return the product within a specified period of time, or with respect to Costco customers, at any time, for a full refund/exchange. Keys in turn will accept the return of the item and credit the Retailer. In addition, Keys honors replacement part requests by end users who purchase warranty upgrades at the time of sale ("Warranty Upgrades").

10.     On average, the cost of Keys' warranty, returns and exchange obligations is approximately 8.5% of total sales or approximately $300,000-$400,000 per month, with higher rates in March and June following peak sales periods.

11.     As of the end of March 2008, Keys held a reserve allowance in the amount of $251,710.32 to satisfy return obligations and approximately $125,494.76 to satisfy service requisition orders under Customer Warranties, which amounts are consistent with Keys' historical return rate. In addition, Keys owes approximately $60,000 in unpaid service invoices.

## V.
## REQUESTED RELIEF AND BASIS THEREFOR

12.     Among Keys' most valuable assets are its retail customers and their goodwill. Keys' industry is competitive, and if its customers perceive that Keys is not timely honoring its obligations to retailers under the return and warranty programs, these customers will choose to

---

[1] Keys reserves the right to modify the Return Policy at any time.

**MOTION FOR AUTHORITY TO CONTINUE**
**CERTAIN CUSTOMER PROGRAMS AND PRACTICES**                                                                 **PAGE 4 of 9**

purchase product elsewhere. Any delay in honoring these customer obligations would also harm Keys' reputation, thereby making it more difficult for Keys to attract new customers. Either result would severely hinder Keys' ability to effectively and expeditiously reorganize. Accordingly, in Keys' business judgment, it is essential for Keys to be allowed to continue to honor the Return Policy, the Customer Warranty, and Warranty Upgrades.

13. Keys intends to honor these policies providing these Retailers continue to pay Keys in accord with the terms agreed to by Keys and that Retailer (and absent a good faith dispute over the amount of Keys' account receivables). In the event Keys determines it will not honor the Return Policy, Customer Warranty and Warranty Upgrades, Keys intends to provide such Retailer written notice and provide ten (10) days notice before any decision to halt Keys' participation in the Customer's Warranty Return Policy and Warranty Upgrades. Under no circumstances will Keys go beyond the terms and conditions of each Retailer's Customer Warranty, Return Policy and Customer Warrants Upgrades which were in effect at the Petition Date. Keys management met with a number of major customers prior to the Petition Date and the customers, including those Retailers, made clear that continuation of their respective return and warranty policy is a necessary condition to continuing the Retailers' on-going purchase of Keys' products.

14. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The purpose of § 105(a) is to "assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction." COLLIER ON BANKRUPTCY ¶ 105.01 (15th ed. rev. 2007).

15. To invoke the equitable powers of § 105(a), the Court must first rely upon a specific provision of the Bankruptcy Code in support of the relief requested in the motion. *In re*

*Oxford Mgmt., Inc.,* 4 F.3d 1329, 1334 (5th Cir. 1993); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). As provided in *In re CoServ*, Bankruptcy Code §§ 1107(a) and 1106 provide such a bridge in this case. Section 1107(a) provides that a debtor in possession shall perform all the functions and duties as a trustee under the Bankruptcy Code. "Implicit in the duties of a Chapter 11 trustee or a debtor in possession as set out in Sections 1106 and 1107 of the Bankruptcy Code is the duty to protect and preserve the estate, including an operating business's going-concern value." *In re CoServ*, 273 B.R. at 497.

16. It is well-established by case law that, under certain circumstances, a debtor may make pay certain prepetition claims in the performance of the debtor's fiduciary duty to preserve the estate and the business's going -concern vale. *See, e.g., Miltenberger v. Logansport Ry.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); *In re CoServ*, 273 B.R. at 497 (noting that "it is only logical that the bankruptcy court be able to use section 105(a) of the Code to authorize satisfaction of a prepetition claim in aid of preservation or enhancement of the estate").

17. Courts have developed the "Doctrine of Necessity" (also known as the "Necessity of Payment Rule") for use in determining whether such payment of prepetition obligations is permissible. *See In re Just for Feet, Inc.*, 242 B.R. 821, 825-26 (D. Del. 1999) (developing and discussing the doctrine); *In re CoServ,* 273 B.R. at 491-93 (discussing the doctrine). Generally, the Doctrine of Necessity provides that a debtor may pay prepetition obligations if such payments are critical to the debtor's reorganization.

18. In *CoServ*, the Court analyzed the Doctrine of Necessity and held that a debtor must demonstrate the following three elements in order to meet the "necessity" requirement: (1) the debtor must deal with the claimant; (2) a failure to deal with the claimant risks probable harm

or eliminates an economic advantage disproportionate to the amount of the claim; (3) there is no practical or legal alternative to payment of the claim. *In re CoServ*, 273 B.R. at 498.

19. The payment of claims arising from the Return Policy, and Customer Warranties pursuant to the Order will meet each of the three elements set out in *In re CoServ*.

20. In addition, Section 507(a)(7) of the Bankruptcy Code provides that certain unsecured debts are entitled to priority treatment. Specifically, the section provides:

> [A]llowed unsecured claims of individuals, to the extent of $2,425 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use, of such individuals, that were not delivered or provided [are entitled to seventh priority].

11 U.S.C. § 507(a)(7). Section 507(a)(7) was renumbered by the 2005 amendments to the Bankruptcy Code. Prior to the amendment, § 507(a)(7) was listed as § 507(a)(6). Otherwise, no changes to the section were made. The legislative history of § 507(a)(7) states that this section was added to the Bankruptcy Code to deal with the "problems faced by customers who have deposited money with retail businesses for the purchase of goods and services." *In re Glass*, 203 B.R. 61, 63 (Bankr. W.D. Va. 1996) (citing H.R. Rep. No. 595, at 188 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6148). Furthermore, according to this legislative history, money paid "on a lay-away plan or as a deposit on merchandise, or [for] . . . .a service contract" is governed by § 507(a)(7). *Id.* Case law has recognized customer deposits are expressly covered by § 507(a)(7). *See In re Tart's T.V., Furniture & Appliance Co.*, 165 B.R. 171, 172-73 (Bankr. E.D. N.C. 1994) (holding that payments on services to be performed in the future were "deposits" and therefore were entitled to priority). As such, claims arising from the Warranty Upgrades are entitled to priority treatment under Bankruptcy Code 507(a)(7). However, it is possible that some of these claims may exceed the priority cap of $2,425 set out in Bankruptcy Code section

507(a)(7). To the extent that such claims arising from Warranty Upgrades exceed the cap, the payment of these claims is justified pursuant to Bankruptcy Code § 105(a) and the "Doctrine of Necessity."

21. In addition, the relief requested is warranted under Bankruptcy Rule 6003 to avoid immediate and irreparable harm to the Debtor's business reputation that would result if the warranty, exchange and refund policies were not honored.

22. Therefore, the Debtor requests authority to pay claims arising from the Return Policy, Customer Warranties and Warranty Upgrades, pursuant to Bankruptcy Code §§ 105, 1106, 1107 and 507(a)(7) and Bankruptcy Rule 6003.

## VI.
## NOTICE

23. No trustee, examiner, or creditors' committee has been appointed in this case. A copy of this Motion has been served via U.S. Mail to the United States Trustee, the Debtor's twenty largest unsecured creditors, secured creditors, certain governmental entities, counsel and parties-in-interest. In light of the nature of the relief requested, the Debtor submits that no other or further notice need be given.

## VII.
## CONCLUSION

WHEREFORE, Keys respectfully requests that this Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: April 16, 2008                                            Respectfully submitted,


                                                                 NELIGAN FOLEY LLP

                                                                 By: /s/ *Patrick J. Neligan, Jr.*
                                                                     Patrick J. Neligan, Jr.
                                                                     State Bar No. 14866000

pneligan@neliganlaw.com
David Ellerbe
State Bar No. 06530600
dellerbe@neliganlaw.com
Nancy Ribaudo
State Bar No. 24026066
nribaudo@neliganlaw.com

Republic Centre
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: (214) 840-5300
Facsimile: (214) 840-5301

PROPOSED COUNSEL FOR DEBTOR
AND DEBTOR-IN-POSSESSION

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served this 16th day of April, 2008 to the parties on each of the attached list, and the United States Trustee by e-mail, if known, and U.S. First Class Mail, postage prepaid.

*/s/ Nancy Ribaudo*_____
Nancy Ribaudo

40326v.1

**Keys Fitness- Master Service List Labels (4/16/08)**

**United States Trustee**
William T. Neary
George F. McElreath
United States Trustee, Region 6
1100 Commerce Street, Room 976
Dallas, Texas 75242

**Attorney General**
Office of the Attorney General
1412 Main Street, Suite 810
Dallas, Texas 75202

**JP KFP Acquisition, LLC Counsel**
William B. Finkelstein
Daniel I. Morenoff
Kirkpatrick & Lockhart et al. LLP,
1717 Main Street, Suite 2800
Dallas, TX 75201


Tianjin Aolin Co., Ltd.
Tianjin, CHINA


Macro Progress Ent. Co.
Most Perfectly Enterprise Co., Ltd.
Taiwan, CHINA

Ezfit Technology, Inc.
No. 9 Lane 262
Tong An Rd.
An Nan District
Tainan City


YIH An Exnt. Co., Ltd.
Sec. 2, Chang Ping Rd.
Taichung


Apache Mills Inc.
P.O. Box 51005
Newark, NJ 07101-5101


HSIN HWA Casting Co., Ltd.
Innofit, No. 8506
Shan Giao Lane
Chong, Yi Lee, Chupei City
HSIN CHU HSIEN

**Debtor**
Keys Fitness Products L.P.
4009 Distribution Drive
Suite 250
Garland, TX 75041

**IRS**
Internal Revenue Service
1100 Commerce Street
Dallas, Texas 75242-1496

**Secured Creditors**
JP KFP Acquisition, LLC
Jacobson Partners
595 Madison Avenue, Suite 3100
New York, NY 10022-1907

**20 Largest Unsecured Creditors**
Qingdao Impulse Group Co.
Huashan 2 Road
Jimo, Qingdao, CHINA


Bank of America, N.A.
901 Main Street
66th Floor
Dallas, TX 75202


Josen International (HK)
HK Office Rm. 5209-10 52nd Floor
Hopewell Center, No. 183
Queen Road East
Wanchai, HONG KONG

ABF Freight System, Inc.
P.O. Box 560005
Dallas, Texas 75356-0005


Icon Health & Fitness
1500 South 1000 West
Logan, UT 84321


Time Sourcing, Inc.
2648 Durfee Avenue
El Monte, CA 91732


Quality Logistics Systems
3801 Pinnacle Point, Suite 100
Dallas, Texas 75211

**Debtor's Counsel**
Patrick J. Neligan, Jr.
Neligan Foley LLP
325 N. St. Paul, Suite 3600
Dallas, Texas 75201

**United States Attorney**
Office of the U.S. Attorney
Northern District of Texas
3rd Floor, 1100 Commerce Street
Dallas, Texas 75242

**JP KFP Acquisition, LLC Counsel**
Eric Kay
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038


Rexon Industrial Corp. Ltd.
261 Jen hwa Road
Tali, Taichung, CHINA


Norinco Armsports Co., Ltd.
7A Yue Tan Nan Jie
P.O. Box 2137
Beijing, CHINA


Xiamen Ufit
Healthtech Co., Ltd.
Wutong, Huandao Road
Huli District Xiamen
Fujian Proviner

Iviva International Corp.
18-1F No. 199 Sec. 1
Taichung Kang Road
Taichung


Old Dominion Freight Line
P.O. Box 60908
Charlotte, NC 28260-0908


Pro Staff
Box 5006
P.O. Box 1450
Minneapolis, MN 55485-5006


Lynden International
P.O. Box 84167
Seattle, WA 98124

NOTICE OF APPEARANCE

**Counsel for Bank of America**
R. Michael Farquhar
J. Frasher Murphy
Winstead PC
1201 Alm St., Suite 5400
Dallas, TX 75270