Martin A. Sosland (18855645)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile:  (214) 746-7777

Ronit J. Berkovich (*pro hac vice* pending)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Proposed Attorneys for Debtor and
Debtor in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

-----------------------------------------------------------------------x
                                                                      :
**In re**                                            :          **Chapter 11**
                                                                      :
**TEXAS RANGERS BASEBALL PARTNERS**   :          **Case No. 10-43400 (DML)-11**
                                                                      :
                  **Debtor.**                     :
-----------------------------------------------------------------------x

**DEBTOR'S MOTION FOR AN ORDER (I) SCHEDULING
A HEARING TO CONSIDER CONFIRMATION OF THE
PREPACKAGED PLAN; (II) ESTABLISHING AN OBJECTION DEADLINE
TO OBJECT TO THE PREPACKAGED PLAN; (III) APPROVING THE FORM
AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Texas Rangers Baseball Partners ("TRBP" or the "Debtor"), hereby files this

motion (the "Motion") for an order (the "Scheduling Order") Scheduling a Hearing to Consider

Confirmation of the Prepackaged Plan of Reorganization of Texas Rangers Baseball Partners

Under Chapter 11 of the Bankruptcy Code (the "Prepackaged Plan"); Establishing an Objection

Deadline to Object to the Confirmation of the Prepackaged Plan; Approving the Form and

Manner of Notice thereof; and Granting Related Relief.  In support of the Motion, the Debtor

submits the Declaration of Kellie L. Fischer in Support of the Debtor's Chapter 11 Petition and

Request for First Day Relief (the "Fischer Declaration") filed contemporaneously herewith, and

respectfully represents as follows:

**Background**

1.       On the date hereof (the "Commencement Date"), the Debtor commenced

with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtor is authorized to continue to operate its business and manage

its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

**TRBP Partnership Structure**

2.       TRBP owns and operates the Texas Rangers Major League Baseball

Club, a professional baseball club (the "Texas Rangers") in the Dallas/Fort Worth Metroplex,

pursuant to the Major League Constitution (the "Major League Constitution") and the

Membership Agreement, dated as of November 18, 1960, by and between The American

League of Professional Baseball Clubs, as assumed by the Office of the Commissioner of

Baseball (the "BOC"), and WBC Baseball Club, Inc., as assumed by TRBP pursuant to an

Assumption Agreement, dated as of June 16, 1998.

3.       TRBP is a Texas general partnership, in which Rangers Equity Holdings,

L.P. ("Rangers Equity LP"), a Delaware limited partnership, holds a 99% partnership interest

and Rangers Equity Holdings GP, LLC ("Rangers Equity GP"), a Texas limited liability

company, holds a 1% partnership interest.  Rangers Equity GP is a wholly-owned subsidiary of

2

Rangers Equity LP. Both Rangers Equity LP and Rangers Equity GP are holding companies with no operating assets and are indirect, wholly-owned subsidiaries of HSG Sports Group LLC ("HSG"). HSG is a sports and entertainment holding company, which is an affiliate of, and indirectly controlled by, Thomas O. Hicks ("Mr. Hicks"). The Texas Rangers have had five owners since the team moved to Arlington in 1972. Mr. Hicks became the fifth owner in the history of the Texas Rangers on June 16, 1998, when HSG completed the acquisition of the franchise from the George W. Bush/Edward W. Rose partnership.

**Major League Baseball**

4.      With a history and tradition dating back to 1869, professional baseball is one of America's oldest organized league sports. From April through the end of September every year, Major League Baseball ("MLB") runs a 162-game regular season. MLB's clubs are divided into two leagues (American and National) and six divisions (AL East, AL Central, AL West, NL East, NL Central and NL West).

5.      The BOC, doing business as Major League Baseball, is an unincorporated association of its 30 member clubs. It is headquartered in New York City and is governed by the Major League Constitution. The primary purpose of the BOC is to undertake centralized activities on behalf of the 30 clubs. Among other things, the BOC hires and maintains the sport's umpiring crews, and negotiates marketing, labor, and television contracts.

**The Texas Rangers**

6.      The Texas Rangers are located in the fourth largest metropolitan area and the largest metropolitan market with a single MLB franchise. The Texas Rangers are one of only 30 MLB franchises and one of two MLB clubs in the state of Texas and its bordering states. The Texas Rangers have a rich and colorful history and have established themselves as a

young, up-and-coming contender supported by a strong fan base. The team's executives have successfully combined players from their farm system with key veterans to produce a team that today is in first place in the American League's West Division. Founded in 1961 as the second incarnation of the Washington Senators, the franchise moved to Texas in 1972 and currently competes in the American League West together with the Los Angeles Angels of Anaheim, the Oakland Athletics, and the Seattle Mariners.

7.      The Texas Rangers' home field, the Rangers Ballpark in Arlington (the "<u>Ballpark</u>"), is located in Arlington, Texas and is an open-air, natural grass ballpark that was designed and built with tradition and intimacy in mind. The proximity of the fans to the action is one of the closest in MLB. The overall seating of the Ballpark is 49,170 seats on five levels, making it MLB's sixth largest ballpark.

**Prepetition Indebtedness**

8.      Pursuant to that certain First Lien Credit Agreement and that certain Second Lien Credit Agreement (together, the "<u>HSG Credit Agreement</u>"), HSG and certain affiliates of HSG are indebted to the Lenders (as defined below) in the amount of $525 million. The HSG Credit Agreement is guaranteed by certain of HSG's subsidiaries, although the guaranties of the Texas Rangers and the security interests securing them are limited to $75 million (the "<u>TRBP Guaranty Cap</u>"). The First Lien Credit Agreement is secured by a first lien on substantially all of the assets of HSG and its affiliates including a pledge of the equity interests those entities have in their subsidiaries, including TRBP, and the Second Lien Credit Agreement is secured by a second lien on substantially all of the assets of HSG, its affiliates, including a pledge of the equity interests those entities have in their subsidiaries, including TRBP.

9.      TRBP is also party to that certain Amended and Restated Secured Revolving Promissory Note, dated November 25, 2009, by TRBP in favor of Baseball Finance LLC, an affiliate of the BOC (the "Baseball Finance Note").  Pursuant to the Baseball Finance Note, Baseball Finance agreed to make available to TRBP a secured revolving loan facility in an aggregate principal amount not to exceed $25 million.  The loans under the Baseball Finance Note are secured by liens on substantially all of the assets of TRBP that are junior in priority to the liens granted pursuant to the HSG Credit Agreement that are subject to the TRBP Guaranty Cap.  As of the Commencement Date, approximately $18.45 million in principal is outstanding under the Baseball Finance Note, plus accrued interest.

**Events Leading to TRBP's Chapter 11 Filing**

10.      Since 2005, TRBP has experienced, and continues to experience, cash flow deficiencies.  For the entire period that Mr. Hicks has owned the Texas Rangers, he has provided financial support to the team through capital contributions and loans to HSG in excess of $100 million.

11.      Beginning in August 2008, HSG retained advisors to provide financial advice and assistance in connection with a capital raise, potential restructuring, or sale.  While HSG and TRBP explored their options, TRBP continued to suffer operating losses.  As a result of such losses, HSG was unable to service its $525 million long-term debt obligations under the HSG Credit Agreement.  On March 31, 2009, HSG failed to make a scheduled interest payment under the HSG Credit Agreement, and on April 7, 2009, the lenders to the HSG Credit Agreement (the "Lenders") accelerated the entire amount of indebtedness thereunder.  As a result of the acceleration, the Lenders under the HSG Credit Agreement have claims against

TRBP on account of TRBP's secured guaranty of $75 million of such indebtedness, as discussed above.

**Sale Process**

12.     During the second half of 2008 and throughout 2009, HSG and TRBP, in conjunction with their advisors, pursued a variety of options for a capital raise or a sale of the Texas Rangers.  Ultimately, they concluded that a sale of the Texas Rangers was the only viable option.  A lengthy and active marketing process culminated with an agreement among HSG, TRBP and Rangers Baseball Express LLC (the "Purchaser"), whose principals include the current President of the Texas Rangers, Nolan Ryan, and Chuck Greenberg, a sports lawyer and minor league club owner, dated as of January 23, 2010 (the "January APA"), governing the sale of the Texas Rangers franchise and certain related assets.

13.     Pursuant to the terms of the January APA, consummation of the sale required, among other closing conditions, the consent of the Lenders pursuant to the terms of the HSG Credit Agreement.  Despite HSG's, TRBP's, and the Purchaser's lengthy good faith negotiations with the Lenders following the execution of the January APA, the Lenders refused to consent to the transactions contemplated by the January APA and thus prevented TRBP from moving forward with the sale of the Texas Rangers.  Ultimately, TRBP, in consultation with MLB, concluded that a chapter 11 filing designed to facilitate a sale of TRBP's assets to the Purchaser (the "Sale") pursuant to a prepackaged plan of reorganization ("the Prepackaged Plan") was the most efficient manner in which to consummate the Sale and was, therefore, in the best interests of the Texas Rangers franchise, its fans, MLB and all other parties involved, including TRBP's creditors.  As described herein, the Prepackaged Plan will facilitate the sale of the Texas Rangers franchise to the Purchaser and the payment of all of TRBP's creditors in

full, allowing the Texas Rangers franchise to compete successfully on and off the field with assurance of long-term financial stability.

**Asset Purchase Agreement**

14.     On May 23, 2010, after further negotiation, in anticipation of the implementation and consummation of the Sale through a chapter 11 plan of reorganization, the parties to the January APA terminated the January APA and entered into that certain Asset Purchase Agreement (the "<u>Asset Purchase Agreement</u>") for the sale of the Texas Rangers franchise and certain related assets.[1]

15.     Under the Asset Purchase Agreement, substantially all of the Debtor's assets, including the Texas Rangers franchise and substantially all contractual rights related the operation of the Texas Rangers will be sold to the Purchaser.  The aggregate consideration paid and obligations assumed by the Purchaser at the Closing will equal more than $500 million. Pursuant to the Sale, the Purchaser will also assume virtually all of the obligations of the Texas Rangers, including deferred compensation obligations, sponsorship, ticketholder, employee and specified tax obligations, with the exception of certain excluded liabilities that will be paid under the Prepackaged Plan.  Under the Asset Purchase Agreement and the Prepackaged Plan, TRBP also intends to assume and assign to the Purchaser all contracts relating to the Texas Rangers franchise, including all marketing, media, advertising, and merchandising contracts, all minor league and major league player contracts and certain real property Leases.  The Sale anticipates a complete and orderly transition of the operations of the team — all tickets to games and other events will be fully honored, and all employees will keep their jobs.  Although

---

[1] A more thorough description of the Asset Purchase Agreement and the Prepackaged Plan are contained in the Declaration of Kellie L. Fischer in Support of Debtor's Chapter 11 Petition and Request for First Day Relief, filed contemporaneously herewith and incorporated herein by reference.

accomplished through a chapter 11 plan, the Sale will resemble in all significant respects the sale of any other sports franchise.

16.     The Sale will allow TRBP's creditors that are Lenders under the HSG Credit Agreement to recover 100 percent of their guaranty claims against TRBP. As described more fully below, subject to Court approval, the Sale is expected to be completed by mid-summer, allowing the franchise to exit the chapter 11 process expeditiously in order to reduce any potential adverse impact to the Texas Rangers and its operations.

**MLB Approval**

17.     The Debtor, as a member of Major League Baseball, is subject to the rules and regulations of MLB. In particular, any sale of the Texas Rangers franchise cannot be consummated without first obtaining the requisite approval from the BOC and 75% of the MLB clubs. The sale of any MLB club must comply with the process set forth in the Major League Constitution and the MLB ownership guidelines. Accordingly, TRBP has worked very closely with MLB throughout the negotiation of the Asset Purchase Agreement and all related events leading to the filing of the chapter 11 case. As of the date hereof, the Debtor is not aware of any opposition by MLB or the requisite percentage of MLB clubs required to consent to the Sale.

**The Prepackaged Plan**

18.     As stated above, concurrently herewith, the Debtor has filed its Prepackaged Plan. The primary purpose of the Prepackaged Plan is to bridge the impasse between TRBP and the Lenders under the HSG Credit Agreement and to effectuate the Sale of the Texas Rangers franchise to the Purchaser and satisfy TRBP's creditors in full.

19.     The Prepackaged Plan provides for the Sale to be consummated on the effective date (the "Effective Date") and sets forth the distribution that each class of the Debtor's creditors and equity holders is to receive on the Effective Date under the Prepackaged Plan.  All TRBP's creditors will be paid in full under the Prepackaged Plan or have their claims assumed by the Purchaser under the Asset Purchase Agreement.  Specifically, the Prepackaged Plan divides all claims and equity interests into the following classes:  (i) Allowed Priority Non-Tax Claim, (ii) Allowed First Lien Holder Claim, (iii) Allowed Second Lien Holder Claim, (iv) Allowed MLB Prepetition Claim, (v) Allowed Secured Tax Claim, (vi) Allowed Other Secured Claim, (vii) Allowed Assumed General Unsecured Claim, (viii) Allowed Non-Assumed General Unsecured Claim, (ix) Allowed Emerald Diamond Claim, (x) Allowed Overdraft Protection Agreement Claim, (xi) Allowed Intercompany Claim, and (xii) Allowed TRBP Equity Interest (all as defined in the Prepackaged Plan).  Each class under the Prepackaged Plan is unimpaired and will be paid in full.

20.     Additionally, TRBP believes that the Purchaser will build on past team successes and that the future of the Texas Rangers will be in the hands of an ownership group that will be a good steward for the game.

21.     TRBP believes that because the Prepackaged Plan satisfies in full all claims against TRBP, is supported by TRBP's equity holders, and will lead to the least disruption to the Texas Rangers' business of playing baseball, the Prepackaged Plan is in the best interests of the Texas Rangers franchise and all parties in interest.

**Jurisdiction and Venue**

22.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

23.     By this Motion, the Debtor requests entry of the Scheduling Order (i) scheduling a hearing (the "Confirmation Hearing") to consider the confirmation of the Prepackaged Plan pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3017(c); (ii) establishing an objection deadline to object to the confirmation of the Prepackaged Plan; (iii) authorizing and approving the form and manner of notice thereof and of the commencement of the Chapter 11 Case; and (iv) granting related relief.

24.     Below is a table highlighting the dates relevant to the confirmation of the Prepackaged Plan and setting forth the Debtor's proposed dates for the mailing of the Commencement/Plan Notice (as defined below), the Confirmation Hearing, and the Objection Deadline (as defined below):

| Proposed Timetable | |
|---|---|
| Commencement Date | May 24, 2010 |
| Hearing on Motion | May 25, 2010 |
| Mailing of Commencement/Plan Notice | May 25, 2010 |
| Objection Deadline | June 25, 2010 |
| Reply Date (if any) | June 30, 2010 |
| Confirmation Hearing Date | July 2, 2010 |

**Basis for Relief**

**A.    Disclosure Statement Approval Not Required**

25.    The Debtor respectfully submits that it is not necessary to hold a hearing in this chapter 11 case to consider the approval of the Debtor's Disclosure Statement Relating to the Prepackaged Plan of Reorganization for Texas Rangers Baseball Partners Under Chapter 11 of the Bankruptcy Code (the "Disclosure Statement"), because all holders of claims or equity interests are unimpaired under the Prepackaged Plan and thus conclusively presumed to have accepted the Prepackaged Plan and are not entitled to vote to accept or reject the Prepackaged Plan.

26.    Section 1125(b) provides that a debtor cannot solicit an acceptance or rejection of a chapter 11 plan without a court-approved disclosure statement.  Section 1126(f) of the Bankruptcy Code provides:

> Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

11 U.S.C. § 1126(f).  Accordingly, pursuant to section 1126(f) of the Bankruptcy Code, the holders of claims or equity interests in each of these unimpaired classes are conclusively presumed to accept the Prepackaged Plan and do not need to be solicited.  Because the Debtor is not soliciting votes on the Prepackaged Plan, it is not subject to the requirement of section 1125(b) to have a disclosure statement.  As such, the Disclosure Statement was filed by the Debtor for the sole purpose of providing creditors, equity holders, customers, fans, and all other parties in interest with more information regarding the Sale and the Prepackaged Plan, not for

the purpose of solicitation. Therefore, the Court is not required to approve the Disclosure Statement.

27. In any case, the Debtor has included in the Disclosure Statement the type of information that would typically be included in a disclosure statement used to solicit votes, including a description of the Prepackaged Plan, summaries of the relevant statutory provisions, the Asset Purchase Agreement, the prepetition capital structure, the events leading up to the filing of the Chapter 11 Case, as well as anticipated events in the Chapter 11 Case. The Disclosure Statement also includes a summary of the treatment and estimated recovery for holders of claims or equity interests under the Prepackaged Plan, and explains that all claims will be paid in full on the Effective Date or assumed by the Purchaser. In addition, the Disclosure Statement explains that no solicitation is being conducted because all classes of claims and equity interests are unimpaired and thus conclusively deemed to have accepted the Prepackaged Plan pursuant to section 1126(f) of the Bankruptcy Code. Thus, the Disclosure Statement provides adequate information to creditors and other parties in interest regarding the Debtor's Prepackage Plan, despite the fact that, in accordance with the Bankruptcy Code, its adequacy in that regard is not required to be court-approved.

28. Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least twenty-eight days' notice … to consider the disclosure statement and any objections or modifications thereto." Because a disclosure statement is not required in this case, the need for a hearing to consider the Disclosure Statement is obviated.

**B.      Scheduling a Confirmation Hearing**

29. Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan." The most critical and complex task

required to effectuate a successful reorganization – the negotiation and formulation of a chapter 11 plan of reorganization – has already been accomplished. Thus, the Debtor respectfully submits that there is no reason to delay consideration of the confirmation of the Prepackaged Plan. It is in the best interests of the Debtor's estate and creditors to proceed with the confirmation process as expeditiously as possible.

30. Accordingly, the Debtor respectfully requests that the Court schedule the Confirmation Hearing to be held as soon as practicable but on not less than twenty-eight days' notice. The Debtor respectfully requests the Court schedule the Confirmation Hearing for July 2, 2010. The proposed schedule affords creditors and all other parties in interest ample notice of the proceedings and time to evaluate the Prepackaged Plan and, therefore, does not prejudice any party. Moreover, the proposed schedule is in the interests of all parties in interest in the Debtor's reorganization case. The relief sought herein is necessary to the efficient prosecution of this chapter 11 case and will assist in the expeditious confirmation of the Prepackaged Plan, which will enable the sale of the Texas Rangers to occur seamlessly and all of the Debtor's creditors to be paid in full. In addition, it is appropriate that the Scheduling Order be entered at this time so that the Debtor's fans and employees, who are critical to the value of the Debtor, can be informed as promptly as possible of the anticipated scheduling of events preceding confirmation of the Prepackaged Plan and can see a quick and clear path out of this Chapter 11 Case. Scheduling a hearing to occur as expeditiously within the confines of the Bankruptcy Code and Bankruptcy Rules will demonstrate progress to fans and employees and will thus preserve value.

**C.      Deadline and Procedures for Objections to the Prepackaged Plan**

31.      Bankruptcy Rule 3020(b)(1) authorizes the Court to fix a time for filing objections to a plan of reorganization.  Further, Bankruptcy Rule 2002(b) requires at least twenty-eight days' notice be given by mail to all creditors of the time fixed for filing objections to confirmation of a plan of reorganization.

32.      The Debtor respectfully requests that the Court set a date that is at least twenty-eight calendar days after the mailing of the Commencement/Plan Notice (as defined below) as the last date to file objections to confirmation of the Prepackaged Plan (the "Objection Deadline").  This date will provide creditors and holders of equity interests twenty-eight days' notice of the deadline for filing objections to the Prepackaged Plan, while still affording the Debtor and other parties in interest time to file a responsive brief and, if possible, resolve any objections received.  The Debtor also requests that the Court set any reply deadline (the "Reply Deadline") at least three business days after the Objection Deadline.  Specifically, the Debtor requests that the Objection Deadline be June 25, 2010 and the Reply Deadline be June 30, 2010, each at 4:00 p.m. (Central Time).

33.      The Debtor further requests that the Court direct that any objections to the Prepackaged Plan be in writing, filed with the Clerk of the United States Bankruptcy for the Northern District of Texas, Fort Worth Division together with proof of service thereof, set forth the name of the objector, and the nature and amount of any claim or interest asserted by the objector against the estate or property of the Debtor, and state the legal and factual basis for such objection.  Any such objections should be served upon the following so as to be received no later than the Objection Deadline: (i) counsel to the Debtor, Weil, Gotshal & Manges LLP, 200 Crescent Court, Suite 300, Dallas, Texas 75201, Attn: Martin A. Sosland, Esq. and Weil,

Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Ronit J.

Berkovich, Esq.; (ii) counsel to the Purchaser, Foley & Lardner LLP, 777 East Wisconsin

Avenue, Milwaukee, Wisconsin 53202, Attn: Mary K. Braza, Esq. and Kevin R. Schulz, Esq.

and Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, Illinois 60610, Attn:

Michael J. Small, Esq.; (iii) counsel to the Purchaser, Sherrard, German & Kelly, P.C., 28th

Floor, Two PNC Plaza, 620 Liberty Avenue, Pittsburgh, Pennsylvania 15222, Attn: David J.

Lowe, Esq.; (iv) counsel to the Purchaser, Barlow Garsek & Simon, LLP, 3815 Lisbon Street,

Fort Worth, Texas 76107, Attn: Robert A. Simon, Esq.; (v) counsel to the Committee, if one

shall have been appointed; (vi) the Office of the United States Trustee for the Northern District

of Texas, 1000 Commerce Street, Room 976, Dallas, Texas 75242, Attn: Lisa L. Lambert, Esq.;

(vii) counsel to JPMorgan Chase Bank, N.A., Latham & Watkins LLP, 885 Third Avenue, New

York, New York 10022, Attn: Ronan Wicks, Esq. and David Teh, Esq.; (viii) counsel to GSP

Finance LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, New York 10019,

Attn: Jason P. Young, Esq.; (ix) counsel to MLB, Paul Weiss Rifkind Wharton & Garrison

LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Stephen J. Shimshak,

Esq., Jordan E. Yarett, Esq. and Philip A. Weintraub, Esq.; and (x) the Office of the

Commissioner of Baseball, 245 Park Avenue, New York, New York 10167, Attn: Thomas J.

Ostertag, Esq. and Robert Kheel, Esq.

## D. Treatment of Executory Contracts and Unexpired Leases under the Prepackaged Plan

34.     Pursuant to Section 9.1 of the Prepackaged Plan and the Asset Purchase

Agreement, as of the Effective Date, the Debtor will assume and assign to the Purchaser,

pursuant to sections 365(a) and (f) of the Bankruptcy Code, each executory contract and

unexpired lease to which it is a party, other than a few specified contracts (the "Excluded Contracts").  In addition, prior to the Commencement Date, all contracts of HSG Sports Group LLC (f/k/a Hicks Sports Group LLC) that relate primarily to the Texas Rangers, were assigned to TRBP (the "HSG Assigned Contracts").  The HSG Assigned Contracts will be assumed and assigned to the Purchaser as of the Effective Date pursuant to sections 365(a) and (f) of the Bankruptcy Code.  On the Effective Date, each Excluded Contract that is an executory contract or unexpired lease shall either be terminated by its terms or assumed by the Debtor.  That certain Amended and Restated Land Sale Agreement, dated as of May 23, 2010, by and among Purchaser, Ballpark Real Estate, L.P., and for the sole purpose of section 6.12 thereof, TRBP, shall be assumed by the Debtor on the Effective Date.

35.     The Debtor intends to provide notice to all contract counterparties of the assumption and assignment of executory contracts and/or unexpired leases and instructions for filing an objection to the assumption and assignment to the Purchaser in the Commencement/Plan Notice (as defined below).

36.     The Debtor does not believe that any cure amounts are owed under section 365(b)(1) of the Bankruptcy Code because any monetary amounts owed under any executory contract and unexpired lease to be assumed and assigned under the Prepackaged Plan will be satisfied by the Purchaser upon assumption and assignment thereof in the ordinary course of business; however, to the extent there is a dispute regarding (i) the cure amount; (ii) the ability of the Purchaser to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed as assigned; or (iii) any other matter pertaining to assumption and assignment that is unresolved as of the Effective Date, the Prepackaged Plan provides that cure

shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

        37.      The Debtor submits that any counterparty that does not object to the assumption and assignment of its executory contract or unexpired lease by the Debtor under the Prepackaged Plan should be deemed to have consented to such assumption or assumption and assignment. The Debtor believes that this provision is appropriate under the circumstances as counterparties to such executory contracts and unexpired leases will have the same or more notice to respond or to object to such assumptions and assignments as they would have if the Debtor chose to accomplish such assumptions and assignments through a motion brought under sections 365(a) and (f) of the Bankruptcy Code. Moreover, in order to provide counterparties to assumed and assigned executory contracts and unexpired leases with the sufficient notice of the assumptions and assignments, the proposed Commencement/Plan Notice includes a conspicuous notice concerning the treatment of executory contracts and unexpired leases under the Prepackaged Plan and detailed instructions on how to object to the assumptions and assignments.

        38.      Additionally, as is typical in large chapter 11 cases, the proposed Commencement/Plan Notice provides that the Confirmation Order will constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the executory contract and unexpired lease assumptions, assumptions and assignments, or rejections as of the Effective Date. This provision will provide an efficient mechanism for approving the Debtor's treatment of executory contracts and unexpired leases, while providing contract counterparties with ample time to object, and will facilitate the sale contemplated under the Prepackaged Plan.

**E.**     **Form and Manner of Notice of the Hearing and the Commencement of the Chapter 11 Case**

39.     Bankruptcy Rule 2002(f) provides that notice of the order for relief shall be sent by mail to all creditors and equity holders.

40.     Moreover, Bankruptcy Rule 3017(d) provides, in relevant part, as follows:

> If the court orders that the disclosure statement and the plan or a summary of the plan shall not be mailed to any unimpaired class, notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, shall be mailed to members of the unimpaired class together with the notice of the time fixed for filing objections to and the hearing on confirmation.

Bankruptcy Rule 3017(d). The Debtor requests that the Court determine that it is not required to distribute copies of the Prepackaged Plan to any holder of a claim against or equity interest in the Debtor under the Prepackaged Plan, because all classes are unimpaired and deemed to accept the Prepackaged Plan.

41.     In lieu of furnishing each such holder of a claim against or equity interest in the Debtor with a copy of the Prepackaged Plan, the Debtor proposes to send to such parties the Commencement/Plan Notice (as defined below), which sets forth the manner in which a copy of the Prepackaged Plan may be obtained. Specifically, the Commencement/Plan Notice will provide that the Prepackaged Plan (and the Disclosure Statement) is available on the website created by the Debtor's claims agent (www.trbpinfo.com) and that Debtor's counsel will provide hard copies of the Prepackaged Plan to any party that makes a specific request in

writing for the same.  Accordingly, the Debtor submits that such notice satisfies the requirements of Bankruptcy Rule 3017(d).

42.     The Debtor proposes to serve a notice of the commencement of the cases and filing the Prepackaged Plan (the "Commencement/Plan Notice"), substantially in the form annexed as Exhibit "A" to hereto, by first-class mail or deposit with a reputable overnight delivery service on or before May 28, 2010 upon all parties in interest.  The Commencement/Plan Notice contains, among other things:  (i) notice of the commencement of this Chapter 11 Case; (ii) instructions for obtaining copies of any filing in the Chapter 11 Case, including the Disclosure Statement and the Prepackaged Plan (from Debtor's counsel) or online on the website established by the Debtor's claims agent:  www.trbpinfo.com); (iii) notice that all creditors and equity holders are unimpaired and deemed to accept the Prepackaged Plan; (iv) the Objection Deadline and the procedures for filing objections to the confirmation of the Prepackaged Plan; and (v) the date, time, and place of the Confirmation Hearing.

43.     In addition, Bankruptcy Rule 2002(l) permits a court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  The Debtor requests that this Court authorize the Debtor, in its discretion, to give supplemental publication notice of the Hearing on a date no less than twenty-eight calendar days prior to the Hearing.  The proposed notice schedule, as described above, affords parties in interest ample notice of these proceedings.

## F.     Related Relief

44.     Section 341(a) of the Bankruptcy Code requires the Office of the United States Trustee for the Northern District of Texas (the "U.S. Trustee") to convene and preside at a meeting of creditors, and section 341(b) authorizes the U.S. Trustee to convene a meeting of

equity security holders.  However, section 341(e) of the Bankruptcy Code provides for the following exception:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States Trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e).  As noted above, the Debtor was not required to solicit acceptances of the Prepackaged Plan.  In addition, section 1102 of the Bankruptcy Code requires that the U.S. Trustee appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or equity holders as deemed appropriate.  As set forth above, the classes consisting of holders of claims and equity interests materially affected by the Prepackaged Plan have already been deemed to accept the Prepackaged Plan in excess of the statutory thresholds specified in section 1126(c) and 1126(d) of the Bankruptcy Code.  The Prepackaged Plan contemplates an expeditious emergence from chapter 11 and the Debtor intends to proceed accordingly.  The Debtor submits that cause exists for this Court to direct the U.S. Trustee not to convene a meeting of creditors or equity security holders unless the Prepackaged Plan is not confirmed within ninety days after the Commencement Date.

### The Relief Requested if Appropriate

45.     The requested relief is further supported by the prepackaged nature of this case.  As set forth above and in greater detail in the Fischer Declaration, the Prepackaged Plan contemplates the payment of all classes in full, in cash, or reinstates the claims and equity interest of all classes.  The most critical and complex task required to effectuate a successful reorganization—the negotiation and formulation of a chapter 11 plan of reorganization—has

already been accomplished.  Thus, the Debtor respectfully submits that given the backdrop of this case, the relief requested herein is appropriate inasmuch as such relief will assist the Debtor to move towards expeditious confirmation of the Prepackaged Plan with the least possible disruption or harm to its business.  Based on the foregoing, the Debtor submits that the relief requested is necessary and appropriate, is in the best interests of its estate and creditors, and should be granted in all respects.

## Notice

46.     No trustee, examiner or statutory creditors' committee has been appointed in this chapter 11 case.  Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) the Debtor's thirty largest unsecured creditors; (iii) counsel to the Purchaser; (iv) counsel to MLB; (v) counsel to the Major League Baseball Players Association; (vi) counsel to JPMorgan Chase Bank, N.A., as administrative agent under the First Lien Credit Agreement; and (vii) counsel to GSP Finance LLC, as successor in interest to Barclays Bank PLC, as administrative agent under the Second Lien Credit Agreement.  The Debtor respectfully submits that no further notice of this Motion is required.

## No Previous Request

47.     No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: May 24, 2010
      Fort Worth, Texas

*/s/ Martin A. Sosland*
Martin A. Sosland (18855645)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777

Ronit J. Berkovich (*pro hac vice* pending)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

Proposed Attorneys for Debtor and
Debtor in Possession

**Exhibit A**

**Commencement/Plan Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

```
----------------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11
                                        :
TEXAS RANGERS BASEBALL PARTNERS         :        Case No. 10-43400 (DML)-11
                                        :
            Debtor.                     :
                                        :
----------------------------------------------------------------------x
```

NOTICE OF COMMENCEMENT OF CASE
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

-AND-

SUMMARY OF PREPACKAGED PLAN OF REORGANIZATION AND NOTICE
OF HEARING TO CONSIDER CONFIRMATION OF PLAN OF REORGANIZATION

**NOTICE IS HEREBY GIVEN** as follows:

1.      On May 24, 2010 (the "**Commencement Date**"), Texas Rangers
Baseball Partners ("**TRBP**" or the "**Debtor**"), commenced a case (the "**Chapter 11 Case**")
under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United
States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the
"**Bankruptcy Court**").

2.      On the Commencement Date, the Debtor filed a prepackaged plan of
reorganization (the "**Prepackaged Plan**") and disclosure statement relating thereto (the
"**Disclosure Statement**").  Copies of the Prepackaged Plan and Disclosure Statement, as well
as any other document that has been filed in the Chapter 11 Case, (i) may be obtained upon
request from the Debtor's counsel at the addresses specified below, (ii) are available on the
website maintained by the Debtor's claims and noticing agent (www.trbpinfo.com), and (iii) are
on file with the Clerk of the Bankruptcy Court, Eldon B. Mahon U.S. Courthouse, 501 W.
Tenth Street, Fort Worth, Texas  76102, where they are available for review between the hours
of 8:30 a.m. and 4:30 p.m. (Central Time).

3.      The primary purpose of the Prepackaged Plan is to effectuate a sale of
the Texas Rangers Major League Baseball Club, a professional baseball club owned and
operated by the Debtor (the "**Texas Rangers**") and certain related assets to Rangers Baseball
Express LLC, whose principals include the current President of the Texas Rangers, Nolan
Ryan, and Chuck Greenberg, and enable the Debtor to satisfy TRBP's creditors in full.

TRBP believes that the Prepackaged Plan affords holders of claims against and equity interests in TRBP the potential for the greatest realization on TRBP's assets and is in the best interest of the Texas Rangers franchise.

## Summary of the Prepackaged Plan[1]

4.      The Prepackaged Plan does not impair any claims.  **THAT IS, CREDITORS WILL BE PAID IN FULL UNDER THE PREPACKAGED PLAN.**  As a result, all classes of creditors are deemed to accept the Prepackaged Plan and are not entitled to vote on the Prepackaged Plan.  Thus, the Debtor is not soliciting any votes on the Prepackaged Plan and will be asking the Bankruptcy Court to confirm the Prepackaged Plan at the Confirmation Hearing (as defined below).

5.      The following chart summarizes the treatment provided by the Prepackaged Plan to each class of claims and interests and indicates the acceptance or rejection of the Prepackaged Plan by each class:

| Class | Description | Treatment | Estimated Recovery |
|-------|-------------|-----------|--------------------|
| Class 1 | Priority Non-Tax Claims[2] | Unimpaired.  Most Allowed Priority Non-Tax Claims, if any, will be assumed by Purchaser and paid in Cash on the later of (i) the Effective Date and (ii) the date such Claim becomes Allowed, except to the extent that a holder of an Allowed Priority Non-Tax Claim against the Debtor agrees to a different treatment.  With respect to any Allowed Priority Non-Tax Claim not assumed by the Purchaser, except to the extent that a holder agrees to less favorable treatment, each holder of an Allowed Priority Non-Tax Claim will receive Cash equal to the Allowed amount of such Priority Non-Tax Claim on the later of (i) the Effective Date and (ii) the date such Claim becomes Allowed. | 100% |
| Class 2 | First Lien Holder Claims | Unimpaired.  Except to the extent that a holder agrees to less favorable treatment, each holder of an Allowed First Lien Holder Claim will receive Cash equal to the Allowed amount of such First Lien Holder Claim.  Holders of Allowed First Lien Holder Claims and holders | 100% |

---

[1] The statements contained herein are summaries of the provisions contained in the Prepackaged Plan and do not purport to be precise or complete statements of all the terms and provisions of the Prepackaged Plan or documents referred to therein.

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Prepackaged Plan.

2

| Class | Description | Treatment | Estimated Recovery |
|---|---|---|---|
| | | of Allowed Second Lien Holder Claims are entitled to one satisfaction in the amount of $75 million in the aggregate. On the Effective Date, an amount of Cash equal to $75 million (or the amount outstanding under the First Lien Credit Agreement and Second Lien Credit Agreement if less than $75 million is outstanding in the aggregate under the First Lien Credit Agreement and Second Lien Credit Agreement on the Effective Date) will be paid to JPMorgan Chase Bank, N.A., as collateral agent for the holders of Allowed First Lien Holder Claims, to be applied in accordance with the First Lien Credit Agreement, the Second Lien Credit Agreement, and the intercreditor agreement among the holders of the First Lien Holder Claims and the Second Lien Holder Claims. | |
| Class 3 | Second Lien Holder Claims | Unimpaired. Except to the extent that a holder agrees to less favorable treatment, each holder of an Allowed Second Lien Holder Claim will receive Cash equal to the Allowed amount of such Second Lien Holder Claim. Holders of Allowed First Lien Holder Claims and holders of Allowed Second Lien Holder Claims are entitled to one satisfaction in the amount of $75 million in the aggregate. On the Effective Date, an amount of Cash equal to $75 million (or the amount outstanding under the First Lien Credit Agreement and Second Lien Credit Agreement if less than $75 million is outstanding in the aggregate under the First Lien Credit Agreement and Second Lien Credit Agreement on the Effective Date) will be paid to JPMorgan Chase Bank, N.A., as collateral agent for the holders of Allowed First Lien Holder Claims, to be applied in accordance with the First Lien Credit Agreement, the Second Lien Credit Agreement, and the intercreditor agreement among the holders of the First Lien Holder Claims and the Second Lien Holder Claims. | 100% |
| Class 4 | MLB Prepetition Claim | Unimpaired. Except to the extent that a holder agrees to less favorable treatment, each holder of an Allowed MLB Prepetition Claim will receive Cash equal to the Allowed amount of such MLB Prepetition Claim. | 100% |
| Class 5 | Secured Tax Claims | Unimpaired. Certain Secured Tax Claims related to the Purchased Assets (as defined | 100% |

| Class | Description | Treatment | Estimated Recovery |
|-------|-------------|-----------|--------------------|
|  |  | herein) for all taxable periods (or portions thereof) beginning after the date of the closing (the "***Closing Date***") of the Asset Purchase Agreement will be assumed by the Purchaser under the Asset Purchase Agreement. Each holder of such an Allowed Secured Tax Claim will retain its existing lien, if any, in the Purchased Assets, and will be paid in Cash by the Purchaser when such Allowed Secured Tax Claim becomes due and owing in the ordinary course of business. With respect to any Allowed Secured Tax Claim not assumed by the Purchaser, except to the extent that a holder agrees to less favorable treatment, each holder of any other Allowed Secured Tax Claim will retain its existing lien, if any, and will be paid in Cash equal to the Allowed amount of such Secured Tax Claim on the later of (i) the Effective Date and (ii) the date such Allowed Secured Tax Claim becomes due and owing in the ordinary course of business. |  |
| Class 6 | Other Secured Claims | Unimpaired. Other Secured Claims will be assumed by the Purchaser under the Asset Purchase Agreement. Each holder of an Allowed Other Secured Claim will either (i) retain its existing lien in the Purchased Assets and be paid by the Purchaser when such Allowed Other Secured Claim becomes due and owing in the ordinary course of business, or (ii) receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code. | 100% |
| Class 7 | Assumed General Unsecured Claims | Unimpaired. Assumed General Unsecured Claims are General Unsecured Claims that will be assumed by the Purchaser under the Asset Purchase Agreement. Each holder of an Allowed Assumed General Unsecured Claim will be paid by the Purchaser when such Assumed General Unsecured Claim becomes due and owing in the ordinary course of business. | 100% |
| Class 8 | Non-Assumed General Unsecured Claims | Unimpaired. Non-Assumed General Unsecured Claims are General Unsecured Claims that will not be assumed by the Purchaser under the Asset Purchase Agreement. Except to the | 100% |

| Class | Description | Treatment | Estimated Recovery |
|---|---|---|---|
| | | extent that a holder of an Allowed Non-Assumed General Unsecured Claim agrees to less favorable treatment, each holder of an Allowed Non-Assumed General Unsecured Claim will: (i) to the extent such Allowed Non-Assumed General Unsecured Claim is due and owing on the Effective Date, (x) be paid in full in Cash on the later of the Effective Date and the date such claim becomes an Allowed Non-Assumed General Unsecured Claim, or (y) otherwise be paid in accordance with the terms of any agreement between the Debtor and such holder; (ii) to the extent such Allowed Non-Assumed General Unsecured Claim is not by its terms due and owing on the Effective Date, paid when and as such Allowed Non-Assumed General Unsecured Claim becomes due and owing in the ordinary course of business; or (iii) receive treatment that leaves unaltered the legal, equitable and contractual rights to which such Allowed Non-Assumed General Unsecured Claim entitles the holder of such Claim. | |
| Class 9 | Emerald Diamond Claim | Unimpaired. Except to the extent that a holder of an Allowed Emerald Diamond Claim agrees to less favorable treatment of such Allowed Emerald Diamond Claim, each holder of an Allowed Emerald Diamond Claim will receive Cash equal to the amount of such Allowed Emerald Diamond Claim. | 100% |
| Class 10 | Overdraft Protection Agreement Claim | Unimpaired. Except to the extent that a holder of an Allowed Overdraft Protection Agreement Claim agrees to less favorable treatment of such Allowed Overdraft Protection Agreement Claim, each holder of an Allowed Overdraft Protection Agreement Claim shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Overdraft Protection Agreement Claim, be paid in full in Cash in an amount equal to the Allowed Overdraft Protection Agreement Claim. | 100% |
| Class 11 | Intercompany Claims | Unimpaired. The legal, equitable and contractual rights of the holders of Allowed Intercompany Claims will be unaltered by the Prepackaged Plan, or such Allowed Intercompany Claims will otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code. | 100% |

| Class | Description | Treatment | Estimated Recovery |
|-------|-------------|-----------|--------------------|
| Class 12 | TRBP Equity Interests | Unimpaired. The legal, equitable and contractual rights of the holders of Allowed TRBP Equity Interests will be unaltered by the Prepackaged Plan. | |

## Hearing to Consider Confirmation of the Prepackaged Plan

6.  A hearing to consider confirmation of the Prepackaged Plan and any objections thereto and to consider any other matter that may properly come before the Bankruptcy Court will be held before the Honorable _____, United States Bankruptcy Judge, in Room _____ of the United States Bankruptcy Court, Eldon B. Mahon U.S. Courthouse, 501 W. Tenth Street, Fort Worth, Texas 76102, on , _____, 2010 at __:__ _.m. (Central Time) or as soon thereafter as counsel may be heard (the "**Confirmation Hearing**"). The Confirmation Hearing may be adjourned from time to time without further notice and will be available on the electronic case filing docket. The time fixed for the Confirmation Hearing may also be rescheduled by the Bankruptcy Court. Notice of the rescheduled time, if any, will be available on the electronic case filing docket.

7.  Any objections to the Prepackaged Plan must (i) be in writing, filed with the Clerk of the United States Bankruptcy for the Northern District of Texas together with proof of service thereof, (ii) set forth the name of the objector, and the nature and amount of any claim or interest asserted by the objector against the estate or property of the Debtor, (iii) state the legal and factual basis for such objection, and (iv) **be served upon the following so as to be received no later than __:__ _.m. (Central Time) on ___, 2010:**

(i)  counsel to the Debtor, Weil, Gotshal & Manges LLP, 200 Crescent Court, Suite 300, Dallas, Texas 75201, Attn: Martin A. Sosland, Esq. and Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Ronit J. Berkovich, Esq.;

(ii)  counsel to the Purchaser, Foley & Lardner LLP, 777 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, Attn: Mary K. Braza, Esq. and Kevin R. Schulz, Esq. and Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, Illinois 60610, Attn: Michael J. Small, Esq.;

(iii)  counsel to the Purchaser, Sherrard, German & Kelly, P.C., 28th Floor, Two PNC Plaza, 620 Liberty Avenue, Pittsburgh, Pennsylvania 15222, Attn: David J. Lowe, Esq.

(iv)  counsel to the Purchaser, Barlow Garsek & Simon, LLP, 3815 Lisbon Street, Fort Worth, Texas 76107, Attn: Robert A. Simon, Esq.; and

(v)  counsel to the Committee, if one shall have been appointed;

(vi)    the Office of the United States Trustee for the Northern District of Texas, 1000 Commerce Street, Room 976, Dallas, Texas 75242, Attn: Lisa L. Lambert, Esq.;

(vii)   counsel to JPMorgan Chase Bank, N.A., Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attn: Ronan Wicks, Esq. and David Teh, Esq.;

(viii)  counsel to GSP Finance LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, New York 10019, Attn: Jason P. Young, Esq.;

(ix)    counsel to MLB, Paul Weiss Rifkind Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Stephen J. Shimshak, Esq., Jordan E. Yarett, Esq. and Philip A. Weintraub, Esq.;

(x)     the Office of the Commissioner of Baseball, 245 Park Avenue, New York, New York 10167, Attn: Thomas J. Ostertag, Esq and Robert Kheel, Esq.

**Treatment of Executory Contracts and Unexpired Leases under the Prepackaged Plan**

8.      Pursuant to Section 9.1 of the Prepackaged Plan and the Asset Purchase Agreement, as of the Effective Date, the Debtor shall assume and assign to Purchaser, pursuant to sections 365(a) and (f) of the Bankruptcy Code, each executory contract and unexpired lease to which it is a party other than the Excluded Contracts. Exclude Contracts, as defined in the Prepackaged Plan, generally include all contracts with professionals who provided assistance with the Sale, all contracts between the Debtor (or any of its subsidiaries) and any affiliate of the Debtor (including directors) or affiliates of Thomas O. Hicks, certain indemnification agreements between the Debtor and certain officers and directors of HSG and the Debtor, and all contracts of the Debtor or any of its subsidiaries relating to the HSG Certain Agreement. Prior to the Commencement Date, all contracts of HSG Sports Group LLC (f/k/a Hicks Sports Group LLC) that relate primarily to the Texas Rangers, were assigned to TRBP (the "HSG Assigned Contracts"). The HSG Assigned Contracts will be assumed and assigned to the Purchaser as of the Effective Date pursuant to sections 365(a) and (f) of the Bankruptcy Code. On the Effective Date, each Excluded Contract that is an executory contract or unexpired lease shall either be terminated by its terms or assumed by the Debtor. That certain Amended and Restated Land Sale Agreement, dated as of May 23, 2010, by and among Purchaser, Ballpark Real Estate, L.P., and for the sole purpose of section 6.12 thereof, TRBP, shall be assumed by the Debtor on the Effective Date. Please refer to sections 9.1 and 9.2 of the Prepackaged Plan for more information on the assumption, assumption and assignment, or rejection of executory contracts and unexpired leases.

9.      Any monetary amounts owed under any executory contract and unexpired lease to be assumed and assigned to Purchaser under the Prepackaged Plan shall be satisfied by the Purchaser upon assumption and assignment thereof in the ordinary course of

business.  As such, the Debtor does not believe that any cure amounts are owed under section 365(b)(1) of the Bankruptcy Code.

10.     Any party wishing to object to such assumptions and assignments must follow the instructions described above for filing objections to the Prepackaged Plan and include a copy of the executory contract or unexpired lease to which any such objection relates or contain information sufficient to identify the executory contract or unexpired lease to which any such objection relates.  Any counterparty that does not object to the assumption or assumption and assignment of its executory contract or unexpired lease by the Debtor under the Prepackaged Plan, shall be deemed to have consented to such assumption or assumption and assignment.  The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the executory contract and unexpired lease assumption, assumption and assignment, or rejection as of the Effective Date.

11.     If there is a dispute regarding (i) the nature and amount of any cure; (ii) the ability the Purchaser to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed as assigned; or (iii) any other matter pertaining to assumption and assignment that is unresolved as of the Effective Date, cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

**If you have questions about this Notice or the Prepackaged Plan, please contact the Debtor's claims and noticing agent at (888) 369-8930.  If you wish to object to the Prepackaged Plan, you must follow the instructions above for filing a formal objection.**

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

Dated: Fort Worth, Texas
      May __, 2010                                BY ORDER OF THE COURT

Martin A. Sosland (18855645)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777

Ronit J. Berkovich (*pro hac vice* pending)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtor and*
*Debtor in Possession*