Jeffrey R. Fine
Texas State Bar No. 07008410
James H. Billingsley
Texas State Bar No. 00787084
Daniel I. Morenoff
Texas State Bar No. 24032760
K&L GATES LLP
1717 Main Street, Suite 2800
Dallas, Texas 75201
(214) 939-5500
Telecopy: (214) 939-5849

PROPOSED COUNSEL FOR
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| TEXAS RANGERS BASEBALL PARTNERS, | § | Case No. 10-43400-dml11 |
| | § | |
| Debtor. | § | |

## OBJECTION TO THE DISCLOSURE STATEMENT [DOCKET NO. 34] AND BRIEF OF THE UNSECURED CREDITORS COMMITTEE PURSUANT TO COURT ORDER ON DISCLOSURE-STATEMENT-RELATED ISSUES [DOCKET NO. 119]

The Official Committee of Unsecured Creditors in the above-captioned case (the "Committee"), by and through its proposed counsel, objects to the adequacy of the Disclosure Statement Relating to the Prepackaged Plan of Reorganization of Texas Rangers Baseball Partners under Chapter 11 of the Bankruptcy Code [Docket No. 34] (the "Disclosure Statement") and briefs certain issues set out in the Court's Order (i) Scheduling a Hearing to Consider Issues Relating to the Disclosure Statement and Issues Relating to Plan Confirmation; (ii) Establishing Deadlines with Respect Thereto; (iii) Approving the Form and Manner of Notice of the Deadlines and the Hearing; and (iv) Granting Related Relief [Docket No. 119] (the "Briefing Order").

## I. BACKGROUND

1. On May 24, 2010 (the "Petition Date"), Texas Rangers Baseball Partners (the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its properties as a debtor-in-possession.

2. The Debtor owns and operates the Texas Rangers Major League Baseball Club, a professional baseball team based in Arlington, Texas.

3. On the Petition Date, the Debtor filed the Disclosure Statement along with a Prepackaged Plan of Reorganization of Texas Rangers Baseball Partners under Chapter 11 of the Bankruptcy Code [Docket No. 31] (the "Plan").

4. According to the Disclosure Statement, (a) the Debtor is a Texas general partnership; (b) the Debtor's general partner is Rangers Equity Holdings GP, LLC, (c) the Debtor's only limited partner is Rangers Equity Holdings, L.P., and (d) Rangers Equity Holdings, L.P. is the only member of Rangers Equity Holdings GP, LLC.[1] The Disclosure Statement further indicates that Rangers Equity Holdings, L.P. is entirely but indirectly owned by Hicks Sports Group LLC ("HSG"), which is indirectly controlled by Thomas O. Hicks. Accordingly, the Debtor's management and equity owners are owned and controlled by the same person.

5. On June 2, 2010, the Court entered the Briefing Order, setting a hearing for June 15, 2010 on a series of issues related to the Plan and Disclosure Statement. These issues include:

> i. whether the Disclosure Statement is adequate (including whether any disclosure is required by the Bankruptcy Code),

---

[1] Rangers Equity Holdings LP and Rangers Equity Holdings GP, LLC are collectively referred to as the "Equity Holders."

ii. whether under the Plan any class of creditors or equity holders is impaired and entitled to vote on the Plan,

iii. who may speak for the Equity Holders in this chapter 11 case,

iv. what obligations are owed to whom by the Equity Holders respecting their conduct in this chapter 11 case, and

v. whether the Debtor is under an independent duty to maximize the value of the estate in connection with disposition of this chapter 11 case.

6. The Briefing Order set a hearing on these issues for June 15, 2010, and required parties wishing to be heard at that hearing to file and serve briefs on the listed issues by June 11, 2010 at 4:30 p.m., prevailing Central Time.

7. On June 3, 2010 (the "Appointment Date"), in accordance with Bankruptcy Code §1102(a)(1), the United States Trustee appointed the members of the Committee and filed a notice of this appointment with the Court [Docket No. 128].

8. According to the Disclosure Statement, HSG owes approximately $525 million to a collection of lenders (the "HSG Lenders"), secured by liens in substantially all of HSG's assets. According to the Disclosure Statement, the Debtor guarantied $75 million of HSG's indebtedness and pledged substantially all of its assets to secure the guaranty.[2]

## II. SUMMARY

9. In its present form, the Plan impairs the rights of unsecured creditors. As a result, unless certain changes are made to the Plan, Classes 7 and 8 must receive adequate information to make an informed decision about the Plan and, thereafter, to vote on the Plan. In its current

---

[2] The Committee will use the term "TRBP Lenders" to refer to the lenders in their capacity as holders of $75 million in claims against the Debtor.

3

form, the Disclosure Statement provides inadequate information for at least one of those classes to make an informed decision concerning the Plan.

10. The potential changes to the Plan described below would render Classes 7 and 8 unimpaired. Parallel changes, plus a few other additions, would render the Disclosure Statement adequate under the facts of this case.

11. Assuming the business realities described in the Plan remain unchanged, the Committee's proposed alterations should not pose a problem for the Debtor. The Committee hopes that the Debtor will agree to make the requisite changes voluntarily, so that the confirmation process may go forward without delay. To the extent that these changes are not made, the Debtor will be required to solicit the acceptance of Classes 7 and 8 to confirm the Plan.

12. The remaining issues described in the Briefing Order affect the rights of unsecured creditors only indirectly, if at all. In the interest of judicial economy, the Committee will not address these issues at this time. The Committee reserves the right to address these issues at the June 15 hearing, in additional briefing, or at a later date.

### III. ARGUMENT AND ANALYSIS

#### A. PLAN'S IMPAIRMENT OF UNSECURED CREDITORS

13. Bankruptcy Code § 1124 renders all bankruptcy claims impaired by a Chapter 11 plan, unless "the plan—(1) leaves unaltered the legal, equitable, and contractual rights to which such claim ... entitles the holder of such claim. . . ."[3]

14. Courts interpret this requirement to mean that a claim is impaired by "any alteration of the holder's legal, equitable, or contractual rights."[4] A claim need not be

---

[3] 11 U.S.C. § 1124(1).

"significantly impaired" or adversely affected in order to be impaired under the Code.[5] A claim may be impaired by alterations of any kind and degree.[6] Courts should not look at the value of a claim to determine if it is impaired; a claim may be impaired even if its value is increased by a change in the holder's rights.[7]

**The Plan Denies Unsecured Creditors Their Right to Interest**

15. As the Debtor accurately states in the Disclosure Statement, typically, when a Chapter 11 plan is confirmed,

> the holder of an unimpaired claim will receive on the later of the Effective Date [of the Plan (the "Effective Date")] or the date on which amounts owing are actually due and payable, payment in full, in Cash, with postpetition interest to the extent appropriate and provided for under the governing agreement (or if there is no agreement, under applicable non-bankruptcy law), and the remainder of the debtor's obligations, if any, will be performed as they come due in accordance with their terms.[8]

16. Despite acknowledging this principal, the Debtor classifies all unsecured creditors in this case as unimpaired,[9] and then affirmatively denies them their right to interest under their documents or state law.[10] The Plan could also be read as denying unsecured creditors their right under otherwise applicable law (whether by statute or contract) to recover attorneys fees incurred in prosecuting their claims.

---

[4] *Ronit Inc. v. Block Shim Dev. Co.* (*In re Block Shim Dev. Co.*), 118 B.R. 450, 454 (N.D. Tex. 1990).

[5] *Id.*

[6] *L & J Anaheim Assocs. v. Kawasaki Leasing Int'l, Inc.* (*In re L & J Anaheim Assocs.*), 995 F.2d 940, 943 (9th Cir. 1993).

[7] *Id.* at 942-43; *In re Barrington Oaks Gen. P'ship*, 15 B.R. 952, 962-63 (D. Utah 1981).

[8] Plan, p. 21, § III.B.

[9] Plan, p. 13, § 4.7(a); § 4.8(a).

[10] Plan, p. 19, § 7.12 ("Except as otherwise specifically provided for herein, in the Confirmation Order or in any other order of the Bankruptcy Court, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims ... and no holder of a Claim ... shall be entitled to interest accruing on or after the [Petition] Date on any Claim[.]"

17. This poses a problem because the Bankruptcy Code requires the payment of interest on an unimpaired, unsecured claim. The same principal applies to the right under otherwise applicable law to recover attorneys fees incurred in prosecuting claims. As one court in this circuit has recognized, "in order for a creditor 'to be paid the full value of its claims, the Plan must provide for payment of interest for the post-confirmation time-value of the amount of [the] unsecured claim."[11] More recent cases from outside this circuit have agreed. For example, one court has recognized that where "interest on [a] State Court Judgment" is merely "reduced" by a proposed plan, the creditors are impaired and entitled to vote.[12]

18. This makes sense whenever claimants are entitled to recover pre-petition interest and attorneys fees from their obligors, either by contract or state law. Simply put, taking away the creditor's contractual or state-law right to recover interest or attorneys fees alters the legal, equitable, and contractual rights to which such claim entitles the holder of such claim. Therefore, it makes perfect sense for a court to accurately state that "treating a class of creditors being paid [all principle owed to them, without interest] as impaired ... comport[s] with the Bankruptcy Code. . . ."[13]

19. The Bankruptcy Code does not allow a creditor to be classified as "unimpaired" if that creditor is denied interest and the right to recover attorney's fees afforded to it by state law. If the Debtor proposes to discharge, deny or obstruct unsecured creditors' rights to interest and attorneys fees through the Plan, it must classify those creditors as "impaired" and allow them all the rights in the confirmation process that accompanies impaired status.

---

[11] *In re Seasons Apartments, Ltd. P'ship*, 215 B.R. 953, 960 (Bankr. W.D. La. 1997) (citing *In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650 (9th Cir. 1996)).

[12] *In re G.L. Bryan Invs, Inc.*, 340 B.R. 386, 390-91 (Bankr. D. Colo. 2006).

[13] *In re Seasons Apartments, Ltd. P'ship*, 215 B.R. 953, 959 (Bankr. W.D. La. 1997).

### The Plan May Alter Unsecured Creditors' Venue Selection Rights

20. Under the Plan, "[u]pon the Effective Date, all proofs of claim filed against the Debtor ...shall be deemed withdrawn" but this "deemed withdrawal of all proofs of claim is without prejudice to claimants' rights ... to assert their claims in any proper forum as though the Chapter 11 Case had not been commenced[.]"[14] However, the Plan also gives the Debtor and the Purchaser the right "to object to Claims" until "the ninetieth day following the Effective Date or ... such later date as ordered by the Bankruptcy Court."[15] Furthermore, under the Plan, "[t]he Bankruptcy Court shall have exclusive jurisdiction ... (c) [t]o ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan."[16]

21. If, under the Plan, a creditor's filing of litigation in a "proper forum" can be trumped by the Debtor or the proposed purchaser of the Debtor's assets (the "Purchaser") objecting to the creditor's claim, effectively removing the litigation to the Bankruptcy Court, the Plan has altered the creditor's right to choose the forum in which to assert its claim.

22. Furthermore, if the Bankruptcy Court is to have "exclusive jurisdiction" over whatever litigation is necessary to "ensure that distributions are accomplished" under the Plan, any right that creditors may have to "assert their claims in any [other] proper forum" is purely nominal. No other forum has the jurisdiction to hear any claim they may assert.

23. Unless the Plan is read to render the preservation of exclusive jurisdiction for the Bankruptcy Court over "ensure that distributions" as a nullity or is modified to omit from the Plan both that reservation and the claim objection procedures, the Plan will alter the legal, equitable, and contractual rights of creditors and impair their claims.

---

[14] Plan, p. 20, § 8.1.
[15] Plan, p. 20, § 8.2.
[16] Plan, p. 28, § 12.1.

## The Plan Discharges Debtor's Obligations on Claims

24. Under the Plan, the Purchaser would assume the Debtor's obligations on all Class 7 claims.[17] The Plan offers Class 7 creditors this "treatment ... in exchange for and in complete satisfaction, discharge and release of all claims against the Debtor" held by Class 7 claimants.[18] From the effective date of the Plan forward, "claimants shall not be permitted to assert against the Debtor claims that have been assumed by the Purchaser."[19]

25. Swapping the Purchaser's liability on Class 7 claims for the Debtor's does not change the fact that discharging the Debtor alters the legal, equitable, and contractual rights of Class 7 creditors. Before passage of the Bankruptcy Code, the Fifth Circuit held that a creditor's rights were altered because "[t]he substitution of a new debtor, although solvent, is a fundamental alteration of a creditor's rights."[20] Post-Code cases interpreting § 1124 have recognized that *Continental* applied a sufficiently similar statutory standard to impairment under § 1124 for it to settle the issue; a plan that discharges a debtor but offers the credit of a new entity in its place "impairs" creditors' rights.[21]

26. As a result, courts continue to hold that the substitution of a purchaser's credit for that of a debtor results in the impairment of a creditor's claim if the original debtor's obligation is extinguished. In *In re Barrington Oaks General Partnership*, the district court held that changing purchasers on a trust deed resulted in an impairment of the bank's claim because it

---

[17] Plan, p. 13, § 4.7(b).

[18] Plan, p. 25, § 11.3.

[19] Plan, p. 20, § 8.1.

[20] *Continental Ins. Co. v. Louisiana Oil Refining Corp.*, 89 F.2d 333, 336 (5th Cir. 1937).

[21] *See In re Barrington Oaks Gen. P'ship*, 15 B.R. 952, 961 (D. Utah 1981).

"changes obligors and therefore alters rights under the instruments memorializing the loan."[22] In *Bustop Shelters*, the Sixth Circuit noted that a creditor's loan "would be impaired as a matter of law if [the debtor's] obligation to pay the loan was extinguished and a different party substituted to assume the payments."[23]

27. So long as the Plan provides for a discharge of the Debtor's obligations to Class 7 claimants, it alters their legal, equitable, and contractual rights and impairs their claims. If the Debtor proposes to cut off Class 7 creditors' rights against it through the Plan prior to payment of those creditors' claims by the Purchaser, it must classify those creditors as "impaired."

### Adequacy of Reserves to Pay Class 8 Claims

28. The Plan authorizes the Debtor, after the Effective Date, "to distribute the proceeds received by [the Debtor] from the consummation of the transactions contemplated by [the Purchaser's] Asset Purchase Agreement to the holders of Equity Interests ... after making any appropriate reserves for Claims not yet paid[.]"[24] The Plan does not define "appropriate" as used in this context, and the Disclosure Statement does not provide any information about either the scope of Class 8 claims or the amount to be reserved to pay them. Instead, the Disclosure Statement asks the Court to "waive the necessity of filing ... Schedules".[25] This prevents Class 8 creditors from ascertaining the total amount of their claims.

29. Additionally, the Plan authorizes the "Post-Effective Date Debtor [to] operate its business and [to] use, acquire and dispose of property free of any restrictions of the Bankruptcy

---

[22] *Id.* at 956.

[23] *Bustop Shelters of Louisville, Inc. v. Classic Homes, Inc.*, 914 F.2d 810, 814 (6th Cir. 1990) (citing *Barrington Oaks*, 15 B.R. at 956).

[24] Plan, p. 16. § 6.2(d).

[25] Disclosure Statement, p. 17, § II.B.1.

Code, the Bankruptcy Rules, and the Bankruptcy Court."[26] Because there is no limitation on this grant of authorization, it presumably authorizes the Debtor, after the Effective Date, to "dispose of property" though distributions of proceeds to the Equity Holders, "free of any restrictions of … the Bankruptcy Court" in a confirmation order. Accordingly, no Class 8 creditor can determine from either the Plan or the Disclosure Statement whether the Debtor will actually reserve sufficient funds after the Effective Date to pay Class 8 claims in full.

30. It is settled law that all claims are presumptively impaired under § 1124 until and unless a plan proponent meets its burden of proving that the claim is unimpaired.[27] The Debtor cannot meet this burden given the interaction of the Plan sections governing the Debtor's post-Effective Date activities and the lack of information provided by the Debtor concerning the total of Class 8 claims and the amount to be reserved to pay them.

### Modifications to Plan that Would Render Unsecured Claims Unimpaired

31. The problems with the Debtor's plan are not insurmountable. If it chooses to do so, the Debtor can modify the Plan to render unsecured creditors unimpaired.

32. For example, the Debtor can modify Section 7.12 of the Plan to reflect that each claim in Class 7 and 8 will be paid by the Purchaser or the Debtor, respectively, the full amount of its claim including post-petition interest and attorneys fees to the extent it is entitled to such interest and attorneys fees. This simple change would restore to each creditor its full contractual, equitable, or statutory rights and remove the otherwise-resulting impairment of the claim.

33. Similarly, the Plan's venue restriction can be resolved by deleting Sections 8.2 and 12.1(c). This modification would simply give effect to the specific language of Section 8.1

---

[26] Plan, p. 25, § 11.1.

[27] *In re Seasons Apartments, Ltd. P'ship*, 215 B.R. 953, 958 (Bankr. W.D. La. 1997).

of the Plan by allowing Class 7 and 8 creditors to file their lawsuits, as necessary, in "any proper forum as though the Chapter 11 Case had not been commenced[.]"

34. Any impairment of Class 7 claims caused by Sections 8.1 and 11.3 of the Plan could be undone by modifications reflecting that the Debtor will not be discharged from its obligation to Class 7 creditors until the Purchaser satisfies those creditors' claims. As a business reality, this modification would change nothing. The Purchaser would have the same liability and incentive to pay, and creditors would still look to the Purchaser first, regardless of the Debtor's discharge. Unless the Purchaser breaches the Plan by failing to make the required payments, it is unlikely creditors would ever pursue their claims against the Debtor.

35. And the impairment of Class 8 claims caused by Sections 6.2(d) and 11.1 of the Plan could be cured with only small changes:

- defining the term "appropriate" as used in Section 6.2(d) to mean more than the total amount of potential Class 8 claims (including interest); and

- clarifying Section 11.1 so that the post-Effective Date Debtor remains bound by terms of the Plan and any order confirming it.

As long as the Debtor intends to pay Class 8 claims as other portions of the Plan require, these changes should not alter the business realities of the Plan.

B. **INADEQUACY OF THE DISCLOSURE STATEMENT**

36. Bankruptcy Code § 1125 establishes the standard for gauging the adequacy of a disclosure statement. Under § 1125, the information provided by a disclosure statement must be sufficient to allow a typical investor in the relevant class to make an informed decision about the plan. Courts determine whether this threshold is met on a case-by-case basis.[28] Adequate

---

[28] *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988) (stating that "[t]he determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court").

information may depend on the size of the debtor, the plan, and the access by the creditors to outside information.[29]

37. It is indisputable that an impaired class entitled to vote on confirmation of a plan must receive adequate information in the form of disclosures. Because Classes 7 and 8 are impaired, the Disclosure Statement must offer creditors in those classes sufficient information to allow a typical investor in those classes to make an informed decision about the Plan. If the Debtor modifies the Plan to remove the impairments discussed above and makes parallel changes to the Disclosure Statement, the Disclosure Statement would become adequate for this purpose.

38. Even if the Debtor refuses to make the modifications suggested above and the Court accepts, for now, the Debtor's position that Classes 7 and 8 are unimpaired by the Plan, courts generally agree that adequate disclosure is necessary for even nominally unimpaired classes.[30] Those creditors are entitled to evaluate the plan, determine if they agree that they really are unimpaired, object to the plan, and possibly solicit rejections. For example, in *Forrest Hills Associates*, the debtor sought relief from the requirement of a disclosure statement on the basis that all claims were unimpaired. The *Forrest Hills* court held that a disclosure statement was still mandatory:

> A statement that a class is not impaired does not necessarily make it so. A creditor may assert that he is improperly treated as unimpaired.... Such a creditor, in addition to the filing of an objection to confirmation, may wish to solicit rejections to the

---

[29] *See In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988).

[30] *In re Forrest Hills Associates, Ltd.*, 18 B.R. 104 (Bankr. D. Del.1982); *In re Transload and Transport, Inc.*, 61 B.R. 379, 380 (Bankr. M.D. La.1986) (suggesting, but did not deciding, that disclosure would be required, even where all classes were unimpaired). But *see In re Feldman*, 53 B.R. 355, 357-358 (Bankr. N.Y. 1985) (stating that "[i]f the plan's conclusions that Classes ... are unimpaired are correct, no disclosure statement is required for these classes since a disclosure statement is required only for the purpose of soliciting an acceptance or rejection of the plan. Thus, the adequacy of the content of the disclosure statement need not be viewed from the point of view of those classes.") and *In re Union County Wholesale Tobacco & Candy Co., Inc.*, 8 B.R. 442, 443 (Bankr. N.J. 1981) (holding that where no acceptance is solicited or required, no disclosure is necessary).

plan.... If the requirement of a disclosure statement is waived, then a proponent of a plan could deprive an opponent of the plan from soliciting rejections. Such a result flies in the face of the express language of s 1125(b).[31]

39. Accordingly, whether or not any modifications are made to the Plan to address the impairment of unsecured creditors, certain additions must be made to the Disclosure Statement.

### (A) Inaccurate Disclosure Statement Provisions Concerning Impairment

40. The Disclosure Statement repeatedly states that Classes 7 and 8 are unimpaired.[32] As discussed above, this is inaccurate. The Disclosure Statement must be corrected to disclose that Classes 7 and 8 are impaired. Each reference to the allegedly unimpaired status of those classes should be revised to reflect that: (a) the Committee views these classes to be impaired by the Plan; (b) the Committee intends to litigate this impairment at the confirmation hearing for the Plan; and (c) if the Debtor chooses to forego solicitation of support from the unsecured creditors and the Committee prevails, confirmation would be impossible.

### (B) Additional Disclosure Concerning Class 8 Claims and Reserves

41. The Disclosure Statement indicates nothing about the total amount of Class 8 claims or the amount the Debtor will reserve to pay those claims. A Class 8 creditor would need this information in order to make an informed decision concerning what the proposed treatment of its claims actually means. The Disclosure Statement should be revised to include this information.

42. Creditors will also find it difficult to determine feasibility. The Debtor has not filed schedules in this case. The Debtor asserts in the Disclosure Statement that it should be

---

[31] *In re Forrest Hills Assoc.*, 18 B.R. at 104.

[32] Disclosure Statement, Introduction, p. iv and vii; § II.B.4, p. 18; § III. B., p. 22; §§ III. c. 11-12, p. 26; § V.B.1, p. 43.

exempted from the requirement to prepare and file bankruptcy schedules.[33] The Disclosure Statement should disclose, even in general terms, the amount of claims in each class and, of that amount, the amount the Debtor believes to be in dispute.

**(C) Conflicting Provisions Concerning Post-Effective Date Claim Resolution and Payment**

43. The Disclosure Statement indicates that Class 7 claims will be paid by the Purchaser when "due and owing in the ordinary course of business."[34] To the extent any dispute exists concerning those claims, the dispute "will be determined, resolved or adjudicated, as the case may be, in a manner as if the Chapter 11 Case had not been commenced and will survive the Effective Date as if the Chapter 11 Case had not been commenced. . . ."[35]

44. The Disclosure Statement similarly states that Class 8 Claims will be paid by the Debtor when due in the ordinary course of business, as agreed between the parties, or in a manner that leaves unaltered the legal, equitable, and contractual rights" pre-dating bankruptcy.[36] It further states that "[u]pon the Effective Date, all proofs of claim filed against the Debtor, regardless of the time of filing, and including claims filed after the Effective Date, will be deemed withdrawn."[37]

45. Despite the deemed withdrawal, the Disclosure Statement also provides that the Purchaser and Debtor may object to claims in the Bankruptcy Court until "the ninetieth day

---

[33] Disclosure Statement, § II.B.1, p. 17.
[34] Disclosure Statement, § III.C. 11, p. 26.
[35] Disclosure Statement, § III.F. 1, pp. 31-32.
[36] Disclosure Statement, § III.C. 12, p. 26.
[37] Disclosure Statement, § III.F. 1., p. 32.

following the Effective Date, or (ii) such later date as ordered by the Bankruptcy Court."[38] This is inconsistent with the deemed withdrawal provision.

### (D) Post-Assumption Resolution of Contract "Cures"

46. The Disclosure Statement indicates that Class 7 includes "all liabilities under the Purchased Contracts[.]"[39] "Purchased Contracts" is, in turn, defined by the Asset Purchase Agreement in such a way as to include the Debtor's executory contracts.[40]

47. If the Debtor assumes executory contracts, it must "cure[], or provide adequate assurance that [someone] will promptly cure" all defaults under those contracts.[41] However, the Disclosure Statement makes no distinction between "cure" claims and other Class 7 claims. It certainly provides no "assurance" that any cure amounts disputed will be paid "promptly." This seems to suggest that the Debtor will assume and assign executory contracts to the Purchaser at the Effective Date, while the "cure" obligations on those contracts would remain subject to litigation concerning their apparently uncured defaults *after* the Effective Date. This is contrary to case law holding that any "cure" amount not determined at assumption is waived.[42] The Disclosure Statement should clearly indicate when, how and where "cure" disputes will be resolved and when cure claims will be paid.

---

[38] Disclosure Statement, § III.F. 2, p. 32.

[39] Disclosure Statement, § I.E.1.b., p. 13.

[40] APA, § 1.1, p. 12.

[41] 11 U.S.C. §§ 1123(b)(2) and 365(b)(1)(A).

[42] *In re Cellnet Data Sys., Inc.*, 313 B.R. 604, 608 (Bankr. D. Del. 2004) (stating that "[w]hen a bankruptcy court approves the assumption of an executory contract, it necessarily finds that no uncured defaults exist... Thus, 'the nonbankrupt party [to an executory contract] bears [the] burden to assert any defaults prior to the assumption.' Where the nonbankruptcy party has knowledge of facts sufficient to place the party on notice that a 'potential' pre-confirmation breach has occurred, res judicata bars that party from later asserting a claim based upon the pre-petition breach.") (citing *Ga. Port Authority v. Diamond Mfg. Co., Inc. (In re Diamond Mfg. Co., Inc.)*, 164 B.R. 189, 199 (Bankr. S.D. Ga. 1994)).

48. As set out above, the Disclosure Statement indicates nothing about the total amount of Class 7 or Class 8 claims or the amount the Debtor will reserve to pay their claims. The Disclosure Statement should be revised to include this information. Unless and until the Disclosure Statement is revised (to cure these deficiencies and to reflect modifications to the Plan), the Disclosure Statement is inadequate and cannot be approved by the Court at this time.

### (E) Ambiguity in Determining Between Class 7 and Class 8

49. Class 7 and Class 8 creditors may not be able to determine the class to which they actually belong. The language in the Plan, the Disclosure Statement, and the Purchase Agreement concerning the distinctions between Class 7 and Class 8 are confusing and could prevent creditors from making an informed decision. The Disclosure Statement should either be clarified regarding the distinction between the classes, or the Debtor should provide a list of all creditors that fall within either Class 7 or Class 8.

### (F) Purchaser Wherewithal and Missing Schedules in Purchase Agreement

50. The Disclosure Statement contains insufficient information about the wherewithal of the Purchaser for unsecured creditors to make an informed decision about the Plan. Creditors cannot determine the likelihood of a full recovery without information about the Purchaser's ability to pay their claims. Without this information in the Disclosure Statement, and in light of the other concerns expressed in this objection, the Debtor's statements regarding "payment in full" and "100 % recovery" could be misleading or inaccurate.

51. In addition, the Purchase Agreement attached to the Disclosure Statement is missing several important schedules. The Disclosure Statement must be amended by attaching these schedules to the Purchase Agreement so that creditors can make an informed decision about the transaction.

## C. REMAINING ISSUES

52. The three remaining issues on which the Court ordered briefing through the Briefing Order go to the authority and responsibilities of the Debtor's management and the Equity Holders. These issues affect the rights of unsecured creditors indirectly, if at all. In the interest of judicial economy, the Committee will not address these issues in detail in this pleading, except to say the following.[43]

53. It is no surprise that the Committee supports a plan in which unsecured creditors are truly unimpaired and that pays unsecured creditors in full. The transactions proposed by the Plan and Disclosure Statement, with the modifications set out in this objection, do just that. This is not to say that the Committee is unwilling to consider other alternatives. But those alternatives should not in any way jeopardize or unduly delay a recovery in full by unsecured creditors.

## IV. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Committee respectfully asks that the Court deny approval of the Disclosure Statement until and unless the Debtor modifies the Plan and Disclosure Statement as set forth above.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[43] The Committee reserves the right to address these issues at the June 15 hearing, in additional briefing, or at a later date.

DATED: June 11, 2010

          Respectfully submitted,

          K&L GATES LLP

          By: *Jeffrey R. Fine* /JKH by permission
          Jeffrey R. Fine
          Texas State Bar No. 07008410
          jeff.fine@klgates.com
          James H. Billingsley
          Texas State Bar No. 00787084
          james.billingsley@klgates.com
          Daniel I. Morenoff
          Texas State Bar No. 24032760
          dan.morenoff@klgates.com

          1717 Main Street, Suite 2800
          Dallas, Texas 75201
          Telephone: 214-939-5500
          Facsimile: 214-939-5849

          **PROPOSED ATTORNEYS FOR**
          **THE OFFICIAL COMMITTEE OF**
          **UNSECURED CREDITORS**

### CERTIFICATE OF SERVICE

I certify that, on June 11, 2010, the foregoing was served in compliance with the requirements of the Briefing Order.

          *Jeffrey R. Fine* /JKH permission
          Jeffrey R. Fine