Exhibit "A"

# Texas Rangers Baseball Partners

## (A Texas General Partnership)

### Second Amended and Restated
### General Partnership Agreement

---

Dated as of June 2, 1999

---

*PARTNERSHIP INTERESTS ARE SUBJECT TO TRANSFER RESTRICTIONS.*

## Table of Contents

ARTICLE I    DEFINITIONS................................................................................... 2

    1.1    Definitions............................................................................................ 2

    1.2    Number and Gender ............................................................................. 8

ARTICLE II    FORMATION.................................................................................. 8

    2.1    Formation............................................................................................ 8

    2.2    Name .................................................................................................. 8

    2.3    Place of Business ................................................................................. 8

    2.4    Purposes ............................................................................................. 8

    2.5    Compliance with Baseball Rules ......................................................... 8

    2.6    Term ................................................................................................... 9

ARTICLE III    CAPITAL CONTRIBUTIONS, PARTNERSHIP INTEREST AND ADMISSION OF PARTNERS................................................................. 9

    3.1    Capital Contributions.......................................................................... 9

    3.2    Capital Accounts. ............................................................................... 9

    3.3    Additional Partnership Interests........................................................ 10

    3.4    Other Matters Relating to Capital Contributions ............................... 11

    3.5    [Intentionally Omitted.] .................................................................... 12

    3.6    No Deficit Restoration Obligation ..................................................... 12

ARTICLE IV    RIGHTS AND POWERS OF THE MANAGING PARTNER..................... 12

    4.1    Rights and Powers of Managing Partner and Dealings with Baseball................. 12

    4.2    Illustrative Rights and Powers .......................................................... 13

    4.3    Major Decisions ............................................................................... 15

    4.4    Unanimous Decisions ....................................................................... 15

    4.5    Payment of Costs and Expenses ........................................................ 15

    4.6    Activities of Managing Partner......................................................... 16

    4.7    Compensation .................................................................................. 16

    4.8    Exculpation of Certain Partner Liability............................................ 16

    4.9    Tax Matters Partner.......................................................................... 16

    4.10    Other Activities of Partners ............................................................ 17

    4.11    Liability of Partners ........................................................................ 17

ARTICLE V    OTHER PARTNER MATTERS ................................................... 17

    5.1    Power of Attorney............................................................................. 17

| | | |
|---|---|---|
| 5.2 | Death, Bankruptcy, Etc | 18 |
| 5.3 | Encumbrance of Partner's Interest | 18 |
| ARTICLE VI | ALLOCATIONS AND DISTRIBUTIONS | 18 |
| 6.1 | Distributions of Available Cash | 18 |
| 6.2 | Allocations of Income and Loss | 18 |
| 6.3 | Distributions Upon Liquidation of Partnership | 19 |
| 6.4 | Liquidation of Partner's Interest | 20 |
| 6.5 | Additional Tax Allocation Provisions | 20 |
| ARTICLE VII | FISCAL MATTERS | 21 |
| 7.1 | Fiscal Year | 21 |
| 7.2 | Books and Records | 21 |
| 7.3 | Tax Returns | 21 |
| 7.4 | Bank Accounts | 21 |
| 7.5 | Tax Elections | 21 |
| ARTICLE VIII | TRANSFERS | 21 |
| 8.1 | Restriction on Transfers | 22 |
| 8.2 | Transfers Requiring Consent | 22 |
| 8.3 | Transfer Subject to Major League Baseball Consent | 22 |
| ARTICLE IX | RESIGNATION OR REMOVAL OF A MANAGING PARTNER AND DESIGNATION OF A NEW MANAGING PARTNER | 23 |
| 9.1 | Resignation | 23 |
| 9.2 | Removal | 23 |
| 9.3 | Designation of a Successor Managing Partner | 23 |
| ARTICLE X | DISSOLUTION | 23 |
| 10.1 | Dissolution. | 23 |
| 10.2 | Wind-Up of Affairs | 24 |
| ARTICLE XI | INDEMNIFICATION | 24 |
| 11.2 | Indemnification Procedures. | 25 |
| 11.3 | Advance Payment of Expenses | 26 |
| 11.4 | Right of Indemnitee to Bring Suit | 26 |
| 11.5 | Non-Exclusivity of Rights | 27 |
| 11.6 | Insurance | 27 |
| 11.7 | Contribution by Partnership | 27 |

12.1 Loans to the Partnership........................................................................................28
12.2 Amendments ........................................................................................................28
12.3 Benefits of Agreement .........................................................................................28
12.4 Consents...............................................................................................................28
12.5 Other Activities....................................................................................................28
12.6 Waiver of Partition...............................................................................................28
12.7 Notices .................................................................................................................29
12.8 Provisions Severable............................................................................................29
12.9 Counterparts.........................................................................................................29
12.10 Headings ..............................................................................................................29
12.11 Applicable Law ...................................................................................................29
12.12 Entire Agreement.................................................................................................29
12.13 Successors and Assigns........................................................................................29
12.14 References and Gender .........................................................................................29

# SECOND AMENDED AND RESTATED

# GENERAL PARTNERSHIP AGREEMENT

## OF

## TEXAS RANGERS BASEBALL PARTNERS

This Amended and Restated General Partnership Agreement (this "Agreement") of Texas Rangers Baseball Partners (the "Partnership") dated as of the 2nd day of June, 1999 is entered into by and between Southwest Sports Group LLC, a Texas limited liability company ("Southwest Sports") and SSG Partnership Holdings LLC, a Texas limited liability company ("SSG") (Southwest Sports and SSG are hereinafter sometimes collectively referred to as the "Partners").

## WITNESSETH:

WHEREAS, B/R Rangers Associates, Ltd., a Texas limited partnership ("B/R Rangers") and TRBP, Inc., a Texas corporation ("TRBP", and together with B/R Rangers, the "Original Partners"), entered into that certain General Partnership Agreement of Texas Rangers Baseball Partners dated as of January 1, 1995 (as amended to the date hereof, the "Original Partnership Agreement"); and

WHEREAS, pursuant to an Purchase and Sale Agreement dated as of the date hereof (the "Purchase Agreement"), among Hicks, Inc., a Delaware corporation ("Hicks"), Texas Rangers Baseball Club, Inc., a Delaware corporation ('Rangers Inc.") and D/S Real Estate, Inc., a Delaware corporation, as Purchasers (the "Purchasers"), and B/R Rangers, Rangers Ballpark, Inc., a Texas corporation, TRBP, and EDGP, Inc., a Texas corporation, as Sellers (the "Sellers"), (i) the Sellers agreed to sell, transfer and assign to the Purchasers, and the Purchasers agreed to purchase from Sellers, all of the Assets (as defined in Section 1.1 of the Purchase Agreement) and (ii) the Sellers agreed to assign to the Purchasers, and the Purchasers agreed to assume from the Sellers, all of the Assumed Liabilities (as defined in Section 2.1 of the Purchase Agreement; and

WHEREAS, pursuant to the Purchase Agreement, Hicks and Rangers Inc. purchased all of the Partnership Interests of B/R Rangers and TRBP in the Partnership; and

WHEREAS, Hicks has contributed its Partnership Interest to Southwest Sports Holdings LLC, a Texas limited liability company ("Holdings"), which in turn, has contributed such Partnership Interest to Southwest Sports; and

WHEREAS, Rangers Inc. has distributed its Partnership Interest to Hicks, which in turn, has contributed such Partnership Interest to SSG; and

WHEREAS, Southwest Sports and SSG. wish to amend and restate the Amended and Restated Partnership Agreement to recognize the distribution and contribution of the

Partnership Interests of Hicks and Rangers Inc. (Hicks and Rangers Inc. are hereinafter sometimes collectively referred to as the "Prior Partners").

NOW, THEREFORE, intending to be legally bound hereby, the Partners hereby agree as follows:

# ARTICLE I

## DEFINITIONS

1.1     **Definitions.** The following terms shall have the meanings indicated:

"**Act**" means the Texas Revised Partnership Act, as it may be amended from time to time.

"**Additional Partnership Interests**" has the meaning set forth in Section 3.03(b).

"**Additional Partnership Interests Purchase Price**" has the meaning set forth in Section 3.03(d).

"**Affiliate**" means a person, entity or organization, directly or indirectly, through one or more intermediaries, Controlling, Controlled by, or under common Control with the person, entity or organization in question; and a living natural person's spouse, parents, children, grandchildren, brothers, sisters or trusts for the sole benefit of one or more of such persons and/or such natural person.

"**American League**" means the American League of Professional Baseball Clubs.

"**Available Cash**" means, at any time, cash of the Partnership available for distribution to the Partners which is not, in the absolute discretion of the Managing Partner, required or desirable to retain by the Partnership for the financial needs, reserves or contingencies of the Partnership, as the case may be.

"**Baseball Authority**" means the Office of the Commissioner of Baseball, the Commissioner, the American League, the League President, the Ownership Committee of Baseball, and/or the Major League Clubs, as applicable.

"**business of the Partnership**" has the meaning set forth in Section 2.04(b).

"**Capital Account**" has the meaning set forth in Section 3.02.

"**Capital Contribution**" means the cash and the fair market value of property other than cash (net of liabilities which the Partnership assumes or takes the property subject to) contributed to the capital of the Partnership by a Partner.

"**Carrying Value**" means, with respect to any asset of the Partnership, the asset's adjusted basis for federal income tax purposes, except as follows: (i) the initial Carrying Value of an asset contributed by a Partner to the Partnership (including an asset deemed contributed by a Partner to the Partnership as a result of a constructive termination of the Partnership pursuant to Section 708( b)(1)(B) of the Code) shall be the gross fair market value of such asset on the date of contribution, as determined by the contributing Partner and the Partnership; (ii) upon the occurrence of a Revaluation Event the Managing Partner will adjust the Carrying Value of all Partnership assets to equal their respective gross fair market values on such date, as determined by the Managing Partner; and (iii) if the Carrying Value of an asset has been determined pursuant to clause (i) or (ii) above, such Carrying Value shall thereafter be adjusted by the depreciation, cost recovery and amortization attributable to such property assuming the adjusted basis of the property was equal to its Carrying Value pursuant to the methodology described in Treasury Regulation Section 1.704-1(b)(2)(iv)(g)(3).

"**Cause**" means the Managing Partner's (a) habitual neglect of his material duties or failure to perform his material obligations under this Agreement, (b) refusal or failure to follow lawful directives of Baseball Authority, (c) commission of an act of fraud, theft or embezzlement, or (d) conviction of a felony or other crime involving moral turpitude; provided, however, that the Partners other than the Managing Partner shall give the Managing Partner written notice of any actions alleged to constitute Cause under subsections (a) and (b) above, and the Managing Partner shall have a reasonable opportunity to cure any such alleged Cause.

"**Code**" means the Internal Revenue Code of 1986, as amended from time to time.

"**Contingent Obligation**" means as to any Partner, any obligation of such Partner specifically guaranteeing or intended to specifically guarantee any obligation of the Partnership in any manner, whether directly or indirectly, including, without limitation, any obligation of such Partner, whether or not contingent, (i) to purchase any such obligation or any property constituting direct or indirect security therefor, (ii) to advance or supply funds (x) for the purchase or payment of any such obligation or (y) to maintain working capital or equity capital of the Partnership or otherwise to maintain the net worth or solvency of the Partnership, (iii) to purchase property, securities or services primarily for the purpose of assuring the owner of any such obligation of the ability of

the Partnership to make payment of such obligation or (iv) otherwise to assure or hold harmless the holder of such obligation against loss in respect thereof; provided, however, that the term Contingent Obligation shall not include endorsements of instruments for deposit or collection in the ordinary course of business. The amount of any Contingent Obligation shall be deemed to be an amount equal to the stated or determinable amount of the obligation in respect of which such Contingent Obligation is made (or, if the less, the maximum amount of such obligation for which such Partner may be liable pursuant to the terms of the instrument evidencing such Contingent Obligation) or, if not stated or determinable, the maximum reasonably anticipated liability in respect thereof (assuming such Partner is required to perform thereunder) as determined by such Partner in good faith.

"**Contribution Value**" means the gross fair market value of property contributed by a Partner to the Partnership (net of liabilities secured by such contributed property that the Partnership is treated as assuming or taking subject to pursuant to the provisions of Section 752 of the Code), as determined by the Managing Partner.

"**Control**" means, with respect to an entity that is a corporation, the right to exercise, directly or indirectly, whether by ownership of securities or by contract, more than 66-2/3% of the voting rights attributable to the shares of such corporation and, with respect to a person or organization that is not a corporation, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of such person or organization.

"**Deductible Expenses**" of the Partnership for any taxable year or other period shall mean all items (as calculated for book purposes) which are allowable as deductions under federal income tax accounting principles.

"**Disproportionate Capital Contribution**" means, as to any Partner, the amount by which Capital Contributions made by such Partner are greater than the Capital Contributions that would have been made if each of the Partners had made Capital Contributions in direct proportion to their Partnership Interests.

"**Distribution Value**" means the gross fair market value of property distributed to a Partner by the Partnership (net of liabilities secured by such distributed property that such Partner is treated as assuming or taking subject to pursuant to the provisions of Section 752 of the Code), as determined by the Managing Partner.

"**Gross Income**" of the Partnership for any period shall mean the gross income of the Partnership, as determined for federal income tax purposes, derived from all sources.

"**Hicks**" has the meaning set forth in the recitals hereto.

"**Holdings**" has the meaning set forth in the recitals hereto.

"**Liquidating Event**" means the sale or exchange of all or substantially all of the assets of the Partnership, or other transaction which, individually or together with any similar transaction or transactions, results in the disposition of all or substantially all of the assets of the Partnership or occurs in the course of liquidation of the Partnership or upon and with respect to which event the Partnership is dissolved and wound up and all payments, including payments on any promissory notes, have been received.

"**Major Capital Event**" means an event (other than a Liquidating Event) arising other than in the ordinary course of the Partnership's business, including, without limitation, (i) the sale of less than substantially all of the assets of the Partnership; (ii) the recovery of damage awards or settlements or insurance proceeds relating to the assets of the Partnership; and (iii) a borrowing or refinancing for which the Partnership or its assets are liable and which involves a principal amount in excess of $1,000,000, all or a portion of the proceeds of which will be used to make distributions to the Partners. The designation by the Managing Partner of an event as a Major Capital Event shall be binding upon the Partners and the Partnership absent manifest error.

"**Major Decision**" has the meaning set forth in Section 4.03.

"**Major League Agreement**" means the Major League Agreement by and between the American League and each of its members and the National League of Professional Baseball Clubs and each of its members.

"**Major League Baseball**" means the Office of the Commissioner of Baseball, the Commissioner of Baseball (or, in the case of a vacancy in the Office of the Commissioner of Baseball, the Executive Council or such other body or person as shall be designated in the Major League Agreement to exercise the powers and duties of the Commissioner of Baseball during such vacancy), the American League, and the National League of Professional Baseball Clubs and/or their respective clubs, as the context requires.

"**Majority in Interest**" means Partners owning Partnership Interests comprising more than fifty percent (50%) of the Percentage Interests.

"**Managing Partner**" means SSG Partnership Holdings LLC and any successor Managing Partner designated pursuant to this Agreement.

"**National League**" means the National League of Professional Baseball Clubs.

"**Net Income**" or "**Net Loss**" for each taxable year or other period shall mean the difference between (i) the Gross Income of the Partnership (other than Gross Income specially allocated under Section 6.05) and (ii) the Deductible Expenses of the Partnership (other than any Deductible Expenses specially allocated under Section 6.05).

"**Operations**" means all activities of the Partnership not constituting a Major Capital Event or a Liquidating Event.

"**Original Partners**" has the meaning set forth in the recitals hereto.

"**Partner Signature Page**" means a counterpart signature page to this Agreement in the form of Exhibit B hereto, (i) the execution of which evidences the executing party's acceptance and adoption of all the provisions of this Agreement and agreement to assume and be bound by the duties and obligations of a Partner under the provisions of this Agreement, and (ii) the form and substance of which is hereby deemed satisfactory for purposes of admitting an individual or entity as a Partner, notwithstanding any other provision to the contrary contained herein.

"**Partners**" means Southwest Sports, SSG., and any other persons or entities admitted as partners to the Partnership. "**Partner**" means any one of the Partners.

"**Person**" means any individual, partnership, joint venture, firm, corporation, association, trust or other enterprise or any government or political subdivision or any agency, department or instrumentality thereof.

"**Partnership**" means the partnership created and existing pursuant hereto.

"**Partnership Agreement**" has the meaning set forth in the introductory paragraph hereto.

"**Partnership Interest**" means the ownership interest of a Partner in the Partnership.

"**Percentage Interest**" means the percentage set forth opposite each Partner's name on Exhibit A-2 attached hereto.

"**Prior Partners**" has the meaning set forth in the recitals hereto.

"**Rangers Inc.**" has the meaning set forth in the recitals hereto.

"**Representative**" means a person serving as a partner, director, officer, venturer, proprietor (including any stockholder so serving), trustee, employee, or agent of an enterprise or serving a similar function for an enterprise.

"**Revaluation Event**" means (i) the acquisition of an additional interest in the Partnership (other than upon formation of the Partnership) by any new or existing Partner in exchange for more than a *de minimis* contribution; (ii) the liquidation of the Partnership or a distribution by the Partnership to a Partner of more than a *de minimis* amount of Partnership property to a retiring or continuing Partner as consideration for an interest in the Partnership; and (iii) the termination of the Partnership for federal income tax purposes pursuant to Section 708(b)(1)(B) of the Code.

"**Section 705(a)(2)(B) Expenditures**" means (i) an expenditure described in Section 705(a)(2)(B) of the Code; (ii) an expenditure described in Section 709 of the Code and the Treasury Regulations promulgated thereunder as organization and syndication costs except for amounts with respect to which an election is properly made under Section 709(b) of the Code; and (iii) a deduction for a loss incurred in connection with the sale or exchange of any Partnership assets that is disallowed to the Partnership under Section 267(a)(1) or Section 707(b) of the Code.

"**Southwest Sports**" has the meaning set forth in the introductory paragraph hereto.

"**SSG**" has the meaning set forth in the introductory paragraph hereto.

"**Texas Rangers**" means the professional baseball team in the American League known as the "Texas Rangers".

"**TMP**" has the meaning set forth in Section 4.09.

"**TOH**" means Thomas O. Hicks.

"**Treasury Regulations**" means the Income Tax Regulations promulgated under the Code, as amended from time to time.

"**Transfer**" means the sale, transfer, conveyance, assignment, pledge, hypothecation, mortgage or other encumbrance or disposition of all or any part of a Partnership Interest.

"**Unanimous Decision**" has the meaning set forth in Section 4.04.

**1.2    Number and Gender.**  Whenever the context requires, references in this Agreement to the singular number include the plural, and the plural number include the singular, and words denoting gender include the masculine, feminine and neuter.

## ARTICLE II

## FORMATION

**2.1    Formation.**  The Partnership was heretofore formed by the Original Partners pursuant to the Original Partnership Agreement.  The Partners hereby continue the Partnership as a general partnership pursuant to the provisions of the Act and in accordance with the further terms and conditions hereof.  The rights and liabilities of the Partners shall be, except as otherwise expressly provided herein, as provided in the Act.

**2.2    Name.**  The business of the Partnership shall be conducted under the name "Texas Rangers Baseball Partners" or such other name as may from time to time be selected by the Partners.

**2.3    Place of Business.**  The principal place of business of the Partnership shall be 1000 Ballpark Way, Suite 400, Arlington, Texas 76011 or such other place as the Partners shall determine.  The books and records of the Partnership shall be maintained at the Partnership's principal place of business.

**2.4    Purposes.**  The purposes of the Partnership are:

(a)    to acquire, own, develop, exploit, manage, operate, dispose of and otherwise deal with the Texas Rangers and/or a direct or indirect ownership interest therein; and

(b)    to do all other acts and things necessary, incidental or convenient to carry on the Partnership affairs as contemplated under this Agreement (collectively, the "business of the Partnership").

**2.5    Compliance with Baseball Rules.**  Notwithstanding anything to the contrary contained in any part of this Agreement: (i) any sale, transfer, assignment, gift or bequest, grant of a security interest, pledge or other encumbrance of any interest in the Partnership, any Partner or the Texas Rangers (including, without limitation, any Control Interest (as defined in the Major League Agreement)), any change in the identity of the Managing Partner, any change in the identity or control of any Partner, including any change in the identity of the Chief Executive Officer of the Managing Partner, and any admission of a new Partner, any issuance of additional interests in the Partnership, or any amendment to this Agreement shall be subject to and made in accordance with the Major League Agreement, the Constitution of the American League, the Major League Rules and any other rules, guidelines, regulations, or requirements of the applicable Baseball Authority, all as the same now exist or may be amended or adopted in the future; (ii) any such sale, transfer, assignment, gift or bequest, grant of a security interest, pledge, encumbrance, change, admission, issuance or amendment that requires the consent of any Baseball Authority is prohibited and shall be null and void unless all applicable consents

are obtained in advance; and (iii) any such consent may be withheld at the sole and absolute discretion of any applicable Baseball Authority.

**2.6** **Term.** The Partnership shall continue until terminated pursuant to Section 10.01.

## ARTICLE III

### CAPITAL CONTRIBUTIONS, PARTNERSHIP INTEREST AND ADMISSION OF PARTNERS

**3.1** **Capital Contributions.** Each of the Original Partners contributed to the Partnership the property listed opposite its name on Exhibit A-1 attached hereto. The Original Partners transferred one hundred percent (100%) of their Partnership Interests to the Prior Partners. Such Partnership Interests have been contributed to the Partners and the Partnership Interest currently held by each Partner is set forth on Exhibit A-2 attached hereto.

**3.2** **Capital Accounts.**

(a) The Partnership shall maintain a separate capital account (each, a "Capital Account") for each Partner pursuant to the principles of this Section 3.02 and Treasury Regulation Section 1.704-1(b)(2)(iv). Such Capital Account shall be increased by (i) the amount of cash and the Contribution Value of any property other than cash contributed by the Partner (or its predecessor in interest) to the Partnership; and (ii) such Partner's allocable share of Partnership income or gain (or item thereof), including income and gain exempt from tax. Such Capital Account shall be decreased by (i) the amount of cash and the Distribution Value of any property distributed to the Partner by the Partnership; (ii) such Partner's allocable share of Partnership loss or deduction (or item thereof) other than Section 705(a)(2)(B) Expenditures; and (iii) such Partner's allocable share of Partnership Section 705(a)(2)(B) Expenditures.

(b) For purposes of computing the amount of each item of income, gain, deduction or loss to be reflected in each Partner's Capital Account pursuant to Section 3.02(a), the determination, recognition and classification of each item shall be the same as its determination, recognition and classification for federal income tax purposes, provided that (i) any income, gain or loss attributable to the taxable disposition of any property (including a deemed taxable disposition in connection with the maintenance of Capital Accounts pursuant to Section 3.02) shall be computed by the Partnership as if the adjusted basis of such property as of the date of disposition were equal in amount to the Partnership's Carrying Value with respect to such property as of such date; and (ii) any deductions for depreciation, cost recovery or amortization shall be determined as if the adjusted basis of such property was equal to the Carrying Value of the property pursuant to the methodology described in Treasury Regulation Section 1.704-1(b)(2)(iv)(g)(3).

(c)     Upon a Revaluation Event, the Capital Accounts of all Partners shall be adjusted upwards or downwards simultaneously to reflect the aggregate net adjustment as if the Partnership sold the Partnership property immediately before the Revaluation Event and the Partnership recapitalized gain or loss equal to the amount of such aggregate net adjustment.

(d)     Immediately prior to the distribution of any Partnership property other than cash, whether or not in connection with a liquidation of the Partnership, the Capital Accounts of the Partners shall be adjusted upwards or downwards to reflect the manner in which the unrealized income, gain, loss and deduction inherent in such property that has not been reflected in the Capital Accounts would be allocated among the Partners if there were a taxable disposition of such property for the gross fair market value of such property.

(e)     The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulation Section 1.704-1(b), and shall be interpreted and applied in a manner consistent with such Treasury Regulations. In the event the Managing Partner shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto, are computed in order to comply with the Treasury Regulations, the Managing Partner may make such modifications. Because each Partner's Capital Account is adjusted by the fair market value of property distributed from the Partnership, the Managing Partner shall adjust the amounts debited or credited to the Capital Accounts with respect to any property distributed to the Partners in the event the Managing Partner shall determine such adjustments are necessary or appropriate.

### 3.3     Additional Partnership Interests.

(a)     If the Managing Partner determines in its absolute discretion that it is in the best interest of the Partnership to raise additional capital, then the Managing Partner may in its absolute discretion, and is hereby granted all requisite authority to, raise additional capital for the Partnership by issuing additional Partnership Interests pursuant to the terms of this Section 3.03.

(b)     If the Managing Partner determines to issue additional Partnership Interests (the "Additional Partnership Interests") in accordance with the provisions of Section 3.03(a), then prior to offering the Additional Partnership Interests to any third party, the Managing Partner shall first offer the Additional Partnership Interests to the Partners in writing in accordance with the procedures set forth in Exhibit C attached to and made a part of this Agreement, and if after offering the Additional Partnership Interests to the Partners, any such Additional Partnership Interests remain unpurchased, the Managing Partner shall for so long as Hicks remains a Partner, prior to offering the remaining Additional Partnership Interests to any third party, offer the Additional Partnership Interests to TOH in accordance with the procedures set forth in Exhibit C attached to and made a part of this Agreement (references in Exhibit C to the Partners, the Partnership and

Partnership Interests shall in connection with any such offer to TOH, be deemed to be references to TOH).

(c)     Any Additional Partnership Interest not purchased by the Partners or TOH under <u>Section 3.03(b)</u> above may, if the Managing Partner so elects in its absolute discretion, be offered and sold to third parties upon terms not substantially different from the terms, and for a price that is not less than the Additional Partnership Interest Purchase Price (as defined in <u>Section 3.03(d)</u> below), offered to the Partners or TOH under <u>Section 3.03(b)</u> above.  The Managing Partner shall determine whether to refuse to admit any such third party to the Partnership and such determination shall be conclusive and binding upon the Partnership and the Partners.  Each third party offeree that the Managing Partner determines to admit as a Partner shall become a Partner and be reflected as such on the records of the Partnership and on any amended form of <u>Exhibit A-2</u> hereto at such time as such individual or entity (i) pays the Partnership an amount of cash equal to a pro rata portion of the Additional Partnership Interest Purchase Price based upon the Additional Partnership Interests to be acquired by such third party, (ii) executes and delivers to the Managing Partner a Partner Signature Page, and (iii) performs or satisfies such other conditions as the Managing Partner may in its absolute discretion deem appropriate.

(d)     The "Additional Partnership Interest Purchase Price" and the Percentage Interest to be assigned to Additional Partnership Interests shall each be based on fair market value of the Additional Partnership Interests, as determined by the Managing Partner on the date of its decision to issue Additional Partnership Interests on the basis of its determination of the fair market value of the assets of the Partnership and the Percentage Interests of the Partners.

## 3.4     <u>Other Matters Relating to Capital Contributions.</u>

(a)     Loans by a Partner to the Partnership shall not be considered Capital Contributions.

(b)     No Partner shall be entitled to withdraw, or to obtain a return of, any part of his Capital Contributions to the Partnership, or to receive Partnership property or assets other than cash in return thereof, and no Partner shall be liable to any other Partner for a return of his Capital Contributions to the Partnership, but shall look solely to distributions from the Partnership as provided in <u>Article VI</u> of this Agreement.

(c)     No Partner shall be entitled to priority over any other Partner, either with respect to a return of his Capital Contributions to the Partnership, or to allocations of taxable income, gains, losses or credits, or to distributions, except as provided in this Agreement.

(d)     Except as expressly provided herein, no interest shall be paid on any Partner's Capital Contribution.

(e)     No Partner shall be entitled to interest on its Capital Contribution or its Capital Account. Any interest actually received by reason of temporary investment of any part of the Partnership's funds shall be included in the Partnership's funds.

**3.5     [Intentionally Omitted.]**

**3.6     No Deficit Restoration Obligation.** No Partner with a deficit balance in its Capital Account shall have any obligation to the Partnership or any other Partner to restore said deficit balance. In addition, no partner or other equity owner of any Partner shall have any liability to the Partnership or to any Partner for any deficit balance in such partner's or equity owner's capital account in the Partner in which it is a partner or equity owner. Furthermore, a deficit Capital Account of a Partner (or of a partner or other equity owner of a Partner) shall not be deemed to be a liability of such Partner (or of such equity owner or Partner) or an asset or property of the Partnership (or any Partner). The Partners shall look solely to the assets of the Partnership for the return of their contributions, and if the funds remaining after the payment or discharge of the debts and liabilities of the Partnership pursuant to Section 6.03(a)(i) hereof are insufficient to return such contributions, the Partners shall have no recourse against any of the other Partners hereunder for that purpose.

## ARTICLE IV

## RIGHTS AND POWERS OF THE MANAGING PARTNER

**4.1     Rights and Powers of Managing Partner and Dealings with Baseball.**

(a)     The Chief Executive Officer of the Managing Partner (the "CEO") shall have sole power and authority to control the business of the Partnership, and, except as otherwise expressly provided in this Agreement, shall possess all rights, powers and authority generally conferred by applicable law or necessary, advisable, appropriate, incidental or consistent in connection therewith, including, without limitation, the authority and power to perform all acts and enter into and perform all contracts and other undertakings that the CEO may, in the exercise of his discretion, deem necessary, advisable, appropriate, incidental or consistent in connection therewith  The CEO shall be authorized to act on behalf of the Partnership on matters relating to the business of the Partnership, including without limitation, all baseball matters and at meetings of the American League and any other body of Major League Baseball as may be required or necessary in connection with the Partnership's activities as Managing Partner of the holder of the Texas Rangers Major League Baseball Club franchise.  Notwithstanding anything to the contrary contained herein, any replacement of the CEO shall be made in accordance with the terms and provisions of (i) the Membership Agreement by and among the American League, members of the American League, the Partnership and other parties thereto, (ii) the Constitution of the American League, (iii) the Rules of the American League, (iv) the Major League Agreement by and among the American League, the National League, the

members of the American League and the members of the National League, (v) the Major League Rules, and (vi) the bulletins, policies and directives of the American League President, the Commissioner of Baseball and the Ownership Committee of Major League Baseball (each as the same may now exist or as they may be amended or adopted from time to time).

(b) Notwithstanding the foregoing or any other provisions to the contrary contained in this Agreement, the CEO is specifically authorized to delegate certain of his management power, responsibility and duties in accordance with the Bylaws of the Managing Partner; provided, however, that (i) the CEO shall obtain the consent of the applicable Baseball Authority to the selection of any person to whom such powers, responsibilities and duties are delegated, and the designation of any replacement thereof to represent the Texas Rangers and the Partnership in dealings with the American League and Major League Baseball, and (ii) notwithstanding anything to the contrary contained herein, the CEO shall be ultimately responsible for all such dealings with the applicable Baseball Authority, the American League and Major League Baseball.

4.2 **Illustrative Rights and Powers.** In addition to any other rights and powers that it may possess by law, and subject to obtaining any necessary approvals of an applicable Baseball Authority, the CEO or his designee shall have all the specific rights and powers required or appropriate for the conduct of the business of the Partnership, including without limitation, all rights and powers relating to the operation and management of the Partnership which, by way of illustration, but not by way of limitation, shall include the rights and powers, subject to the provisions of Sections 4.03 and 4.04, to act or cause the Partnership to act:

(a) except as otherwise specifically provided herein, to make any expenditures and to incur any obligations it considers necessary or desirable for the conduct of the activities and business of the Partnership;

(b) to negotiate and execute on behalf of the Partnership any contracts under such terms and obligations as it in its absolute discretion considers necessary, appropriate or desirable for the conduct of Partnership operations, the implementation of its powers or the accomplishment of the Partnership's objectives under this Agreement;

(c) to perform all obligations of the Partnership and to enforce all rights of the Partnership under the terms and conditions of contracts and agreements entered into by the Partnership;

(d) to coordinate all accounting and clerical functions of the Partnership and employ and compensate and dismiss from employment such employees, agents, independent contractors, brokers, attorneys and accountants as the Managing Partner may from time to time in its absolute discretion deem desirable to carry on the business of the Partnership;

(e)     to acquire, hold, dispose, mortgage, pledge, encumber, hypothecate or exchange any of the assets of the Partnership;

(f)     to use any of the assets of the Partnership, (including without limitation cash on hand) for any purpose or on any terms the Managing Partner in its absolute discretion deems desirable in furtherance of the Partnership's objectives;

(g)     to acquire and maintain insurance covering the Partnership and/or assets of the Partnership;

(h)     to control any matters affecting the rights and obligations of the Partnership, including the conduct of litigation and other incurring of legal expense, and to settle claims and litigation and to submit disputes to arbitration;

(i)     ·to distribute Partnership cash pursuant to the terms hereof;

(j)     to form or cause the Partnership to enter into limited or general partnerships, joint ventures, trusts, corporations or other relationships the Managing Partner in its absolute discretion deems desirable in furtherance of the Partnership's objectives;

(k)     to do all acts and things which it in its absolute discretion deems desirable to accomplish the objectives of the Partnership;

(l)     to apply for and obtain governmental approvals or certificates with respect to Partnership operations or the ownership or use of its properties or assets;

(m)     to open and maintain bank accounts on behalf of the Partnership;

(n)     upon (i) the submission by the Managing Partner to the Partners of an agreement of merger or consolidation that proposes to merge or consolidate the Partnership with one or more limited partnerships (the "Merger Agreement"), and (ii) the subsequent approval of the Merger Agreement by a Majority in Interest of the Partners, to execute, deliver and carry out the terms of such Merger Agreement on behalf of the Partnership on terms substantially similar to those submitted to the Partners;

(o)     in addition to the right and power to borrow money on behalf of the Partnership, to refinance debt obligations related in any way to the assets of the Partnership, and to repay, in whole or in part, refinance, modify, consolidate or extend debt obligations of the Partnership, including, without limitation, pursuant to the terms of (i) that certain Credit Agreement dated as of even date herewith, among the Partnership, as Borrower, the Lenders party thereto, NationsBank, N.A., as Syndication Agent, and Chase Bank of Texas, National Association, as Administrative Agent, as Issuing Lender, and as Swingline Lender, as the same may be amended, supplemented or modified from time to

time, which loans are secured in the aggregate by substantially all of the assets of the Partnership, and which borrowings and the security therefor are hereby authorized and approved, and (ii) that certain guaranty dated as of even date herewith, by the Partnership of the $12,000,000 loan from NationsBank of Texas, N.A. to Arlington Sports Facilities Development Authority, Inc., which guaranty is hereby authorized and approved; and

(p)     to execute, acknowledge, deliver, file and record instruments or documents affecting the foregoing.

**4.3     Major Decisions.** All Major Decisions with respect to the Partnership's business shall require the approval of the Managing Partner and Partners owning Partnership Interests comprising at least fifty-one percent (51%) of the Percentage Interests.     Accordingly, notwithstanding anything to the contrary contained in this Agreement, no Partner, including a Managing Partner, has the right or the power to make any Major Decision on behalf of the Partnership unless and until it has been authorized in accordance with the preceding two sentences. The term "Major Decision" as used in this Agreement means any decision with respect to the following matters:

(a)     the sale or disposition of all or substantially all of the Partnership's assets, or the Texas Rangers; and

(b)     moving the Texas Rangers outside of the Dallas/Fort Worth Metroplex.

**4.4     Unanimous Decisions.** All Unanimous Decisions with respect to the Partnership's business shall require the approval of all of the Partners. Accordingly, notwithstanding anything to the contrary contained in this Agreement, no Partner, including a Managing Partner, has the right or power to make any Unanimous Decision on behalf of the Partnership until it has been authorized by all Partners. The term "Unanimous Decision" as used in this Agreement, means any decision with respect to the following matters:

(a)     any financing or refinancing (whether interim, permanent or otherwise) for which under its terms TOH may be personally liable; and

(b)     any loan from the Partnership to a Partner or its Affiliates.

**4.5     Payment of Costs and Expenses.** The Partnership shall be responsible for paying all costs and expenses of continuing and maintaining the Partnership, and of owning, operating and holding the Texas Rangers and the other Partnership assets, or an indirect ownership interest therein, and conducting the business of the Partnership, including, without limitation, costs of utilities, furniture, fixtures, equipment and supplies, insurance premiums, property taxes, advertising expenses, accounting costs, legal expenses and costs of office supplies. If any such costs and expenses are or have been paid by the Managing Partner or any of its Affiliates on behalf of the Partnership, then the Managing Partner (or its Affiliates) shall be entitled to be reimbursed for such

payment as long as such costs or expenses were reasonably necessary and reasonable in amount.

**4.6    Activities of Managing Partner.** The Managing Partner shall be required (i) to devote only such time to the performance of its duties and obligations hereunder as it, in its absolute discretion, determines to be necessary or advisable; and (ii) to discharge its duties as Managing Partner in accordance with the provisions of this Agreement and in good faith and in a manner that is reasonably believed to be in the best interest of the Partnership or the Partners. The Managing Partner shall be entitled to deal with Hicks and TOH and any of its or their Affiliates in the performance of its duties and obligations under this Agreement, as long as all terms and conditions of such dealings are not more onerous than, or different from, the prevailing market terms, conditions and prices available from non-affiliated third parties.

**4.7    Compensation.** Except as otherwise expressly provided herein or in connection with services provided to the Texas Rangers, the Managing Partner and its Affiliates shall not be entitled to receive any compensation from the Partnership. The Managing Partner shall give notice to the other Partners of any compensation paid by the Partnership to the Managing Partner or its Affiliates. This Section 4.07 does not in any way limit the Managing Partner's rights to reimbursement pursuant to Section 4.05.

**4.8    Exculpation of Certain Partner Liability.** Notwithstanding any other provision to the contrary contained in this Agreement, no Partner, nor any representative of a Partner (each, a "Representative") shall be liable, responsible, or accountable in damages or otherwise to the Partnership or any other Partner or their Representatives, for any loss, damage, cost, liability or expense incurred by reason of or caused by any act or omission performed or omitted by such Partner or Representative whether based upon or arising from errors in judgment or breach of duty (including breach of any duty of care or duty of loyalty) as a Partner or Representative thereof, unless such Partner shall be guilty of (i) willful or intentional misconduct in the performance of such Partner's duties to the Partnership or the other Partners hereunder, or (ii) such Partner's having improperly received personal benefit or (iii) such Partner's failing to conduct itself with good faith and fairness in its dealing with the Partnership or the Partners. Without limiting the foregoing, no Partner, nor any Representative of a Partner, shall in any event be liable for (i) the failure to take any action not specifically required to be taken by the Partner under the terms of this Agreement, (ii) by reason of any action or omission based upon the advice of legal counsel or otherwise undertaken in good faith or in a manner reasonably believed by such person to be either in or not opposed to the Partnership's best interest, or (iii) for any misconduct or negligence on the part of any agents appointed by such person in good faith.

**4.9    Tax Matters Partner.** The Managing Partner shall be designated the Tax Matters Partner (the "TMP") as defined in Section 6231(a)(7) of the Code. The TMP shall comply with the requirements of Sections 6221 through 6232 of the Code and the Treasury Regulations promulgated thereunder.

**4.10** __Other Activities of Partners__. This Agreement shall not preclude or limit, in any respect, the right of any Partner or any Affiliate thereof to engage or invest, directly or indirectly, in any business, venture, or other activity of any nature or description, including those that may be the same as or similar to the Partnership's business and in direct competition therewith, or to invest in the same business, venture or other activity as that in which the Partnership has invested, and the Partner or such Affiliate shall have no obligation to offer any such business, venture or other activity to the Partnership. Neither the Partnership nor any Partner shall have any right, by virtue of this Agreement or the partnership relationship created hereby, in such investments or to such other business, venture or other activities.

**4.11** __Liability of Partners__. Each Partner shall be personally liable for the debts and obligations of the Partnership except as otherwise provided in the documents creating such debts or obligations; provided, however, that all such debts and obligations shall be paid or discharged first with the assets of the Partnership (including insurance proceeds) before any Partner shall be obligated to pay or discharge any such debt or obligation with their personal assets.

## ARTICLE V

## OTHER PARTNER MATTERS

**5.1** __Power of Attorney__.

(a) Each Partner hereby irrevocably appoints and constitutes the Managing Partner as its true and lawful attorney-in-fact, with full power and authority, on its behalf and in its name, to execute, acknowledge, swear to, deliver and, where appropriate, file in such offices and places as may be required by law:

(i) any amendment to this Agreement required in order to conform with the requirements of the Code, the Treasury Regulations, the Act or other developments in the law, by a change in the name of the Partnership, the withdrawal of any Managing Partner, or the admission of any party to the Partnership as a Managing Partner, if such admission is in compliance with the applicable provisions hereof;

(ii) any amendment to this Agreement, the Exhibits to this Agreement required in order to reflect the admission to the Partnership of a new Partner or new Partners as a result of the issuance by the Partnership of Additional Partnership Interests pursuant to the provisions of Section 3.03 of the Agreement, a transfer of a Partnership Interest or a change in any Partner's Percentage Interest in accordance with the provisions of this Agreement; and

(iii) any amendment to this Agreement upon compliance with Section 12.02.

(b)     The power of attorney granted by the Partners to the Managing Partner under Section 5.01(a) above is a special power coupled with an interest and is irrevocable, and may be exercised by any party who at the time of exercise is a Managing Partner of the Partnership. Such power of attorney shall survive the death or legal disability of a Partner and any transfer or abandonment of his Partnership Interest, or his withdrawal from the Partnership.

**5.2     Death, Bankruptcy, Etc.** Except as otherwise required by law, in no event shall the death, incompetency, bankruptcy, insolvency or other incapacity of a Partner operate to dissolve the Partnership.

**5.3     Encumbrance of Partner's Interest.** Subject to the provisions of Section 2.05 of this Agreement, any Partner may pledge, mortgage, hypothecate or otherwise encumber his Partnership Interest for any purpose whatsoever as long as such pledge, mortgage, hypothecation or other encumbrance shall in no manner entitle any assignee or successor Partner, in this regard either before or after foreclosure, to (a) admission as a substituted Partner, or (b) any right to vote on any Partnership matters.

## ARTICLE VI

## ALLOCATIONS AND DISTRIBUTIONS

**6.1     Distributions of Available Cash.** The Managing Partner shall distribute quarterly Available Cash from Operations or from Major Capital Events when such Available Cash is available for distribution. Any Available Cash shall be distributed to the Partners in accordance with their Percentage Interests on the date of distribution.

**6.2     Allocations of Income and Loss.**

(a)     Profits. Each item of Net Income shall be allocated as follows:

(i)     first, to the Partners to the extent of Net Losses previously allocated to such Partners pursuant to Section 6.02(b)(ii);

(ii)     second, to the Partners to the extent of Net Losses previously allocated to such Partners the extent of Disproportionate Capital Contributions pursuant to Section 6.02(b)(iii); and

(iii)     third, to the Partners in the ratio of their Percentage Interests.

(b)     Losses. Each item of Net Loss shall be allocated among the Partners in the following manner:

(i)     first, to the Partners to the extent of Net Profits previously allocated to such Partners pursuant to Section 6.02(a)(iii);

(ii)    second, to the Partners to the extent of Contingent Obligations allocable to such Partners;

(iii)    third, to the Partners to the extent of such Partners' Disproportionate Capital Contributions; and

(iv)    fourth, to the Partners in the ratio of their Percentage Interests.

## 6.3    Distributions Upon Liquidation of Partnership.

(a)    Upon liquidation (as defined in Section 6.03(c) hereof) of the Partnership, the assets of the Partnership shall be distributed no later than the later of ninety (90) days after the date of such liquidation or the end of the Partnership's taxable year in which the liquidation occurs and shall be applied in the following order of priority:

(i)    first, to the payment of debts and liabilities of the Partnership (including amounts owed to Partners or former Partners);

(ii)    next, subject to Treasury Regulations Section 1.704-1(b)(2)(ii)(b), to set up any reserves which the Managing Partner deems reasonably necessary for contingent or unforeseen liabilities or obligations of the Partnership arising out of or in connection with the business of the Partnership; and

(iii)    thereafter, after all Capital Account adjustments for the Partnership's taxable year in which the liquidation occurs (including without limitation adjustments required under Treasury Regulations Section 1.704-1(b)(2)(iv)(e) relating to distributions in-kind, to the Partners in accordance with their positive Capital Account balances.

(b)    If a transfer of an interest in the Partnership results in a termination of the Partnership for federal income tax purposes under Section 708(b)(1)(B) of the Code, Section 6.03(a) hereof shall not apply and a Partner's portion of the constructive liquidating distribution of the Partnership's assets that is deemed to occur under Treasury Regulations Section 1.708-1(b)(i)iv) shall be determined in accordance with the Capital Accounts of the Partners as determined after taking into account all Capital Account adjustments for the Partnership's taxable year ending on the date of such termination.

(c)    For purposes of this Section 6.03, a liquidation of the Partnership shall occur upon the earlier of:

(i)    the date on which the Partnership is terminated under Section 708(b)(1)(A) of the Code;

(ii)     the date upon which the Partnership is terminated under Article X hereof; and

(iii)    the date upon which a Liquidating Event occurs (and all payments, including payments on any promissory notes, have been received).

**6.4      Liquidation of Partner's Interest.** If a Partner's Partnership Interest is to be liquidated, liquidating distributions shall be made in accordance with the positive Capital Account balance of such Partner, as determined after taking into account all Capital Account adjustments for the Partnership's taxable year during which such liquidation occurs, by the end of the taxable year, or if later, within ninety (90) days after the date of such liquidation.   For purposes of this Section 6.04, a liquidation of a Partner's Partnership Interest means the termination of the Partner's entire Partnership Interest.   Where a Partner's Partnership Interest is to be liquidated by a series of distributions, such Partner's Partnership Interest shall not be considered as liquidated until the final distribution has been made.

**6.5      Additional Tax Allocation Provisions.**

(a)      Notwithstanding anything to the contrary contained in this Agreement, and as stated in Treasury Regulations Section 1.704-1(b)(4)(i), when any property of the Partnership is reflected in the Capital Accounts of the Partners and on the books of the Partnership at a book value that differs from the adjusted tax basis of such property, then certain book items with respect to such property will differ from certain tax items with respect to that property. Since the Capital Accounts of the Partners are required to be adjusted solely for allocation of the book items, the Partners' shares of the corresponding tax items are not independently reflected by adjustments to the Capital Accounts.   Accordingly, items of income, gain, loss and deduction for tax purposes with respect to property, other than cash contributed to the Partnership by a Partner or with respect to an adjustment of the Partners' Capital Accounts to reflect a revaluation of the property of the Partnership, shall be allocated among the Partners so as to take into account the variation between the basis of the contributed property to the Partnership and its fair market value at the time of contribution or, in the case of a revaluation of the property of the Partnership, so as to take into account the adjustments to the Partners' Capital Accounts as provided in Section 704(c) of the Code   and   regulations   thereunder   and   Treasury   Regulations   Sections 1.704-1(b)(2)(iv)(f) and 1.704-1(b)(2)(iv)(g).

(b)      As between a Partner who has transferred all or part of its Partnership Interest and its transferee, all items of income, gain, deduction and loss, for any year shall be apportioned on the basis of the number of days in each such year that each was the holder of such interest (making adjustments necessary to comply with the provisions of Section 706(d)(2) of the Code), without regard to the results of the Partnership's operations during the period before and after the date of such transfer, provided that if both the transferor and transferee consent

thereto a special closing of the books shall be had as of the effective date of such transfer and the apportionment of items of income and gain, and deduction and loss, shall be made on the basis of actual operating results. Notwithstanding the above, gain or loss resulting from a Major Capital Event or a Liquidating Event shall be allocated only to those persons who are Partners as of the date on which such transaction is consummated.

(c)     Depreciation recapture shall, to the extent possible, be allocated to those Partners to whom the corresponding depreciation deductions were allocated.

(d)     Notwithstanding anything to the contrary that may be expressed or implied in this Agreement (other than allocations required pursuant to Section 704(b) or Section 704(c) of the Code), the interest of TRBP in each item of income, gain, loss, deduction and credit will not be less than one percent (1%) of each such item at all times during the existence of the Partnership.

## ARTICLE VII

## FISCAL MATTERS

**7.1     Fiscal Year.** The fiscal year of the Partnership shall be the calendar year.

**7.2     Books and Records.** The Managing Partner shall keep, or cause to be kept, at the expense of the Partnership, full and accurate books and records of all transactions of the Partnership in accordance with generally accepted accounting principles, consistently applied except as otherwise required by generally accepted accounting principles. All of such books and records shall, at all times, be maintained at the principal place of business of the Partnership, and the Partners and their respective designated agents shall have the right to inspect and copy any of them, at their own expense, during normal business hours.

**7.3     Tax Returns.** The Managing Partner shall cause to be prepared and delivered to the Partners, at the expense of the Partnership, all federal and any required state and local income tax returns for the Partnership for the preceding fiscal year.

**7.4     Bank Accounts.** The Managing Partner, in the name of the Partnership, shall open and maintain a special bank account or accounts in a bank or savings and loan association, the deposits of which are insured by an agency of the United States government, in which shall be deposited all funds of the Partnership. There shall be no commingling of the property and assets of the Partnership with the property and assets of any other party.

**7.5     Tax Elections.** The Managing Partner shall be entitled to determine all federal income tax elections available to the Partnership.

## ARTICLE VIII

## TRANSFERS

**8.1** **Restriction on Transfers.** Except as otherwise provided in this Article VIII, no Partner may Transfer a Partnership Interest, in whole or in part, without the written consent of the Managing Partner in its sole discretion. Notwithstanding the terms of this Article VIII, no transferee of any Partnership Interest of a Partner shall be admitted as a substitute Partner without the prior written consent of the Managing Partner, which consent may be granted or withheld in the Managing Partner's absolute discretion. No transferee of the Partnership Interest of a Managing Partner shall be designated as a successor Managing Partner except as provided in Section 9.03.

**8.2** **Transfers Requiring Consent.** Subject in each case to the terms and conditions of Section 2.05 hereof, the following dispositions of a Partnership Interest shall require the consent stated below:

(a) No Transfer of any Partnership Interest in whole or in part will be permitted if it would cause the termination of the Partnership for federal income tax purposes or cause the Partnership to be taxed other than as a partnership, unless Partners owning Partnership Interests comprising at least fifty-one percent (51%) of the Percentage Interests agree in writing to such a disposition.

(b) No Partnership Interest shall be Transferred in whole or in part to a minor or an incompetent without the prior written consent of all Partners.

(c) No Transfer of any Partnership Interest shall be permitted without the prior written consent of the Managing Partner, if such Transfer requires the consent of a lender of the Partnership or of any governmental authority.

(d) No Transfer of any Partnership Interest shall be permitted so long as such Partner is in breach of any of its obligations under this Agreement.

(e) Unless waived in whole or in part by the Managing Partner in its absolute discretion, no sale or exchange of a Partnership Interest may be made unless the transferee of such Partnership Interest provides the Partnership the following:

(i) a written representation of such transferee that he or it is acquiring the Partnership Interest for his or its own account for investment and not with a view to distribution and such other representations and warranties as the Managing Partner may require in its absolute discretion to ensure compliance with applicable federal and state securities laws; and

(ii) payment of such reasonable expenses as may be incurred by the Partnership in connection with such transferee's admission as a Partner.

**8.3** **Transfer Subject to Major League Baseball Consent.** Notwithstanding anything to the contrary contained in this Agreement, no Partner may transfer any interest in the Partnership except in accordance with the provisions of Section 2.05 of this Agreement.

least two (2) Partners and the Majority in Interest of such remaining Partners agree in writing within ninety (90) days from the date of such occurrence that the Partnership be so continued.

**10.2 Wind-Up of Affairs.** As expeditiously as possible following the occurrence of an event giving rise to a liquidation or winding up of the Partnership, the Managing Partner (or a special liquidator who may be appointed by a Majority in Interest of Partners if the termination or winding up results from the circumstance described in Section 10.01(a)(iv) above with respect to a Managing Partner) shall wind-up the affairs of the Partnership, sell its property and asset for cash at the highest price reasonably obtainable and distribute the proceeds, or distribute the assets of the Partnership in-kind, in accordance with Section 6.03 of this Agreement in liquidation of the Partnership. In no event shall there be a distribution of the property and assets of the Partnership in-kind, unless a Majority in Interest of the Partners approve such distribution.

## ARTICLE XI

## INDEMNIFICATION

### 11.1 Rights to Indemnification of Partners and Representatives.

(a)     The Partnership shall, to the fullest extent authorized or permitted by the Act as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent such amendment permits the Partnership to provide broader indemnification rights than permitted prior thereto), indemnify and hold harmless each Partner and any Representative of a Partner (whether such Partner or Representative is acting as a Managing Partner or serving at the request of the Partnership as the Representative of another enterprise; any such Partner, or Representative being referred to herein as "Indemnitee"), against any and all expenses, liability and loss (including attorneys' fees, judgments, fines, losses and expenses under the Employee Retirement Income Security Act of 1974, as amended, or other excise taxes or penalties, and amounts paid in settlement) reasonably incurred or suffered by such person in connection with, or if such person is, was, or is threatened to be made a defendant or respondent in, a threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, arbitrative, or investigative, any appeal in such action, suit or proceeding and any inquiry or investigation that could lead to such an action, suit or proceeding (hereinafter a "Proceeding"), by reason of the fact that such person was or is a Partner or Representative thereof. The rights created by this Article XI shall continue as to an indemnitee who has ceased to be a Partner or Representative thereof and shall inure to the benefit of an Indemnitee's heirs, executors and administrators.

(b)     Without limiting any other provisions of this Article XI, the Partnership shall pay or reimburse, and indemnify and hold harmless any Partner and its Representatives against, expenses incurred by such person in connection with his appearances as a witness or other participation in a Proceeding involving

or affecting the Partnership at a time when such Partner or its Representative is not a named defendant or respondent in the Proceeding.

(c)     Without limiting any other provisions of this Article XI, the provisions hereof shall for all applicable purposes of the Act make mandatory any indemnification now or hereafter permitted or deemed permitted by the Act and shall constitute authorization of such indemnification to the fullest extent that authorization may be required for such indemnification permitted thereby. Notwithstanding any other provision of this Article IX, any on hereunder shall be provided out of and to the extent of Partnership assets only, and no Partner (or Representative thereof) shall have personal liability on account thereof.

## 11.2   Indemnification Procedures.

(a)     Any person seeking indemnification pursuant to Section 11.01 (including any Advancement of Expenses (as defined in Section 11.03)) shall be entitled to the procedures of this Section 11.02 for indemnification.

(b)     To claim indemnification under this Article XI, Indemnitee shall submit to the Partnership a written request for indemnification, including therein or therewith (or affirming that there will be made available to the Partnership) such documentation and information as reasonably available to Indemnitee and as the Partnership may reasonably request to support such claims and enable the Partnership to make or cause to be made the determinations hereinafter provided for. If at the time of receipt of such request, the Partnership has in effect or is entitled to claim reimbursement for such request under any policy of insurance covering such claim, the Partnership shall thereafter take proper action to cause such insurers to accept coverage and thereafter shall take all necessary action to cause such insurers to pay such claim to or on behalf of Indemnitee.

(c)     Upon any written request under subsection (a) above by an Indemnitee for indemnification, if a determination is required by the Act (either (i) with respect to whether indemnification is permissible under the Act or (ii) as to the reasonableness of expenses for which indemnification is requested), then in such event the Partnership shall proceed further (A) to notify Indemnitee of such requirement (unless Indemnitee's request shall confirm such fact), and (B) to make or cause to be made the determinations required by the Act. Indemnitee and the Partnership shall cooperate with each other and the person or entity making such determination, including providing upon reasonable advance request such information which is not privileged or otherwise protected from disclosure and which is reasonably necessary to such determination.

(d)     Any "special legal counsel" selected to make any determination required under the Act shall be a law firm, or member of a law firm, experienced in matters of corporation and partnership law and which neither presently is, nor in the past five (5) years has been, retained to represent the Partnership, Indemnitee or any other party to the Proceeding giving rise to the claim for

indemnification, and shall not include any person who, under prevailing applicable standards of professional conduct, would have a conflict of interest with Indemnitee or the Partnership or any other party to the Proceeding. Any determination required by the Act, if Indemnitee has so requested, (i) shall be made by special legal counsel reasonably satisfactory to Indemnitee, and (ii) in the case of determination of reasonableness of expenses, to the extent permitted by the Act, shall be determined by an independent, major national or international accounting firm which otherwise satisfies the requirements of this subsection (d).

(e)    Notwithstanding the foregoing, no Indemnitee shall be indemnified and held harmless unless (i) it is determined in accordance with the Act that the Indemnitee (A) acted in good faith, (B) reasonably believed that its conduct was in the best interests of the Partnership or at least not opposed to the best interests of the Partnership and (C) in the case of a criminal Proceeding, had no cause to believe that its conduct was unlawful, and (ii). Indemnitee's conduct did not constitute negligent or intentional misconduct. The termination of any Proceeding by judgment, order, settlement, conviction or on a plea of *nolo contendere* or its equivalent shall not alone determine that Indemnitee did not meet the requirements set forth in the preceding sentence.

(f)    An Indemnitee shall not be denied indemnification in whole or in part under this Section 11.02 solely on the grounds that it had an interest in the transaction with respect to which the indemnification applies, if the transaction is one otherwise permitted to be carried out by the terms of this Agreement.

(g)    Except as provided in Section 11.05 of this Agreement, the indemnification provided in this Article XI is solely for the benefit of Indemnitees and shall not give rise to any right to indemnification in favor of any other persons.

**11.3    Advance Payment of Expenses**. The rights to indemnification conferred in this Article XI shall include the right to be paid by the Partnership the expenses incurred in defending any Proceeding in advance of its final disposition (an "Advancement of Expenses").

**11.4    Right of Indemnitee to Bring Suit.**

(a)    If a claim under Section 11.01 of this Agreement is not paid in full by the Partnership within sixty (60) days after a written claim has been received by the Partnership, except in the case of a claim for an Advancement of Expenses, in which case the applicable period shall be twenty (20) days, an Indemnitee may at any time thereafter bring suit against the Partnership to recover the unpaid amount of the claim. If successful in whole or in part in any such suit, or in a suit brought by the Partnership to recover an Advancement of Expenses, Indemnitee (or its Representative) shall also be entitled to be paid the expense of prosecuting or defending such suit.

finally judicially determined to be unavailable, the Partnership shall contribute to the payment of any and all expenses, liability and loss (including attorneys' fees, judgments, fines, ERISA or other excise taxes or penalties, and amounts paid in settlement) in such proportion as is appropriate to reflect the relative fault of the Partnership and the Indemnitee with respect to such expenses, liability and loss.

## ARTICLE XII

## MISCELLANEOUS

**12.1    Loans to the Partnership.** Any Partner (the "Lending Partner") may lend funds to the Partnership on such terms as may be deemed reasonable by the Managing Partner.

**12.2    Amendments.** Subject in each case to obtaining the approvals of the Office of the Commissioner of Baseball and the American League President, and in addition to the right of the Managing Partner to amend certain of the provisions of this Agreement by reason of the power of attorney granted to the Managing Partner under Section 5.01, Partners owning Partnership Interests comprising at least fifty-one percent (51%) of the Percentage Interests may, by instrument in writing, amend any of the other provisions hereof, except for those provisions that affect Sections 3.03 and 12.02 and Articles IV, VI and VIII, which provisions may be amended only upon the written consent of Partners owning seventy-five percent (75%) of the Percentage Interests. The unanimous consent of the Partners shall be required to amend Article XI this Agreement.

**12.3    Benefits of Agreement.** Except as provided in the second sentence of this Section 12.03, nothing in this Agreement, expressed or implied, is intended or shall be construed to give to any creditor of the Partnership, to any creditor of any Partner or any person Controlling any Partner or to any other person or entity whatsoever, any legal or equitable right, remedy or claim under or in respect of this Agreement or any covenant, condition or provisions herein contained, and such provisions are and shall be held to be for the sole and exclusive benefit of the Partners, the persons Controlling the Partners (other than creditors of such persons) and the Partnership, subject to the provisions of Articles VIII and XI of this Agreement.

**12.4    Consents.** No action requiring the consent of approval of any Partners under the provisions of this Agreement may be taken unless the written consent or approval of the requisite number of Partners is obtained.

**12.5    Other Activities.** Any Partner may engage or possess an interest in other business ventures of any nature and description, independently or with others and neither the Partnership nor any of the other Partners shall have the right by virtue of this Agreement in and to such other ventures or to the income or property derived therefrom.

**12.6    Waiver of Partition.** Each Partner hereby irrevocably waives any and all rights that it may have to maintain an action for partition of any of the Partnership's property.

**12.7** **Notices.** All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed to have been duly given if hand delivered or mailed, first class registered mail or certified mail, postage prepaid, or sent by telex or telecopy if to the Partners, at the addresses set forth on the signature pages hereof, and if to the Partnership, at the address of the Managing Partner. Notices mailed in accordance with the foregoing shall be deemed to have been given and made three days following the date so mailed and notices sent by telex or telecopy shall be deemed to have been given and made when received.

**12.8** **Provisions Severable.** Every provision of this Agreement is intended to be severable and, if any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity of the remainder of this Agreement.

**12.9** **Counterparts.** This Agreement, and any amendments hereto, may be executed in counterparts, each of which shall be deemed an original, and such counterparts shall constitute but one and the same instrument.

**12.10** **Headings.** The headings of the various sections of this Agreement are intended solely for convenience of reference, and shall not be deemed or construed to explain, modify or place any construction upon the provisions hereof.

**12.11** **Applicable Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

**12.12** **Entire Agreement.** This Agreement constitutes the entire agreement among the Partners with respect to the subject matter hereof, and supersedes any prior agreement or understanding among them with respect to such subject matter.

**12.13** **Successors and Assigns.** Except as otherwise specifically provided, this Agreement shall be binding upon and inure to the benefit of the Partners and their respective successors and assigns. The parties hereto expressly acknowledge and agree that there are no third-party beneficiaries of this Agreement, and that no party shall be entitled to rely on the terms or provisions of this Agreement without the express prior written consent of the Managing Partner.

**12.14** **References and Gender.** All references to "Articles" and "Sections" contained herein are, unless specifically indicated otherwise, references to articles, sections, subsections, and paragraphs of this Agreement. Whenever herein the singular number is used, the same shall include the plural where appropriate (and vice versa), and words of any gender shall include each other gender where appropriate.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, the undersigned Partners have executed this Amended and Restated General Partnership Agreement to be effective for all purposes as of the date above first written.

SOUTHWEST SPORTS GROUP LLC,
a Texas limited liability company

By: Joseph B. Armes,
Name: Executive Vice President,
Title: General Counsel and Secretary

200 Crescent Court, Suite 1600
Dallas, Texas 75201
Attention: Thomas O. Hicks

SSG PARTNERSHIP HOLDINGS LLC,
a Texas limited liability company

By: Joseph B. Armes,
Name: Executive Vice President,
Title: General Counsel and Secretary

200 Crescent Court, Suite 1600
Dallas, Texas 75201
Attention: Thomas O. Hicks

IN WITNESS WHEREOF, the undersigned Prior Partners have joined herein as of the date above first written for the sole purpose of (i) consenting to this Second Amended and Restated General Partnership Agreement, and (ii) acknowledging (a) the distribution and contribution of one hundred percent (100%) of the Partnership Interest of the Prior Partners, (b) that the Partnership is continuing with the Partners as the General Partners, (c) that the Prior Partners have no further interest in the Partnership, and (d) that the Prior Partners have no further rights to consent to any actions or activities of the Partnership pursuant to the Partnership Agreement or otherwise to participate in any manner in the Partnership.

HICKS, Inc., a Delaware corporation

By: Joseph B. Armes,
Name: Executive Vice President,
Title: General Counsel and Secretary

TEXAS RANGERS BASEBALL CLUB,
INC., a Delaware corporation

By: _____
Name: Joseph B. Armes
Title: Executive Vice President,
General Counsel and Secretary

**Exhibit A-1**

**to the**

**Second Amended and Restated
General Partnership Agreement**

**of**

**Texas Rangers Baseball Partners**

| Name of Original Partner | Description of Capital Contribution | Percentage Interest |
|---|---|---|
| B/R Rangers Associates, Ltd., an Original Partner (as succeeded to by Hicks, Inc.) | All right, title and interest in the Texas Rangers and substantially all assets related thereto | 99% |
| TRBP, Inc., an Original Partner (as succeeded to by Texas Rangers Baseball Club, Inc.) | $333,711 note receivable payable from B/R to Rangers Ballpark, Inc., which has been endorsed and assigned to TRBP, Inc. | 1% |
| Total | | 100% |

## Exhibit A-2

### to the

### Second Amended and Restated
### General Partnership Agreement

### of

### Texas Rangers Baseball Partners

| Name of Partner | Percentage Interest |
|---|---|
| Southwest Sports Group LLC | 99% |
| SSG Partnership Holdings LLC. | 1% |
| Total | 100% |

## EXHIBIT B

### PARTNER SIGNATURE PAGE

The undersigned hereby accepts and adopts all the provisions of the Amended and Restated General Partnership Agreement of Texas Rangers Baseball Partners, and agrees to assume and be bound by the duties and obligations of a Partner thereunder.

PARTNER

_____
Type or Print Full Name of Partner

_____
Signature of Partner

_____
Type or Print Address of Partner

_____
Social Security or Tax Identification Number

## EXHIBIT C

If the Managing Partner determines to issue Additional Partnership Interests in accordance with the provisions of <u>Section 3.03</u>, then prior to offering the Additional Partnership Interests to any third party, the Managing Partner shall offer such Additional Partnership Interests to the Partners in writing. The Partners shall have the right for ten (10) days following the receipt of such offer in writing to purchase all or any portion of such Additional Partnership Interests for a purchase price equal to the Additional Partnership Interests Purchase Price. Each Partner that elects to purchase Additional Partnership Interests shall be entitled to purchase, for a *pro rata* portion of the Additional Partnership Interests Purchase Price, a portion of the Additional Partnership Interests equal to the Additional Partnership Interests multiplied by a fraction, the numerator of which shall be the Partnership Interest of such Partner, and the denominator of which shall be the sum of the Partnership Interests of all the Partners electing to purchase Additional Partnership Interests. To the extent a Partner does not elect to purchase all the Additional Partnership Interests to which such Partner is entitled, then other Partners may purchase such excess Additional Partnership Interests in the same proportion that each such other Partner's Partnership Interest bears to the aggregate Partnership Interests of all the other Partners that elect to purchase such excess Additional Partnership Interests.