# EXHIBIT B

**1/16/10 Email from G. West, to R. Wicks et al., Latham & Watkins, and R. Walden et al., JP Morgan Chase Bank, N.A.**

# [REDACTED]

**From:** West, Glenn [gdwest@weil.com]
**Sent:** Friday, March 12, 2010 6:46 PM
**To:** Leblanc, Andrew
**Subject:** FW: Project Homerun - Status Update; Strictly Confidential (CRITICAL THAT NO BIDDER SEE THIS)

status update after we missed Jan. 15 deadline set by MLB

U.S. Internal Revenue Service (IRS) Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

\*   \*   \*

Glenn D. West
Weil, Gotshal & Manges LLP
Dallas Direct: 214.746.7780
NY Direct: 212.310.8033
Dallas Fax: 214.746.7777
NY Fax: 212.310.6717
Cellular: 214.215.4813
email: gdwest@weil.com

**From:** West, Glenn
**Sent:** Saturday, January 16, 2010 11:50 AM
**To:** Ronan.Wicks@lw.com; David.Teh@lw.com
**Cc:** Robert.Kao@lw.com; Sarah.Mullin@lw.com; Brown, Brandye; Price Brown, Mandisa; Thorstad, Brett; richard.walden@jpmorgan.com; kcofsky@pwpartners.com; mkramer@pwpartners.com; naomi.c.hung@jpmorgan.com; John.McDonagh@chase.com; mcauz@mgbd.com; Casey Coffman; Thomas Hicks; sheldon.stein@baml.com; Brandon W. Gardner
**Subject:** Project Homerun - Status Update; Strictly Confidential (CRITICAL THAT NO BIDDER SEE THIS)

We are now past the January 15th deadline imposed by MLB and we have significant unresolved issues on the Greenberg APA, although both sides have worked very hard to get it done. The efforts on the Greenberg side have been very cooperative and collaborative since they arrived here last Sunday; and there has been no lack of effort by either side. But, despite all efforts, the gap between the economics on the Greenberg proposal and the Crane proposal remain very wide. It is unlikely we can recommend that we proceed forward with Greenberg based on where we are with their proposal and assuming we can proceed forward with Crane. It is not clear to me that any additional amount of time is going to further narrow the gap between Greenberg and Crane. And we are quite worried that if we don't move to Crane immediately we will lose them completely since they are very unhappy we have been negotiating with Greenberg and letting the Crane's proposal be, in their words, a "stalking horse." Just to update you:

1. Greenberg is still at _____ cash (before payment of overdraft facility, MLB support, advisor fees and closing costs), which is down from the original bid of : _____ . with a $30 million escrow/cap (which is fortunately lower than the original request of $75 million) to cover post closing indemnification claims. But they have significantly increased the risk that the escrow would be actually used to cover these claims by eliminating materiality as a standard for determining whether reps have been breached.

2. They have now requested a full week of diligence after signing, with a complete walk right, which effectively allows a renegotiation after we are committed to their deal. In fairness, this request results from the significant additional documents their expanded representations required to be listed on the schedules and the fact that

many of these documents have only been identified and uploaded to the data room in the last few days. I understand their theoretical concerns, but it contrasts with the Crane approach whereby they understand they are buying a business, not assets.

3. Greenberg still has no equity commitments and they have asked for 3 weeks to get committed equity for 90% of their equity needs and 4 weeks to get to 95%, and effectively through closing to get to 100%. This is very troubling and raises serious issues about whether they are still shopping this deal and all we are really dealing with is a promoter. This cannot be good for baseball or the lenders if we sign a deal and the buyer we commit to whiffs on fund raising.

4. They continue to have a full debt financing out all the way to closing with no remedy for the seller if they can't deliver. There is no date by which they are promising a debt commitment at all.

5. They now have added an offset concept that allows them to lower the price after signing the APA based on title issues related to the ball park.

6. Based on Greenberg's proposal they will have an effective option all the way through to closing because the only remedy we have if they deliberately fail to close, even if all conditions are satisfied, is an aggregate $1.5 million termination fee, guaranteed by several different purported investors (as yet unidentified) in amounts that they have yet to provide. Again, they can't even identify someone to stand behind a $1.5 million termination fee if they can't deliver on their equity at closing.

In contrast, the Crane proposal could be ready to sign in less than a day and it delivers at least                    at closing (before the same deducts as Greenberg's proposal), with a                    escrow/cap for indemnification claims, and a                    termination payable to the lenders for Crane failing to close if all conditions have been fulfilled. And Jim Crane has agreed to personally guarantee that                    termination fee. Crane also has fully committed equity and has agreed to deliver fully committed debt letters (and pay nonrefundable commitment fees to lenders) within 15 days of signing. Crane thus is at least  $13 million and perhaps more than $20 million ahead of Greenberg with a lot more certainty of closing, assuming of course that he can get MLB approval.

We have provided all of the above facts to MLB. We are awaiting word on how to proceed.

U.S. Internal Revenue Service (IRS) Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

*   *   *

Glenn D. West
Weil, Gotshal & Manges LLP
Dallas Direct:  214.746.7780
NY Direct:  212.310.8033
Dallas Fax:  214.746.7777
NY Fax:  212.310.6717
Cellular:  214.215.4813
email: gdwest@weil.com

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the

intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you.