# EXHIBIT D

**1/10/10 Letter from J. Crane to B. DuPuy**

# [REDACTED]



January 18, 2010

Mr. Robert A. DuPuy
Office of Baseball Commissioner
Major League Baseball
245 Park Avenue
New York, NY 10167

Dear Bob:

I am sorry that we did not have an opportunity to speak this past week but I understand how hectic your schedule has been. I am writing to reiterate my desire to be an owner of an MLB team on terms acceptable to the Commissioner and the other owners and to communicate directly certain changes I am prepared to make to our offer to facilitate that result.

As you know, for over a year I have pursued my goal of owning the Texas Rangers. During this process I have worked diligently to prepare a proposal that I thought would be attractive to Major League Baseball, Tom Hicks, HSG's lenders and the fans of the Rangers.

I began this process by committing a substantial amount of my personal equity. To ensure that the Rangers will have strong and stable ownership for years to come, I supplemented my personal equity commitments with large commitments from a small group of local investors that will form a collegial, loyal and cohesive ownership group with a shared vision for excellence and prudence. Our group joined together early because of our shared goals. We were not cobbled together on the fly by a banker and we have stayed together notwithstanding the challenges of the process. The magnitude of our equity commitments and the net worth of our group ensures that we can promptly (and unassailably) make all necessary payments due at closing and thereafter run a first class baseball operation that will make sound judgments based solely on the merits and not on the exigencies presented by a strained and uncertain capital structure.

Although I greatly value the support of my partners, I want there to be no mistake about the driver of our offer. This is my bid. My name and reputation are on it. I have real equity and sweat equity behind it. As a result, from the start of this process, and to my apparent detriment, I have not made any promise or offered any term that I cannot deliver. Further, I have complied with all of the bid rules promulgated by MLB and Tom Hicks, including with respect to the timing and certainty of our equity commitments, the firmness of our offer and the desire for low debt levels. I also have sought and followed your advice on any number of matters.

I understand that Tom has still not reached a definitive agreement with any other bidders and that both MLB and Tom are open to structures different than the one we had most recently proposed. With that in mind, I am prepared to offer an enhanced proposal that will substantially increase

Phone:    713-568-1251      4409 Montrose, Suite 200
Fax:      713-524-4409      Houston, Texas 77006

both the enterprise value for the team and the net cash proceeds that would be received by HSG's lenders. The key points of my revised proposal are as follows:

We will increase our "Initial Purchase Price" for the team by                          HSG's lenders will receive the full benefit of this increase, as they would realize an additional             in net cash proceeds at closing. I have attached a draft closing statement that lays out my proposal for the team in more detail.

Tom will be welcomed as a partner in our group with a modest ownership stake. We also will lease certain parking facilities and surrounding land from one of Tom's entities for a payment at closing of $5m and 14 annual payments of $5 million from the net proceeds of parking for events at Cowboys Stadium. At the end of that period we would have the right to acquire such properties for nominal consideration.

We are determined to close swiftly, ideally by March 1. My equity is fully committed and my debt financing is being arranged by JPMorgan Chase and Bank of America. Further, as you are undoubtedly aware, we have worked intensely with Tom and his advisors to complete substantially all terms of the definitive agreements and we believe that, within hours of acceptance of this modified proposal, all documents can be revised and signed.

All parties involved, including Tom Hicks, the lenders, Major League Baseball and the Rangers' fans, will have a high degree of certainty regarding the closing given the assurances surrounding our funding, the level of finality we have achieved on definitive documents and the consistency of our actions in the process. In addition, I am personally guaranteeing a               termination payment that would become due if we fail to close.

Given the financial issues facing the team, the certainty and swiftness of closing that appear to be available only from our group provides enormous benefits to all constituents. If the closing were delayed until after the start of the season the team would need substantial cash from an outside source, such as MLB or the lenders. Any party providing such cash would expect to be repaid out of the first proceeds of the sale. Accordingly, with every passing month the amount available to the lenders will decline by millions of dollars. When added to the loss of interest on their capital during this default period, the prospect of a significantly lower recovery to the lenders due to a delayed closing could impair their interests and ultimately have an adverse effect on team operations.

Because of the importance of high quality baseball management to the success of team operations, I want to confirm yet again that it is my intention to ask Nolan Ryan to remain in his current position. I have enormous respect for his acumen as a baseball man, his legacy in the game and his contributions to the Rangers.

Bob, I trust that these terms indicate the strength of our proposal and my personal commitment.

I am available at your convenience and will gladly travel to New York or Milwaukee to have the opportunity to discuss this proposal with you and the Commissioner. I would also be happy to speak with the representatives of the lenders if they have any questions or concerns about this offer.

I appreciate your time and consideration, and look forward to speaking with you.

Sincerely,

James R. Crane

cc: Tom Hicks

**Texas Baseball Partners LLC - Closing Statement Team**      **ESTIMATED**
**(assumes March 1 close)**

**Aggregate Consideration**      See notes Tab Proforma BS

**less**

**Deduction Balances ( pursuant to Section 3.4(b) (a)-(l))**
(a) MLB League-Wide Facility - principal, interest, fees & expenses
    (including termination value of ISDA)      See BS      Kellie confirmed
(b) Gross aggregate amount of deferred compensation owed to present
    *and former players, whether or not payable* **less current portion**      See Def Gross Comp sheet      Kellie confirmed
(c) Long term portion of unearned revenue under the Telecast Rights
    Agreement      See Crane Bid Sheet      Kellie confirmed
(d) NPV of current and long term portion of Ballpark lease payments      See Crane Bid Sheet      Kellie confirmed
(e) NPV of the settlement reserve obligation payable under Settlement
    Agreement      See Crane Bid Sheet      Kellie confirmed
(f) Concessions Agreement Payment (no further adjustment
    includes both LT portion of unearned revenue and termination)      Per contract negotiated
(g) NPV of Player Scholarship Obligation Liability      See Crane Bid Sheet      Kellie confirmed
(h) Suite sales tax audit liability for 2004-2008 (no further adjustment)      See Crane Bid Sheet      Kellie confirmed
**Total Deduction Balances**

**plus or minus**

**Closing Working Capital Balance Deficit/Excess (pursuant to Section 3.4 (b)**
(I) Net Working Capital
    (x) total GAAP current assets of company and Subs (including cash)
        (current assets shall not include receivables from any Seller or seller Affiliate)      Kellie confirmed - see BS

    less

    (y) total GAAP current liabilities of Company and Subs
        (current liabilities shall not include any amounts in Deduction Balances,
        any amounts payable to Seller or seller Affiliates (not assumed or paid) and any amounts
        representing current portion of Senior Indebtedness otherwise paid
        under Section 3.2)      Kellie confirmed - see BS
**Net Working Capital**

**minus**

**Purchaser Costs (pursuant to Sections 8.4(C), 8.9 or 11.1 and Section 3.4)**
    All fees associated with filings required by the HSR Act or any other Antitrust Laws      Estimate
    MLB Filing Fees      Estimate
    Sales, use and transfer or other similar taxes & title policy      Estimate

**Initial Purchase Price**

**Payment of Purchase Price**

(i) Payoff Baseball Finance Note      Seller confirm

(ii) Payoff Overdraft Protection Advance from Hicks      Seller confirm

(iii) cost and expenses owed to any per disclosed n Schedule 5.19 or 6.6      Seller confirm

(iv) Escrow Amount shall be paid to Escrow Account

(v) Lenders

(v-2) Lenders (assuming no deducts from escrow)