Jason A. Starks
Assistant Attorney General
Bankruptcy & Collection Division
P. O. Box 12548
Austin, TX  78711-2548
Telephone: (512) 475-4867
Facsimile: (512) 482-8341
jason.starks@oag.state.tx.us

ATTORNEYS FOR THE TEXAS
COMPTROLLER OF PUBLIC ACCOUNTS

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| In re: § | |
| § | CASE NO.  10-43400-DML-11 |
| TEXAS RANGERS BASEBALL PARTNERS § | |
| § | Chapter 11 |
| Debtor § | |

## TEXAS COMPTROLLER'S OBJECTION TO CONFIRMATION

The Texas Comptroller of Public Accounts ("Texas Comptroller"), appearing through the Texas Attorney General's Office, objects to confirmation of the Debtors' Second Amended Prepackaged Plan of Reorganization of Texas Rangers Baseball Partners Under Chapter 11 of the Bankruptcy Code (the "Plan").

**I. The Supreme Court's recent *Espinosa* opinion mandates a change in the practice of proposing plans that do not comply with the Bankruptcy Code**.

1. Plan Art. 11.6(a) proposes to eliminate claimholders' setoff rights.

2. Plan Art. 11.6(a) conflicts with Bankruptcy Code § 553(a), which provides that "*this title* [Title 11, United States Code] *does not affect any rights of a creditor to offset*" a claim against a mutual prepetition debt owing by the debtor. (Emphasis added.) Plan Art. 11.6(a) therefore proposes to rewrite the Bankruptcy Code by providing, despite § 553, that plan confirmation eliminates the setoff rights of creditors.

3. While the Comptroller recognizes that the Plan's attempt to eliminate creditors' setoff rights is in keeping with long-established practice in this and other districts, the Comptroller believes it is time for a fundamental re-assessment of that practice. The reason the time is ripe for such a re-assessment is the Supreme Court's decision earlier this year in <u>Espinosa v. United States Aid Funds, Inc.</u>, 130 S. Ct. 1367 (2010).

4. <u>Espinosa</u> concerned a plan provision that, like Art. 11.6(a) of the Plan, conflicted with the Bankruptcy Code. While the Supreme Court upheld the effectiveness of such a provision with respect to a creditor who failed to object to it, the Supreme Court went on to deal with arguments that approving plans containing provisions contrary to the Bankruptcy Code would invite "bad faith litigation tactics" and leave the door open for "unscrupulous debtors" to abuse the bankruptcy process by filing improper plans in hopes that a court and creditors would overlook the provisions. If a court or creditor discovers the improper plan provisions, then the debtors could simply amend the plan to eliminate them, making it a "no risk" proposition to propose a plan that includes improper provisions. 130 S. Ct. at 1382.

5. In parts III and IV of its <u>Espinosa</u> opinion, the Supreme Court laid out two roadblocks to such plan confirmation tactics:

(1) Bankruptcy courts have an affirmative duty to deny confirmation to plans that conflict with the Code, even if no party objects.

(2) Debtors and their attorneys face penalties – specifically, sanctions under Bankruptcy Rule 9011 – for presenting plans for confirmation that they know do not comply with the Bankruptcy Code.

6. Though Espinosa was a Chapter 13 case, Bankruptcy Code §§ 1325(a) and 1129(a) are practically identical in describing the circumstances under which a court should confirm a plan. Section 1325(a), applicable in Espinosa, provides:

[T]he court shall confirm a plan if –

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title,

(3) the plan has been proposed in good faith and not by any means forbidden by law.

Section 1129(a), applicable here, provides:
The court shall confirm a plan only if all of the following requirements are met:

(1) The plan complies with the applicable provisions of this title.

(2) The plan proponent complies with the applicable provisions of this title.

(3) The plan has been proposed in good faith and not by any means forbidden by law.

7. If anything, the addition of the word "only" in the introductory phrase to § 1129(a) and the addition of a requirement that the plan proponent comply with provisions of Title 11 indicate that *stricter* scrutiny of Chapter 11 plans is appropriate. See *In re Szostek*, 886 F.2d 1405, 1411 (3d Cir. 1989), contrasting the mandatory nature of § 1129(a)'s "only if" language with the less clear language of § 1325(a) and *Shaw v. Aurgroup Financial Credit Union*, 552 F.3d 447, 452 (6th Cir. 2009), concluding that both 1129(a) and 1325(a) are mandatory. So plans that do not comply with § 1129(a) – including §1129(a)(1)'s requirement that plans must "compl[y] with applicable provisions of this title", including § 553 – should not be confirmed, even if no party objects and even if objectors are "carved out" in confirmation orders.

3

8. Accordingly, it is respectfully suggested that, as directed by the Supreme Court, two roadblocks should exist to confirming Chapter 11 plans that contain improper provisions – such as Plan Art. 11.6(a) – that do not comply with Title 11:

(1) A bankruptcy court should perform its affirmative duty to deny confirmation of plans that conflict with the Code, even if no party objects.

(2) Debtors and their counsel should face penalties – specifically, sanctions under Bankruptcy Rule 9011 – for presenting plans for confirmation they know do not comply with the Bankruptcy Code.

9. For those reasons, confirmation of the Plan should be denied, even if no creditors object. The Court's independent, affirmative duty to review the Plan for Code compliance remains – and this Plan conflicts with 11 U.S.C. § 553(a). A "carve out" of creditors who object to improper provisions does not remedy the Plan defect and reflects the very "no risk" proposition described by the Supreme Court in Espinosa as a "bad faith litigation tactic."

10. Because this objection proposes a change in accepted bankruptcy practice, and because Espinosa was only recently decided, the Texas Comptroller will defer, for now, seeking sanctions against counsel for the Plan proponents. The Plan proponents are therefore being afforded a chance to amend the Plan to comply with Code § 553(a). The Texas Comptroller reserves, and does not waive, the right to seek by separate motion appropriate sanctions if the Plan is not amended.

**II. The longstanding "gotcha game" arising from the Third Circuit's *Continental Airlines* case on setoff rights does not excuse non-compliance with the Bankruptcy Code, after *Espinosa*.**

11. The majority of cases addressing this issue have found that setoff rights survive bankruptcy and are not affected by other sections of the Bankruptcy Code, including 1141. *See IRS v. Luongo (In re Luongo)*, 259 F.3d 323 (5th Cir. 2001); *In re*

4

*DeLaurentiis Entertainment Group, Inc.*, 963 F.2d 1269, 1277 (9th Cir.1992), 963 F.2d 1269, 1276-78 (9th Cir. 1992), cert. denied, 506 U.S. 918, 113 S. Ct. 330, 121 L.Ed.2d 249 (1992); *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1537 (10th Cir. 1990).[1]

12.  However, since the Third Circuit addressed a tax creditor's setoff rights in *In re Continental Airlines, Inc.*, 134 F.3d 536 (3d Cir. 1998), *cert. den.*, 119 S. Ct. 336 (1998), plan proponents have played a long-running "gotcha game" with tax creditors. Plan proponents routinely propose in plans to alter or eliminate the setoff rights of tax creditors (and other creditors as well) upon confirmation. Some vigilant tax creditors object. Under *In re Alta + Cast*,[2] 2004 WL 484881, *6 (Bankr. D. Del.), a plan objection is sufficient to preserve setoff rights, and plan provisions eliminating such rights are "improper." Plan proponents then "carve out" the objecting tax creditors in confirmation orders, but the "improper" provision remains in the plan to bind other creditors. In the next "megacase" proposed plan, the process repeats itself, so that a tax creditor must constantly be on the watch in every large chapter 11 case, whether the tax creditor knows of a claim or not, to protect statutory setoff rights that 11 U.S.C. § 553(a) expressly

---

[1] A number of district and bankruptcy courts in other circuits have held the same: *In re O'Brien*, 414 B.R. 92, 101 (S.D. W.Va. 2009); *United States v. Munson*, 248 B.R. 343, 345 (C.D. Ill. 2000); *In re Wiegand*, 199 B.R. 639, 641 (W.D. Mich. 1996); *Pettibone Corp. v. United States*, 161 B.R. 960, 964 (N.D. Ill. 1993); *Posey v. United States*, 156 B.R. 910 (W.D. N.Y. 1993); *Womack v. United States (In re Womack)*, 188 B.R. 259 (Bankr. E.D. Ark. 1995); In re Conti, 50 B.R. 142 (Bankr. S.D. Va. 1985); *In re Ford*, 35 B.R. 277 (Bankr. N.D. Ga. 1983). *But see Daewoo Int'l (America) Corp. Creditor Trust v. SSTS America Corp.*, 2003 WL 21355214 (S.D. N.Y.); *Massey v. Baker O'Neal Holdings, Inc.*, 2006 WL 897880 (S.D. Ind.).

[2] The Westlaw version of the case, which is the only version available in the absence of Bankruptcy Reporter publication, contains an "m" after the debtor's name. The body of the opinion makes it clear that the debtor's correct name was "Alta + Cast", indicating the added "m" is a typographical error, so the correct name is used in this citation.

preserves. (See Part III below.) This practice is even more objectionable in bankruptcy courts in the Fifth Circuit, where Luongo is binding case authority confirming that setoff rights survive bankruptcy. Debtors should not ask bankruptcy courts to effectively reverse Fifth Circuit cases by inserting "fine print" plan provisions that conflict with Fifth Circuit decisions.

13. What the Plan seeks to do, of course, is utilize the *res judicata* portion of Espinosa to bind non-objecting creditors to the Plan's terms, even if such terms are improper. The Chapter 13 debtor's "discharge by declaration" in Espinosa did work, after all. Though improper, and contrary to § 1328(a), the plan provision was nonetheless binding on a non-objecting creditor under well-established law applying *res judicata* principals and FED. R. CIV. P. 60, and the Supreme Court enforced it. The same result has been reached with anti-setoff provisions in plans. *Massey v. Baker O'Neal Holdings, Inc.*, 2006 WL 897880, *4 (S.D. Ind.); *In re Protarga, Inc.*, 329 B.R. 451, 475 (Bankr. D. Del. 2005). Even though it enforced the improper plan provisions in Espinosa, the Supreme Court prescribed (as noted above) two significant checks on plan proponents' ability to "game the system" by deliberately including improper provisions in plans: (1) the duty of bankruptcy courts to deny confirmation of plans containing such provisions, and (2) the possibility of sanctions against plan proponents and their counsel for trying to "sneak through" such provisions. The Texas Comptroller, by this objection, asks this Court to apply the first check, as the Supreme Court has directed.

### III. Anti-setoff provisions ins plans violate §1123(b)(6).

14. Section 1123(b)(6) expressly provides for the inclusion of "any other appropriate provision not inconsistent with the applicable provisions of this title." By negative implication, this plan may NOT include provisions that are "inconsistent with the applicable provisions of this title." "This title" includes § 553(a) which provides that setoff rights are not affected by any provision of Title 11. By eliminating the creditors' setoff rights, the Debtor's Plan is inconsistent with the applicable provisions of Title 11.

### IV. Tax creditors have unique concerns about setoff prohibitions in plans.

15. The Texas Comptroller does not undertake lightly a challenge of well-established plan confirmation practice in this and other courts with respect to tax creditors' setoff rights. Nor is the Texas Comptroller simply "nitpicking" as to boilerplate anti-setoff provisions commonly found in plans.

16. Rather, millions of dollars are at stake on this recurring issue in many cases. It is standard procedure for most large Chapter 11 debtors to conduct a review of potential tax refunds available to bankruptcy estates. If not conducted by the debtor in possession during the pre-confirmation phase of a case, such reviews are commonly done at some point by reorganized debtors, creditors' committees or liquidation trusts post-confirmation, and plans typically preserve tax refund claims.

17. Where tax creditors have known claims against Chapter 11 debtors, they assert them by filing proofs of claim. However, many debtors are current on tax return liabilities as of the petition date (or pay prepetition taxes under "first day orders") and tax creditors lack the means to audit each and every Chapter 11 debtor that files bankruptcy, so they do not always file proofs of claim in every case. Only a full-blown audit is likely

7

to determine whether any potential tax refund claims exist that may be asserted by a reorganized debtor or its successors, giving rise to possible setoffs.

18. The situation has arisen on many occasions where a tax creditor has been presented with a post-confirmation tax refund claim on behalf of a reorganized debtor, with that refund request being the first time the reorganized debtor's overall tax status has been reviewed. Usually, outside of bankruptcy, large tax refund requests will trigger tax audits to determine if any additional tax is owed by the taxpayer claiming the refund. If an audit determines tax liability exists, the liability will be set off against any valid refund claims.

19. Where, however, a reorganized debtor has obtained confirmation of plan containing setoff prohibitions such as that in Plan Art. 11.6(a), the tax creditor may be precluded from asserting its setoff rights unless the creditor has objected to the plan. Just as tax creditors cannot audit every single Chapter 11 debtor, neither can they file "prophylactic" objections in every single Chapter 11 case, just in case the reorganized debtor or a successor entity presents a tax refund claim at some point in the future. That is particularly true in cases where the tax creditor is unaware of any prepetition claims or the claims have been paid under a first day order.

20. That is why anti-setoff language buried in the "fine print" of Chapter 11 plans is a serious problem for tax creditors, who are involuntary creditors that do not make credit-based decisions about whether to do business with entities that file Chapter 11. *See United States v. Kimbell Foods, Inc.*, 99 S. Ct. 1448, 1463 (1979)(A tax creditor "is an involuntary creditor of delinquent taxpayers, unable to control the factors that make tax collection likely.") And that is why the practice of routinely including anti-

8

setoff provisions in proposed plans poses such a threat to tax creditors. Tax creditors *should* be able to rely on Section 553(a) to have their setoff rights preserved, despite confirmation of a Chapter 11 plan, despite § 1141's "free and clear" and discharge language, and despite § 524's discharge injunction. In the same way, student loan creditors should be able to rely on § 1328(a) to protect the non-dischargeability of student loan debts. But if a student loan debtor is able to get a "discharge by declaration" plan confirmed, the plan binds the creditor, Espinosa holds. The same is true of anti-setoff plan provisions. Espinosa goes on to instruct, however, that bankruptcy judges should not approve such plans and that plan proponents and their counsel should not propose such plans. It is that directive of the Supreme Court that the Texas Comptroller seeks to implement here, to preserve valuable rights of the Texas Comptroller and other tax creditors in this and other cases.

## Conclusion

Wherefore, for the reasons set forth above, the Texas Comptroller requests that the Court deny confirmation of the Plan, unless it is amended to comply with 11 U.S.C. § 553(a).

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

C. ANDREW WEBER
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil Litigation

RONALD R. DEL VENTO
Assistant Attorney General
Chief, Bankruptcy & Collections Division

>*/s/ Jason A. Starks*
>JASON A. STARKS
>Assistant Attorney General
>Bankruptcy & Collections Division
>P. O. Box 12548
>Austin, TX 78711-2548
>Telephone: (512) 475-4867
>Facsimile: (512) 482-8341
>jason.starks@oag.state.tx.us
>
>ATTORNEYS FOR THE TEXAS
>COMPTROLLER OF PUBLIC ACCOUNTS

## **CERTIFICATE OF SERVICE**

I certify that on July 7, 2010, true copy of the foregoing was served by the method and to the following parties as indicated:

By First Class Mail:

Texas Rangers Baseball Partners
1000 Ballpark Way, Ste. 400
Arlington, TX 76011

By Electronic Means as listed on the Court's ECF Noticing System:

Craig H. Averch    caverch@la.whitecase.com, mcscott@la.whitecase.com;rkampfner@la.whitecase.com;ian.silverbrand@ny.whitecase.com;rgorsich@la.whitecase.com;amackintosh@la.whitecase.com

John Mark Chevallier    mchevallier@mcslaw.com

Briana Leigh Cioni    cioni@sbep-law.com

Perry J. Cockerell    pcockerell@canteyhanger.com, kckenzie@canteyhanger.com

Peter C. DApice    dapice@sbep-law.com

Jennifer C. DeMarco    jennifer.demarco@cliffordchance.com

Scott Mark DeWolf    sdewolf@romclawyers.com, wohl@romclawyers.com;doler@romclawyers.com;kmiller@romclawyers.com

Jeffrey R Fine    jeff.fine@klgates.com, jrf5825@gmail.com

J. Robert Forshey    jrf@forsheyprostok.com, lgreiner@forsheyprostok.com;calendar@forsheyprostok.com;lbreedlove@forsheyprostok.com

Robert P. Franke    robert.franke@strasburger.com

Kristian W. Gluck    kgluck@fulbright.com

Kevin G. Herd    kherd@gpaplaw.com

Laurie Spindler Huffman    Laurie.Spindler@publicans.com, Dallas.bankruptcy@publicans.com

John Joseph Kane    jkane@krcl.com

Meredyth Kippes    meredyth.a.kippes@usdoj.gov

Lisa Laura Lambert    lisa.l.lambert@usdoj.gov

Paul J. Laurin    plaurin@rutterhobbs.com

Richard H. London    rlondon@velaw.com, plewis@velaw.com

Richard M. Maseles    ndtx@dor.mo.gov

Luckey McDowell    luckey.mcdowell@bakerbotts.com, bankruptcydallas@bakerbotts.com

Daniel I. Morenoff    dan.morenoff@klgates.com

Holland N. ONeil    honeil@gardere.com

Christopher Joshua Osborne    josh.osborne@khh.com

Heather J. Panko    panko@sbep-law.com

Rustin S. Polk    rpolk@214bankruptcy.com, cmecf@214bankruptcy.com

Jeff P. Prostok    jpp@forsheyprostok.com, lbreedlove@forsheyprostok.com;calendar@forsheyprostok.com;mmaben@forsheyprostok.com

Margery N. Reed    mreed@duanemorris.com

Ian E. Roberts    ian.roberts@bakerbotts.com

Richard Mark Seltzer    rseltzer@cwsny.com

Wendy M. Simkulak    wmsimkulak@duanemorris.com

Robert A. Simon    rsimon@bgsfirm.com, mail@simonandsimonftw.com

Michael Joseph Small    msmall@foley.com, khall@foley.com

Martin A. Sosland    martin.sosland@weil.com, lyle.bartram@weil.com;ronit.berkovich@weil.com;janet.mcleland@weil.com

Andrew G. Spaniol    aspaniol@gardere.com, koliver@gardere.com

Jason Andrew Starks    bk-jstarks@oag.state.tx.us, sherri.simpson@oag.state.tx.us

Daniel C. Stewart    dstewart@velaw.com

Mark Stromberg    mark@strombergstock.com, sarah@strombergstock.com;kedrin@strombergstock.com;becky@strombergstock.com;becky@strombergstock.com

David A. Sullivan    david.sullivan@cliffordchance.com

UST U.S. Trustee    ustpregion06.da.ecf@usdoj.gov, albert.loftus@usdoj.gov

Joseph J. Wielebinski    jwielebinski@munsch.com

> */s/ Jason A. Starks*
> JASON A. STARKS