# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with an auction (the "Auction") for the sale (the "Sale") of the TRBP Assets.[1]  At a hearing following the Auction (the "Confirmation Hearing"), the Debtor will seek entry of an order (the "Confirmation Order") from the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") authorizing and approving the Sale to the Qualified Bidder (as defined below) that the Bankruptcy Court determines to have made the highest and best bid (the "Successful Bidder") pursuant to a plan of reorganization (the "Plan") and sections 1121-1129 of the Bankruptcy Code.[2]

## Assets to be Sold

Except as otherwise provided in definitive documentation with respect to the Sale,[3] all of the Debtor's rights, title and interest in and to the following TRBP Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against in accordance with section 1123(b)(4) of the Bankruptcy Code:

(a)  the Purchased Contracts (as defined in section 1.1 of the Asset Purchase Agreement);

(b)  all cash, cash equivalents (not including the Purchase Price), bank deposits or similar cash items and accounts receivable of Seller;

(c)  all inventory;

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the *Debtor's Second Motion Pursuant to Sections 105(A), 363 and 1124(b)(4) of the Bankruptcy Code and Bankruptcy Rule 6004 for (i) Approval of Procedures in Connection with the Sale of TRBP Assets, (ii) Authorization to Enter Into a Asset Purchase Agreement in Connection Therewith, (iii) approval of payment of Stalking Horse Protections, and (iv) the Setting of Related Auction and Hearing Dates* (the "Motion").

[2] As provided below, at the election of a Qualified Bidder, with the consent of the Debtor or its general partners, the Sale may be pursuant to section 363 of the Bankruptcy Code rather than a Plan.  In the event a Qualified Bidder's proposal is to be so pursued, reference herein to the Plan shall be read to mean the motion under section 363 and references to the Confirmation Hearing and Confirmation Order shall be read to mean the hearing to approve the Sale and the order approving the Sale respectively.

[3] To the extent a Qualified Bidder excludes from purchase any of the assets listed below, such asset shall remain property of the Debtor's estate; provided, however, except to the extent agreed to by the Debtor and its general partners, the value of any such excluded asset shall not be deemed consideration in addition to the price bid by such Qualified Bidder.

1

(d) all rights of Seller in and to minor league (including associated rights to membership and franchise in Minor League Baseball), little league, hall of fame and foreign baseball operations affiliated with the Texas Rangers;

(e) all rights of Seller in and to the spring training facilities of the Texas Rangers;

(f) all deposits (including customer deposits and security deposits for rent, electricity, telephone, tickets, concessions, suite fees or otherwise) and prepaid charges and expenses, including any prepaid rent, of Seller related to any Purchased Assets, including all prepaid charges, expenses and rent under the Real Property Leases or Personal Property Leases, whether attributable to any period beginning prior to, on or after the Closing Date and ending prior to, on or after the Closing Date;

(g) all rights of Seller under each Real Property Lease and each Parking Agreement, together with all rights of Seller in and to all improvements, fixtures and other appurtenances thereto or in respect thereof;

(h) all rights and privileges held by Seller associated with Major League Baseball, including rights to membership and franchise of the Texas Rangers in Major League Baseball and all ownership interests of Seller in any Major League Baseball Entity;

(i) the Subsidiary Equity Interests (as defined in section 1.1 of the Asset Purchase Agreement);

(j) the Furniture and Equipment (as defined in section 1.1 of the Asset Purchase Agreement);

(k) the Purchased Intellectual Property (as defined in section 1.1 of the Asset Purchase Agreement);

(l) all Documents, including Documents relating to products, services, marketing, advertising, promotional materials, Purchased Intellectual Property, and all files, customer files and documents (including credit information), supplier lists, records, literature and correspondence, whether or not physically located on any of the premises leased under a Real Property Lease, but excluding personnel files of all individuals (including common law employees and independent contractors) other than personnel files for Continuing Employees, Former Rangers Employees and former employees of any entity that previously operated the Texas Rangers (or any predecessor baseball club to the Texas Rangers) and personnel files, if any, for independent contractors who are a party to a Contract which is a Purchased Contract, in each case, (as specified in Section 2.2(c) of the Asset Purchase Agreement), and excluding such files as may be required under applicable Law regarding privacy; provided that, Seller shall be permitted to retain copies of any or all Documents, subject to all obligations and restrictions applicable to

Confidential Information (as set forth in Section 7.6(b) of the Asset Purchase Agreement);

(m) all Permits of Seller, but only to the extent such Permits are assignable or otherwise transferable;

(n) all supplies owned by Seller;

(o) all rights of Seller under non-disclosure or confidentiality, non-compete, or non-solicitation agreements with Rangers Employees and Former Rangers Employees or with third parties;

(p) all rights of Seller under or pursuant to all warranties, representations and guarantees made by suppliers, manufacturers and contractors to the extent relating to products sold, or services provided, to Seller or to the extent affecting the Business or any Purchased Assets;

(q) all goodwill and other intangible assets associated with the Business, including the goodwill associated with the Purchased Intellectual Property;

(r) to the extent assignable, all of Seller's rights to insurance proceeds under the Insurance Policies and condemnation proceeds relating to the damage, destruction, taking or other impairment of other Purchased Assets (or assets that would have been Purchased Assets but for such damage, destruction, taking or other impairment), including insurance for direct property loss and business interruption or other time element losses;

(s) all rights of Seller to any archives of Texas Rangers (or any predecessor baseball club to the Texas Rangers) video and audio footage, memorabilia, pictures, recordings, team records and other information and materials related to baseball, the Texas Rangers, any predecessor baseball club to the Texas Rangers, the Ballpark in Arlington or any other home ballpark of the Texas Rangers or any such predecessor baseball club; and

(t) to the extent assigned to and assumed by Purchaser, all Insurance Policies; and

(u) all other assets, rights and privileges described or identified in the Asset Purchase Agreement, except for Excluded Assets as defined therein.

**MLB Sales Clearance**

MLB Sales Clearance must be obtained prior to the disclosure of any financial information (not otherwise already made public) to an Interested Party (as defined below) and prior to the submission of any bid by such party. MLB Sales

Clearance shall not be unreasonably withheld[4] and shall otherwise be in accordance with the Control Interest Transfers – Guidelines and Procedures (hereinafter the "MLB Guidelines") and all other pertinent rules and regulations of Major League Baseball ("MLB").  Upon the request of any potential Bidder, MLB will act promptly and on an expedited basis after receipt of an appropriate, fully completed application (as described below).  Among other things, the MLB Guidelines provide the following:

> Before any public announcement may be made and before the Debtor's financial information is disclosed to a potential Bidder, Part I of Baseball's Ownership Application, which can be obtained from the Office of the Commissioner of MLB (the "BOC"), must be submitted to the BOC.  The application will include the standard releases and indemnifications required by and in favor of MLB relating to the consideration of the Bid.  Such releases and indemnifications must be signed by all corporate, LLC and/or partnership entities involved in the Bid.

> Upon submission of this application, the Security Department in the BOC will conduct a background investigation of all applicants.

> When the BOC becomes satisfied with the results of the background investigations (which may include a preliminary assessment of the potential purchaser's financial wherewithal), and when the signed releases and indemnifications are received in satisfactory form, the Commissioner shall (absent cause not to do so) approve (the "MLB Sales Clearance") the release of Club financial information to the proposed purchasers.

> Except to the extent available publicly or otherwise pursuant to the Bankruptcy Code or Rules, release of financial information may not be made without MLB Sales Clearance.  Further, no announcements relating to the Bid or the Bidder's interest in participating in the Auction, public or otherwise, may be made except as provided herein without the approval of the Commissioner.

> Only a person who has obtained MLB Sales Clearance will be considered a "Qualified Bidder" eligible to submit a Qualified Bid (as defined below) and participate in the Auction.  Each and every equity holder or investor in a Qualified Bidder must also have received MLB Sales Clearance.  Without excluding any person from seeking MLB Sales Clearance, for purposes of this Auction, Rangers Baseball Express, LLC, Jim Crane and Jeff Beck have received MLB Sales Clearance subject to the following paragraph.[5]

---

[4] Any dispute respecting a refusal to provide a potential Bidder with MLB Sales Clearance shall be subject to expedited resolution by the Bankruptcy Court.

[5] If any person, having received MLB Sales Clearance or approval at an earlier date, is denied MLB Sales Clearance for the purposes of the Sale, the Bankruptcy Court will rebuttably presume that such denial is not in good faith and is unreasonable.  This presumption may be rebutted by the BOC presenting evidence that, *inter alia*, the person's circumstances have changed to such an extent that the person should not be a Qualified Bidder, or that the BOC has learned of new information that, had it been aware of it at the time the person was first approved or granted MLB

Each previously cleared bidder will be obligated to execute a bringdown certificate which will contain a reaffirmation of its obligations under the Indemnification and Release Letter (Form A), and the General Authorization Form C or Form E as applicable. In addition, each previously cleared bidder shall be required to reconfirm the information in Form B (Individual Background Information), Form D (Entity Background Information) and Form F (Statement of Net Worth), or otherwise disclose any modifications to information previously provided to the BOC.

**The Bidding Process**

The Debtor and its general partners shall (i) provide reasonable assistance to Qualified Bidders in conducting their due diligence investigations, and (ii) receive offers from Qualified Bidders.

The Debtor or its general partners shall negotiate any offers made to purchase the TRBP Assets.[6] Only a Qualified Bidder may participate in the bidding process. Neither the Debtor nor its representatives and general partners shall be obligated to furnish any information of any kind to any person who is not a Qualified Bidder.

To facilitate the Auction and to assist the Debtor in assessing the terms of each bid, prospective bidders must substantially follow the form of the Asset Purchase Agreement (as defined in the Motion), which includes the Amendment to the Asset Purchase Agreement, to prepare their bids and mark all proposed changes to such agreement as part of their bid. The Asset Purchase Agreement is attached to the Order Approving these bidding procedures as **Exhibit B**, and the Amendment to the Asset Purchase Agreement is attached to the Order Approving these bidding procedures as **Exhibit C**.[7]

A Bid may provide for its implementation through a plan, in conformity with the Asset Purchase Agreement, or through a motion under section 363 of the Bankruptcy Code.

---

Sales Clearance, it would not have approved of or granted the person MLB Sales Clearance in the first instance.

[6] While negotiations may be undertaken by either the Debtor or its general partners, whichever of the Debtor or its general partners may be negotiating an offer shall keep the other promptly and fully informed respecting all aspects of the negotiations.

[7] To the extent agreed to by the Debtor and its general partners, and with the approval of the Bankruptcy Court, the Successful Bidder may consummate the Sale pursuant to a contract in a form other than that of the Asset Purchase Agreement. Notwithstanding the foregoing, any Bid must follow the form of exhibits B and C.

To the extent a provision of either exhibit is inapplicable to the Bid – for example, by reason of the Sale occurring under section 363 of the Bankruptcy Code rather than pursuant to a plan of reorganization – the Bid may so indicate.

**Bid Deadline**

Except to the extent the Bankruptcy Court orders otherwise, any Qualified Bidder wanting to participate in the Auction must submit a Qualified Bid (as defined below) on or before **August 3, 2010 at 8:00 p.m. (prevailing Central Time)** (the "Bid Deadline") (unless the Bankruptcy Court authorizes otherwise) in writing, to the following parties:

> The Rangers Equity Owners
> c/o Lou Strubeck
> FULBRIGHT & JAWORSKI L.L.P
> 2200 Ross Avenue, Suite 2800
> Dallas, Texas 75201
> Facsimile: (214) 855-8220
> Email: lstrubeck@fulbright.com
>
> Texas Rangers Baseball Partners
> c/o Martin A. Sosland
> WEIL, GOTSHAL & MANGES LLP
> 200 Crescent Court, Suite 300
> Dallas, Texas 75201
> Facsimile: (214) 746-7777
> Email: martin.sosland@weil.com
>
> Rangers Baseball Express, LLC
> c/o Thomas E. Lauria
> WHITE & CASE LLP
> 1155 Avenue of the Americas
> New York, New York 10036
> Facsimile: (212) 354-8113
> Email: tlauria@whitecase.com
>
> Office of the Commissioner of Major League Baseball
> c/o Tom Ostertag
>    Chris Brumm
> 245 Park Avenue
> New York, NY 10167
> Facsimile: (212) 949-5653
> Email: Tom.Ostertag@mlb.com
>        Chris.Brumm@mlb.com
>
> The Official Unsecured Creditors' Committee
> c/o Jeffrey R. Fine
> K&L GATES
> 1717 Main Street, Suite 2800

Dallas, Texas 75201
Facsimile: (214) 939-5849
Email: Jeff.Fine@klgates.com

Ad Hoc Group of First Lien Lenders
c/o Daniel Stewart
VINSON & ELKINS
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Facsimile: (214) 999-7761
Email: dstewart@velaw.com

JP Morgan Chase, as Agent, on behalf of the First Lien Lenders
c/o Michael Rochelle
ROCHELLE McCULLOUGH LLP
325 N. St. Paul St., Suite 4500
Dallas, Texas 75201
Facsimile: (214) 953-0185
Email: buzz.rochelle@romlawyers.com

GSP Finance LLC, as Agent, on behalf of the Second Lien Lenders
c/o Holland O'Neil
GARDERE, WYNNE & SEWELL
1601 Elm Street, Suite 3000
Dallas, Texas 75201
Facsimile: (214) 999-3961
Email: honeil@gardere.com

Any Bid received by the foregoing parties shall be held in confidence and shared with no other entity absent further order of the Bankruptcy Court. Counsel may share a Bid with its client's decision makers(who are subject to the preceding sentence).

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

**Stalking Horse Bid**

The Stalking Horse Bid is reflected in the Asset Purchase Agreement[8] and is the bid of Rangers Baseball Express LLC (the "Proposed Buyer" or the "Stalking Horse").

**Qualified Bids**

---

[8] Including the July 13, 2010 Amendment to the Asset Purchase Agreement; references below to the Asset Purchase Agreement shall include that amendment.

To participate in the Auction, a Qualified Bidder must submit a Qualified Bid by the Bid Deadline (unless such deadline is extended by the Bankruptcy Court). To constitute a Qualified Bid, a bid must: (i) be submitted by a Qualified Bidder; (ii) include cash or substantially equivalent consideration that is $15 million more than provided in Section 3.1(a) of the Asset Purchase Agreement; (iii) contain a mark-up of the Asset Purchase Agreement that reflects the bidder's proposed changes thereto, and provided that, except as expressly permitted by these Bidding Procedures, the conditions to closing of the marked-up Asset Purchase Agreement version must make it no more contingent than the Asset Purchase Agreement; (iv) identify the potential bidder and the officer(s) or authorized agent(s) who will appear at the Auction on behalf of such bidder; (v) except as expressly permitted by these Bidding Procedures, provide evidence, satisfactory to the Debtor and its general partners, in their reasonable discretion, of the bidder's financial wherewithal and operational ability to consummate the proposed transaction including, without limitation (a) evidence that it has unrestricted cash on hand to fully fund the equity component of its proposal; and (b) to the extent debt financing is a component of the bid, provide financing commitments that are no more contingent than the financing commitment of the Stalking Horse Bid provided, however, notwithstanding the foregoing clauses (a) and (b), in the event that financing commitments are not finalized, a Qualified Bidder, upon satisfying the Debtor or its general partners that its financing will be obtained, may still submit a Qualified Bid if the potential purchaser deposits, immediately upon becoming the Successful Bidder, and demonstrates prior to the Auction the ability to deposit $15 million into the Bankruptcy Court's registry, such deposit to be subject to forfeiture unless (x) the Qualified Bidder is not the Successful Bidder or (y) the Qualified Bidder is the Successful Bidder but fails to consummate the Sale either (I) because MLB declines in good faith to approve the Successful Bidder as owner of the Texas Rangers baseball franchise or (II) because the Debtor fails through no fault of or otherwise at the instance of the Successful Bidder to consummate the sale[9]; (vi) include the Qualified Bidder's Good Faith Deposit (as defined below); (vii) provide that the bidder's offer is irrevocable until the earlier of (a) August 12, 2010, or (b) consummation of a transaction involving any other bidder for the TRBP Assets; and (viii) may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.[10] The Proposed Buyer is a Qualified Bidder who may participate in the Auction.

All Qualified Bids will be considered. Absent deposit of $15 million as described in the preceding paragraph, the Successful Bidder must be prepared to close by

---

[9] This deposit shall be held in an interest bearing account and shall be credited against the purchase price at Closing. Upon making this deposit, the Successful Bidder shall be entitled to consummate the Sale at any time prior to October 11, 2010. In the event of forfeiture of the $15 million deposit, that deposit, other than interest, will be paid to the Debtor. Accrued interest on the deposit will be paid to the Debtor's general partners.

[10] Except to the extent defined in the Stalking Horse Protections.

August 16, 2010, or such other time as the Debtor, the Debtor's general partners and the Successful Bidder may agree to, or as the Bankruptcy Court may direct.

**Good Faith Deposits**

Each Qualified Bidder (other than the Proposed Buyer, which has already placed a Good Faith Deposit in escrow) will be required to submit a good faith deposit (the "Good Faith Deposits") with the Debtor on or before the Bid Deadline. Such Good Faith Deposits shall be equal to $1.5 million.[11] Good Faith Deposits of all Qualified Bidders shall be held in a separate interest-bearing account for the Debtor's and its general partners' benefit until the later of (a) August 12, 2010 or (b) consummation of a transaction involving any Qualified Bidder for the TRBP Assets. If a Successful Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of the bankruptcy estate of the Debtor (and shall not be sold to any ultimate purchaser of the Debtor or its assets) without affecting or reducing any of the Debtor's other rights or claims against such party. All other deposits will be returned to the respective Qualified Bidders (other than that of the Successful Bidder) within fourteen (14) days after closing.

**Due Diligence**

The Debtor shall afford any Qualified Bidder the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtor in its discretion.

The Debtor either has provided or will provide to all parties that have either expressed an interest in purchasing the TRBP Assets or whom the Debtor believes may have an interest in purchasing the TRBP Assets (each an "Interested Party" and, collectively, the "Interested Parties"), certain non-confidential information in connection with the proposed sale, including, among other things, these Bidding Procedures and the Asset Purchase Agreement. Should any Interested Party desire additional or further information, such Interested Party will be required to obtain the MLB Sales Clearance and enter into a confidentiality agreement satisfactory to the Debtor in its business judgment. Upon obtaining the MLB Sales Clearance and executing the confidentiality agreement, the Interested Party shall be given access to relevant and confidential information, subject to the Debtor's right to exclude such access for competitive concerns.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the TRBP Assets

---

[11] The Good Faith Deposit is in addition to the $15 million deposit referred to above. This deposit, if the Qualified Bidder is the Successful Bidder, will be credited, excluding accrued interest, against the purchase price. Interest earned on Good Faith Deposits shall be the property of the Debtor's general partners.

9

prior to making its Bid; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its Bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the TRBP Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, the Asset Purchase Agreement.

**The Auction**

If a Qualified Bid other than the Stalking Horse Bid is timely received, the Auction will be conducted in the Honorable D. Michael Lynn's Courtroom located on the first floor of the United State Court House at 501 W. 10th Street, Fort Worth, Texas 76102 commencing on **August 4, 2010 at 9:00 a.m. (prevailing Central Time)** to determine the highest and best bid with respect to the TRBP Assets. The Auction will be conducted by the Honorable Russell F. Nelms or such other person as he may designate. Any bidder submitting a Qualified Bid may appear and submit its highest and best bid at the Auction. The Auction may be adjourned without further notice by the Bankruptcy Court. If an Auction is held, a Confirmation Hearing will take place on **August 4, 2010 at 10:30 a.m. (prevailing Central Time)**.[12]

If no Qualified Bid other than the Stalking Horse Bid is timely received, the Debtor will not conduct an Auction and instead shall present the Stalking Horse Bid to the Court for approval at a Confirmation Hearing on **August 4, 2010 at 9:00 a.m. (prevailing Central Time)**.

**Auction Procedures**

At the start of the Auction, the Debtor will advise all Qualified Bidders of what it believes to be the highest and best Qualified Bid with respect to the TRBP Assets (the "Best Qualified Bid"). Only Qualified Bidders and the Proposed Buyer are eligible to participate in the Auction. Any party (and its counsel) entitled to receive notices in this case pursuant to Fed. R. Bankr. P. 2002(i) shall be permitted to attend the Auction. Bidding at the Auction shall begin with an initial minimum Bid in an amount of at least $15,000,000 above the Stalking Horse Bid, and shall subsequently continue in $2,000,000 minimum overbid increments.

Bidding will continue with respect to the Auction until the Debtor and its general partners determine that the Debtor has received the highest and best bid for the TRBP Assets (the "Successful Bid"). After the Debtor and its general partners so determine the Successful Bid, the Auction will be closed. The Debtor and its general

---

[12] Both the date and time of the Auction and the date and time of the Confirmation Hearing may be changed on motion following notice and a hearing or *sua sponte* by the Bankruptcy Court.

partners will then determine and announce which bid has been determined to be the second highest and best bid (the "Backup Bid").

**Stalking Horse Protections**

In the event the Proposed Buyer is not the Successful Bidder, at any time until consummation of the Sale, and notwithstanding anything to the contrary in the Asset Purchase Agreement, the Proposed Buyer may elect, in lieu of such damages as it would be entitled to by reason of the rejection, pursuant to section 365(a) of the Bankruptcy Code, of the Asset Purchase Agreement between it and the Debtor[13], to accept the following in full satisfaction of all its claims against the Debtor: the greater of (a) $10,000,000 and (b) 125% of actual, proven out-of-pocket damages, costs and expenses, including, but not limited to, such professional fees of the Proposed Buyer as the Bankruptcy Court may approve.[14] For purposes of calculating the 125%, lost profits, consequential damages, punitive damages, exemplary damages or similar amounts shall not be included. The Proposed Buyer shall not be entitled to any damages whatsoever should it be the Successful Bidder and fail to perform its Asset Purchase Agreement with the Debtor.

**Reservation of Rights**

(a) Determination of the Successful Bid

Nothing herein to the contrary withstanding, the Debtor and its general partners reserve the right to (i) determine in their reasonable discretion which bid is the Successful Bid and (ii) reject at any time prior to entry of a Bankruptcy Court order approving an offer, without liability, any offer (other than the offer submitted by the Proposed Buyer) that the Debtor and its general partners, in their reasonable discretion deem to be (x) inadequate or insufficient; or (y) with the advice of counsel, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein. Nothing herein shall prevent the Debtor or its general partners from seeking approval of the Bankruptcy Court to reject any Bid on any other basis.

Subject to the provisions of these Bidding Procedures, the selection of a Successful Bidder shall be subject to the approval of the Bankruptcy Court. The presentation of a particular bid to the Bankruptcy Court for approval shall not constitute the Debtor's acceptance of the bid. The Debtor will be deemed to have accepted the bid

---

[13] In the event, and only in the event, the Proposed Buyer does not make the election herein provided, any claim by it for rejection damages shall be subject to objection by any party in interest, including (but not limited to) on the basis that the Asset Purchase Agreement constitutes an obligation incurred by the Debtor with actual intent to delay, hinder or defraud creditors.

[14] The Proposed Buyer may elect to accept under this election $10,000,000 in lieu of undertaking proof of the 125% calculation.

11

only when the bid has been approved by the Bankruptcy Court. At or before the Confirmation Hearing, the Debtor may impose such other terms and conditions on the Qualified Bidders as the Debtor may determine to be in the best interests of the Debtor, its estate and its creditors.

Following entry of a Bankruptcy Court order approving the Successful Bid and Debtor's Plan of Reorganization, the Successful Bidder shall be required to seek the approval of Major League Baseball in accordance with the Major League Baseball Constitution, the MLB Guidelines, and other relevant rules and regulations of MLB. MLB shall act in respect of such approval in good faith; in the event MLB declines approval of the Successful Bidder, the Bankruptcy Court, upon motion by the Debtor, its general partners or the Successful Bidder will determine whether MLB has acted in good faith. Should the Qualified Bidder be unable to obtain the requisite approval of MLB, then the Backup Bid may be submitted to MLB for such approval.

(b) <u>Modification of Bidding Procedures; Disputes</u>

Except as expressly provided herein, the procedures set forth herein cannot be amended or modified without the approval of the Bankruptcy Court. The Bankruptcy Court shall retain exclusive jurisdiction to construe these Bidding Procedures and determine any disputes arising under them.

(c) <u>Closing with Backup Bidder(s)</u>

If for any reason the entity or entities that submit the Successful Bid fail to consummate the purchase of the TRBP Assets, the offeror of the Backup Bid (the "<u>Backup Bidder</u>") will automatically be deemed to have submitted the highest and best Bid, and the Debtor and such Backup Bidder are authorized to effect the sale of the TRBP Assets to such Backup Bidder as soon as is commercially reasonable. Following the Confirmation Hearing (i) if such failure to consummate the purchase is the result of a breach by the Successful Bidder, the Debtor reserves the right to seek all available damages from the defaulting Successful Bidder as modified by the terms of the purchase agreement reached in furtherance of the Successful Bid and (ii) if such failure to consummate the purchase is the result of a breach by the Debtor, the Successful Bidder shall have no recourse against the Debtor other than for recovery of its Good Faith Deposit (and, if applicable, the additional $15 million deposit).

**Confirmation Hearing**

If no Qualified Bid other than the Stalking Horse Bid is timely received, the Confirmation Hearing will be held on **August 4, 2010 at 9:00 a.m. (prevailing Central Time)** at the United States Bankruptcy Court for the Northern District of Texas, Eldon B. Mahon U.S. Courthouse, 501 W. Tenth Street, Fort Worth, Texas, before the Honorable D. Michael Lynn, United States Bankruptcy Judge, and shall continue on August 5, 2010 at 9:00 a.m. The Confirmation Hearing may be adjourned, from time to

time, without further notice to creditors or parties in interest (except the Proposed Buyer) other than by announcement of the adjournment in open Court or on the Court's docket.

Dated:  July 15, 2010