# FIRST AMENDMENT TO
# ASSET PURCHASE AGREEMENT

This First Amendment to Asset Purchase Agreement (this "Amendment") is made and entered into as of July 12, 2010, by and among Texas Rangers Baseball Partners, a Texas general partnership ("TRBP"), and Rangers Baseball Express LLC, a Delaware limited liability company ("Baseball Express").  All capitalized terms used, but not defined, in this Amendment shall have the meanings ascribed to such terms in the Agreement (as defined below).

WHEREAS, the parties to this Amendment have previously entered into that certain Asset Purchase Agreement dated as of May 23, 2010 (the "Agreement");

WHEREAS, Section 11.5 of the Agreement provides that the Agreement may be amended by a written agreement signed by all the parties to the Agreement and for which all necessary MLB Approvals have been obtained;

WHEREAS, all necessary MLB Approvals have been obtained; and

WHEREAS, the parties desire to amend the Agreement as set forth in this Amendment.

NOW, THEREFORE, in consideration of the premises and agreements herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties agree as follows:

**1.** *Section 2.4 (Excluded Liabilities).*  The following amendments and additions are hereby made to Section 2.4 of the Agreement:  (i) the "and" at the end of Section 2.4(j) of the Agreement is hereby deleted, (ii) the "." at the end of Section 2.4(k) of the Agreement is hereby deleted and replaced with "; and" and (iii) the following Section 2.4(l) is hereby added to the Agreement:

> "(l) all Liabilities related to the aircraft provided for under the Paradigm Aircraft Agreement other than those Liabilities for which TRBP is responsible under the terms of the Shared Charter Services Agreement (as the same is amended in accordance with Section 9.1(q))."

**2.** *Section 3.1 (Consideration).*  Section 3.1(a)(i) of the Agreement is hereby deleted and replaced in its entirety with the following: "(i) $306,700,000 (but only if the amendment to the Shared Charter Services Agreement contemplated by Section 9.1(q) is executed at or prior to Closing; otherwise, the amount in this clause (i) shall be $304,000,000), minus".

**3.** *Section 9.1 (Conditions Precedent to Obligations of Purchasers).*  The following amendments and additions are hereby made to Section 9.1 of the Agreement:  (i) Section 9.1(e) of the Agreement is hereby deleted and replaced in its entirety with "[Reserved]", (ii) Section 9.1(g) of the Agreement is hereby deleted and replaced in its entirety with "[Reserved]", (iii) the "and" at the end of Section 9.1(o) of the Agreement is hereby deleted, (iv) the "." at the end of

Section 9.1(p) of the Agreement is hereby deleted and replaced with "; and" and (v) the following Section 9.1(q) is hereby added to the Agreement:

> "(q) Seller shall have delivered, or caused to be delivered, to Purchasers an amendment to the Shared Charter Services Agreement (the form and substance of which shall be reasonably satisfactory to Purchasers and Seller) fully executed by Seller and HSG that provides that (i) the Shared Charter Services Agreement shall terminate following the last game (and any return flight following such last game) of the Texas Rangers' 2010 MLB baseball season (including, if applicable, the final MLB post-season game in which the Texas Rangers participate in 2010), without premium or penalty payable by TRBP (or any successor or assign) and (ii) in the event that (A) before or after Closing, the Dallas Stars (or any successor or assign) do not pay the monthly lease payments due under the Paradigm Aircraft Agreement on the first day of each of the months of September, October and November 2010 (and Seller has delivered notice to Purchasers at least ten (10) days prior to the applicable due date for any such payment that the Dallas Stars do not intend to pay), or (B) after Closing, in the absence of any such notice of non-payment from Seller, if Purchasers otherwise learn or reasonably believe that such payment either will not be made or has not been made, Seller (or its successor or assign, as applicable), in its sole discretion, may make one or more of the following monthly lease payments to HSG (or directly to Paradigm Air Operators, Inc. (d/b/a SportsJet Air Operators, LLC), upon prompt written notice to HSG) through the end of the Texas Rangers' 2010 baseball season (without prorating any such payments) on the dates and in the amounts as follows: (x) the payment due September 1, 2010, in the amount of $635,000 for use of the aircraft in October 2010 (the "**September Payment**"), (y) the payment due October 1, 2010, in the amount of $615,000 for use of the aircraft in November 2010 (the "**October Payment**"), and (z) the payment due November 1, 2010, in the amount of $615,000 for use of the aircraft in December 2010 (the "**November Payment**"); provided that, (x) in each case if requested by Purchasers, Seller shall make the September Payment if Closing has not occurred by September 1, 2010, the October Payment if Closing has not occurred by October 1, 2010, and the November Payment if Closing has not occurred by November 1, 2010, and (y) HSG will not have any liability to Seller (or any of its successors or assigns) in connection with any failure to pay any lease payments due under the Paradigm Aircraft Agreement after August 31, 2010, except with respect to any failure by HSG to pay any lease payments due under the Paradigm Aircraft Agreement after August 31, 2010 with funds paid by Purchasers to HSG for that purpose (for which failure HSG will be liable to Purchasers)."

   4. *Section 9.2 (Conditions Precedent to Obligations of Seller)*. The following amendments and additions are hereby made to Section 9.2 of the Agreement: (i) Section 9.2(d) of the Agreement is hereby deleted and replaced in its entirety with "[Reserved]" and (ii) Section 9.2(g) of the Agreement is hereby deleted and replaced in its entirety with "[Reserved]".

**5.** *Section 10.5(b) (Liability Limitations)*.  The second sentence of Section 10.5(b) of the Agreement is hereby deleted and replaced in its entirety with the following:

> "In no event shall the aggregate indemnification to be paid by Purchasers under this Article X exceed $12,000,000; provided, however, that neither the Sub-Basket nor the Basket shall apply to any indemnification obligations for Losses arising from the breach of any representation or warranty of Purchasers contained in this Agreement if such breach arose from intentional fraud committed with the actual knowledge of Purchasers."

**6.** *Section 10.7 (Indemnity Escrow)*.  The first sentence of Section 10.7 of the Agreement is hereby deleted and replaced in its entirety with the following:

> "On the Closing Date, Purchasers shall pay to a financial institution to be mutually agreed upon, as agent to Purchasers and Seller (the "Escrow Agent"), in immediately available funds, to the account designated by the Escrow Agent (the "Escrow Account"), an amount equal to $12,000,000 (the "Escrow Amount"), in accordance with the terms of this Agreement and an Escrow Agreement, which will be executed at the Closing, by and among Baseball Express, Seller and the Escrow Agent (the "Escrow Agreement"); provided that, if the Closing occurs after (x) September 1, 2010 and Purchasers have not made the September Payment, then the Escrow Amount shall be $11,230,000, (y) October 1, 2010 and Purchasers have not made the October Payment, then the Escrow Amount shall be $10,615,000, or (z) November 1, 2010 and Purchasers have not made the November Payment, then the Escrow Amount shall be $10,000,000.  Purchasers shall be promptly reimbursed out of the Escrow Account, from the first dollar without the applicability of any Sub-Basket or Basket, (i) if Purchasers paid the September Payment, for the entire amount of the September Payment, (ii) if Purchasers paid the October Payment, for the entire amount of the October Payment, and (iii) if Purchasers paid the November Payment, for the entire amount of the November Payment.  Funds shall be promptly released to Seller out of the Escrow Account, from the first dollar without the applicability of any Sub-Basket or Basket, (i) if Purchasers did not pay the September Payment and the initial Escrow Amount was $12,000,000, for the entire amount of the September Payment, (ii) if Purchasers did not pay the October Payment and the initial Escrow Amount was at least $11,230,000, for the entire amount of the October Payment, and (iii) if Purchasers did not pay the November Payment and the initial Escrow Amount was at least $10,615,000, for the entire amount of the November Payment."

**7.** *No Other Modification.*  Except as set forth in this Amendment, the terms and conditions of the Agreement shall remain in full force and effect.  Each reference in the Agreement to "this Agreement," "hereunder," "hereof," "herein," or words of similar import shall mean and be a reference to the Agreement as amended by this Amendment.  No reference to this Amendment (or any amendment) need be made in any instrument or document at any time

referring to the Agreement, a reference to the Agreement in any such instrument or document to be deemed to be a reference to the Agreement as amended by this Amendment.

      **8.**  *Counterparts.*  This Amendment may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Amendment and all of which, when taken together, will be deemed to constitute one and the same agreement.

      **9.**  *Governing Law.*  This Amendment, and all claims or causes of action (whether in contract or tort) that may be based upon, arise out of or relate to this Amendment, or the negotiation, execution or performance of this Amendment (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Amendment or as an inducement to enter into this Amendment), shall be governed by the internal laws of the State of Texas.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]**

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective authorized officers as of the date first written above.

                **TEXAS RANGERS BASEBALL PARTNERS**

                By: _____
                    Name: Kellie Fischer
                    Title:   Chief Financial Officer and Secretary

**RANGERS BASEBALL EXPRESS LLC**

By: _____
      Name: Chuck Greenberg
      Title: Chief Executive Officer