Louis R. Strubeck, Jr. (SBT 19425600)
Michael C. Steindorf (SBT 19134800)
Scott P. Drake (SBT 24026812)
Gregory M. Wilkes (SBT 24047105)
Elizabeth N. Boydston (SBT 24053684)
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

PROPOSED COUNSEL FOR RANGERS EQUITY HOLDINGS, L.P.
AND RANGERS EQUITY HOLDINGS GP, LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

------------------------------------------------------------x
:
In re : Chapter 11
:
TEXAS RANGERS BASEBALL PARTNERS, : Case No. 10-43400-DML-11
:
:
Debtor. :
------------------------------------------------------------x
:
In re :
:
: Chapter 11
RANGERS EQUITY HOLDINGS, L.P., :
: Case No. 10-43624-DML-11
:
Debtor. :
------------------------------------------------------------x
In re :
:
RANGERS EQUITY HOLDINGS, G.P., LLC, : Chapter 11
:
: Case No. 10-43625-DML-11
Debtor. :
------------------------------------------------------------x

**MOTION OF RANGERS EQUITY HOLDINGS L.P. AND RANGERS EQUITY
HOLDINGS G.P., LLC PURSUANT TO 11 U.S.C. § 105 OF THE BANKRUPTCY
CODE FOR SUBSTANTIVE CONSOLIDATION
<u>OF DEBTORS' BANKRUPTCY ESTATES</u>**

TO THE HONORABLE D. MICHAEL LYNN,
UNITED STATES BANKRUPTCY JUDGE:

Rangers Equity Holdings, L.P. and Rangers Equity Holdings GP, LLC, by and through William Snyder, their Chief Restructuring Officer ("**CRO**"), hereby file this *Motion For Substantive Consolidation Of Debtors' Bankruptcy Estates* (the "**Motion**")[1] seeking substantive consolidation of the bankruptcy estates of Texas Rangers Baseball Partners ("**TRBP**" or the "**Debtor**"), Rangers Equity Holdings L.P. ("**Rangers Equity LP**") and Rangers Equity Holdings GP, LLC ("**Rangers Equity GP**," and together with Rangers Equity LP, the "**Equity Debtors**"), and in support thereof respectfully state as follows:

## PRELIMINARY STATEMENT

1. At all times relevant, throughout their existence, TRBP, Rangers Equity LP and Rangers Equity GP (along with a number of other affiliated entities who presently are not debtors in bankruptcy cases pending before this Court) were operated as a single business enterprise. The entities share common offices, ownership and common management by the same owner, officers and directors. Furthermore, Hicks Sports Group, LLC ("**HSG**"), as the ultimate parent entity, operates, manages, and until July 15, 2010, comingled the assets and liabilities of all Ranger-related entities as if they were a single entity. Thus, as set forth more fully below, ample identity of interest exists between the Equity Debtors and the Debtor to warrant substantive consolidation by this Court.

2. Substantively consolidating the Debtor's and the Equity Debtors' estates will result in a significant benefit to the Equity Debtors' estates and their creditors, as the significant number

---

[1] The Fifth Circuit in Wells Fargo Bank of Texas N.A. v. Sommers *(*In re Amco Ins.*)*, 444 F.3d 690, 695 (5th Cir. 2006) acknowledged that the request for substantive consolidation was properly brought in the bankruptcy court through motion. See also In re Green Aggregates Inc., 345 Fed. Appx. 890, 891 (5th Cir. 2009) (same).

of fraudulent midnight transfers that occurred on the eve of bankruptcy at the Debtor level will be preserved for prosecution for the benefit of the creditors at the Equity Debtors' level that were meaningfully impacted by such transfers, rather than potential being eviscerated by the Debtor's current pre-pack plan. Absent substantive consolidation, the value of these transfers likely will be lost forever.

3. Importantly, the enhancement in value to the Equity Debtors' estates through the preservation of these fraudulent transfers will not result in any corresponding prejudice to the creditors of the Debtor's estate, because the Court can subordinate the Lender Parties'[2] claims to the general unsecured creditors, with the exception of the $75 million Debtor-level guarantee[3]—thus leaving the current waterfall structure at the Debtor level undisturbed. Accordingly, substantive consolidation is both appropriate and necessary.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

5. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

6. By this Motion, the CRO requests entry of an order pursuant to section 105(a) of title 11, United States Code (the "**Bankruptcy Code**") substantively consolidating the bankruptcy estates of TRBP, Rangers Equity LP and Rangers Equity GP.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Joint Brief of Ad Hoc Group of First Lien Lenders, JP Morgan Chase Bank, N.A., as First Lien Agent, and GSP Finance LLC, as Second Lien Agent, Regarding Certain Issues Related to Proposed Plan of Reorganization and Disclosure Statement, submitted on June 11, 2010 (Docket No. 163).

[3] Defined infra herein as the TRBP Guaranty Cap.

## FACTUAL AND PROCEDURAL BACKGROUND

7. Rangers Equity LP, a Delaware limited partnership, holds a 99% partnership interest in TRBP, and Rangers Equity GP, a Texas limited liability company, holds a 1% partnership interest in TRBP. Rangers Equity GP is a wholly-owned subsidiary of Rangers Equity LP. Both Rangers Equity LP and Rangers Equity GP are holding companies with no operating assets and are indirect, wholly-owned subsidiaries of HSG. HSG is a sports and entertainment holding company, which is an affiliate of, and indirectly controlled by, Thomas O. Hicks. See Amended Disclosure Statement Relating to the Amended Prepackaged Plan of Reorganization for Texas Rangers Baseball Partners Under Chapter 11 of the Bankruptcy Code (the "**Disclosure Statement**"), pg. 2.

8. TRBP's managing partner, Rangers Equity LP, acts on behalf of TRBP with respect to the business of TRBP. There is complete overlap between the owner, officers and directors of TRBP, Rangers Equity LP and Rangers Equity GP. Mr. Hicks is the Chairman of the Board and Chief Executive Officer of TRBP, Rangers Equity GP and Rangers Equity LP. Mr. Hicks also serves as the Chairman of the Board, President and Chief Executive Officer of HSG, HSG Sports Group Holdings LLC, and HSG Partnership Holdings LLC. Mr. Lynn Nolan Ryan, Jr. is the President of both TRBP and Rangers Equity LP. Ms. Kellie L. Fischer is the Chief Financial Officer and Secretary of TRBP, Rangers Equity LP and Rangers Equity GP, the Executive Vice President and Assistant Secretary of HSG and Vice President and Assistant Secretary of HSG Partnership Holdings LLC. Id. at pgs. 2-4.

9. TRBP is a limited guarantor under (i) that certain Amended and Restated First Lien Credit and Guaranty Agreement, dated as of December 19, 2006 (the "**First Lien Credit Agreement**"), by and among HSG Sports Group Holdings LLC, a Texas limited liability company

("HSGH"), HSG, certain subsidiaries of HSG as guarantors, including Rangers Equity LP and Rangers Equity GP, and the lenders party thereto (the "**First Lien Lenders**"), with JP Morgan Chase Bank, N.A. as administrative and collateral agent (the "**First Lien Agent**"), and (ii) that certain Second Lien Credit and Guaranty Agreement, dated as of December 19, 2006 (the "**Second Lien Credit Agreement**"), by and among HSGH, HSG, certain subsidiaries of HSG, as guarantors, including Rangers Equity LP and Rangers Equity GP, and the lenders party thereto (the "**Second Lien Lenders**"), with GSP Finance LLC as administrative and collateral agent (the "**Second Lien Agent**"). TRBP's obligations under the First Lien Credit Agreement and the Second Lien Credit Agreement are each limited to a maximum aggregate amount of $75 million (the "**TRBP Guaranty Cap**"). Id. at 4.

10. On May 24, 2010, TRBP filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in order to effectuate a pre-arranged sale of the Rangers. That same day, TRBP filed its Prepackaged Plan of Reorganization of Texas Rangers Baseball Partners Under Chapter 11 of the Bankruptcy Code (the "**Plan**"), which has been subsequently amended. Case No. 10-43400, Dkt. Nos. 31, 227 and 276.

11. On May 28, 2010, involuntary petitions for relief were filed against Rangers Equity LP and Rangers Equity GP and those entities consented to the entry of orders for relief.

## ARGUMENT AND AUTHORITY

12. Substantive consolidation is a judicially-created doctrine considered to arise from the general equity powers exercised by bankruptcy courts.[4] Although no specific provision of the

---

[4] See, e.g., F.D.I.C. v. Colonial Realty Co., 966 F.2d 57 (2d Cir. 1992); Eastgroup Prop. v. Southern Motel Assocs., Ltd., 935 F.2d 245 (11th Cir. 1991); Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp.), 810 F.2d 270 (D.C. Cir. 1987); In re Continental Vending Mach. Corp., 517 F.2d 997 (2d Cir. 1975), cert. denied, 424 U.S. 913 (1976); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723 (Bankr. S.D. N.Y. 1992); In re Alico Mining, Inc., 278 B.R. 586, 588 (Bankr. M.D. Fla. 2002).

Bankruptcy Code expressly authorizes a bankruptcy court to order substantive consolidation, such authority is captured under section 105(a) of the Bankruptcy Code, which provides that: "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [the Bankruptcy Code]." 11 U.S.C. § 105(a); see also S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.), 817 F.2d 1142, 1145 n.2 (5th Cir. 1987); In re Nucentrix Broadband Networks, Inc., 2004 Bankr. LEXIS 2552, at *28-29 (Bankr. N.D. Tex. May 10, 2004). The doctrine of substantive consolidation allows a bankruptcy court to consolidate the assets and liabilities of separate legal entities and to treat those assets and liabilities as held and incurred by a single entity. See Clyde Bergemann, Inc. v. Babcock and Wilcox Co., 250 F.3d 955, 958 n.5 (5th Cir. 2001); Eastgroup Props., 935 F.2d at 245; Chem. Bank N.Y. Trust Co. v. Kheel, 369 F.2d 845, 847 (2d Cir. 1966).

13. Given that the power to order substantive consolidation derives from the equitable jurisdiction of the bankruptcy court, courts determine the issue of whether to order consolidation on a case-by-case basis, and the decisions reflect the court's analyses of the particular factual circumstances presented. In re Nucentrix Broadband Networks, Inc., 2004 Bankr. LEXIS 2552, at *28-29 (Bankr. N.D. Tex. May 10, 2004); In re Permian Producers Drilling, Inc., 263 B.R. 510, 517 (W.D. Tex. 2000); see also FDIC v. Colonial Realty Co., 966 F.2d 57 (2d Cir. 1992); In re World Access, Inc., 301 B.R. 217, 272 (Bankr. N.D. Ill. 2003).

14. The Fifth Circuit has yet to articulate a particular test for determining whether or not to substantively consolidate bankruptcy estates; however, courts have articulated several different tests to determine when substantive consolidation is appropriate and will be ordered.

    (a)    The Auto-Train and Eastgroup Test

15. The D.C. Circuit, in <u>Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp.)</u>, 810 F.2d 270, 276 (D.C. Cir. 1987), enunciated a three-part test for determining whether or not substantive consolidation is warranted:

    (i)    The proponent must show a substantial identity between the entities to be consolidated, and

    (ii)    The proponent must show that consolidation is necessary to avoid some harm or to realize some benefit, and

    (iii)    If the proponent has met the first two elements and a creditor objects, then the creditor has the burden (and opportunity) of demonstrating that it relied on the separate credit of one of the entities and that it will be prejudiced by the consolidation. If the objecting creditor meets this burden, then the court may order consolidation only if it determines that the demonstrated benefits of consolidation "heavily" outweigh the harm.

<u>Auto-Train Corp.</u>, 810, F.2d at 276.

16. The Eleventh Circuit, in <u>Eastgroup Prop. v. Southern Motel Assocs., Ltd.</u>, 935 F.2d 245, 248 (11th Cir. 1991), adopted and elaborated on the D.C. Circuit test and suggested that the substantive consolidation proponent should address the following specific factors:

    (i)    The presence or absence of consolidated financial statements;
    (ii)    The unity of interest and ownership between various corporate entities;
    (iii)    The existence of parent and intercorporate guarantees on loans;
    (iv)    The degree of difficulty in segregating and ascertaining individual assets and liabilities;
    (v)    The existence of transfers of assets without formal observance of corporate formalities;
    (vi)    The commingling of assets and business functions;
    (vii)    The profitability of consolidation at a single physical location;
    (viii)    The parent owning the majority of the subsidiary's stock;
    (ix)    The entities having common officers or directors;
    (x)    The subsidiary being grossly under-capitalized;
    (xi)    The subsidiary transacting business solely with the parent; and
    (xii)    Both entities disregarding the legal requirements of the subsidiary as a separate organization.

Eastgroup, 935 F.2d at 248; see also In re Vecco Constr. Indus., Inc., 4 B.R. 407, 410 (Bankr. E.D. Va. 1980) (listing the first seven factors).

17. In implementing this standard, the Eleventh Circuit, like many courts, stresses that no one factor is determinative and that these factors are only examples of information a court could consider in determining whether there was a substantial identity between the entities and whether consolidation is necessary to avoid harm or realize a benefit.

    (b)    The Augie/Restivo Test

18. The Second Circuit, in the case of In re Augie/Restivo Baking Co., 860 F.2d 515 (2d Cir. 1988), devised its own test for determining whether or not substantive consolidation is warranted. In particular, the Second Circuit summarized its test as whether:

> (i)      The creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit, or
>
> (ii)     The affairs of debtors are so entangled that consolidation will benefit all creditors because untangling is either impossible or so costly as to consume the assets.

Augie/Restivo, 860 F.2d at 518; see also In re Owens Corning, 419 F.3d 195, 211 (3d Cir. 2005) (modifying the Augie/Restivo test); In re Bonham, 229 F.3d 750, 767 (9th Cir. 2000) (adopting the Augie/Restivo test).

19. With respect to cases applying substantive consolidation in this district, in the case of In re DRW Property Co., 54 B.R. 489 (Bankr. N.D. Tex. 1985), the bankruptcy court for the Northern District of Texas formulated its version of a balancing test for substantive consolidation, which provided that "the benefits of consolidation must outweigh the harm it would cause to creditors," and that the "parties seeking consolidation bear the burden of proving that any prejudice resulting from consolidation is outweighed by the greater prejudice posed by the continued

separation of the estates." DRW Property, 54 B.R. at 495. The court went on to provide a list of factors (each of which is contained in the Eastgroup factors outlined above) courts should use in determining whether to order substantive consolidation.[5] These factors should be "evaluated" within the larger context of balancing the prejudice resulting from the proposed order of consolidation against the prejudice the movant alleges it suffers from debtors' separateness. Id,; see also In re Nucentrix Broadband Networks, Inc., 2004 Bankr. LEXIS 2552, at *29-30 (Bankr. N.D. Tex. May 10, 2004) (noting that substantive consolidation is an equitable remedy and analyzing a list of factors in determining whether to authorize substantive consolidation).

20. Thus, based on the case law outlined above, a court's inquiry requires an examination, inter alia, of the following two general topics, (A) whether there is a substantial identity between the entities and (B) whether consolidation is necessary to avoid harm or realize a benefit, each of which is discussed below.

### A. There Is A Substantial Identity Of Interest Between TRBP, Rangers Equity LP and Rangers Equity GP.

21. Based on information that has been made available for this analysis to date, it is now apparent that for years, if not at all times, TRBP, Rangers Equity LP and Rangers Equity GP have been operated by their management as a single entity. As a result, numerous Eastgroup factors support the conclusion that a substantial identity exists between the Debtor and the Equity Debtors, including the fact that:

(i) A single tax return is filed on behalf of all the debtors and HSG;

---

[5] The factors include: the degree of difficulty in segregating and ascertaining individual assets and liabilities; the presence or absence of consolidated financial statements; the profitability of consolidation of a single physical location; the commingling of assets and business functions; the unity of interests and ownership between the various corporate entities; the existence of parent and intercorporate guarantees on loans; and the transfer of assets without formal observance of corporate formalities. Id.

(ii) TRBP, Rangers Equity LP and Rangers Equity GP are all indirectly owned subsidiaries of HSG;

(iii) TRBP, Rangers Equity LP and Rangers Equity GP are each guarantors the First Lien Credit Agreement and the Second Lien Credit Agreement, which evidence loans made to HSG;

(iv) TRBP received monetary assistance from Mr. Hicks in order to provide overdraft protection to TRBP. This monetary infusion was not recorded in any of TRBP's books or records or evidenced by any formal documentation until shortly before TRBP filed for bankruptcy protection. Once documented, the same HSG officer signed on behalf of both TRBP and HSG;

(v) TRBP, Rangers Equity LP and Rangers Equity GP maintained a single bank account controlled HSG;

(vi) Payroll and other expenses of each of the debtors were administered by HSG and paid from a comingled bank account;

(vii) Rangers Equity LP holds a 99% partnership interest in TRBP and Rangers Equity GP holds a 1% partnership interest in TRBP. Rangers Equity GP is a wholly-owned subsidiary of Rangers Equity LP; and

(viii) There is complete overlap between the officers and directors of TRBP, Rangers Equity LP and Rangers Equity GP.

22. Moreover, on information and belief, TRBP historically has been, and remains today, grossly undercapitalized. Since 2002, TRBP maintained negative equity every year except one. It has failed to fund in excess of $45 million in deferred compensation obligations, despite repeated requests by Major League Baseball.[6] Its operations were maintained by "just-in-time" capital contributions and loans as cash flows from operations were insufficient to meet ongoing expense obligations. As part of this course of conduct, and as a result of TRBP's inadequate capitalization, in April 2009, Mr. Hicks agreed to provide an "overdraft protection" loan to TRBP, and in June and November 2009, Baseball Finance LLC, an affiliate of the Commissioner of Baseball was required to extend a secured revolving loan facility of up to $25 million in order for TRBP to maintain operations. Thus, ample evidence exists that TRBP was at all relevant times grossly undercapitalized.

---

[6] See January 8, 2010 letter from Robert A. DuPuy attached hereto as Exhibit A.

23. In addition to the foregoing, major creditors and/or other parties dealt with the Debtor and the Equity Debtors as a single entity. For example, as a condition to entering into the amended and restated Secured Revolving Promissory Note with Baseball Finance LLC in order to fund ongoing working capital needs for the Debtor, HSG, HSGH, Mr. Hicks, Rangers Equity GP, Rangers Equity LP, the Debtor and the Office of the Commissioner of Baseball, entered into that certain Amended and Restated Voluntary Support Agreement dated November 25, 2009 (the "**Modified VSA**"). The Modified VSA specifically related only to support for HSG and TRBP; however, as shown by the parties to this agreement, Major League Baseball was dealing with TRBP, Rangers Equity GP and Rangers Equity LP, along with the remainder of the HSG corporate family, as a single entity. See Exhibit A.

24. Even on the eve of bankruptcy, when Major League Baseball amended the Modified VSA, the parties to that certain Second Amended and Restated Voluntary Support Agreement dated May 23, 2010 included TRBP, Rangers Equity LP and Rangers Equity GP. *See* Exhibit B.

25. Moreover, and more recently, despite ostensibly being an asset purchase agreement (the "**APA**") between the Debtor and Rangers Baseball Express LLC ("**RBE**"), Kellie Fischer, who holds the identical position of Chief Financial Officer for Rangers Equity GP and Rangers Equity LP as she does for the Debtor, signed the APA in her capacity as CFO of Rangers Equity GP. Thus, as recently as May 23, 2010, the date the parties signed the APA, the parties, including RBE, were apparently interacting with the Debtor and the Equity Debtors as if they were the same legal entity. Accordingly, this Court should grant the Motion and substantively consolidate the debtors

### B. Consolidation Is Necessary To Avoid Harm And Realize A Benefit And Can Be Accomplished Without Imposing Unfair Prejudice To Creditors.

26. As noted above, TRBP's liability under the First Lien Credit Agreement and the Second Lien Credit Agreement is capped at $75 million. However, Rangers Equity LP and Rangers Equity GP have unlimited liability for these claims, which total in excess of $600 million. Accordingly, any recovery that Rangers Equity LP and Rangers Equity GP receive from the TRBP bankruptcy estate will be used to satisfy the secured claims of the creditors of the Equity Debtors. Thus, the CRO, whose fiduciary duty is to maximize the Equity Debtors' estates, and the Equity Debtors' creditors have a direct interest in ensuring the highest possible return to equity from the TRBP bankruptcy case.

27. Based on this goal of maximizing the Debtor's value, the CRO seeks substantive consolidation to preserve the potentially sizeable value of certain avoidance actions that may otherwise be lost if the Equity Debtors' bankruptcy estates are not substantively consolidated with the Debtor's estate. For example, on the eve of filing bankruptcy, TRBP incurred significant debt for which it was not otherwise obligated by agreeing to reimburse certain of HSG's financial advisors for at least $9 million in transaction costs. See Disclosure Statement, at 11. These obligations were evidenced by contracts entered into between the financial institution and HSG, not the Debtor. Also on the eve of bankruptcy, TRBP signed a Shared Charter Services Agreement with HSG, whereby TRBP became obligated to pay HSG, at a price substantially above market, for a charter aircraft lease that HSG had entered into with an entity in which Hicks has an interest and which TRBP had not previously been a party.

28. On information and belief, other transactions to insiders and other parties exist that are likely subject to avoidance by creditors of the Equity Debtors, who have been harmed by such transfers but whom are otherwise unable to pursue such actions within the confines of TRBP's

current prepackaged plan. These transfers are only subject to avoidance if this Court grants the instant Motion. In the simplest of terms, if this Court grants substantive consolidation, the Court will preserve significant value at the Debtor level for the benefit of creditors of the Equity Debtors' estates.

29. Critically, there is no resulting harm to the creditors of the Debtor's estate, if the Court subordinates the Lender Parties' claims at the Debtor level that are in excess of the TRBP Guaranty Cap of $75 million. Should the Court subordinate the remainder of the Lender Parties' claims to the general unsecured claims, equitable subordination will not only preserve the current waterfall distribution scheme and allow 100% of TRBP's current creditors to be paid in full, but it will also allow all creditors of the Equity Debtors to pursue the improper and fraudulent transfers that occurred on the eve of TRBP's bankruptcy filing. As such, granting the Motion avoids the one primary concern courts typically have in considering substantive consolidation requests—that no unfair prejudice results to creditors of any of the estates.

## CONCLUSION

30. For the reasons set forth above, the Equity Debtors, by and through their CRO, respectfully request that the Court substantively consolidate the bankruptcy estates of Texas Rangers Bankruptcy Partners, Rangers Equity Holdings LP and Rangers Equity Holdings GP, LLC and grant such other and further relief to which the Equity Debtors may be entitled .

Dated: July 19, 2010                                Respectfully submitted,

FULBRIGHT & JAWORSKI L.L.P.

By:  */s/ Louis R. Strubeck, Jr.*
    Louis R. Strubeck, Jr. (SBT 19425600)
    Michael C. Steindorf (SBT 19134800)
    Scott P. Drake (SBT 24026812)
    Gregory M. Wilkes (SBT 24047105)
    Elizabeth N. Boydston (SBT 24053684)
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

PROPOSED COUNSEL FOR
RANGERS EQUITY HOLDINGS, L.P. AND
RANGERS EQUITY HOLDINGS GP, LLC