IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| In Re: | **Case No. 10-43400-dml-11**<br>Chapter 11 |
| TEXAS RANGERS BASEBALL PARTNERS, | Fort Worth, Texas<br>Monday, July 26, 2010 |
| Debtor. | 10:30 a.m. Docket<br><br>STATUS CONFERENCE |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE D. MICHAEL LYNN,
UNITED STATES BANKRUPTCY JUDGE.

APPEARANCES:

| | |
|---|---|
| For the Debtor:<br>*(Via Telephone)* | Michelle Larson<br>WEIL, GOTSHAL & MANGES, LLP<br>200 Crescent Court, Suite 300<br>Dallas, TX 75201-6950<br>(214) 746-7730 |
| For the Office of the<br>Commissioner of Baseball:<br>*(Via Telephone)* | Stephen J. Shimshak<br>Christopher Brumm<br>PAUL, WEISS, RIFKIND, WHARTON &<br>  GARRISON, LLP<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>(212) 373-3133 |
| For Rangers Baseball<br>Express:<br>*(Via Telephone)* | Glenn Kurtz<br>Greg Starner<br>WHITE & CASE, LLP<br>1155 Avenue of the Americas<br>New York, NY 10036-2787<br>(212) 819-8839 |
| For GSP Finance, LLC:<br>*(Via Telephone)* | David A. Sullivan<br>Jason Young<br>CLIFFORD CHANCE<br>31 West 52nd Street<br>New York, NY 10019-6131<br>(212) 878-4948 |

```
 1  APPEARANCES, cont'd.:

 2  For Major League Baseball      Richard M. Seltzer
    Players Association:           COHEN, WEISS AND SIMON, LLP
 3  (Via Telephone)                330 West 42nd Street
                                   New York, NY  10036-6976
 4                                 (212) 563-4100

 5  For Fox Cable Ventures,        Paul J. Laurin
    Inc.:                          RUTTER HOBBS & DAVIDOFF
 6  (Via Telephone)                  INCORPORATED
                                   1901 Avenue of the Stars, Suite
 7                                   1700
                                   Los Angeles, CA  90067
 8                                 (310) 286-1700

 9  For the Debtor:                Ronit J. Berkovich
                                   WEIL, GOTSHAL & MANGES, LLP
10                                 767 Fifth Avenue
                                   New York, NY  10153-0119
11                                 (212) 310-8534

12  Debtor's Conflicts Counsel:    Jeff P. Prostok
                                   FORSHEY & PROSTOK, LLP
13                                 777 Main Street, Suite 1290
                                   Fort Worth, TX  76102
14                                 (817) 877-8855

15  For the Unsecured              Jeffrey Fine
    Creditors' Committee:          K&L GATES, LLP
16                                 1717 Main Street, Suite 2800
                                   Dallas, TX  75201-7342
17                                 (214) 939-5567

18  For Rangers Equity             Louis Strubeck
    Holding Entities:              FULBRIGHT & JAWORSKI, LLP
19                                 2200 Ross Avenue Suite 2800
                                   Dallas, TX  77010
20                                 (214) 855-8000

21  For JPMorgan Chase:            Scott M. DeWolf
                                   ROCHELLE MCCULLOUGH, LLP
22                                 325 N. St. Paul St., Suite 4500
                                   Dallas, TX  75201
23                                 (214) 953-0182

24

25
```

```
 1  APPEARANCES, cont'd.:

 2  For Mark Cuban Entity        Clifton R. Jessup, Jr.
    Prospective Bidder:          GREENBERG TRAURIG, LLP
 3                               2200 Ross Avenue, Suite 5200
                                 Dallas, TX  75201
 4                               (214) 665-3638

 5  For Major League Baseball    Ian Roberts
    Players Association:         BAKER BOTTS, LLP
 6                               2001 Ross Avenue
                                 Dallas, TX  75201
 7                               (214) 953-6719

 8  For Alexander Rodriguez:     Joseph J. Wielebinski, Jr.
                                 MUNSCH, HARDT, KOPF, & HARR, P.C.
 9                               3800 Lincoln Plaza
                                 500 North Akard Street
10                               Dallas, TX  75201-6659
                                 (214) 855-7561
11
    For Fox Cable Ventures,      Robert P. Franke
12  Inc.:                        STRASBURGER & PRICE, LLP
                                 901 Main Street, Suite 4300
13                               Dallas, TX  75202
                                 (214) 651-4300
14
    For the Office of the        Peter D'Apice
15  Commissioner of Baseball:    STUTZMAN BROMBERG ESSERMAN &
                                    PLIFKA, PC
16                               2323 Bryan Street, Suite 2200
                                 Dallas, TX 75201
17                               (214) 969-4900

18  For GSP Finance, LLC:        Andrew Spaniol
                                 GARDERE, WYNNE AND SEWELL, LLP
19                               1601 Elm Street, Suite 3000
                                 Dallas, TX  75201
20                               (214) 999-4961

21  For Ad Hoc Group of First    Daniel C. Stewart
    Lien Lenders:                VINSON & ELKINS, LLP
22                               Trammell Crow Center
                                 2001 Ross Avenue, Suite 3700
23                               Dallas, TX  75201-2975
                                 (214) 220-7761
24

25
```

4

APPEARANCES, cont'd.:

| | |
|---|---|
| For Ad Hoc Group of First Lien Lenders: | Andrew M. Leblanc<br>MILBANK, TWEED, HADLEY & MCCLOY, LLP<br>International Square Building<br>1850 K Street, NW<br>Washington, DC  20006<br>(202) 835-7574 |
| For Rangers Baseball Express: | Thomas E. Lauria<br>WHITE & CASE, LLP<br>Wachovia Financial Center<br>200 South Biscayne Boulevard, Suite 4900<br>Miami, FL  33131-2352<br>(305) 995-5282 |
| Court Recorder: | Sandy Maben<br>UNITED STATES BANKRUPTCY COURT<br>510 W. 10th Street<br>Fort Worth, TX  76102<br>(817) 333-6015 |
| Transcription Service: | Kathy Rehling<br>209 Bay Circle<br>Coppell, TX  75019<br>(972) 304-1998 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

```
 1              FORT WORTH, TEXAS - JULY 26, 2010 - 10:31 A.M.
 2           THE COURT:  Please be seated.  All right.  This is the
 3   Texas Rangers Baseball Partners.  I'm going to read the
 4   telephone roll.  We have Ms. Larson for Texas Rangers Baseball
 5   Partners?
 6           MS. LARSON:  Good morning, Your Honor.
 7           THE COURT:  Good morning.  Mr. Brumm and Mr. Shimshak
 8   for the Commissioner of Baseball?
 9           MR. SHIMSHAK:  Yes.  Good morning, Your Honor.
10           MR. BRUMM:  Good morning, Your Honor.
11           THE COURT:  Mr. Esserman for the Commissioner of
12   Baseball?
13           MR. SHIMSHAK:  Your Honor, Mr. Esserman will not be
14   participating today.  He had a conflicting meeting.
15           THE COURT:  All right.  Let me give you all fair
16   warning.  For some reason or other, you're not coming in very
17   loudly.
18       Mr. Averch and Mr. Starner for Rangers Baseball Express?
19           MR. KURTZ:  Good morning, Your Honor.  Glenn Kurtz and
20   Greg Starner are on.
21           THE COURT:  All right.  Mr. Seider and Mr. Fabiani for
22   JPMorgan Chase?
23       (No response.)
24           THE COURT:  All right.  Mr. Sullivan and Mr. Young for
25   GSP Finance?
```

1     MR. SULLIVAN:  Good morning, Your Honor.

2     THE COURT:  Good morning.

3     MR. YOUNG:  Good morning.

4     THE COURT:  Mr. Seltzer for Major League Baseball
5  Players Association?

6     MR. SELTZER:  Good morning, Your Honor.

7     THE COURT:  And Mr. Laurin for Fox Sports Network?

8     MR. LAURIN:  Yes.  Good morning, Your Honor.

9     THE COURT:  I assume, Mr. Laurin, that you're
10 attending not in the capacity of a reporter, but rather in the
11 capacity of a contract partner of the Debtor.  Is that correct?

12     MR. LAURIN:  That is correct, sir.  I am not a
13 journalist.

14     THE COURT:  Well, that could be said of others as
15 well.

16     Could I have appearances in the courtroom, please?

17     MS. BERKOVICH:  Ronit Berkovich; Weil Gotshal &
18 Manges; --

19     THE COURT:  You've got to do it into the microphone.

20     MS. BERKOVICH:  Okay.  Ronit Berkovich; Weil Gotshal &
21 Manges; for the Debtor, --

22     THE COURT:  Very good.

23     MS. BERKOVICH:  -- Texas Rangers Baseball Partners.

24     THE COURT:  Very good.

25     MR. PROSTOK:  Jeff Prostok, conflicts counsel for the

1 Debtor.

2     MR. FINE: Your Honor, Jeffrey Fine; K&L Gates; on
3 behalf of the Committee.

4     MR. STRUBECK: Good morning, Your Honor. Louis
5 Strubeck of Fulbright & Jaworski on behalf of the Ranger Equity
6 debtors.

7     MR. DEWOLF: Good morning, Your Honor. Scott DeWolf;
8 Rochelle McCullough; on behalf of JPMorgan Chase.

9     MR. JESSUP: Good morning, Your Honor. Clifton Jessup
10 of Greenberg Traurig on behalf of a Mark Cuban company,
11 prospective bidder.

12     MR. ROBERTS: Good morning, Your Honor. Ian Roberts
13 of Baker Botts on behalf of the Players Association.

14     MR. WIELEBINSKI: Good morning, Your Honor. Joe
15 Wielebinski; Munsch Hardt. I represent Alex Rodriguez.

16     MR. FRANKE: Good morning, Your Honor. Bob Franke;
17 Strasburger & Price; Fox Sports Partners.

18     MR. D'APICE: Good morning, Your Honor. Peter D'Apice
19 with Stutzman Bromberg Esserman & Plifka for the Office of the
20 Commissioner of Baseball.

21     MR. SPANIOL: Good morning, Your Honor. Andrew
22 Spaniol of Gardere Wynne for GSP as the Second Lien Agent.

23     MR. STEWART: Dan Stewart of Vinson & Elkins and Andy
24 Leblanc of Milbank Tweed on behalf of the Ad Hoc Group of First
25 Lien Lenders.

1     MR. LAURIA:  Good morning, Your Honor.  Tom Lauria
2 with White & Case.  We represent Rangers Baseball Express.
3     THE COURT:  All right.  All right.  The purpose of
4 this status conference is to address two issues, plus I want to
5 give you a preview of what I will be issuing in the way of a
6 memorandum opinion, hopefully within the next couple of days,
7 as a result of last week's hearing.
8     But the first thing is that the Equity Owners, per the
9 Chief Restructuring Officer, have requested that we extend the
10 auction date from August 4th to August 9th.  And we received a
11 response, I received a response to that, which I believe you
12 were all copied on, from Mr. Esserman, indicating that Major
13 League Baseball could not comply with that request.
14     I will be candid with you.  I am concerned.  I am concerned
15 and I am going to issue later this week an e-mail to the
16 principal parties telling you what your time limits are going
17 to be on August 4th and 5th.  Because it's my understanding
18 that Major League Baseball, as I understand it -- and you can
19 correct me if I'm wrong, Mr. Shimshak -- as I understand it,
20 Major League Baseball owners are meeting on August 12th, which
21 would be the date that they anticipate approving or
22 disapproving, as the case may be, Express, should Express be
23 the successful bidder.  And it is my further understanding that
24 there are prerequisites to submitting Express or possibly
25 another bidder to the Major League Owners at that time for

their approval.

Did I get that right, Mr. Shimshak?

MR. SHIMSHAK: Yes. Yes, you did, Your Honor. Major League Baseball is proceeding, as we must, without committing to the Greenberg-Ryan Group being the successful bidder at the auction, but they are the ones who have the immediate time constraint. So we are proceeding to meet on August 12th. We're taking the steps necessary to be in a position.

I thought it would be helpful for the Court, and it's one of the reasons why I asked Mr. Brumm to be here today, if we could outline briefly those steps which need to be taken. And I think, when you hear the outline of those steps, you and the -- you, Your Honor, and the parties in the courtroom will understand the time sensitivities that are involved here and why completing the auction on August 9th, from the perspective of Major League Baseball, is an unworkable proposition.

But I'm going to let Mr. Brumm speak very briefly, and then I'll -- I may have some additional comments.

THE COURT: Mr. Brumm?

MR. BRUMM: Yes. Just to give you the background, Your Honor, what we need to do is send out a report to all the owners and give the owners the proper time to study that report and perform their duties under the Constitution. And so at this point we would need at least a week to try to get that out and get that out to them, and we're undertaking to be in that

position to do so. If Mr. Greenberg is the winning bidder in the process and we move ahead with confirmation, after that, the Ownership Committee would meet and the Executive Council will meet, and they need time to digest the report and meet. And we're already working on a very tight timetable with respect to that.

THE COURT: All right. If I understand what you're saying, you need to issue a report, then this needs to be reviewed by the Executive Committee and the Membership Committee. Is that correct?

MR. BRUMM: Yes. It's the Ownership Committee and the Executive Council.

THE COURT: Okay. The Ownership Committee and the Executive Council, before it's submitted to the vote of the owners?

MR. BRUMM: That's correct. And we have -- we, you know, we would plan to move ahead with those meetings on August 11th. But, you know, they would still need some time to digest the report before that and maybe to have some preliminary calls with Mr. Greenberg, if he is indeed the winning bidder.

MR. SHIMSHAK: Your Honor, and I would add that a critical --

THE COURT: This is Mr. Shimshak. Please identify yourselves on the phone. And I apologize, but we have to have you for purposes of the record.

1  MR. SHIMSHAK: Of course, Your Honor. This is Mr.
2 Shimshak again.
3  Your Honor, as you can perhaps infer from Mr. Brumm's
4 comments, a critical factor here will of course be the final
5 winning bid. So, for example, if Mr. -- if the Greenberg-Ryan
6 Group prevails at the auction but their transaction changes in
7 some form as a consequence of the auction, including terms in
8 addition to price, that all has to be reviewed and finalized
9 and go into the report that Mr. Brumm described.
10  Our concern is that if the auction is completed on the 9th,
11 there is insufficient time for the internal analysis here at
12 Major League Baseball, insufficient time to then finalize the
13 report and to circulate it to the two committees that Mr. Brumm
14 described and to the owners for a vote in which they'd have
15 sufficient time to responsibly discharge their
16 responsibilities.
17  THE COURT: All right. Does anyone want to comment or
18 respond with respect to that?
19  (No response.)
20  THE COURT: All right. Let me ask you this, Mr. Brumm
21 or Mr. Shimshak. My concern, I am less -- I could wish that we
22 could have the auction at a later date than the 4th. I don't
23 think that there's any doubt but that that would be better.
24 But excepting that, my concern is completing a confirmation
25 hearing, given that we have arguably 16 standards that we have

12

 1  to meet to confirm a plan, by noon on August 5th, which is the
 2  time that I absolutely have to leave this room.  And let me ask
 3  you, is it the auction that must be completed, or must
 4  confirmation be completed as well?
 5          MR. SHIMSHAK:  I think the critical point from our
 6  perspective is -- because our concern is with the transaction.
 7  And so if the auction has been completed and we know of the
 8  completion of the transaction, we will be able to go forward
 9  and to do a substantial amount in terms of finalizing the
10  report.  If you think of it, the actual decision on the
11  confirmation from the perspective of the report might be a
12  sentence or two, but the descriptive portion of the report
13  regarding the transaction and matters of sensitivity to Major
14  League Baseball, that work could be done with the
15  identification of the successful bidder at the auction.
16          THE COURT:  All right.  Well, --
17          MR. LAURIA:  Your Honor, if I may, I have a question,
18  I guess, for --
19          THE COURT:  Mr. Lauria, speak into the microphone,
20  please.
21          MR. LAURIA:  I have a question for Mr. Shimshak or Mr.
22  Brumm, if I may ask it.
23          THE COURT:  You may ask the question and then I'll
24  decide whether they can answer it.  How's that?
25          MR. LAURIA:  All right.  My question is simply to get

1  clarification if Major League Baseball can submit the papers
2  that they need to submit to the committees and to the owners
3  before it is known who -- whether or not the transaction is
4  going to go forward, which I think is contingent on a
5  confirmation order.
6        THE COURT:  Well, let me interject before you answer
7  that, Mr. Shimshak.  I'm guessing, and I could be mistaken -- I
8  don't want to put words in the mouth of Mr. Leblanc or Mr.
9  Stewart or GSP -- but I'm guessing, if I understand correctly,
10  there are two confirmation issues that are likely to be
11  contested, at least if Express is the prevailing bidder at the
12  auction.  And that's the Section 1129(a)(7) issues -- that is,
13  essentially, the best interests of creditors test -- and the
14  good faith issue under 1129(a)(3).  Am I correct about that?
15        MR. LEBLANC:  Andrew Leblanc; Milbank Tweed.
16    Generally correct, Your Honor.  Of course, there's the
17  issues of all of the other provisions that we think run afoul
18  of other sections, but -- the releases, the indemnities, those
19  types of things.
20        THE COURT:  Well, again, let me make clear.  And one
21  of the things that I'm going to say to you later is:  releases
22  and indemnities have been severely limited by the Fifth
23  Circuit's decision in *Pacific Lumber*.  And the same law firm
24  that represents this Debtor tried to get me to do more than
25  *Pacific Lumber* did in the *Pilgrim's Pride* case, and I declined

1  to do so, and I intend to do the same thing here.
2      Let me further make clear: this proceeding is not being
3  conducted, Ms. Berkovich, for the benefit of Tom Hicks. That
4  seems to be a concern of some of the parties. And I will not
5  tolerate it being done for Thomas O. Hicks. If he wants relief
6  from this Court, he can have his lawyer come down here and file
7  a Chapter 11 petition for himself, not for the Texas Rangers.
8  We're not going to get him relief through that case, period.
9  Okay?
10         MR. LEBLANC: And I just wanted to make sure that
11 those issues weren't waived --
12         THE COURT: I understand.
13         MR. LEBLANC: -- if we didn't stand up and say that.
14 But I think primarily the two issues are the ones that you
15 identified, and I think, --
16         THE COURT: All right.
17         MR. LEBLANC: -- if, as we hope, an auction does break
18 out, then we -- it may well --
19         THE COURT: Well, if -- I'm guessing, if there's more
20 than one bidder, it's going to be a much shorter confirmation
21 hearing, and if it is one bidder it's going to be a very long
22 confirmation hearing. Is that a good bet?
23         MR. LEBLANC: That's a -- I would take that bet here.
24         THE COURT: Okay.
25         MR. LEBLANC: The same side Your Honor is betting

1  there.
2        THE COURT: Okay. Okay.
3        MR. LEBLANC: I wouldn't wager against you on that
4  one.
5        THE COURT: All right. All right. Well, then what
6  I'm going to do is I'm going to assume that, if we must, if we
7  clear the hurdles of having a bidder and that bidder is Express
8  as a result of the process, and if we clear 1129(a)(7) and
9  1129(a)(3), I'm going to -- because the same issues that you're
10 raising -- for example, indemnifications, releases and sale of
11 other assets -- are going to come into play under both of those
12 issues, if we clear both of those, then I am going to assume
13 that the transaction will consummate.  It may be that the plan
14 will be limited in terms of its effect under the confirmation
15 order, but in terms of acquisition of the Texas Rangers by
16 Express under those circumstances, that would be at that point
17 a done deal.
18     Does that help you, Mr. Shimshak?
19        MR. SHIMSHAK: It does, Your Honor.
20        THE COURT: All right. All right. The second issue
21 that we have is the question of the protective order that has
22 been requested by motion by the Lender parties.  I have
23 reviewed that and I'm ready to comment on it, but I want to
24 hear from you to the extent that you think it necessary to talk
25 to me.

1     MR. LEBLANC:  Your Honor, we filed that under seal,
2  and we actually request that we consider that in chambers,
3  given the subject matter of the request.  And there are a
4  couple of other components to it that I think would be better
5  discussed in chambers.
6     THE COURT:  All right.  Well, then when we finish here
7  we're going to go into chambers, but we're going to take a
8  recess.  I didn't expect that and I'm not set up to make a
9  record in chambers, and I do want a record of this on tape.
10 So, any objection to that?
11    MR. SHIMSHAK:  No, Your Honor.  It's Mr. Shimshak
12 again.  Mr. D'Apice is in the courtroom for Major League
13 Baseball and he will be able to communicate our position and to
14 participate in the chambers conference.
15    THE COURT:  All right.  Mr. D'Apice is well-known to
16 me, and I know he will do a good job for you.
17    All right.  Now, I'm going to read to you, and I want you
18 to understand:  I'm reading this -- I've been working drafting
19 an opinion which addresses the various issues that were raised
20 during the hearing and in the pleadings preceding the hearing
21 that we held last week.  I'm going to read to you from the
22 draft, and this is a handwritten draft at this point.  It
23 hasn't even been typed the first time.  I don't think that the
24 substance will change, but it's quite possible that the
25 language will change.

1   I'm going to read it to you, and this is not something that
2   I'm asking you to comment on, discuss with me or file briefs
3   with respect to. So, just this is not going to be something
4   that you're going to get to spend clients' money on. If you
5   have a problem with it, as soon as the opinion comes out you
6   may appeal me or take other appropriate action in an appellate
7   court. But I do not -- I was planning to do this at the very
8   end of the hearing so that you couldn't talk to me anymore
9   about it. But since I have no choice, I'm going to read it to
10  you now.
11      This is from the conclusion or what will be the conclusion
12  of this opinion.
13      The Court recognizes that the Court's procedures are not
14  necessarily the optimal way to resolve this Chapter 11 case.
15  It is possible, as the Lenders and Snyder argue, that no bidder
16  will come forward to compete with Express at the auction.
17  Should that be the case, Debtor and Express will have the
18  burden of showing that the Court's procedures indeed provided
19  an effective market test of the APA. This, however, is by no
20  means a showing that cannot be met.
21      First, the evidence elicited at the hearing provides
22  substantial support for the conclusion that the Court's
23  procedures will satisfactorily market-test the APA.
24      Second, the prosecution of the motion may have chilled
25  bidding under the Court's procedures in two ways, thus

explaining the potential absence of competing bidders. In the first place, rather than working toward a sale of the Rangers, the parties spent the first week after entry of the procedures order distracted by the motion and the hearing. In the second place, by highlighting the opposition to and the deficiencies of the proposed procedures, the Lenders -- and most unfortunately, Snyder -- in the motion and the hearing may have dissuaded bidders from participating in the process.

Not only were the bidders' attention called to the weakness in the approved procedures while overlooking the strengths, such as the retention by the Court of authority to review disapproval of bidders by the Office of the Commissioner or Major League Baseball Owners, but they may well also have left the clear impression with bidders that the approved procedures will not lead to a sale of the Rangers but rather to yet another round of negotiation and bidding, leading to an auction sometime in the distant future.

No bidder, of course, should so assume. Indeed, if even one bidder appears to compete with Express, the Court will almost surely conclude that the market test of the APA was fair. Certainly, a second bidder -- pardon me. Certainly, a second bidder will create for any party contending that the Court's procedures were nevertheless inadequate a serious burden to be met.

It is thus in every party's interest to make a success of

1 the Court's procedures.

2 And I apologize again. That's a very rough version at this
3 point of what will be the conclusion of the procedures. And I
4 will explain myself to the extent of telling you I do not want
5 bidders to come to the conclusion that, oh, we can just sit on
6 our hands, this will go away, and then we can start all over
7 again, because the odds are it won't happen. If you want the
8 company, if you want the team, buy it now.

9 On that note, court will be in recess. We will convene
10 again in chambers.

11 THE CLERK: All rise.

12 (Proceedings concluded at 10:51 a.m.)

13 --oOo--

14
15
16
17
18

19 CERTIFICATE

20 I certify that the foregoing is a correct transcript from
21 the electronic sound recording of the proceedings in the above-
22 entitled matter.

23

24 Kathy Rehling                                   Date
Certified Electronic Court Transcriber
25 CET**D-444

INDEX

PROCEEDINGS 5

WITNESSES

-none-

EXHIBITS

-none-

RULINGS 16

END OF PROCEEDINGS 19

INDEX 20