**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

```
-------------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11
                                        :
TEXAS RANGERS BASEBALL PARTNERS         :        Case No. 10-43400 (DML)-11
                                        :
                                        :
              Debtor.                   :
                                        :
-------------------------------------------------------------------x
```

**~~SECOND~~<u>THIRD</u> AMENDED ~~PREPACKAGED~~ PLAN OF REORGANIZATION**
**OF TEXAS RANGERS BASEBALL PARTNERS**
**<u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

Texas Rangers Baseball Partners ("<u>TRBP</u>", or the "<u>Debtor</u>") proposes the following ~~second~~<u>third</u> amended ~~prepackaged~~ chapter 11 plan (the "~~Prepackaged~~ Plan") pursuant to section 1121(a) of the Bankruptcy Code.

Martin A. Sosland (18855645)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile:   (214) 746-7777

Ronit J. Berkovich (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York    10153
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007

*Attorneys for the Debtor and*
*Debtor in Possession*

# TABLE OF CONTENTS

Article I DEFINITIONS AND INTERPRETATION ............................................................1

 A. Definitions........................................................................................................1
 B. Rules of Interpretation.....................................................................................8

Article II PROVISIONS FOR PAYMENT OF UNCLASSIFIED ADMINISTRATIVE, PROFESSIONAL AND TAX CLAIMS...................................................9

2.1 Administrative Expense Claims .................................................................................9
2.2 Professional Compensation and Reimbursement Claims ...........................................9
2.3 Priority Tax Claims ....................................................................................~~9~~10
2.4 DIP Claims ...............................................................................................................10

Article III CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .....................................10

3.1 Classes of Claims .....................................................................................................10

Article IV TREATMENT OF CLAIMS AND EQUITY INTERESTS ...........................~~11~~12

4.1 Class 1 – Priority Non-Tax Claims ..........................................................~~11~~12
4.2 Class 2 – First Lien Holder Claims ..........................................................~~11~~12
4.3 Class 3 – Second Lien Holder Claims ......................................................~~12~~13
4.4 Class 4 – MLB Prepetition Claim ............................................................~~12~~13
4.5 Class 5 – Secured Tax Claims ..................................................................................13
4.6 Class 6 – Other Secured Claims ...............................................................~~13~~14
4.7 Class 7 – Assumed General Unsecured Claims .........................................~~13~~14
4.8 Class 8 – Non-Assumed General Unsecured Claims .................................~~14~~15
4.9 Class 9 – Emerald Diamond Claim ..........................................................................15
4.10 Class 10 – Overdraft Protection Agreement Claim ..................................~~15~~16
4.11 Class 11 – Intercompany Claims .............................................................~~15~~16
4.12 Class 12 – TRBP Equity Interests ...........................................................~~15~~16

Article V IDENTIFICATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS IMPAIRED; ACCEPTANCE OR REJECTION OF THIS PLAN OF REORGANIZATION .......................16

5.1 Classes Entitled to Vote ...........................................................................................16

Article VI MEANS OF IMPLEMENTATION AND POST-EFFECTIVE DATE GOVERNANCE......~~16~~17

6.1 Asset Purchase Agreement and Related Documents ..................................~~16~~17
6.2 General Corporate Actions ........................................................................................17
6.3 Cancellation of Liens ................................................................................................18

Article VII PROVISIONS GOVERNING DISTRIBUTIONS ...........................................~~18~~19

7.1 Date of Distributions on Account of Allowed Claims ...............................~~18~~19
7.2 Sources of Cash for the ~~Prepackaged~~ Plan Distribution .......................~~18~~19
7.3 Disbursing Agent ......................................................................................~~18~~19
7.4 Rights and Powers of Disbursing Agent ...................................................~~18~~19
7.5 Expenses of the Disbursing Agent ............................................................................19
7.6 Record Date for Distribution ....................................................................................19
7.7 Delivery of Distributions ..........................................................................~~19~~20
7.8 Manner of Payment Under ~~Prepackaged~~ Plan ......................................................20
7.9 Setoffs and Recoupment ...........................................................................~~20~~21

# TABLE OF CONTENTS

7.10    Distributions After Effective Date................................................................................~~20~~21

7.11    Allocation of Payments under the ~~Prepackaged~~ Plan .........................................~~20~~21

7.12    No Postpetition Interest on Claims .......................................................................~~20~~21

Article VIII        PROCEDURES FOR TREATING    DISPUTED CLAIMS UNDER THE ~~PREPACKAGED~~ PLAN ............................................................................21

8.1    Disputed Claims .......................................................................................................21

8.2    Objections to Claims ...........................................................................................~~21~~22

8.3    No Distributions Pending Allowance ..................................................................~~21~~22

8.4    Distributions After Allowance ...............................................................................22

8.5    Resolution of Disputed Claims ...........................................................................~~22~~23

Article IX        TREATMENT OF EXECUTORY    CONTRACTS AND UNEXPIRED LEASES .............~~22~~23

9.1    Assumption of Contracts and Leases ..................................................................~~22~~23

9.2    Payments Related to Assumption of Contracts and Leases .................................~~23~~24

9.3    Claims Based on Rejection of Executory Contracts or Unexpired Leases ..........~~23~~24

9.4    Compensation and Benefit Plans and Treatment of Retirement Plan .......................24

9.5    Insurance Policies ................................................................................................~~24~~25

Article X        CONDITIONS PRECEDENT TO EFFECTIVE DATE ....................~~24~~25

10.1    Conditions Precedent to Effective Date of ~~Prepackaged~~ Plan ...........................~~24~~25

10.2    Waiver of Conditions Precedent .........................................................................~~25~~26

10.3    Effect of Failure of Conditions ...........................................................................~~25~~26

10.4    Reservation of Rights ...........................................................................................~~25~~26

10.5    Substantial Consummation ..................................................................................~~26~~27

Article XI        EFFECT OF CONFIRMATION ................................................~~26~~27

11.1    Vesting of Assets .................................................................................................~~26~~27

11.2    Binding Effect ......................................................................................................~~26~~27

11.3    Discharge of Claims ............................................................................................~~27~~28

11.4    Exculpation ..........................................................................................................~~27~~28

~~11.5    Waiver of Avoidance Actions................................................................................27~~

11.5    [RESERVED].........................................................................................................28

11.6    Term of Injunctions or Stays .....................................................................................28

11.7    Indemnification Obligations ...............................................................................~~28~~29

Article XII        RETENTION OF JURISDICTION .....................................................29

12.1    Retention of Jurisdiction ...........................................................................................29

Article XIII        MISCELLANEOUS ...............................................................~~30~~31

13.1    Payment of Statutory Fees ..................................................................................~~30~~31

13.2    Filing of Additional Documents .........................................................................~~30~~31

13.3    Amendment or Modification of the ~~Prepackaged~~ Plan .......................................~~30~~31

13.4    Inconsistency ...........................................................................................................31

13.5    Preservation of Rights of Action; Settlement of Litigation Claims ...................~~31~~32

13.6    Effectuating Documents; Further Transactions ..................................................~~31~~32

# TABLE OF CONTENTS

13.7    Compromise of Controversies...................................................................................~~31~~32

13.8    Exemption from Certain Transfer Taxes.............................................................~~31~~32

13.9    Compliance with Tax Requirements..................................................................32

13.10   Determination of Tax Filings and Taxes...........................................................~~32~~33

13.11   Severability of Provisions in the ~~Prepackaged~~ Plan.......................................~~32~~33

13.12   Governing Law....................................................................................................~~32~~33

13.13   Notices.................................................................................................................~~33~~34

13.14   Dissolution of any Statutory Committee and Cessation of Fee and Expense Payment..........................~~33~~34

# ARTICLE I

## DEFINITIONS AND INTERPRETATION

**A.     Definitions**.

The following terms used herein shall have the respective meanings set forth below:

**1.1     *Administrative Expense Claim*** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case Allowed under and in accordance with, as applicable, sections 330, 364(c)(1), 365, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's estate or operating the Debtor's business, (b) any indebtedness or obligations incurred or assumed by the Debtor, as debtor in possession, during the Chapter 11 Case, (c) any compensation for professional services rendered and reimbursement of expenses incurred by a professional retained by order of the Bankruptcy Court or otherwise allowed pursuant to section 503(b) of the Bankruptcy Code ~~and~~, (d) MLB Postpetition Claims, and (e) the Stalking Horse Protection Claim, if any.    Any fees or charges assessed against the estates of the Debtor under section 1930 of chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Expense Claim and shall be paid in accordance with Section 13.1 (Payment of Statutory Fees) hereof.

**1.2     *Allowed*** means, with reference to any Claim or Equity Interest, (a) any Claim or Equity Interest arising on or before the Effective Date (i) as to which no objection to allowance has been interposed in accordance with Section 8.2 hereof, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Equity Interest as to which the liability of the Debtor and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court or (c) any Claim or Equity Interest expressly allowed hereunder.

**1.3     *Asset Purchase Agreement*** means that ~~certain Asset Purchase Agreement, dated as of May 23, 2010,~~ asset purchase agreement to be entered into by and between TRBP and ~~Baseball Express, as~~ the Purchaser, as the same has been amended, restated, amended and restated or otherwise modified from time to time.

**1.4     *Assumed General Unsecured Claim*** means a General Unsecured Claim that shall be assumed by the Purchaser under the Asset Purchase Agreement.

**1.5     *Backup Bidder*** means the Backup Bidder as defined in the Bidding Procedures Order.

**1.6     ~~1.5~~ *Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time.

**1.7** ~~1.6~~ *Bankruptcy Court* means the United States Bankruptcy Court for the North District of Texas, Fort Worth Division or any other court of the United States having jurisdiction over the Chapter 11 Case.

**1.8** ~~1.7~~ *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

**1.9** ~~1.8~~ *BRE* means Ballpark Real Estate, L.P., a Texas limited Partnership.

**1.10** ~~1.9~~ *Baseball Express* means Rangers Baseball Express LLC, a Delaware limited liability company.

**1.11** *Baseball Express Purchase Agreement* means that certain Asset Purchase Agreement, dated as of May 23, 2010 and amended as of July 12, 2010, by and between TRBP and Baseball Express, as amended, restated, amended and restated or otherwise modified from time to time.

**1.12** ~~1.10~~ *Baseball Finance* means Baseball Finance LLC, a Delaware limited liability company.

**1.13** ~~1.11~~ *Baseball Finance Note* means that certain Amended and Restated Secured Revolving Promissory Note, dated as of November 25, 2009, made by TRBP in favor of Baseball Finance together with any ancillary or security documents related thereto.

**1.14** *Bidding Procedures Order* means that certain order approving bidding procedures dated July 15, 2010 [Dkt. 363], governing the auction and sale of the Debtor's assets.

**1.15** ~~1.12~~ *Business Day* means any day other than a Saturday, Sunday or any other day on which banking institutions in Dallas, Texas are required or authorized to close by law or executive order.

**1.16** ~~1.13~~ *Cash* means legal tender of the United States of America.

**1.17** ~~1.14~~ *Chapter 11 Case* means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Commencement Date, in the Bankruptcy Court and styled *In re Texas Rangers Baseball Partners*, Chapter 11 Case No. 10-43400 (DML).

**1.18** ~~1.15~~ *Claim* has the meaning set forth in section 101(5) of the Bankruptcy Code.

**1.19** ~~1.16~~ *Claim Objection Deadline* means the date (i) on or before the ninetieth day following the Effective Date or (ii) such later date as ordered by the Bankruptcy Court, for the filing of objections to Claims.

**1.20** ~~1.17~~ *Class* means any group of substantially similar Claims or Equity Interests classified by the ~~Prepackaged~~ Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.21** ~~1.18~~ *Collateral* means any property or interest in property of the Estate of the Debtor subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.22** ~~1.19~~ *Commencement Date* means the date on which the Debtor filed its voluntary petition for reorganization relief under chapter 11 of the Bankruptcy Code.

**1.23** ~~1.20~~ *Committee* means any official committee appointed in the Chapter 11 Case~~, if any,~~ as such committee may be reconstituted from time to time.

**1.24** ~~1.21~~ *Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.25** ~~1.22~~ *Confirmation Hearing* means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the ~~Prepackaged~~ Plan, as such hearing may be adjourned or continued from time to time.

**1.26** ~~1.23~~ *Confirmation Order* means the order or orders of the Bankruptcy Court confirming the ~~Prepackaged~~ Plan.

**1.27** ~~1.24~~ *Cure* means the payment of Cash by the Debtor or the Purchaser, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (i) cure a monetary default by the Debtor in accordance with the terms of an executory contract or unexpired lease of the Debtor and (ii) permit the Debtor to assume such executory contract or unexpired lease or assume or assume and assign such executory contract or unexpired lease to Purchaser under section 365(a) and/or section 365(f) of the Bankruptcy Code.

**1.28** ~~1.25~~ *Debtor* means TRBP in its capacity as a debtor and debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

**1.29** ~~1.26~~ *DIP Claims* means any Claim or other Obligation (as defined in the DIP Facility) arising under or in connection with the DIP Facility.

**1.30** ~~1.27~~ *DIP Facility* means that certain $21.5 million secured Debtor-in-Possession Credit and Security Agreement between the DIP Lender and TRBP dated as of May 27, 2010 and approved by the Bankruptcy Court pursuant to sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, and any amendments, modifications or supplements thereof.

**1.31** ~~1.28~~ *DIP Lender* means a lender under the DIP Facility.

**1.32** ~~1.29~~ *Disbursing Agent* means any entity (including the Debtor if it acts in such capacity) in its capacity as a Disbursing Agent under Sections 7.3, 7.4, 7.7, 7.8 and 8.4 hereof.

**1.33** ~~1.30~~ *Disclosure Statement* means that certain disclosure statement relating to the ~~Prepackaged~~ Plan, including all exhibits and schedules thereto, ~~in form and substance~~

~~reasonably acceptable to the Purchaser,~~ as the same may be amended, supplemented or otherwise modified from time to time.

**1.34** ~~1.31~~ *Disputed Claim* means, with respect to a Claim or Equity Interest, any such Claim or Equity Interest (a) to the extent neither Allowed nor disallowed under the ~~Prepackaged~~ Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) for which a proof of claim or interest for payment has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtor or any party in interest has interposed a timely objection or request for estimation prior to the Effective Date in accordance with the ~~Prepackaged~~ Plan, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.

**1.35** ~~1.32~~ *Disputed Equity Interest* means any Equity Interest that is not an Allowed Equity Interest.

**1.36** ~~1.33~~ *Distribution Record Date* means the record date for purposes of making distributions under the ~~Prepackaged~~ Plan on account of Allowed Claims and Allowed Equity Interests, which date shall be the Confirmation Date.

**1.37** ~~1.34~~ *Effective Date* means the first Business Day on which all the conditions precedent to the Effective Date specified in Section 10.1 hereof shall have been satisfied or waived as provided in Section 10.2 hereof; *provided, however,* that if such conditions precedent have been so satisfied or waived, but a stay, injunction or similar prohibition of the Confirmation Order is in effect, then the Effective Date shall be the first Business Day after such stay, injunction or similar prohibition is no longer in effect as long as the conditions precedent continue to be satisfied or waived.

**1.38** ~~1.35~~ *Emerald Diamond Claim* means any claim arising under or in connection with the Emerald Diamond Note.

**1.39** ~~1.36~~ *Emerald Diamond Note* means that certain promissory note, dated May 23, 2010, issued by TBRP in favor Emerald Diamond in the principal amount of $15,055,081.

**1.40** ~~1.37~~ *Equity Interest* means any partnership interest in the Debtor.

**1.41** ~~1.38~~ *Estate* means the estate of the Debtor as created under section 541 of the Bankruptcy Code.

**1.42** ~~1.39~~ *Excluded Contract* means those contracts defined as Excluded Contracts pursuant to Section 1.1 of the Asset Purchase Agreement.

**1.43** ~~1.40~~ *Final Order* means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing

thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

**1.44** ~~1.41~~ *First Lien Administrative Agent* means JP Morgan Chase Bank, N.A., as administrative agent to the First Lien Lenders under the First Lien Credit Agreement.

**1.45** ~~1.42~~ *First Lien Administrative Parties* means JP Morgan Securities Inc., as joint lead arranger, joint bookrunner, Barclays Capital Inc., as joint lead arranger, joint bookrunner, Barclays Bank PLC, as co-syndication agent and JP Morgan Chase Bank, N.A., as administrative agent and collateral agent, in each case pursuant to the First Lien Credit Agreement.

**1.46** ~~1.43~~ *First Lien Credit Agreement* means that certain Amended and Restated First Lien Credit and Guaranty Agreement, dated December 19, 2006, by and among HSGH, HSG, certain subsidiaries of HSG as guarantors, the lenders party thereto, the First Lien Administrative Parties, and the other Persons party thereto from time to time, as amended, restated, amended and restated or otherwise modified from time to time.

**1.47** ~~1.44~~ *First Lien Holder Claim* means any Claim arising under or in connection with the First Lien Credit Agreement.

**1.48** ~~1.45~~ *General Unsecured Claim* means any Claim against the Debtor that (a) is not an Administrative Expense Claim, Priority Non-Tax Claim, First Lien Holder Claim, Second Lien Holder Claim, MLB Prepetition Claim, Secured Tax Lien Claim, Other Secured Lien Claim, Emerald Diamond Claim, Overdraft Protection Agreement Claim, Intercompany Claim, or DIP Claim or (b) is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**1.49** ~~1.46~~ *HSG* means HSG Sports Group LLC, a Texas limited liability company.

**1.50** ~~1.47~~ *HSG Assigned Contracts* means ~~all~~the contracts listed on Exhibit 5.31 of ~~HSG that relate primarily to the Texas Rangers~~the Asset Purchase Agreement, which were assigned to TRBP by HSG prior to the Commencement Date.

**1.51** ~~1.48~~ *HSGH* means HSG Sports Group Holdings LLC, a Texas limited liability company.

**1.52** ~~1.49~~ *Intercompany Claim* means any Claim held by a non-Debtor affiliate against the Debtor.

**1.53** ~~1.50~~ *Intercreditor Agreement* means that certain intercreditor agreement among the holders of the First Lien Holder Claims and the Second Lien Holder Claims.

**1.54** ~~1.51~~ *Interim Agreement* means that certain Interim Agreement, dated May 23, 2010, by and between TRBP and MLB, as the same may be amended from time to time.

**1.55** ~~1.52~~ *Interim Support Agreement* means that certain Interim Support Agreement by and between TRBP and MLB to be executed upon approval thereof by the Bankruptcy Court as the same may be amended from time to time.

**1.56** ~~1.53~~ *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.57** ~~1.54~~ *Local Bankruptcy Rules* means the Local Bankruptcy Rules for the Northern District of Texas Fort Worth Division.

**1.58** ~~1.55~~ *LSA* means that certain Amended and Restated Land Sale Agreement, dated as of May 23, 2010, by and among the Purchaser, BRE, and for the sole purpose of Section 6.12 thereof, TRBP.

**1.59** ~~1.56~~ *MLB* means the Office of the Commissioner of Baseball.

**1.60** ~~1.57~~ *MLB Prepetition Claim* means any Claim against the Debtor arising prepetition under the terms of, or otherwise provided for in, the Baseball Finance Note, the VSA, the Second Amended and Restated VSA or the Interim Agreement.

**1.61** ~~1.58~~ *MLB Postpetition Claim* means any Claim against the Debtor arising postpetition, if any, under the terms of, or otherwise provided for in, the VSA, the Second Amended and Restated VSA, the Interim Agreement or the Interim Support Agreement.

**1.62** ~~1.59~~ *Non-Assumed General Unsecured Claim* means a General Unsecured Claim that shall not be assumed by the Purchaser under the Asset Purchase Agreement.

**1.63** ~~1.60~~ *Other Secured Claim* means a Secured Claim other than a MLB Prepetition Claim, First Lien Holder Claim, a Second Lien Holder Claim or a Secured Tax Lien Claim.

**1.64** ~~1.61~~ *Overdraft Protection Agreement* means the Overdraft Protection Line of Credit Agreement dated as of April 30, 2009 between Thomas O. Hicks, HSG, HSG Partnership Holdings LLC, TRBP and the Dallas Stars, L.P. pursuant to which Thomas O. Hicks agreed to provide an overdraft protection line of credit in the principal amount of up to $15,000,000, of which $5,000,000 was funded by Thomas O. Hicks to TRBP, and as to which Thomas O. Hicks suspended his obligation to make future advances of principal under the overdraft protection line of credit pursuant to that certain letter from Thomas O. Hicks to HSG dated June 29, 2009.

**1.65** ~~1.62~~ ***Overdraft Protection Agreement Claim*** means a Claim for principal plus interest arising under the Overdraft Protection Agreement~~, which Claim shall be Allowed in the amount of $5,000,000 in principal plus interest accrued at a per diem rate of 1.643.83% through the Effective Date~~.

**1.66** ~~1.63~~ ***Person*** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

~~1.64~~ ***Post-Effective Date Debtor*** ~~means the Debtor after the Effective Date.~~

**1.67** ~~1.65 Prepackaged~~ ***Plan*** means this ~~prepackaged~~ plan of reorganization, as the same may be amended, supplemented or otherwise modified from time to time in accordance with the provisions of the Bankruptcy Code, including the exhibits and schedules hereto, if any.

**1.68** ***Post-Effective Date Debtor*** means the Debtor after the Effective Date.

**1.69** ~~1.66~~ ***Priority Non-Tax Claim*** means any Claim against the Debtor, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

**1.70** ~~1.67~~ ***Priority Tax Claim*** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

~~1.68~~ ***Purchaser*** ~~means Baseball Express, collectively with one or more of its direct or indirect wholly-owned subsidiaries that Baseball Express designates as its permitted assignees pursuant to~~

**1.71** ***Purchased Assets*** means the assets sold under the Asset Purchase Agreement.

**1.72** ***Purchaser*** means, (i) in the event there is an auction of the Debtor's assets, the Successful Bidder (or the Backup Bidder should the Successful Bidder fail to consummate the sale for any reason), as determined pursuant to the Bidding Procedures Order or (ii) in the event there is no auction pursuant to the Bidding Procedures Order, Baseball Express.

**1.73** ~~1.69~~ ***Second Amended and Restated VSA*** means that certain Second Amended and Restated Voluntary Support Agreement, dated May 23, 2010, by and among MLB and certain affiliates of TRBP, as the same may be amended from time to time.

**1.74** ~~1.70~~ ***Second Lien Administrative Agent*** means GSP Finance LLC, as successor-in-interest to Barclays Bank PLC, as administrative agent to the Second Lien Lenders under the Second Lien Credit Agreement.

**1.75** ~~1.71~~ ***Second Lien Administrative Parties*** means JP Morgan Securities Inc. as joint lead arranger, joint bookrunner and co-syndication agent, Barclays Capital Inc., as joint lead arranger, joint bookrunner, GSP Finance LLC, as successor-in-interest to Barclays Bank

PLC, as administrative agent, collateral agent and co-syndication agent to the Second Lien Lenders under the Second Lien Credit Agreement.

**1.76** ~~1.72~~ *Second Lien Credit Agreement* means that certain Amended and Restated Second Lien Credit and Guaranty Agreement, dated December 19, 2006, by and among HSGH, HSG, certain subsidiaries of HSG, as guarantors, the lenders party thereto, the Second Lien Administrative Parties, and the other Persons party thereto from time to time, as amended, restated, amended and restated or otherwise modified from time to time.

**1.77** ~~1.73~~ *Second Lien Holder Claim* means a Claim arising under or in connection with the Second Lien Credit Agreement.

**1.78** ~~1.74~~ *Secured Claim* means, a Claim that is secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon property in which the Debtor has an interest, to the extent of the value, as of the Effective Date, of such interest or Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed to in writing by the Debtor or Post-Effective Date Debtor and the holder of such Claim.

**1.79** ~~1.75~~ *Secured Tax Claim* means any Secured Claim that, absent its secured status, would be entitled to priority and right of payment under section 507(a)(8) of the Bankruptcy Code.

**1.80** *Stalking Horse Protection Claim* means the claim by Baseball Express against the Debtor if (i) Baseball Express is not the Successful Bidder and (ii) Baseball Express elects, in lieu of such damages as it would be entitled to by reason of the rejection pursuant to section 365(c) of the Bankruptcy Code of the Baseball Express Purchase Agreement, to accept in full satisfaction of all its claims of the Debtor the greater of (a) $10,000,000 and (b) 125% of actual, proven out-of-pocket damages, costs and expenses, as set forth in the Bidding Procedures Order.

**1.81** *Successful Bidder* means the Successful Bidder as defined in the Bidding Procedures Order.

**1.82** ~~1.76~~ *TRBP* means Texas Rangers Baseball Partners, a Texas general partnership.

**1.83** ~~1.77~~ *U.S. Trustee* means the United States Trustee appointed under section 581 of title 28 of the United States Code to serve in the Northern District of Texas (Fort Worth Division).

**1.84** ~~1.78~~ *VSA* means that certain Voluntary Support Agreement, dated June 29, 2009, as subsequently amended and restated on November 25, 2009, by and among TRBP, certain affiliates of TRBP and MLB, and together with the ancillary documents executed therewith.

**B.** **Rules of Interpretation**.

For purposes of the ~~Prepackaged~~ Plan: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (2) unless otherwise specified, any reference in the ~~Prepackaged~~ Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference in the ~~Prepackaged~~ Plan to an existing document, schedule, or exhibit, whether or not filed with the Bankruptcy Court, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an entity as a holder of a Claim or Equity Interest includes that entity's successors and assigns; (5) unless otherwise specified, all references in the ~~Prepackaged~~ Plan to articles or sections are references to the articles or sections of the ~~Prepackaged~~ Plan; (6) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the ~~Prepackaged~~ Plan, the rights and obligations arising pursuant to the ~~Prepackaged~~ Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (7) captions and headings to articles of the ~~Prepackaged~~ Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the ~~Prepackaged~~ Plan; (8) unless otherwise set forth in the ~~Prepackaged~~ Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (9) any term used in capitalized form in the ~~Prepackaged~~ Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (10) all references to docket numbers of documents filed in the Debtor's Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (11) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Debtor's Chapter 11 Case, unless otherwise stated; and (12) any immaterial effectuating provisions may be interpreted by the Post-Effective Date Debtor after the Effective Date in such a manner that is consistent with the overall purpose and intent of the ~~Prepackaged~~ Plan all without further order of the Bankruptcy Court.

In computing any period of time prescribed or allowed by the ~~Prepackaged~~ Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

### PROVISIONS FOR PAYMENT OF UNCLASSIFIED ADMINISTRATIVE, PROFESSIONAL AND TAX CLAIMS

**2.1** *Administrative Expense Claims*.

To the extent an Allowed Administrative Claim is assumed by the Purchaser under the Asset Purchase Agreement, that Claim shall be paid by the Purchaser in the ordinary course of business as and when due.

Allowed Administrative Expense Claims representing liabilities incurred by the Debtor in the ordinary course of business, or consistent with past practice, whether incurred in the ordinary course of business, that are not assumed by the Purchaser shall be paid by the Debtor in accordance with the terms and conditions of the particular transaction and any related agreements and instruments.   All other Allowed Administrative Expense Claims that are not assumed by the Purchaser shall be paid, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Administrative Expense Claim, in full, in Cash, on the Effective Date or as soon thereafter as is practicable, or on such other terms to which the Debtor and the holder of such Administrative Expense Claim agree.   On the Effective Date, the MLB Postpetition Claim shall be indefeasibly paid in full in Cash from, *inter alia*, the proceeds of the Asset Purchase Agreement, as provided therein.

### 2.2    *Professional Compensation and Reimbursement Claims*.

All Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, other than professionals retained in the ordinary course of business that are not required to submit applications for reimbursement, shall (a) file, on or before the date that is ninety (90) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) receive payment in full, in Cash, of any unpaid portion as soon as practicable after Bankruptcy Court approval thereof. Professionals retained by the Debtor in the ordinary course of business that are not required to submit applications for reimbursement shall be paid in accordance with Section 2.1 hereof. The Debtor is authorized to pay compensation for professional services rendered and reimbursement of expenses incurred by all professionals after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

### 2.3    *Priority Tax Claims*.

Under the Asset Purchase Agreement, the Purchaser shall assume all of the Debtor's tax obligations for suite sales taxes, taxes related to the Purchased Assets for all taxable periods (or portions thereof) beginning after the Closing Date of the Asset Purchase Agreement, and transfer taxes applicable to the transfer of the Purchased Assets.   With respect to any Priority Tax Claims not paid as of the Effective Date, except to the extent that a holder of an Allowed Priority Tax Claim against the Debtor agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall, in full satisfaction, release, and discharge of such Allowed Priority Tax Claim: (a) to the extent such Claim is due and owing on the Effective Date, be paid in full, in Cash, on the Effective Date by the Purchaser; (b) to the extent such Claim is not due and owing on the Effective Date, be paid in full, in Cash, in accordance with the terms of any agreement between the Debtor and such holder, or as may be due and owing under applicable non-bankruptcy law, or in the ordinary course of business, by the Purchaser; or (c) be treated on such other terms and conditions as are acceptable to the Purchaser.

### 2.4 *DIP Claims.*

On the Effective Date, all DIP Claims payable in Cash shall be indefeasibly paid in full in Cash from, *inter alia*, the proceeds of the Asset Purchase Agreement, as provided therein. Upon payment and satisfaction in full of all DIP Claims, the commitments under the DIP Facility shall terminate and all Liens and security interests granted to secure such obligations, whether in the Chapter 11 Case or otherwise, shall be terminated and of no further force or effect.

## ARTICLE III

## CLASSIFICATION OF CLAIMS
## AND EQUITY INTERESTS

### 3.1 *Classes of Claims*.

The following table designates the Classes of Claims against, and Equity Interests in, the Debtor and specifies which of those Classes and Equity Interests are (a) impaired or unimpaired by the ~~Prepackaged~~ Plan, (b) entitled to vote to accept or reject the ~~Prepackaged~~ Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the ~~Prepackaged~~ Plan.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 2 | First Lien Holder Claims | ~~Undetermined~~Unimpaired[1] | ~~Yes (unless unimpaired then~~ No (deemed to accept) |
| Class 3 | Second Lien Holder Claims | ~~Undetermined~~Unimpaired[2] | ~~Yes (unless unimpaired then~~ No (deemed to accept) |
| Class 4 | MLB Prepetition Claim | Unimpaired | No (deemed to accept) |
| Class 5 | Secured Tax Claims | Unimpaired | No (deemed to accept) |

---

[1] Based upon the Bankruptcy Court's Memorandum Opinion dated ~~July~~June 22, 2010 (Dkt. No. 257), the Debtor believes that the treatment provided herein with respect to Class 2 First Lien Holder Claims renders such Class unimpaired. The Bankruptcy Court will determine whether Class 2 is unimpaired as part of confirmation of the ~~Prepackaged~~ Plan.

[2] Based upon the Bankruptcy Court's Memorandum Opinion dated ~~July~~June 22, 2010 (Dkt. No. 257), the Debtor believes that the treatment provided herein with respect to Class 3 Second Lien Holder Claims renders such Class unimpaired. The Bankruptcy Court will determine whether Class 3 is unimpaired as part of confirmation of the ~~Prepackaged~~ Plan.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| Class 6 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 7 | Assumed General Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class 8 | Non-Assumed General Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class 9 | Emerald Diamond Claim | Unimpaired | No (deemed to accept) |
| Class 10 | Overdraft Protection Agreement Claim | Unimpaired | No (deemed to accept) |
| Class 11 | Intercompany Claims | Unimpaired | No (deemed to accept) |
| Class 12 | TRBP Equity Interests | ~~Undetermined~~Impaired | Yes ~~(unless unimpaired then deemed to accept)~~ |

## **ARTICLE IV**

## **TREATMENT OF CLAIMS AND EQUITY INTERESTS**

### 4.1 *Class 1 – Priority Non-Tax Claims*.

(a)    Impairment and Voting.    Class 1 is unimpaired by the ~~Prepackaged~~ Plan.    Each holder of an Allowed Priority Non-Tax Claim is not entitled to vote to accept or reject the ~~Prepackaged~~ Plan and will be conclusively deemed to have accepted the ~~Prepackaged~~ Plan pursuant to section 1126(f) of the Bankruptcy Code.

(b)    Distributions.    Most Allowed Priority Non-Tax Claims, if any, will be assumed by Purchaser and paid in Cash on the later of (i) the Effective Date and (ii) the date such Claim becomes Allowed, except to the extent that a holder of an Allowed Priority Non-Tax Claim against the Debtor agrees to a different treatment.    With respect to any Allowed Priority Non-Tax Claim not assumed by the Purchaser, except to the extent that a holder of an Allowed Priority Non-Tax Claim against the Debtor agrees to a different treatment, each such holder will receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) the date such Claim becomes Allowed.

### 4.2 *Class 2 – First Lien Holder Claims*.

(a)    Impairment and Voting.    If the Bankruptcy Court determines that Class 2 is impaired, each holder of an Allowed First Lien Holder Claim is entitled to vote to accept or reject the ~~Prepackaged~~ Plan.    The Debtor submits that Class 2 is unimpaired by

the ~~Prepackaged~~ Plan, each holder of an Allowed First Lien Holder Claim is not entitled to vote to accept or reject the ~~Prepackaged~~ Plan, and should be conclusively deemed to have accepted the ~~Prepackaged~~ Plan pursuant to section 1126(f) of the Bankruptcy Code.

(b) <u>Distributions</u>. Except to the extent that a holder of an Allowed First Lien Holder Claim against the Debtor agrees to a different treatment, each such holder will receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date such Claim becomes Allowed, and (iii) the date for payment provided by any agreement or understanding between the Debtor and the holder of such Claim. On the Effective Date, an amount of Cash equal to $75 million (or the amount outstanding under the First Lien Credit Agreement and Second Lien Credit Agreement if less than $75 million is outstanding in the aggregate under the First Lien Credit Agreement and Second Lien Credit Agreement on the Effective Date), together with postpetition interest for the period from the Commencement Date through the Effective Date (to the extent the Bankruptcy Court determines that holders of such Claims are entitled to postpetition interest in order for such Claims to be unimpaired), shall be paid to JPMorgan Chase Bank, N.A., as administrative agent for the holders of Allowed First Lien Holder Claims, to be applied in accordance with the First Lien Credit Agreement, the Second Lien Credit Agreement, and the Intercreditor Agreement. On and after the Effective Date, the holders of Allowed First Lien Holder Claims shall retain all existing contractual rights against the Debtor or its affiliates to which they are entitled under the First Lien Credit Agreement and related documents.

**4.3** ***Class 3 – Second Lien Holder Claims***.

(a) <u>Impairment and Voting</u>. If the Bankruptcy Court determines that Class 3 is impaired, each holder of an Allowed Second Lien Holder Claim is entitled to vote to accept or reject the ~~Prepackaged~~ Plan. The Debtor submits that Class 3 is unimpaired by the ~~Prepackaged~~ Plan, each holder of an Allowed Second Lien Holder Claim is not entitled to vote to accept or reject the ~~Prepackaged~~ Plan, and should be conclusively deemed to have accepted the ~~Prepackaged~~ Plan pursuant to section 1126(f) of the Bankruptcy Code.

(b) <u>Distributions</u>. Except to the extent that a holder of an Allowed Second Lien Holder Claim against the Debtor agrees to a different treatment, each such holder will receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date such Claim becomes Allowed, and (iii) the date for payment provided by any agreement or understanding between the Debtor and the holder of such Claim. On the Effective Date, an amount of Cash equal to $75 million (or the amount outstanding under the First Lien Credit Agreement and Second Lien Credit Agreement if less than $75 million is outstanding in the aggregate under the First Lien Credit Agreement and Second Lien Credit Agreement on the Effective Date), together with postpetition interest for the period from the Commencement Date through the Effective Date (to the extent the Bankruptcy Court determines that holders of such Claims are entitled to postpetition interest in order for such Claims to be unimpaired), shall be paid to JPMorgan Chase Bank, N.A., as administrative agent for the holders of Allowed First Lien Holder Claims, to be applied in accordance with the First Lien Credit Agreement, the Second Lien Credit Agreement, and the Intercreditor

Agreement. On and after the Effective Date, the holders of Allowed Second Lien Holder Claims shall retain all existing contractual rights against the Debtor or its affiliates to which they are entitled under the Second Lien Credit Agreement and related documents.

**4.4** *Class 4 – MLB Prepetition Claim*.

(a) <u>Impairment and Voting</u>. Class 4 is unimpaired by the ~~Prepackaged~~ Plan. Each holder of an Allowed MLB Prepetition Claim is not entitled to vote to accept or reject the ~~Prepackaged~~ Plan and will be conclusively deemed to have accepted the ~~Prepackaged~~ Plan pursuant to section 1126(f) of the Bankruptcy Code.

(b) <u>Distributions</u>. The MLB Prepetition Claim shall be an Allowed Claim. On the Effective Date, the MLB Prepetition Claim shall be paid in full in Cash from, *inter alia*, the proceeds of the Asset Purchase Agreement, as provided therein.

**4.5** *Class 5 – Secured Tax Claims*.

(a) <u>Impairment and Voting</u>. Class 5 is unimpaired by the ~~Prepackaged~~ Plan. Each holder of an Allowed Secured Tax Claim is not entitled to vote to accept or reject the ~~Prepackaged~~ Plan and will be conclusively deemed to have accepted the ~~Prepackaged~~ Plan pursuant to section 1126(f) of the Bankruptcy Code.

(b) <u>Distributions</u>. Each holder of an Allowed Secured Tax Claim that is assumed by the Purchaser under the Asset Purchase Agreement shall retain its existing lien, if any, in the Purchased Assets, and shall be paid in Cash by the Purchaser when such Allowed Secured Tax Claim becomes due and owing in the ordinary course of business. With respect to any Allowed Secured Tax Claim that is not assumed by the Purchaser, except to the extent that a holder of any other Allowed Secured Tax Claim against the Debtor agrees to a different treatment, each such holder shall retain its existing lien, if any, and shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) the date such Allowed Secured Tax Claim becomes due and owing in the ordinary course of business.

**4.6** *Class 6 – Other Secured Claims*.

(a) <u>Impairment and Voting</u>. Class 6 is unimpaired by the ~~Prepackaged~~ Plan. Each holder of an Allowed Other Secured Claim is not entitled to vote to accept or reject the ~~Prepackaged~~ Plan and will be conclusively deemed to have accepted the ~~Prepackaged~~ Plan pursuant to section 1126(f) of the Bankruptcy Code.

(b) <u>Distributions</u>. Allowed Other Secured Claims will be assumed by the Purchaser on the Effective Date under the Asset Purchase Agreement. Each holder of an Allowed Other Secured Claim shall, on the Effective Date, either (i) retain its existing lien in the Purchased Assets and be paid by the Purchaser when such Allowed Other Secured Claim becomes due and owing in the ordinary course of business, or (ii) receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code.

**4.7**     *Class 7 – Assumed General Unsecured Claims*.

(a)     Impairment and Voting.    Class 7 is unimpaired by the ~~Prepackaged~~ Plan.    Each holder of an Allowed Assumed General Unsecured Claim is not entitled to vote to accept or reject the ~~Prepackaged~~ Plan and shall be conclusively deemed to accept the ~~Prepackaged~~ Plan pursuant to section 1126(f) of the Bankruptcy Code.

(b)     Distributions.    Each holder of an Allowed Assumed General Unsecured Claim will be paid by the Purchaser when and as such Allowed Assumed General Unsecured Claim becomes due and owing in the ordinary course of business.    To the extent an Allowed Assumed General Unsecured Claim is due and owing prior to the Effective Date, such Allowed Assumed General Unsecured Claim shall include postpetition interest at a rate specified by the Bankruptcy Court or the federal judgment rate, and any other fees or charges due and owing under the terms of the holder's contract or agreement or under applicable law. To the extent an Allowed Assumed General Unsecured Claim is due and owing prior to the Effective Date, such Allowed Assumed General Unsecured Claim shall include postpetition interest at a rate specified by the Bankruptcy Court as the rate applicable by contract, statute, or otherwise or the federal judgment rate, and any other fees or charges due and owing under the terms    of the holder's contract or agreement or under applicable law.    Notwithstanding the foregoing, to the extent prepetition litigation was commenced and ongoing prior to the Commencement Date and a judgment not yet rendered, nothing provided herein shall prohibit the awarding of interest by the appropriate tribunal adjudicating such litigation under a final order.

**4.8**     *Class 8 – Non-Assumed General Unsecured Claims*.

(a)     Impairment and Voting.    Class 8 is unimpaired by the ~~Prepackaged~~ Plan.    Each holder of an Allowed Non-Assumed General Unsecured Claim is not entitled to vote to accept or reject the ~~Prepackaged~~ Plan and shall be conclusively deemed to accept the ~~Prepackaged~~ Plan pursuant to section 1126(f) of the Bankruptcy Code.

(b)     Distributions.    Except to the extent that a holder of an Allowed Non-Assumed General Unsecured Claim agrees to less favorable treatment of such Allowed Non-Assumed General Unsecured Claim, each holder of an Allowed Non-Assumed General Unsecured Claim will, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Non-Assumed General Unsecured Claim, in the sole discretion of the Debtor: (i) to the extent such Allowed Non-Assumed General Unsecured Claim is due and owing on the Effective Date, such Allowed Non-Assumed General Unsecured Claim shall include postpetition interest at a rate specified by the Bankruptcy Court as the rate applicable by contract, statute, or otherwise or the federal judgment rate, and any other fees or charges due and owing under the terms of the holder's contract or agreement or under applicable law, and (x) be paid in full in Cash on the later of the Effective Date and the date such claim becomes an Allowed Non-Assumed General Unsecured Claim, or, in each case, as soon as practicable thereafter, or (y) otherwise be paid in accordance with the terms of any agreement between the Debtor and such holder; (ii) to the extent such Allowed Non-Assumed General Unsecured Claim is not by its terms due and owing on the Effective Date, be paid in full in Cash when and as such Allowed Non-Assumed General Unsecured Claim becomes due and owing in the

ordinary course of business; or (iii) receive treatment that leaves unaltered the legal, equitable, and contractual rights to which such Allowed Non-Assumed General Unsecured Claim entitles the holder of such Claim.

### 4.9    *Class 9 – Emerald Diamond Claim*.

(a)    <u>Impairment and Voting</u>.    Class 9 is unimpaired by the ~~Prepackaged~~ Plan.    Each holder of an Allowed Emerald Diamond Claim is not entitled to vote to accept or reject the ~~Prepackaged~~ Plan and shall be conclusively deemed to accept the ~~Prepackaged~~ Plan pursuant to section 1126(f) of the Bankruptcy Code.

(b)    <u>Distributions</u>.    Except to the extent that a holder of an Allowed Emerald Diamond Claim agrees to less favorable treatment of such Allowed Emerald Diamond Claim, each holder of an Allowed Emerald Diamond Claim shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Emerald Diamond Claim, be paid in full in Cash on the later of the Effective Date or as soon thereafter as is reasonably practicable in an amount equal to the Allowed Emerald Diamond Claim.

### 4.10    *Class 10 – Overdraft Protection Agreement Claim*.

(a)    <u>Impairment and Voting</u>.    Class 10 is unimpaired by the ~~Prepackaged~~ Plan.    Each holder of an Allowed Overdraft Protection Agreement Claim is not entitled to vote to accept or reject the ~~Prepackaged~~ Plan and shall be conclusively deemed to accept the ~~Prepackaged~~ Plan pursuant to section 1126(f) of the Bankruptcy Code.

(b)    <u>Distributions</u>.    Except to the extent that a holder of an Allowed Overdraft Protection Agreement Claim agrees to less favorable treatment of such Allowed Overdraft Protection Agreement Claim, each holder of an Allowed Overdraft Protection Agreement Claim shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Overdraft Protection Agreement Claim, be paid in full in Cash on the later of the Effective Date or as soon thereafter as is reasonably practicable in an amount equal to the Allowed Overdraft Protection Agreement Claim.

### 4.11    *Class 11 – Intercompany Claims*.

(a)    <u>Impairment and Voting</u>.    Class 11 is unimpaired by the ~~Prepackaged~~ Plan.    Each holder of an Allowed Intercompany Claim is not entitled to vote to accept or reject the ~~Prepackaged~~ Plan and shall be conclusively deemed to accept the ~~Prepackaged~~ Plan pursuant to section 1126(f) of the Bankruptcy Code.

(b)    <u>Distribution</u>.    The legal, equitable and contractual rights of the holders of Allowed Intercompany Claims shall be unaltered by the ~~Prepackaged~~ Plan, or such Allowed Intercompany Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.    Any such transaction may be effected on or subsequent to the Effective Date without any further authorization from the Bankruptcy Court.

**4.12** *Class 12 – TRBP Equity Interests*.

(a) <u>Impairment and Voting</u>. ~~If the Bankruptcy Court determines that~~ Class 12 is impaired~~, each holder of an Allowed TRBP Equity Interest is entitled to vote to accept or reject the Prepackaged Plan.   The Debtor submits that Class 12 is unimpaired by the Prepackaged~~ by the   Each holder of an Allowed TRBP Equity Interest is ~~not~~ entitled to vote to accept or reject the ~~Prepackaged Plan, and should be conclusively deemed to accept the Prepackaged Plan pursuant to section 1126(f) of the Bankruptcy Code.~~   Plan.

(b) <u>Distribution</u>. The legal, equitable and contractual rights of the holders of Allowed TRBP Equity Interests shall be unaltered by the ~~Prepackaged~~ Plan.

## ARTICLE V

## IDENTIFICATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS IMPAIRED; ACCEPTANCE OR REJECTION OF THIS PLAN OF REORGANIZATION

**5.1** *Classes Entitled to Vote*.

Pursuant to section 1126(f) of the Bankruptcy Code, each unimpaired Class of Claims is conclusively deemed to have accepted the ~~Prepackaged~~ Plan and, therefore, is not entitled to vote.   Pending a further ruling from the Bankruptcy Court as to whether Claims in Class 2 (First Lien Holder Claims) and Class 3 (Second Lien Holder Claims) ~~and Equity Interests in Class 12 (TRBP Equity Interests)~~ are impaired under the ~~Prepackaged~~ Plan, holders of Claims ~~and Equity Interests~~ in these classes are entitled to vote to accept or reject the ~~Prepackaged~~ Plan.   If the Bankruptcy Court determines that the Claims ~~or Equity Interests~~ in ~~any~~either such Class are unimpaired, then the holders of Claims ~~or Equity Interests~~ in such Class(es) shall be deemed to have voted to accept the ~~Prepackaged~~ Plan.   Holders of Equity Interests in Class 12 (TRBP Equity Interests) are impaired under the Plan and entitled to vote.

## ARTICLE VI

## MEANS OF IMPLEMENTATION AND POST-EFFECTIVE DATE GOVERNANCE

**6.1** *Asset Purchase Agreement and Related Documents*.

(a) <u>General</u>.   On the Effective Date, the Asset Purchase Agreement shall be consummated.   Except as otherwise explicitly provided herein, on the Effective Date, substantially all of the Debtor's property shall be sold and transferred to the Purchaser in accordance with the terms of the Asset Purchase Agreement and the ~~Prepackaged~~ Plan in exchange for the consideration set forth in the Asset Purchase Agreement.   Any property comprising the Estate (including Causes of Action (as defined below)) shall revest in the Post-Effective Date Debtor.

(b) <u>Amendments</u>.   The ~~Asset~~Baseball Express Purchase Agreement and LSA are attached as Exhibits to the Disclosure Statement.   To the extent there are material

amendments to those documents prior to the Confirmation Hearing, the Debtor ~~will~~shall file ~~the amended documents~~such amendments prior to the Confirmation Hearing; provided, however, that in the event an auction is held for the Debtor's assets under the Bidding Procedures Order, the Debtor shall file the Asset Purchase Agreement and the other documents executed by the Successful Bidder and the Backup Bidder as soon as reasonably practicable after the auction. Prior to or after the Confirmation Date, the Debtor is authorized to enter into non-material amendments to the Asset Purchase Agreement~~, the LSA,~~ or any other documents in furtherance of the transactions contemplated thereby without the need for further notice or Court approval.

### 6.2  *General Corporate Actions*.

(a) <u>General</u>.  Upon the Effective Date, all actions contemplated by the ~~Prepackaged~~ Plan will be deemed authorized and approved in all respects, including (i) the consummation of the Asset Purchase Agreement; and (ii) all other actions contemplated by the Asset Purchase Agreement and the ~~Prepackaged~~ Plan (whether to occur before, on or after the Effective Date).   All matters and transactions provided for in the Asset Purchase Agreement and the ~~Prepackaged~~ Plan concerning the structure of the Debtor or the Post-Effective Date Debtor, and any partnership action required by the Debtor or the Post-Effective Date Debtor in connection with the Asset Purchase Agreement and the ~~Prepackaged~~ Plan will be deemed to have occurred and will be in effect, without any requirement of further action by the general partner or officers of the Debtor or the Post-Effective Date Debtor.   On or (as applicable) prior to the Effective Date, general partner or the appropriate officers of the Debtor or the Post-Effective Date Debtor, as applicable, will be authorized and directed to issue, execute and deliver the agreements, documents, and instruments contemplated by the Asset Purchase Agreement and the ~~Prepackaged~~ Plan (or necessary or desirable to effect the transactions contemplated by the Asset Purchase Agreement and the ~~Prepackaged~~ Plan) in the name of and on behalf of the Post-Effective Date Debtor, including, without limitation, the Transition Services Agreement, the Media JV Agreement, and any and all other agreements, documents, and instruments related to the foregoing (including, without limitation, security documents). Such authorizations and approvals will be effective notwithstanding any requirements under non-bankruptcy law.

(b) <u>Continued Legal Existence</u>.   Except as otherwise provided in the ~~Prepackaged~~ Plan, the Debtor will continue to exist after the Effective Date as a separate legal entity with all the powers of such entity under Texas law pursuant to the Debtor's partnership agreement, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date, except as may be limited by the Asset Purchase Agreement.

(c) <u>Officers of the Post-Effective Date Debtor</u>. Thomas O. Hicks, as the Chief Executive Officer of Rangers Equity GP (TRBP's managing partner), maintains the sole power and authority to control the business of TRBP other than any power that has been delegated to certain officers of TRBP.   After the Effective Date, certain existing officers of the Debtor shall resign.   At or prior to the Confirmation Hearing, the Debtor shall disclose its Post-Effective Date management.

(d)     Post-Effective Date Actions.    On or after the Effective Date, TRBP shall be authorized to distribute the proceeds received by TRBP from the consummation of the transactions contemplated by the Asset Purchase Agreement to the holders of Equity Interests in accordance with its existing partnership agreement after making any appropriate reserves for (i) any litigation claims against TRBP existing on the Effective Date, (ii) any potential future litigation claims, and (iii) any other Claims not yet paid, to the extent required by state law and as required under the Asset Purchase Agreement, including without limitation, all Class 8 Claims.    Thereafter, without the need for further action, TRBP may be dissolved or otherwise consolidated.

### 6.3     *Cancellation of Liens*.

Except as otherwise specifically provided herein and in accordance with the Asset Purchase Agreement, upon the occurrence of the Effective Date, any Lien securing any Secured Claim shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any Collateral or other property of the Debtor (including any Cash collateral) held by such holder and to take such actions as may be requested by the Post-Effective Date Debtor, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Post-Effective Date Debtor; *provided*, *however*, that such Liens shall be released regardless of whether any such filing or recordings are made.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

### 7.1     *Date of Distributions on Account of Allowed Claims*.

Except as otherwise specifically provided herein or in the Asset Purchase Agreement, any distributions and deliveries to be made under the ~~Prepackaged~~ Plan shall be made on the Effective Date or as soon as practicable thereafter.    In the event that any payment or act under the ~~Prepackaged~~ Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 7.2     *Sources of Cash for the* ~~*Prepackaged*~~ *Plan Distribution*.

Except as otherwise specifically provided herein or in the Confirmation Order, all Cash required for the payments to be made hereunder shall be obtained from the proceeds received by the Debtor under the Asset Purchase Agreement.

### 7.3     *Disbursing Agent*.

All distributions under the ~~Prepackaged~~ Plan required to be made by the Debtor shall be made by TRBP as the Disbursing Agent or such other Person designated by TRBP as a Disbursing Agent at or prior to the Confirmation Hearing.    A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless

otherwise ordered by the Bankruptcy Court.    All distributions under the ~~Prepackaged~~ Plan required to be made by the Purchaser shall be made by the Purchaser .

### 7.4    *Rights and Powers of Disbursing Agent*.

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the ~~Prepackaged~~ Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities, and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the ~~Prepackaged~~ Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 7.5    *Expenses of the Disbursing Agent*.

Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by the Disbursing Agent (including taxes and reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Post-Effective Date Debtor in the ordinary course of business.

### 7.6    *Record Date for Distribution*.

The record date for distributions shall be the Distribution Record Date.

### 7.7    *Delivery of Distributions*.

(a)    <u>Last Known Address</u>.    Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth in the books and records of the Debtor, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected on such schedules for such holder.    In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.    After such date, all unclaimed property or interest in property shall revert to the Post-Effective Date Debtor, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred, notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.

(b)    <u>Distributions by First Lien Administrative Agent</u>.    The First Lien Administrative Agent shall be the disbursing agent for the Allowed First Lien Holder Claims.    Distributions under the ~~Prepackaged~~ Plan to holders of such Allowed First Lien Holder Claims shall be made by the Post-Effective Date Debtor to the First Lien Administrative Agent, which, in turn, shall make the distributions to the holders of such Allowed Claims.    The

First Lien Administrative Agent shall not be required to give any bond, surety or other security for the performance of its duties with respect to its administration of distributions. Upon delivery by the Post-Effective Date Debtor of the distributions in conformity with Section 4.2 hereof to the First Lien Administrative Agent, the Post-Effective Date Debtor shall be released of all liability with respect to the delivery of such distributions.

(c) <u>Distributions by the Second Lien Administrative Agent</u>. The Second Lien Administrative Agent shall be the disbursing agent for the Allowed Second Lien Holder Claims. Distributions under the ~~Prepackaged~~ Plan to holders of Allowed Second Lien Holder Claims, if any, shall be made by the Post-Effective Date Debtor to the First Lien Administrative Agent, which shall make distributions to the Second Lien Administrative Agent on behalf of the holders of Allowed Second Lien Holder Claims in accordance with the First Lien Credit Agreement, Second Lien Credit Agreement, and any relevant intercreditor agreement. The Second Lien Administrative Agent shall not be required to give any bond, surety or other security for the performance of its duties with respect to its administration of any distributions. Upon delivery by the Post-Effective Date Debtor of the distributions in conformity with Section 4.3 hereof to the Second Lien Administrative Agent, the Post-Effective Date Debtor shall be released of all liability with respect to the delivery of such distributions.

### 7.8 *Manner of Payment Under ~~Prepackaged~~ Plan*.

(a) All distributions of Cash by the Debtor under the ~~Prepackaged~~ Plan shall be made by the Disbursing Agent on behalf of the Debtor. At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

(b) All distributions of Cash by the Purchaser under the ~~Prepackaged~~ Plan shall be made by the Purchaser. At the option of the Purchaser, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

### 7.9 *Setoffs and Recoupment*.

Except as otherwise specifically provided for herein, the Debtor may, but shall not be required to, setoff against or recoup from any Claim any claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Post-Effective Date Debtor of any such claim they may have against such claimant.

### 7.10 *Distributions After Effective Date*.

Distributions made after the Effective Date to holders of Disputed Claims or Equity Interests that are not Allowed Claims or Equity Interests as of the Effective Date, but which later become Allowed Claims or Equity Interests, shall be deemed to have been made on the Effective Date.

**7.11**   *Allocation of Payments under the ~~Prepackaged~~ Plan*.

In the case of distributions with respect to holders of Claims pursuant to the ~~Prepackaged~~ Plan, the amount of any Cash and the fair market value of any other consideration received by the holder of such Claim shall be allocable first to the principal amount of such Claim (as determined for federal income tax purposes) and then, to the extent of any excess, the remainder of the Claim.

**7.12**   *No Postpetition Interest on Claims*.

Except as otherwise specifically provided for herein, in the Confirmation Order or in any other order of the Bankruptcy Court, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Equity Interests, and no holder of a Claim or Equity Interest shall be entitled to interest accruing on or after the Commencement Date on any Claim or Equity Interest.

## ARTICLE VIII

## PROCEDURES FOR TREATING
## DISPUTED CLAIMS UNDER THE ~~PREPACKAGED~~ PLAN

**8.1**   *Disputed Claims*.

On and after the Effective Date, except as otherwise specifically provided herein, all Claims shall be paid in the ordinary course of business of the Purchaser, if assumed under the Asset Purchase Agreement, or by the Post-Effective Date Debtor if not assumed under the Asset Purchase Agreement.   If the Debtor or the Purchaser disputes any Claim, such dispute shall be determined, resolved or adjudicated, as the case may be, in a manner as if the Chapter 11 Case had not been commenced and shall survive the Effective Date as if the Chapter 11 Case had not been commenced, *provided*, *however*, that the Debtor may elect, in consultation with the Purchaser (to the extent the Claim is assumed under the Asset Purchase Agreement), to object under section 502 of the Bankruptcy Code with respect to any proof of claim filed by or on behalf of a holder of a Claim.

**8.2**   *Objections to Claims*.

Except insofar as a Claim is Allowed under the ~~Prepackaged~~ Plan, the Debtor, the Purchaser (to the extent the Claim is assumed under the Asset Purchase Agreement), or any other party in interest shall be entitled to object to Claims.   Any objections to Claims shall be served and filed by the Claim Objection Deadline.   If no objection to a Claim is filed by the Claim Objection Deadline and the Claim has been paid (if liquidated), the related proof of claim filed against the Debtor, regardless of the time of filing, and including claims filed after the Effective Date, shall be deemed withdrawn.   The deemed withdrawal of all proofs of claim is without prejudice to claimant's rights under this Section to assert its claims in any proper forum as though the Chapter 11 Case had not been commenced; *provided, however*, that claimants shall not be permitted to assert against the Debtor claims that have been (i) assumed and paid in full by the Purchaser, or (ii) assumed and assigned to the Purchaser pursuant to section 365 of the Bankruptcy Code.   Notwithstanding anything to the contrary provided herein, neither the

Debtor nor the Purchaser shall seek, on the basis of the ~~Prepackaged~~ Plan, to change the venue of any litigation that was commenced but not concluded to judgment prior to the Effective Date.

### 8.3 *No Distributions Pending Allowance*.

If the Debtor or the Purchaser objects to any Claim or Equity Interest, no payment or distribution provided under the ~~Prepackaged~~ Plan shall be made on account of such Claim or Equity Interest unless and until such Disputed Claim or Equity Interest becomes an Allowed Claim or Equity Interest.

### 8.4 *Distributions After Allowance*.

To the extent that a Disputed Claim or Disputed Equity Interest ultimately becomes an Allowed Claim or Allowed Equity Interest, respectively, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Equity Interest, respectively, in accordance with the provisions of the ~~Prepackaged~~ Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Equity Interest becomes a Final Order, the Disbursing Agent <u>or the Purchaser, as applicable,</u> shall provide to the holder of such Claim or Equity Interest the distribution (if any) to which such holder is entitled under the ~~Prepackaged~~ Plan as of the Effective Date, without any interest to be paid on account of such Claim or Equity Interest unless required under applicable bankruptcy law.

### 8.5 *Resolution of Disputed Claims*

Notwithstanding any prior order of the Bankruptcy Court, on and after the Effective Date, the Post-Effective Date Debtor (and with respect to Claims assumed by the Purchaser, Purchaser) shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Disputed Claims or Disputed Equity Interests and to compromise, settle, or otherwise resolve any Disputed Claims or Disputed Equity Interests without approval of the Bankruptcy Court, other than with respect to Administrative Expense Claims relating to compensation of professionals.

## <u>ARTICLE IX</u>

## <u>TREATMENT OF EXECUTORY</u><br><u>CONTRACTS AND UNEXPIRED LEASES</u>

### 9.1 *Assumption of Contracts and Leases*.

(a) <u>General</u>. Except as otherwise specifically provided herein and the Asset Purchase Agreement, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the ~~Prepackaged~~ Plan, as of the Effective Date, the Debtor shall be deemed to have assumed and assigned to the Purchaser each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed or rejected by the Debtor, (ii) was previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to reject filed by the Debtor on or before the Confirmation Date, or (iv) is an Excluded Contract. The Confirmation Order shall

constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions, assumptions and assignments, or rejections described above, as of the Effective Date.

Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on such schedule.

(b)     HSG Assigned Contracts.     Prior to the Commencement Date, all HSG Assigned Contracts were assigned to TRBP by HSG.   The HSG Assigned Contracts shall be assumed by the Debtor and assigned to the Purchaser as of the Effective Date.

(c)     Excluded Contracts.     On the Effective Date, each Excluded Contract that is an executory contract or unexpired lease shall either be terminated by its terms or assumed by the Post-Effective Date Debtor.   The LSA shall be assumed by the Post-Effective Debtor on the Effective Date.

(d)     Objections to Assumption and Assignment.     Any party wishing to object to the assumption or assumption and assignment of any executory contract or unexpired lease hereunder must follow the instructions described in the notice of the Confirmation Hearing for filing objections to the ~~Prepackaged~~ Plan and include a copy of the executory contract or unexpired lease to which any such objection relates or contain information sufficient to identify the executory contract or unexpired lease to which any such objection relates.   Any counterparty that does not object to the assumption or assumption and assignment of its executory contract or unexpired lease by the Debtor under the ~~Prepackaged~~ Plan, shall be deemed to have consented to such assumption or assumption and assignment.

### 9.2     *Payments Related to Assumption of Contracts and Leases*.

Any monetary amounts by which any executory contract and unexpired lease to be assumed hereunder are in default shall be satisfied promptly, under section 365(b)(1) of the Bankruptcy Code, by the Purchaser upon assumption and assignment thereof.   If there is a dispute regarding (i) the nature or amount of any Cure; (ii) the ability of the Purchaser to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining

to assumption and assignment, Cure shall occur within seven days following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

### 9.3 *Claims Based on Rejection of Executory Contracts or Unexpired Leases*.

All Claims arising out of the rejection of executory contracts and unexpired leases must be served upon the Debtor and its counsel within 30 days after the earlier of (i) the date of entry of an order of the Bankruptcy Court approving such rejection or (ii) the Confirmation Date. Any Claims not filed within such time shall be forever barred from assertion against the Debtor, its Estate and its property.

### 9.4 *Compensation and Benefit Plans and Treatment of Retirement Plan*.

Except and to the extent previously assumed by an order of the Bankruptcy Court, on or before the Confirmation Date, all employee compensation and employee benefit plans directly sponsored by the Debtor, including employee benefit plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Commencement Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed under the ~~Prepackaged~~ Plan and assigned to the Purchaser under the Asset Purchase Agreement. Accordingly, the obligations under such plans and programs shall survive confirmation of the ~~Prepackaged~~ Plan, except for (i) executory contracts or benefit plans specifically rejected pursuant to the ~~Prepackaged~~ Plan (to the extent such rejection does not violate sections 1114 and 1129(a)(13) of the Bankruptcy Code) and (ii) such executory contracts or employee benefit plans as have previously been rejected, are the subject of a motion to reject as of the Confirmation Date, or have been specifically waived by the beneficiaries of any employee benefit plan or contract.

### 9.5 *Insurance Policies*.

**Notwithstanding anything contained in the** ~~Prepackaged Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court,~~**Disclosure Statement or the Plan, (including, without limitation, any other provision that purports to be preemptory or supervening or grants a release): (i) all of the Debtor's insurance policies and any agreements, documents or instruments relating thereto**. **(collectively, the "Policies and Agreements") shall be assumed by the Debtor and** assigned to ~~Purchaser and continued in accordance with~~**the Purchaser, (ii) except for such assignment, which shall relieve TRBP of any obligations under the Policies and Agreements, nothing in the Plan or the Confirmation Order alters the rights and obligations of the parties under the Policies and Agreements or modifies the coverage provided thereunder or the terms and conditions thereof; and (iii) any claims of insurers and third party administrators arising under or related to the Policies and Agreements, to the extent they are assumed by the Purchaser under** the terms of the Asset Purchase Agreement**, shall be paid by the Purchaser in the ordinary course without the need or requirement for the insurers or third party administrators to file proofs of claim or requests, motions or applications therefor.** **Nothing contained in this Section 9.5 shall constitute or be deemed a waiver of any cause of**

action that the Debtor may hold against any entity, including, without limitation, the insurer, under any of the Debtor's insurance policies.

## ARTICLE X

## CONDITIONS PRECEDENT
## TO EFFECTIVE DATE

**10.1** *Conditions Precedent to Effective Date of ~~Prepackaged~~ Plan*.

The occurrence of the Effective Date of the ~~Prepackaged~~ Plan is subject to satisfaction of the following conditions precedent:

(a) <u>Confirmation Order</u>. The Clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Chapter 11 Case and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto. The Confirmation Order in the Chapter 11 Case shall be in form and substance reasonably acceptable to the Debtor and the Purchaser.

(b) <u>Execution and Delivery of Other Documents</u>. All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Asset Purchase Agreement and ~~Prepackaged~~ Plan shall have been effectuated and, in each case, (i) shall have been approved, (ii) all conditions to their effectiveness shall have been satisfied or waived, and (iii) such documents shall otherwise be reasonably satisfactory in form and substance to the Debtor and the Purchaser.

(c) <u>Regulatory Approvals</u>. The Debtor shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions or documents that are necessary to implement the Asset Purchase Agreement and the ~~Prepackaged~~ Plan and that are required by law, regulations or order.

(d) <u>MLB Approvals</u>. The Debtor shall have received all consents and approvals required by MLB to implement the Asset Purchase Agreement, including approval of the Purchaser as set forth in the Bidding Procedures Order, and the ~~Prepackaged~~ Plan consistent with the Major League Constitution adopted by Major League clubs as the same may be amended, supplemented or otherwise modified from time to time in the manner provided therein, all replacement or successor agreements that may in the future be entered into by Major League clubs and each other rule, regulation, guideline, agreement or document governing Major League clubs.

(e) <u>Consents</u>. All authorizations, consents and approvals determined by the Debtor to be necessary to implement the terms of the Asset Purchase Agreement and the ~~Prepackaged~~ Plan shall have been obtained.

**10.2** *Waiver of Conditions Precedent*.

Each of the conditions precedent in Section 10.1(a), (b), (c) and (e) hereof may be waived, in whole or in part, by the Debtor without notice or order of the Bankruptcy Court;

*provided however*, that the Purchaser must give its prior written consent to any waiver under Section 10.1(a), (b), (c), and (e), which consent shall not be unreasonably withheld. The condition precedent in Section 10.1(d) may be waived only by MLB.

### 10.3 *Effect of Failure of Conditions*.

If the conditions specified in Section 10.1 hereof have not been satisfied or waived in the manner provided in Section 10.2 hereof by August 12, 2010, then: (i) the Confirmation Order shall be of no further force or effect; (ii) no distributions under the ~~Prepackaged~~ Plan shall be made; (iii) the Debtor and all holders of Claims and Equity Interests in the Debtor shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all of the Debtor's obligations with respect to the Claims and Equity Interests shall remain unaffected by the ~~Prepackaged~~ Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor and the ~~Prepackaged~~ Plan shall be deemed withdrawn; *provided*, *however*, that such date may be extended with the consent of the Purchaser and the BOC.

### 10.4 *Reservation of Rights*.

The ~~Prepackaged~~ Plan shall have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, none of the filing of the ~~Prepackaged~~ Plan, any statement or provision contained in the ~~Prepackaged~~ Plan, or action taken by the Debtor with respect to the ~~Prepackaged~~ Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtor or any other party with respect to any Claims or Equity Interests or any other matter.

### 10.5 *Substantial Consummation*.

Substantial consummation of the ~~Prepackaged~~ Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

## ARTICLE XI

## EFFECT OF CONFIRMATION

### 11.1 *Vesting of Assets*.

Except as otherwise provided in the ~~Prepackaged~~ Plan and as contemplated under the Asset Purchase Agreement, the Debtor, as Post-Effective Date Debtor, shall continue to exist on and after the Effective Date as a separate Person with all of the powers available to such legal entity under applicable law, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with applicable law. The property of the Debtor's Estate, together with any property of the Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the ~~Prepackaged~~ Plan or purchased by Purchaser under the Asset Purchase Agreement, if any, shall vest in the Post-Effective Date Debtor on the Effective Date. All property sold, conveyed or transferred to the Purchaser is and shall be free

and clear of all Liens, Claims, and interests of any kind in accordance with section 363(f) of the Bankruptcy Code, except to the extent the Purchaser has assumed such Liens, Claims, or interests under the Asset Purchase Agreement.   Thereafter, the Post-Effective Date Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court.   As of the Effective Date, all property of the Post-Effective Date Debtor not sold to the Purchaser shall be free and clear of all Claims, encumbrances, charges, and Liens except as specifically provided in the ~~Prepackaged~~ Plan or the Confirmation Order.   Without limiting the generality of the foregoing, the Post-Effective Date Debtor may, without application to or approval by the Bankruptcy Court, pay professional fees and expenses incurred after the Effective Date.   Notwithstanding anything to the contrary herein, the Post-Effective Date Debtor shall remain bound by the terms of the confirmed ~~Prepackaged~~ Plan and the order confirming the same.

### 11.2 *Binding Effect*.

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the ~~Prepackaged~~ Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the ~~Prepackaged~~ Plan and whether or not such holder has accepted the ~~Prepackaged~~ Plan.

### 11.3 *Discharge of Claims*.

To the extent that the Debtor is entitled to a discharge, confirmation of the ~~Prepackaged~~ Plan effects a discharge of all Claims against the Debtor.   To the fullest extent permitted by the applicable law (*including*, *without limitation*), section 105 of the Bankruptcy Code, and except as otherwise specifically provided herein, the treatment of all Claims against or Equity Interests in the Debtor under the ~~Prepackaged~~ Plan shall be in exchange for and in complete satisfaction, discharge and release of, all Claims against the Debtor of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred thereon from and after the Commencement Date, or against its Estate or property or interests in property. Except as otherwise provided in the ~~Prepackaged~~ Plan, upon the Effective Date, all Claims against the Debtor shall be satisfied, discharged and released in full in exchange for the consideration provided under the ~~Prepackaged~~ Plan.   Except as otherwise provided in the ~~Prepackaged~~ Plan, all Persons shall be precluded from asserting against the Debtor, the Purchaser, the Post-Effective Date Debtor, or their respective properties or interests in property, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

### 11.4 *Exculpation*.

~~Notwithstanding anything~~**Except as otherwise specifically provided herein** ~~to the contrary~~**, as of the Effective Date, neither the Debtor, the Post-Effective Date Debtor, and the Committee,** ~~the DIP Lender, Purchaser, MLB and their respective directors, managers, officers, employees, partners, members, agents, representatives, accountants, financial advisors, investment bankers, or attorneys (but solely in their capacities as such~~**(including its members)) shall have or incur any liability for any Claim, cause of action, or**

other assertion of liability for any act taken or omitted to be taken since the Commencement Date in connection with, or arising out of, the Chapter 11 Case, the formulation, dissemination, confirmation, consummation, or administration of this ~~Prepackaged~~ Plan, property to be distributed under the ~~Prepackaged~~ Plan, or any other act or omission in connection with the Chapter 11 Case, this ~~Prepackaged~~ Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; *provided*, *however*, that the foregoing shall not affect the liability of any Person that would otherwise result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, actual fraud, or criminal conduct, or intentional unauthorized misuse of confidential information that causes damage.

     ~~**11.5** *Waiver of Avoidance Actions*.~~ ~~To the extent not already otherwise waived pursuant to another order of the Bankruptcy Court, effective as of the~~ **Notwithstanding the foregoing, nothing herein shall limit or affect the protections provided to the Debtor or the Post-**Effective Date ~~, the Debtor shall be deemed to have waived the right to prosecute, and to have settled and released for fair value, any avoidance or recovery actions under sections 545, 547, 548, 549, 550, 551, and 553~~ **Debtor under sections 524 or 1141** of the Bankruptcy Code ~~or other applicable law that belong to the Debtor~~**.**

     **11.5** **[RESERVED]**

     **11.6** *Term of Injunctions or Stays*.

       (a)    Except as otherwise specifically provided herein, all Persons who have held, hold, or may hold Claims against the Debtor are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim against the Post-Effective Date Debtor or the Purchaser, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Post-Effective Date Debtor or the Purchaser with respect to any such Claim, **and** (iii) creating, perfecting or enforcing any encumbrance of any kind against the Post-Effective Date Debtor or the Purchaser, ~~or against the property or interests in property of the Post-Effective Date Debtor or the Purchaser with respect to any such Claim, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Post-Effective Date Debtor or the Purchaser,~~ or against the property or interests in property of the Post-Effective Date Debtor or the Purchaser with respect to any such Claim.

       (b)    Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

(c)     Notwithstanding anything herein to the contrary, nothing in the Plan or the Confirmation Order shall operate as a waiver of or a release or exculpation of any claim or cause of action or action for regulatory compliance (x) held by a Governmental Unit against any non-Debtor, or (y) held by a Governmental Unit against any Debtor, other than those Claims of any Governmental Unit that are subject to the deadlines for filing proofs of claim (clauses (x) and (y) collectively referred to herein as the "Non-Released Government Claims").    Nor shall anything in the Plan or the Confirmation Order enjoin any Governmental Unit from bringing any claim, suit, action, or other proceeding against any party or person for liability under any Non-Released Government Claim.

**11.7**   *Indemnification Obligations*.

Notwithstanding anything to the contrary herein, subject to the occurrence of the Effective Date, all obligations of the Debtor as provided in the Debtor's organizational documents, applicable law or other applicable agreements as of the Commencement Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of its partners or officers, or its direct or its indirect parent entities' partners, members, shareholders, managers, directors or officers, who were partners or officers of the Debtor or its direct or indirect parent entities' partners, members, shareholders, managers, directors or officers at any time prior to the Effective Date, respectively, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, shall survive confirmation of the Prepackaged Plan, remain unaffected thereby after the Effective Date and not be discharged, irrespective of whether such indemnification, defense, advancement, reimbursement, exculpation, or limitation is owed in connection with an event occurring before or after the Commencement Date.    Any Claim based on the Debtor's obligations in the Prepackaged Plan shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

## ARTICLE XII

## RETENTION OF JURISDICTION

**12.1**   *Retention of Jurisdiction*.

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Case and the Prepackaged Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)     To determine any and all adversary proceedings, applications, and contested matters in the Chapter 11 Case and grant or deny any application involving the Debtor that may be pending on the Effective Date;

(c)     To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished as provided in the ~~Prepackaged~~ Plan;

(d)     To hear and determine any timely objections to Administrative Expense Claims or to proofs of claim and equity interests, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Disputed Claim or Disputed Equity Interest, in whole or in part;

(e)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)     To issue such orders in aid of execution of the ~~Prepackaged~~ Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(g)     To consider any amendments to or modifications of the ~~Prepackaged~~ Plan, or to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(h)     To hear and determine all applications of retained professionals under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the ~~Prepackaged~~ Plan, the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(k)     To hear any other matter not inconsistent with the Bankruptcy Code;

(l)     To hear and determine all disputes involving the existence, scope, nature or otherwise of the discharges, injunctions and exculpations granted under the ~~Prepackaged~~ Plan, the Confirmation Order or the Bankruptcy Code;

(m)     To _hear any suit brought on any claim or cause of action related to the Chapter 11 Case that exists as of the Effective Date against the Committee, any member of the Committee, any professional employed by the Committee, the Debtor, the Post-Effective Date Debtor, or any (a) the present and former directors, officers, managers, employees, partners, members, affiliates, agents, financial advisors, investment bankers, attorneys, and representatives of the Debtor, (b) the DIP lender, (c) Baseball Express, (d) the Purchaser, (e) MLB, and (f) the present and former directors, officers, employees, affiliates, agents, financial advisors, investment bankers, attorneys, and representatives of each of the forgoing in clauses (b) through (e), for conduct pertaining to Debtor during the Chapter 11 Case;_

(n)    To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the ~~Prepackaged~~ Plan; and

(o)    ~~(n)~~ To enter a final decree(s) closing the Chapter 11 Case.

## **ARTICLE XIII**

## **MISCELLANEOUS**

### 13.1    *Payment of Statutory Fees*.

All fees payable under section 1930, chapter 123, title 28, United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.

### 13.2    *Filing of Additional Documents*.

The Debtor or the Post-Effective Date Debtor, as applicable, may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the ~~Prepackaged~~ Plan.

### 13.3    *Amendment or Modification of the ~~Prepackaged~~ Plan*.

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, alterations, amendments or modifications of the ~~Prepackaged~~ Plan may be proposed in writing by the Debtor at any time prior to or after the Confirmation Date.   Holders of Claims or Equity Interests that have accepted the ~~Prepackaged~~ Plan shall be deemed to have accepted the ~~Prepackaged~~ Plan, as altered, amended, or modified, *provided* that such alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder; and *provided, further*, *however*, that any holders of Claims or Equity Interests who were deemed to accept the ~~Prepackaged~~ Plan because such Claims or Equity Interests were unimpaired shall continue to be deemed to accept the ~~Prepackaged~~ Plan only if, after giving effect to such amendment or modification, such Claims or Equity Interests continue to be unimpaired.

### 13.4    *Inconsistency*.

In the event of any inconsistency among the ~~Prepackaged~~ Plan, the Disclosure Statement, any exhibit or schedule to the Disclosure Statement, the provisions of the ~~Prepackaged~~ Plan shall govern.   In the event of any inconsistency between the ~~Prepackaged~~ Plan and the Confirmation Order, the Confirmation Order shall govern.

### 13.5    *Preservation of Rights of Action; Settlement of Litigation Claims*.

Except as otherwise specifically provided herein or in the Asset Purchase Agreement, or in any contract, instrument, release or other agreement entered into in connection with the ~~Prepackaged~~ Plan, in accordance with section 1123(b) of the Bankruptcy Code, TRBP

shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person or entity without the approval of the Bankruptcy Court. TRBP or its successor(s), or the Purchaser, as applicable, may pursue such retained claims, rights or causes of action, suits, or proceedings as appropriate, in accordance with the best interests of the Post-Effective Date Debtor or its successor(s) who hold such rights.

### 13.6 *Effectuating Documents; Further Transactions*.

The general partner or any officer of the Debtor or Post-Effective Date Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the ~~Prepackaged~~ Plan and the Asset Purchase Agreement.

### 13.7 *Compromise of Controversies*.

In consideration for the distributions and other benefits provided under the ~~Prepackaged~~ Plan, the provisions of the ~~Prepackaged~~ Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the ~~Prepackaged~~ Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

### 13.8 *Exemption from Certain Transfer Taxes*.

Pursuant to section 1146(a) of the Bankruptcy Code, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the ~~Prepackaged~~ Plan, including the Asset Purchase Agreement and any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the ~~Prepackaged~~ Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

### 13.9 *Compliance with Tax Requirements*.

In connection with the ~~Prepackaged~~ Plan and all instruments issued in connection herewith and distributed hereunder, any party issuing any instruments or making any distribution under the ~~Prepackaged~~ Plan, including any party described in Sections 7.3 and 7.7 hereof, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the ~~Prepackaged~~ Plan shall be subject to any withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Allowed Equity Interest that is to receive a distribution under the ~~Prepackaged~~ Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instruments or making any distribution under the ~~Prepackaged~~ Plan has the right, but not the obligation, to not make a

distribution until such holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.

### 13.10  *Determination of Tax Filings and Taxes*.

The Post-Effective Date Debtor shall have the right to request an expedited determination of its tax liability, if any, under section 505(b) of the Bankruptcy Code with respect to any tax returns filed, or to be filed, for any and all taxable periods ending after the Commencement Date through the Effective Date.

### 13.11  *Severability of Provisions in the ~~Prepackaged~~ Plan*.

If, prior to Confirmation, any term or provision of the ~~Prepackaged~~ Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, upon consultation with the Purchaser, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the ~~Prepackaged~~ Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation, *provided, however*, that if such holding, alteration or interpretation causes a Material Adverse Effect (as defined in the Asset Purchase Agreement) under the terms of the Asset Purchase Agreement, the rights and remedies of TRBP and the Purchaser under the Asset Purchase Agreement arising from such Material Adverse Effect shall not be affected, impaired or invalidated.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the ~~Prepackaged~~ Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.12  *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the ~~Prepackaged~~ Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties and obligations arising under the ~~Prepackaged~~ Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

### 13.13  *Notices*.

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise ~~expressly~~ specifically provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Weil, Gotshal & Manges LLP
200 Crescent Court, Suite 300

Dallas, Texas 75201
Attention:    Martin A. Sosland
Facsimile:    (214) 746-7777
Email:      martin.sosland@weil.com

and

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York    10153
Attention:   Ronit J. Berkovich
Facsimile:    (212) 310-8007
Email: ronit.berkovich@weil.com

**13.14**   ***Dissolution of any Statutory Committee and Cessation of Fee and Expense Payment***.

Any Committee appointed in the Chapter 11 Case shall be dissolved on the Effective Date and the retention or employment of any advisors or professionals retained by the Committee, including, without limitation, accountants, attorneys and financial advisors will terminate.   ~~After~~Subject to the provisions of Section 2.2 hereof, after the Effective Date, the Post-Effective Date Debtor shall no longer be responsible for paying any fees and expenses incurred by the members of any advisors or professionals retained by the Committee.

Dated: ~~June~~,July 30, 2010

Respectfully submitted,

**TEXAS RANGERS BASEBALL PARTNERS**

By: _____
    Name: Kellie L. Fischer
    Title: Chief Financial Officer

COUNSEL:

_____

Martin A. Sosland
Weil, Gotshal & Manges LLP
200 Crescent Court, Suite 300
Dallas, Texas    75201
(214) 746-7700

Ronit J. Berkovich
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York    10153
(212) 310-8534

*Attorneys for the Debtor and
Debtor in Possession*

Document comparison by Workshare Professional on Friday, July 30, 2010 4:40:19 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://USDMS/US_ACTIVE/43446574/1 |
| Description | #43446574v1<US_ACTIVE> - TRBP: Second Amended Plan of Reorganization |
| Document 2 ID | interwovenSite://USDMS/US_ACTIVE/43432551/7 |
| Description | #43432551v7<US_ACTIVE> - TRBP: Third Amended Plan of Reorganization |
| Rendering set | Unsaved rendering set |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 142 |
| Deletions | 359 |
| Moved from | 8 |
| Moved to | 8 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 517 |