**Mike F. Pipkin**
State Bar No. 16027020
mike.pipkin@sdma.com
**William S. Richmond**
State Bar No. 24066800
bill.richmond@sdma.com
**SEDGWICK, DETERT, MORAN & ARNOLD, LLP**
1717 Main Street, Suite 5400
Dallas, Texas 75201
Telephone No.: (469) 227-8200
Facsimile No.: (469) 227-8004

**Laura Lee Prather**
State Bar No. 16234200
laura.prather@sdma.com
**SEDGWICK, DETERT, MORAN & ARNOLD, LLP**
919 Congress Avenue, Suite 1250
Austin, Texas 78701
Telephone: (512) 481-8400
Facsimile No.: (512) 481-8444

**ATTORNEYS FOR THE NEW YORK TIMES COMPANY**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| TEXAS RANGERS BASEBALL | § | Case No. 10-43400 (DML)-11 |
| PARTNERS, | § | (Chapter 11) |
| | § | |
| Debtor. | § | |
| | § | |

**THE NEW YORK TIMES COMPANY'S MOTION TO INTERVENE AND
MOTION TO UNSEAL AUDIO RECORDING AND BRIEFS THEREON**

Pursuant to Federal Rule of Civil Procedure 24, The New York Times Company ("*The New York Times*"), files this Motion to Intervene and Motion to Unseal Audio Recording, and in support thereof respectfully states as follows:

DL/2539435v1

# I.
# SUMMARY

Under the mandatory intervention provision of Federal Rule of Civil Procedure 24, *The New York Times* seeks to intervene in this lawsuit in order to protect its constitutional right of access to court proceedings—specifically to an audio recording of a hearing held by the Court in this matter. *The New York Times*' right of access to this recording is presumptive, supported by the United States Constitution, Texas Constitution[1] and federal common law, and is not overcome by any compelling interest to prevent public knowledge of the judicial proceedings in this case. Accordingly, *The New York Times* respectfully requests that the Court allow *The New York Times* to participate in this matter as an intervenor and unseal the full audio transcript in this case that was recorded at the hearing held on July 9, 2010.

# II.
# STATEMENT OF FACTS

On July 9, 2010, the Court summoned various counsel of record in this bankruptcy matter for a hearing in the Court's chambers. The hearing was recorded by the Court's reporter on one or more audio tapes (the "July 9th Tapes"), but the Court did not seal them. There was, at that time, and remains, no compelling interest to do so.

Between July 20, 2010 and August 2, 2010, *The New York Times*, by its undersigned counsel, attempted to obtain a copy of the July 9th Tapes by following specified court procedures, completing the standard transcript/recording request form and submitting it with a check to the Court's reporter. After some back and forth correspondence, the court reporter indicated that the Court would only allow a portion of the July 9th Tapes to be released. No reasoning was given for this selective disclosure. *The New York Times* paid for and received the

---

[1] TEX. CONST. art. I, §§ 8 and 13.

partial audio transcript on July 30, 2010—which the Court selectively authorized release of based upon the tape's content.

Despite the fact that none of the litigants have expressed any concern about the tapes being disclosed, on August 2, 2010, the Court *sua sponte* issued an Order sealing "[a]ny tape of any conference held in chambers in these cases or any of their related adversary proceedings . . . ." On August 4, 2010, *The New York Times*, by its undersigned counsel, sent a letter to the Court requesting that the Court reconsider its Order. No response was received from the Court, and no further tapes have been released—presumably a denial of the request to reconsider.

### III.
### MOTION TO INTERVENE AND BRIEF IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 24, *The New York Times* seeks to intervene in the above-captioned lawsuit. In order to intervene as of right under Rule 24(a)(2), the movant must make a satisfactory showing that each of the following requirements is met:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Taylor Commcn's Group, Inc. v. Sw'n Bell Tel. Co.*, 172 F.3d 385, 387 (5th Cir. 1999). *The New York Times* has given the Court approximately five weeks to rule on its request to reconsider; it has refused to do so. Thus, *The New York Times* is forced to file this Motion to Intervene in order to seek the relief requested and is filing its motion in a timely manner. There has been no unreasonable delay in waiting for the Court to act on the request to reconsider, and granting *The New York Times*' motion to intervene does not present any type of prejudice to the parties—who have expressed no opinion with regard to the disclosure of the tapes. *See Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 (5th Cir. 1992).

As to the second factor, the Fifth Circuit holds that "a news agency has a legal interest in challenging a confidentiality order, stating that 'members of the news media, although not parties to litigation, can appeal court closure orders or confidentiality orders under the collateral order doctrine.'" *Ford v. City of Huntsville*, 252 F.3d 235, 240 (5th Cir. 2001) (quoting *Davis v. East Baton Rouge Parish Sch. Bd.*, 78 F.3d 920, 926 (5th Cir. 1996)). In this case, *The New York Times* is a news agency that has a legal interest in challenging a confidentiality order.

As to the third and fourth factors, confidentiality orders conflict with the constitutional right of access and *The New York Times*' interest are inadequately represented by the existing parties as demonstrated by the fact that no party has challenged the seal. *See id.* at 240-41. For these reasons, *The New York Times* respectfully requests that this Court grant *The New York Times* the right to intervene in this lawsuit under Federal Rule of Civil Procedure 24 for the purpose of protecting its (and the public at large's) right of access to court records and court proceedings.

## IV.
## MOTION TO UNSEAL AUDIO RECORDING AND BRIEF IN SUPPORT

*The New York Times* respectfully requests that the Court reconsider its decision to seal all audio-taped, in-chambers hearings in the *Texas Rangers* bankruptcy, in particular, the entirety of the July 9th Tapes. The common law and constitutional presumption of the public's right to access court transcripts is paramount and allows access to the July 9th Tapes unless the government can establish there is an overriding and compelling government interest to keep the information sealed and the means to do so are narrowly tailored. There is no compelling government interest herein, and the only indicia given to the requester by the Court's reporter for refusal to grant access was that the contents could be embarrassing. Embarrassment does not suffice to prohibit access to a proceeding.

A.  **The Right of Access under *Richmond Newspapers* Extends to In-Chambers Hearings and Conferences in this Bankruptcy Case and Require the Unsealing of the July 9, 2010 Audio Recordings of the Conference with Counsel.**

In *Richmond Newspapers, Inc. v. Virginia*, the Supreme Court held that the right of the public and press to attend criminal trial is guaranteed by the First Amendment. 448 U.S. 555 (1980). The philosophical underpinnings of this tradition include the providing of assurance that proceedings are conducted fairly to all concerned, the discouraging of perjury, misconduct, and decision based on secret bias or partiality, increased public confidence in the administration of justice, providing a cathartic mechanism for the community to move past social disruption, and educating the public and thereby promoting familiarity with the methods of government, increasing respect for the law and building confidence in judicial remedies. *E*Trade Fin. Corp. v. Deutsche Bank AG*, 582 F. Supp. 2d 528, 530 (S.D.N.Y. 2008) (quoted, but internal citations omitted). The tradition and presumption of the public's right to access court records as seen in *Richmond Newspapers* is one that has been thoroughly supported by the United States Supreme Court. *See, e.g., Press-Enterprise Co. v. Superior Ct. of Cal.*, 478 U.S. 1 (1986) (*Press-Enterprise II*); *Press-Enterprise Co. v. Superior Ct. of Cal.*, 464 U.S. 501 (1984) (*Press-Enterprise I*).

Since *Richmond Newspapers*, the public's right to access court records has been held by numerous Circuit Courts of Appeal to apply to civil proceedings. *See Rushford v. The New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (applying "rigorous" First Amendment test that "denial of access must be necessitated by a compelling government interest and narrowly tailored to serve that interest" to civil cases); *Westmoreland v. CBS*, 752 F.2d 16, 23 (2d Cir. 1984) (applying *Richmond Newspapers* to civil cases); *Publicker Indus., Inc. v. Cohen*,

733 F.2d 1069, 1071 (3d Cir. 1984); *In re Cont'l Ill. Sec. Lit.*, 732 F.2d 1302, 1308-09 (7th Cir. 1984) (same); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178-79 (6th Cir. 1983) (same). Additionally, the right of access has been extended to include in-chambers hearing and conferences in civil cases—the public's right of access to judicial records also applies when a court allows the contents of a sidebar conference or in-chambers hearing to be officially recorded. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir. 1986) (citing *United States v. Smith*, 787 F.2d 111, 115 (3d Cir. 1986) (*Smith II*).

In this case, there is no reason why this Court should not similarly apply the principles of justice and open government from *Richmond Newspapers* to the Court's in-chambers hearing on July 9, 2010. Indeed, so many of the reasons why access was justified in criminal actions apply to civil cases such as this one: in particular, this matter involves a great deal of public concern not only for those in the Dallas/Fort Worth community but in the baseball, sporting, and business communities in general. There was no compelling interest in sealing the records initially, and no compelling interest exists for maintaining the seal, especially given the nature of the proceedings in question and their existing partial disclosure via media outlets and the parties themselves. In fact, due to the matter of public concern at issue in this bankruptcy proceeding, there is a heightened interest in keeping the records open to the general public. What the Court has done here is selectively permit disclosure of the part of the in-chambers hearing that is not embarrassing and, without any basis for distinction, not authorize disclosure of the rest. Then, after-the-fact, the Court has unwarrantedly attempted to put the proverbial "genie back in the bottle" and *sua sponte* ordered all tapes sealed. Such rulings trample the First Amendment and

contravene U.S. Supreme Court precedent requiring a showing of compelling need to keep government information private. Indeed, no showing whatsoever has been made.

The presumption of openness is especially relevant in this case because, as the Court's Order acknowledged, the taped hearings may be used for appeals purposes and thus play a substantive role in the Court's decision-making in the litigation. The public's right to access these records, even though the Court was not obligated to create the records in the first place, has never been premised on the public's need to use the records in future litigation. Rather, a simple desire for transparency of the judicial process underpins the presumption of openness. The standard places the burden on the government to show that it has a compelling interest in keeping the materials secret and that the restriction on access is narrowly tailored to serve that interest. *See In re The New York Times Co.*, 585 F. Supp. 2d 83 (D.D.C. 2008). In this case, no such interest, substantive prejudice or other justification exists to withhold these tapes from the public. For these reasons, this Court should unseal the audio recordings in this case that were recorded on July 9, 2010.

**B.     The Court Has Not Justified its Sealing of the Tapes, and Any Previous Justifications for Sealing the Tapes No Longer Exist.**

A court is required to make "specific, on-the-record, fact findings" demonstrating that a substantial probability exists that an interest of a higher value will be prejudiced by granting access to the sealed records and that no reasonable alternatives to closure will adequately protect that interest. *United States v. Edwards*, 823 F.2d 111, 119 (5th Cir. 1987). In this case, the Court's order does not provide any justification for the sealing of the July 9th Tapes and is insufficient to overcome the common law and constitutional obstacles to closure and seal.

Further, the right of access to judicial records has historically been granted when the reasons prompting closure have been resolved. *Phoenix Newspapers, Inc. v. U.S. Dist. Ct. for*

*the Dist. of Ariz.*, 156 F.3d 940, 947 (9th Cir. 1998). While there may possibly have been a need to seal audio transcripts of chambers conferences prior to the auction of the Texas Rangers team, that need has expired as the auction was substantively completed last month and already been the subject of widespread media coverage. No other adequate justification exists that may warrant the sealing of these judicial records in light of the right to access under *Richmond Newspapers*, and for that reason, this Court should unseal the July 9, 2010 audio transcripts in this case.

C. **What the Court Has Effectively Accomplished With Its Ruling is an Unlawful Prior Restraint.**

By initially allowing for partial access, then entering an order sealing the information, the Court has effectively issued an unlawful prior restraint in this matter because it is prohibiting *The New York Times* from reporting on the contents of the hearing. Prior restraints on expression are presumptively unconstitutional in Texas. In *Davenport v. Garcia*, 834 S.W.2d 4 (Tex. 1992), the Texas Supreme Court adopted the following test: "A gag order in civil judicial proceedings will withstand constitutional scrutiny only where there are specific findings supported by evidence that (1) an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm." *Id.* at 10; *see also Star Telegram, Inc. v. Walker*, 834 S.W.2d 54 (Tex. 1992) (holding the test articulated in Davenport applies to prior restraints on media defendants). As demonstrated above, there has been no showing of imminent and irreparable harm to justify the sealing of the records at issue.

# V.
# CONCLUSION

For the foregoing reasons, The New York Times Company respectfully requests that this Court grant this Motion to Intervene and Motion to Unseal Audio Recording and grant all other relief to which The New York Times Company is entitled.

Respectfully submitted,

**SEDGWICK, DETERT, MORAN & ARNOLD LLP**

By: *s/ William S. Richmond*

    **Mike F. Pipkin**
    Texas State Bar. No. 16027020
    mike.pipkin@sdma.com
    **William S. Richmond**
    Texas State Bar No. 24066800
    bill.richmond@sdma.com
    1717 Main Street, Suite 5400
    Dallas, Texas  75201
    Telephone No.: (469) 227-8200
    Facsimile No.: (469) 227-8004

    **Laura Lee Prather**
    Texas State Bar No. 16234200
    919 Congress Avenue, Suite 1250
    Austin, Texas 78701
    Telephone:  (512) 481-8400
    Facsimile No.:  (512) 481-8444
    laura.prather@sdma.com

OF COUNSEL:

George Freeman, Esq.
Assistant General Counsel
The New York Times Company
620 8th Ave., 18th Floor
New York, NY  10018
freemang@nytimes.com

**ATTORNEYS FOR THE NEW YORK TIMES COMPANY**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Bankruptcy Rule 7007-1(a) of the United States Bankruptcy Court for the Northern District of Texas, the undersigned counsel does certify that it attempted in good faith to conference with and ascertain the agreement with or opposition of all counsel of any party that may be adverse to the relief sought in the foregoing motion. By email dated September 13, 2010, the undersigned counsel requested a response from each counsel, but did not receive a response from each counsel in the time stated. Rather, only a handful of responses were received, none in opposition, but most without opinion. Accordingly, the motion will not be deemed as either opposed or unopposed.

*s/ William S. Richmond*
William S. Richmond

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2010, true and correct copies of the foregoing Notice were served on all counsel of record by ECF transmission through the Court's ECF system, independent electronic e-mail transmission, or U.S. first class mail, postage prepaid, on each of the parties listed on the attached service list.

*s/ William S. Richmond*
William S. Richmond