

US BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed October 12, 2010**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

```
------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11
                                        :
TEXAS RANGERS BASEBALL PARTNERS,        :        Case No. 10-43400 (DML)
                                        :
         Debtor.                        :
                                        :
------------------------------------------------------------x
```

### AMENDED AND RESTATED FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO THE ORDER CONFIRMING THE PLAN OF REORGANIZATION OF TEXAS RANGERS BASEBALL PARTNERS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE
(Relates to Docket Nos. 532 and 534)

On August 5, 2010, this Court held a hearing (the "Confirmation Hearing") and

entered its Order Confirming the Plan of Reorganization of Texas Rangers Baseball Partners

Under Chapter 11 of the Bankruptcy Code [Docket No. 534] (the "Confirmation Order"),

pursuant to which the Court, among other things, confirmed that certain Fourth Amended Plan of

Reorganization of Texas Rangers Baseball Partners Under Chapter 11 of the Bankruptcy Code

[Docket No. 532] (the "Plan").[1] In accordance with the Confirmation Order, the Court hereby

supplements the Confirmation Order with the following findings of fact and conclusions of law.[2]

Texas Rangers Baseball Partners ("TRBP" or the "Debtor") having proposed and

filed the Plan, the Disclosure Statement,[3] and the Solicitation Materials; and the Plan, Disclosure

Statement, and Solicitation Materials having been duly transmitted to holders of Claims[4] and

Equity Interests in compliance with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern

District of Texas (the "Local Bankruptcy Rules"), and the Disclosure Statement Order, as

applicable, as confirmed by the Affidavit of John S. Franks of AlixPartners, LLP Regarding

Voting on, and Tabulation of, Ballots Accepting and Rejecting the Second Amended

---

[1] The Plan, among other things, references a "to be filed" Schedule 13.5. The Debtor has supplemented the Plan with the Schedule 13.5 attached hereto as Exhibit A (the "Plan Supplement"). The Plan Supplement is hereby deemed to have been filed with the Court and incorporated into the Plan for all intents and purposes. All references herein and in the Confirmation Order to the Plan shall mean and refer to the Plan as supplemented by the Plan Supplement.

[2] On August 10, 2010, the Court entered its Order Extending Debtor's Time to Submit Findings of Fact and Conclusions of Law With Respect to Confirmation of Debtor's Plan of Reorganization [Docket No. 555], extending the deadline to supplement the Confirmation Order with findings of fact and conclusions of law to 4:00 p.m. (Central Time) on August 19, 2010. On August 23, 2010, the Court entered its Findings of Fact and Conclusions of Law with Respect to the Order Confirming the Plan of Reorganization of Texas Rangers Baseball Partners under Chapter 11 of the Bankruptcy Code [Docket No. 596] (the "Original Findings of Fact and Conclusions of Law"). In accordance with the Court's comments at the August 25, 2010 status conference, these findings of fact and conclusions of law amend and restate the Original Findings of Fact and Conclusions of Law pursuant to Federal Rules of Civil Procedure 52(b) and 59(a) (as incorporated by reference by Federal Rules of Bankruptcy Procedure 7052, 9014 and 9023).

[3] After notice and hearing, the Court approved that certain Disclosure Statement Relating to the Prepackaged Plan of Reorganization for Texas Rangers Baseball Partners Under Chapter 11 of the Bankruptcy Code [Docket No. 34] (as amended on June 17, 2010 [Docket No. 226], the "Disclosure Statement") pursuant to its Order (i) Approving the Disclosure Statement, (ii) Approving the Procedures to Solicit Acceptances of the Debtor's Prepackaged Plan (If Needed), Including Ballots and Notices Relating Thereto, and (iii) Scheduling a Confirmation Hearing, and (iv) Establishing Notice and Objection Procedures for Confirmation of the Debtor's Prepackaged Plan, dated June 21, 2010, [Docket No. 254] (the "Disclosure Statement Order"). The Disclosure Statement Order also approved the solicitation materials, which, in addition to the Disclosure Statement and the Amended Plan of Reorganization of Texas Rangers Baseball Partners Under Chapter 11 of the Bankruptcy Code, dated June 17, 2010 [Docket No. 227] (the "First Amended Plan"), also included the Ballots, the Notice of the Confirmation Hearing, the Notice of Non-Voting Status (each as defined in the Disclosure Statement Order), and the Disclosure Statement Order itself (collectively, the "Solicitation Materials").

[4] Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in the Plan.

US 552382v.1

Prepackaged Plan of Reorganization of TRBP [Docket No. 482] and the Supplemental Affidavit of John S. Franks of AlixPartners, LLP Regarding Voting on, and Tabulation of, Ballots Accepting and Rejecting the Second Amended Prepackaged Plan of Reorganization of TRBP [Docket No. 521] (together, the "Franks Affidavit"); and the Court having entered the Order Resetting Hearing on Confirmation of Debtor's Plan of Reorganization and Related Deadlines [Docket No. 388] (the "Scheduling Order"), which, among other things, set: (i) the Confirmation Hearing for August 4, 2010, (ii) July 28, 2010 as the deadline to object to the Plan (the "Objection Deadline"), (iii) July 28, 2010 as the deadline for all parties[5] to vote on the Plan (the "Voting Deadline"), (iv) July 30, 2010 as the deadline to file a brief in advance of the Confirmation Hearing (the "Briefing Deadline"), (v) July 22, 2010 as the date for a non-evidentiary pre-trial conference on issues related to confirmation of the Debtor's Plan,[6] (vi) July 28, 2010 as the deadline to object to the assumption or assignment of executory contracts or unexpired leases under the Plan (the "Assumption and Assignment Objection Deadline"), and (vii) August 4, 2010 at 9:00 a.m. (Central Time) as the date and time for an auction of the Debtor's assets, if needed, (the "Auction"); and the Court having entered the Order Adopting Bidding Procedures [Docket No. 363] (the "Bid Procedures Order"), which, among other things, set: (i) August 3, 2010 at 8:00 p.m. Central Time as the deadline for any Qualified

---

[5] On June 28, 2010, the Court granted the Emergency Application Pursuant to 11 U.S.C.§ 105(a) and 363(b) for Authorization to (a) Employ CRG Partners Group LLC to Provide a Chief Restructuring Officer and Additional Personnel and (b) Designate William Snyder as the Chief Restructuring Officer for Initial Limited Purpose [Case No. 10-43624; Docket No. 30] [Case No. 10-43625; Docket No. 28] authorizing the engagement of William K. Snyder to act as Chief Restructuring Officer (the "CRO") of Rangers Equity Holdings, L.P. ("Rangers Equity L.P.") and Rangers Equity Holdings GP, LLC ("Rangers Equity GP" and together with Rangers Equity L.P., "Rangers Equity"). One of the limited purposes for which the CRO was retained was to vote on the Plan and any modifications to the Plan on behalf of Rangers Equity. Pursuant to the Order Extending the Time in Which the CRO May Cast His Vote On Debtor's Plan of Reorganization, dated July 28, 2010 [Docket No. 456], the CRO's Voting Deadline was set for August 2, 2010.

[6] In lieu of the non-evidentiary pre-trial conference, the Court heard continued argument on the Emergency Joint Motion of Lender Parties for Reconsideration of Court's Order Adopting Bidding Procedures filed on July 15, 2010 [Docket No. 367] (the "Motion for Reconsideration").

Bidder wishing to participate in the Auction to submit a Qualified Bid (each as defined in the

Bidding Procedures attached as Exhibit A to the Bid Procedures Order) (the "Bid Deadline") and

(ii) August 4, 2010 at 9:00 a.m. (Central Time) as the date and time for the Auction; and due and

proper notice of the Confirmation Hearing, the Objection Deadline, the Voting Deadline, the

Briefing Deadline, and the Bid Deadline having been given to holders of Claims against and

Equity Interests in the Debtor and other parties in interest, as applicable, in compliance with the

Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Scheduling Order, and

the Bid Procedures Order, as established by (1) the Notice of Hearing filed by the Debtor

regarding the Bid Procedures Order, among other things, dated August 2, 2010 [Docket No. 506]

and (2) the affidavits of service and/or mailing filed with the Court, including the Certificate of

Service filed by Texas Rangers Baseball Partners, dated August 3, 2010 [Docket No. 510]

regarding the Confirmation Hearing (the "Notice Affidavits"); and such filing and notice thereof

being sufficient under the circumstances and no further notice being required; and based upon

and after full consideration of the entire record of the hearings held on the Motion for

Reconsideration, the Auction, the Confirmation Hearing, and (A) the Disclosure Statement, the

Plan, and the Solicitation Materials, (B) the Debtor's Memorandum of Law in Support of

Confirmation of the Third Amended Plan of Reorganization of Texas Rangers Baseball Partners

Under Chapter 11 of the Bankruptcy Code, dated July 30, 2010, [Docket No. 481] (the "Debtor's

Confirmation Memorandum"), (C) the testimony of John Franks, Kellie Fischer and Kevin

Cofsky, the three witnesses for the Debtor in support of confirmation of the Plan, along with

their respective affidavits and/or declarations, as proffered by counsel for the Debtor at the

Confirmation Hearing: (i) the Franks Affidavit, (ii) the Declaration of Kellie Fischer in Support

of Confirmation of the Debtor's Chapter 11 Plan of Reorganization (together with the additional

proffer of Kellie Fischer's testimony regarding confirmation of the Plan made by counsel for the Debtor's at the Confirmation Hearing, the "Fischer Declaration"), (iii) the Declaration of Kevin M. Cofsky in Support of Confirmation of the Debtor's Chapter 11 Plan of Reorganization (the "Cofsky Declaration" and together with the Franks Affidavit and the Fischer Declaration, the "Supporting Declarations"), (D) the Court's Memorandum Opinion regarding certain confirmation issues entered on June 22, 2010 [Docket No. 257] (the "June 22 Opinion"), and (E) the Court's Memorandum Opinion and Order regarding issues related to the Motion for Reconsideration entered on July 30, 2010 [Docket No. 478] (the "July 30 Opinion"); and all objections filed to the approval of the Plan having been resolved or overruled and the Court being familiar with the Plan and other relevant factors affecting the Debtor's Chapter 11 Case; and the Court being familiar with, and having taken judicial notice of, the entire record of the Debtor's Chapter 11 Case; and upon the arguments of counsel and the evidence proffered and adduced at the Confirmation Hearing; and the Court having found and determined that the Plan should be confirmed as reflected by the Confirmation Order and at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor; the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

**FINDINGS OF FACT**

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following

US 552382v.1

findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.[7]

      B.    <u>Prior Findings of Fact</u>. The findings of fact determined by this Court (i) at the hearing on June 15, 2010 to consider issues related to the Disclosure Statement and issues related to plan confirmation (the "<u>June 15 Hearing</u>"), (ii) in the Disclosure Statement Order, (iii) in the June 22 Opinion, (iv) at the hearings held on July 20, 2010, July 21, 2010, and July 22, 2010 to consider the Motion for Reconsideration and issues related thereto (the "<u>July Hearings</u>"), and (v) in the July 30 Opinion are hereby incorporated into the Confirmation Order.

**<u>Jurisdiction and Venue</u>**

      C.    <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. The Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. § 1334.

---

[7] The court recognizes that many of the findings of fact made below are based in whole or in part upon proffers of testimony offered at the Confirmation Hearing that were not contested because the Plan (as confirmed) was effectively consensual. The court further recognizes that, at the time of its issuance, no order was entered effecting the June 22 Opinion, thus making it impossible for any party to obtain appellate review of any of the conclusions of law in the June 22 Opinion. The court finally recognizes that, if those findings of fact or conclusions of law were given the full preclusive effect of which they might ordinarily be entitled under the law, they could adversely affect the rights of parties in either (1) cases filed under the Bankruptcy Code in this court respecting affiliates of TRBP; or (2) any suit or adversary proceeding commenced by (a) TRBP pursuant to the Plan or (b) any other party in interest. Although the court has full confidence in the reasoning embodied in the June 22 Opinion and would expect to reach the same conclusions if faced with the same facts, it is not the court's intent that the failure to appeal from the June 22 Opinion, the Confirmation Order or these findings and conclusions should prevent any party from arguing before this or any other court (including any appellate court) that the reasoning or conclusions of law contained in the June 22 Opinion are incorrect. Accordingly, neither entry of these findings of fact and conclusions of law nor entry of the Confirmation Order shall preclude any party from later contesting the conclusions of law reached in the June 22 Opinion.

      Further, although the court has no reason to believe any finding of fact made below is incorrect, if any finding of fact is based in whole or in part on a proffer of testimony (including respecting any document, including exhibits) offered at the Confirmation Hearing, such finding of fact shall not have preclusive effect in any other case, suit, contested matter or adversary proceeding commenced in this or any other court; provided, however, each finding of fact made below shall have its full preclusive effect under law respecting the confirmability and confirmation of the Plan (i.e., the court's findings of fact will have full legally preclusive effect in any action seeking revocation or reconsideration of the Confirmation Order and in any other action to the extent confirmability of the Plan is at issue); and, provided, further, the findings of fact and conclusions of law set forth in Paragraph O.(j), below, shall have the full preclusive effect that, absent this footnote, they would be entitled to under the law. To the extent any conclusion of law made below is dependent on a finding of fact lacking preclusive effect pursuant to this footnote, such conclusion of law shall not have preclusive effect in any other case, suit, contested matter or adversary proceeding commenced in this or any other court, provided however each conclusion of law made below shall have its full preclusive effect under law respecting the confirmability and confirmation of the Plan.

6

Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto. The Debtor is an eligible debtor under section 109 of the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is a proper plan proponent under section 1121(a) of the Bankruptcy Code.

## Chapter 11 Case

D. On May 24, 2010 (the "<u>Commencement Date</u>"), the Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code. On June 3, 2010, the U.S. Trustee appointed the committee of unsecured creditors [Docket No. 128] (the "<u>Creditors' Committee</u>").

E. <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Case.

## Solicitation and Notice

F. <u>Solicitation and Voting</u>. The First Amended Plan, the Disclosure Statement, the Solicitation Materials, notice of the Auction, and the Confirmation Hearing were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Bankruptcy Rules, the Disclosure Statement Order, the Bid Procedures Order, and the Scheduling Order, as applicable. Votes on the First Amended Plan were solicited after disclosure to holders of Claims against and Equity Interests in the Debtor entitled to vote on the First Amended Plan of "adequate information" as defined in section 1125 of the Bankruptcy

Code. The Ballots (as defined in the Disclosure Statement Order) for voting on the First Amended Plan, in the forms attached as Exhibit 2 to the Disclosure Statement Order, adequately addressed the particular needs of this Chapter 11 Case and were appropriate for holders of Class 2 (First Lien Lender Claims), Class 3 (Second Lien Lender Claims), and Class 12 (TRBP Equity Interests) – the Classes of Claims and Equity Interests that were solicited pursuant to the Disclosure Statement Order to vote to accept or reject the First Amended Plan. The period during which the Debtor solicited acceptances of the First Amended Plan was a reasonable period of time for holders of Claims against and Equity Interests in the Debtor to make an informed decision to accept or reject the Plan. The Debtor was not required to solicit votes from the holders of Claims in Class 1 (Priority Non-Tax Claims), Class 4 (MLB Prepetition Claim), Class 5 (Secured Tax Claims), Class 6 (Other Secured Claims), Class 7 (Assumed General Unsecured Claims), Class 8 (Non-Assumed General Unsecured Claims), Class 9 (Emerald Diamond Claim), Class 10 (Overdraft Protection Agreement Claim), and Class 11 (Intercompany Claims), as each such class is unimpaired under the Plan.[8] As described in and as evidenced by the Franks Affidavit and the Notice Affidavits, the transmittal and service of the First Amended Plan, the Disclosure Statement, the Solicitation Materials, and the notice of the Confirmation Hearing (all of the foregoing, the "Solicitation") were timely, adequate, and sufficient under the circumstances. The Solicitation of votes on the First Amended Plan complied with the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other

---

[8] Although the Debtor was required to solicit the votes from holders of Claims in Class 2 and Class 3, in accordance with the Disclosure Statement Order, these votes were ultimately not counted towards confirmation of the Plan because under the Plan, Class 2 and Class 3 are unimpaired.

applicable rules, laws, and regulations. As evidenced by the Franks Affidavit, votes to accept or reject the First Amended Plan were tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and applicable non-bankruptcy law

G. <u>Notice</u>. As is evidenced by the Franks Affidavit and the Notice Affidavits, the transmittal and service of the First Amended Plan, the Disclosure Statement, the Solicitation Materials, and the Bid Procedures Order were adequate and sufficient under the circumstances, and all parties required to be given notice of the Auction and the Confirmation Hearing have been given due, proper, timely, and adequate notice in accordance with the Scheduling Order and the Bid Procedures Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and applicable non-bankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

H. <u>Modifications of the First Amended Plan</u>. The Plan meets the applicable requirements of 1122, 1123, and 1129 of the Bankruptcy Code. Modifications made to the First Amended Plan since the Solicitation complied in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. No such modification changes the treatment of any creditor or equity interest holder adversely. Adequate and sufficient notice of such modifications has been given, and acceptances of the First Amended Plan are deemed to apply to the Plan, without further solicitation or notice and hearing being required pursuant to Bankruptcy Rule 3019. Thus, such modifications are approved in full.

<strong><u>The Sale Process</u></strong>

I. <u>Auction</u>. The Auction was conducted properly and in good faith, without collusion, and in accordance with the Bid Procedures Order. At the Auction, the Debtor and its general partners selected Purchaser as the Successful Bidder. The Asset Purchase Agreement, as

9

amended pursuant to the Second Amendment to the Asset Purchase Agreement filed on August 10, 2010 [Docket No. 554],[9] constitutes the highest and best offer for the Debtor's assets.[10] The Debtor's and its general partners' determination that the Asset Purchase Agreement is the highest and best offer for the Debtor's assets constitutes a valid and sound exercise of the Debtor's business judgment.

> J.   <u>Asset Purchase Agreement</u>.  The Asset Purchase Agreement and all transactions, agreements, and documents related thereto are essential elements of the Plan and entry into and consummation of the Asset Purchase Agreement is in the best interest of the Debtor and its estate.  The Debtor and the Purchaser have acted in good faith in connection with the Plan, this Chapter 11 Case, and the formulation and confirmation of the Plan.  Moreover, the Asset Purchase Agreement was negotiated, proposed, and entered into by the Debtor and the Purchaser without collusion, in good faith, and from arm's length bargaining positions.  Except as has been fully disclosed to the Court, neither the Purchaser, nor any of its affiliates or their respective representatives is an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  Neither the Debtor, nor the Purchaser, nor any of their respective agents or representatives has engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code had the purchase of the Debtor's assets been conducted pursuant to section 363 of the Bankruptcy Code, or other

---

[9] All references herein to the "Asset Purchase Agreement" shall mean and refer to the Asset Purchase Agreement as so amended.

[10] On August 11, 2010, the First Lien Administrative Agent filed the *Emergency Motion of the First Lien Agent for an Order Conforming Second Amendment to Asset Purchase Agreement to Terms of Successful Bid at Auction* [Docket No. 557] (the "Motion to Conform APA").  In the Motion to Conform APA, the First Lien Administrative Agent asserts that the Asset Purchase Agreement, as amended by the Second Amendment to Asset Purchase Agreement [Docket No. 554], fails to conform to the terms of the Purchaser's bid at the Auction.  The First Lien Administrative Agent asserts that due to such failure, the Asset Purchase Agreement does not constitute the highest and best offer for the Debtor's assets.  On September 1, 2010, the Court entered its *Memorandum Order* [Docket No. 617], denying the Motion to Conform APA.

applicable law.  Specifically, neither the Purchaser nor any of its representatives has acted in a

collusive manner with any person and the purchase price was not controlled by any agreement

among bidders.  The terms and conditions of the Asset Purchase Agreement and the transactions

contemplated thereby (including without limitation the consideration provided in respect thereof)

are fair and reasonable and shall not be avoided or avoidable under the Bankruptcy Code or other

applicable law.

    K.  <u>Good Faith of the Purchaser</u>.  The Purchaser is, in all respects, a good faith

purchaser of the Purchased Assets purchased pursuant to the Asset Purchase Agreement and is,

therefore, entitled to all of the protections afforded thereby.  The Purchaser acquired all rights in

the Purchased Assets in good faith reliance on the Confirmation Order, including, without

limitation, the portions thereof relating to the transfer of the Debtor's assets free and clear of any

and all interests, except as set forth in the Asset Purchase Agreement.

    L.  <u>Fair Consideration</u>.  The consideration provided by the Purchaser pursuant

to the Asset Purchase Agreement constitutes reasonably equivalent value or fair consideration

under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, the

Bankruptcy Code, and the laws of the United States, any state, territory, possession thereof, or

the District of Columbia.  The Asset Purchase Agreement was not entered into for the purpose

of hindering, delaying, or defrauding creditors of the Debtor under the Bankruptcy Code and/or

under the laws of the United States, any state, territory, possession thereof, or the District of

Columbia.  Neither the Debtor nor Purchaser entered into the transactions contemplated by the

Asset Purchase Agreement fraudulently for the purpose of such statutory and common law

fraudulent conveyance and fraudulent transfer claims.  The Asset Purchase Agreement represents

a fair and reasonable offer to purchase the Debtor's assets under the circumstances of this

Chapter 11 Case. Based on the record at the Confirmation Hearing and all other proceedings in

this case, no other person or entity or group of entities, other than the Purchaser, has offered to

purchase the Debtor's assets on terms that would give greater economic value to the Debtor's

estate. Approval of the Asset Purchase Agreement and the consummation of the transactions

contemplated thereby is in the best interests of the Debtor, its creditors, and all other parties in

interest.

### Compliance with the Requirements of Section 1129 of the Bankruptcy Code

M.      Burden of Proof.  The Debtor has the burden of proving the elements of

sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  The

Debtor has met such burden.

N.      Bankruptcy Rule 3016(a).  The Plan is dated and identifies the Debtor as

the Plan proponent, thereby satisfying Bankruptcy Rule 3016(a).

O.      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).

The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying

section 1129(a)(1) of the Bankruptcy Code.

(a)      Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  In addition to

Administrative Expense Claims, Professional Compensation and Reimbursement Claims,

Priority Tax Claims, and DIP Claims, which need not be classified, Article III of the Plan

classifies twelve Classes of Claims and Equity Interests for the Debtor.  The Claims and Equity

Interests placed in each Class are substantially similar to other Claims and Equity Interests, as

the case may be, in each such Class.  Valid business, factual, and legal reasons exist for

separately classifying the various Classes of Claims and Equity Interests created under the Plan,

US 552382v.1

and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Article III  of the Plan specifies that Class 1, Class 2, Class 3, Class 4, Class 5, Class 6, Class 7, Class 8, Class 9, Class 10, and Class 11 are unimpaired by the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

(c)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Article III of the Plan designates Class 12 as impaired within the meaning of section 1124 of the Bankruptcy Code and specifies the treatment of the Equity Interests in this Class, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)    No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment by the Debtor for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to or elected a less favorable or different treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  The Plan provides adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including (i) the continued corporate existence of the Debtor, (ii) the process for designation of the management of the Post-Effective Date Debtor, (iii) consummation of the transactions contemplated by the Asset Purchase Agreement, (iv) the cancellation of certain liens, (v) the vesting of the assets of the Debtor's estate in the Post-Effective Date Debtor, and (vi) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents related to the foregoing.

US 552382v.1

(f)     Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)).  The Debtor is a partnership, which does not fall within the meaning of corporation as used in section 1123(a)(6) of the Bankruptcy Code.  Accordingly, section 1123(a)(6) of the Bankruptcy Code does not require the Debtor's charter to include a provision (i) prohibiting the issuance of nonvoting equity securities or (ii) regarding the appropriate distribution of power among the several classes of securities possessing voting power in the Debtor's charter.

(g)     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).  Section 6.2(c) of the Plan provides the manner of selection of officers of the Post-Effective Date Debtor and is consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(h)     Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)).  Pursuant to Article III of the Plan, Equity Interests in Class 12 are impaired by the Plan and Class 12 has voted in favor of the Plan.[11]  The remaining Classes are not impaired by the Plan.  Accordingly, the Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.

(i)     Assumption and Rejection (11 U.S.C. § 1123(b)(2)).  Section 9.1 of the Plan addresses the assumption and rejection of executory contracts and unexpired leases, and meets the requirements of section 365(b) of the Bankruptcy Code.  All objections to the Debtor's assumption of executory contracts and unexpired leases pursuant to Section 9.1 of the Plan have either been specifically reserved or resolved or are hereby overruled.

---

[11] At the Confirmation Hearing, the CRO changed his vote on the Plan from "no" to "yes" on the record and the Court accepted that changed vote pursuant to Bankruptcy Rule 3018(a).  (Conf. Hr'g Tr. at 21:16-20; 83: 18-20 [Docket No. 578].)

US 552382v.1

(j)    Settlement, Adjustment and Retention of Claims and Interests (11 U.S.C. § 1123(b)(3)(A) and 1123(b)(3)(B)).  Section 13.5 of the Plan provides that, to the extent not otherwise specifically provided under the Plan or the Asset Purchase Agreement, or any contract, instrument, release, or other agreement entered into in connection with the Plan, (i) TRBP shall retain and may enforce, and sue on, all claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person or entity, including but not limited to claims or causes of action arising under or pursuant to Chapter 5 of the Bankruptcy Code and those claims or causes of action listed on Schedule 13.5 to the Plan.[12]  Upon consultation with the First Lien Administrative Agent, TRBP may pursue such retained claims, rights or causes of action, suits, or proceedings as appropriate, in accordance with the best interests of the Post-Effective Date Debtor or as otherwise directed by the Court.  Claims, rights, causes of action, suits, or proceedings retained under Section 13.5 of the Plan may only be settled or compromised with the consent of the First Lien Administrative Agent or the approval of the Court.  Notwithstanding anything contained in Section 13.5 of the Plan or Paragraph A, above, TRBP and its Estate will not retain any claims, rights or causes of action, suits and proceedings, whether in law or equity, whether known or unknown, (a) in respect of any payment made to or for the benefit of the holder of any Assumed General Unsecured Claim, including, without limitation, any such Claim held by a former or present employee or a former or present player of TRBP or the Texas Rangers Major League Baseball Club, or (b) against Kellie Fischer, Nolan Ryan, or any rank and file employee of TRBP who shall become an officer or employee of the Purchaser upon the Effective Date.  Thus, the Plan complies with sections 1123(b)(3)(A) and 1123(b)(3)(B) of the Bankruptcy Code.

---

[12] A copy of Schedule 13.5 is attached hereto as Exhibit A.

(k)     Sale of Substantially All Assets (11 U.S.C. § 1123(b)(4)). The Plan provides for the Sale on the Effective Date of substantially all of the assets of the Debtor.  As a result of the Sale and in accordance with the terms of the Plan, all creditors of the Debtor will receive payment in full of all of their allowed claims, with the remaining assets of the Debtor's estate available for distribution to holders of Equity Interests in the Debtor.  Thus, the Plan complies with section 1123(b)(4) of the Bankruptcy Code.

(l)     Unaffected Rights of Holders of Classes of Claims (11 U.S.C. § 1123(b)(5)).  The Plan leaves unaffected the rights of holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (First Lien Holder Claims), Class 3 (Second Lien Holder Claims), Class 4 (MLB Prepetition Claim), Class 5 (Secured Tax Claims), Class 6 (Other Secured Claims), Class 7 (Assumed General Unsecured Claims), Class 8 (Non-Assumed General Unsecured Claims), Class 9 (Emerald Diamond Claim), Class 10 (Overdraft Protection Agreement Claim), and Class 11 (Intercompany Claims).  Thus, the Plan complies with section 1123(b)(5) of the Bankruptcy Code.

(m)     Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).  The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(n)     Debtor Is Not An Individual (11 U.S.C. § 1123(c)).  The Debtor is not an individual, and accordingly, section 1123(c) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

(o)     Cure of Defaults (11 U.S.C. § 1123(d)).  Section 9.2 of the Plan provides that the Purchaser will promptly pay the cure amount as to each executory contract or unexpired lease to be assumed or assumed and assigned by the Debtor under the Plan, and provides each

16

contract counterparty an opportunity to object to and be heard by the Court with respect to such proposed cure amount. If there is a dispute regarding (i) the nature or amount of any Cure; (ii) the ability of the Purchaser to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to assumption and assignment, Cure shall occur within seven days following the entry of a Final Order of the Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

P.    The Debtor's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtor is the sole proponent of the Plan and has complied with the applicable provisions of the Bankruptcy Code. Specifically:

(a)    The Debtor is an eligible debtor under section 109 of the Bankruptcy Code;

(b)    The Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

(c)    In transmitting the First Amended Plan, the Disclosure Statement, the Solicitation Materials, and related documents and notices and in soliciting and tabulating the votes on the First Amended Plan, the Debtor has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, applicable non-bankruptcy law, the Disclosure Statement Order, the Scheduling Order, and all other applicable law.

Q.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtor has proposed the Plan (and all related documents, including the Asset Purchase Agreement) in good faith and not by any means forbidden by law. The Debtor proposed the Plan with the honest

US 552382v.1

purpose of selling substantially all of the assets of the Debtor and expeditiously distributing value to creditors and to equity security holders, and it has thus met its good faith obligations under section 1129(a)(3) of the Bankruptcy Code. The Debtor's good faith is evident from the facts and record of this Chapter 11 Case, the Disclosure Statement, the Supporting Declarations, and the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case. Each of the Debtor, the Purchaser, MLB, the Ad Hoc Group of First Lien Lenders, the First Lien Administrative Agent, the Second Lien Administrative Parties, Rangers Equity, the CRO and the DIP Lender supports the Sale of the Purchased Assets to the Purchaser and confirmation of the Plan.

R.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).

(a)     Any payment made or to be made by the Debtor, the Post-Effective Date Debtor or the Disbursing Agent for services or for costs and expenses that is subject to 11 U.S.C. § 1129(a)(4) respecting the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

(b)     In accordance with Section 12.1 of the Plan, all fees and expenses of Persons accrued through the Effective Date remain subject to final review by the Court for reasonableness pursuant to sections 330, 331, and 503(b) of the Bankruptcy Code.

S.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code. Section 6.2(c) of the Plan provides the manner of selection of officers of the Post-Effective Date Debtor. TRBP is a general partnership and does not have directors. After the Effective Date, the existing officers of the Debtor shall resign. Pursuant to Section 6.2(c) of the Plan, and with the consent of the First Lien

Administrative Agent, the Debtor has designated and appointed Alan M. Jacobs ("Jacobs") to serve as the officer in control of the Post-Effective Date Debtor with responsibility for Plan administration and distributions under the Plan. Consistent with the terms of Section 6.2(c) of the Plan, following the Effective Date and until the Plan has been fully administered, Jacobs shall not be removed from such position or replaced in the absence of the consent of the First Lien Administrative Agent, in its sole discretion, or order of this Court for cause shown upon motion and notice provided to the First Lien Administrative Agent and Jacobs. Additionally, Section 7.3 of the Plan provides that all distributions required to be made by the Debtor under the Plan shall be made by TRBP as the Disbursing Agent or such other Person designated by TRBP to serve as the Disbursing Agent. TRBP has similarly designated Jacobs to serve as the Disbursing Agent, and such appointment is hereby confirmed and approved.

T. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not provide for rate changes by the Post-Effective Date Debtor. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in this Chapter 11 Case.

U. <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. All Classes of Claims are unimpaired and therefore, the best interest test is inapplicable to the holders of Claims in all Classes. Each holder of Class 12 (TRBP Equity Interests) has voted to accept the Plan; therefore, the best interest test is satisfied under section 1129(a)(7)(A)(i) of the Bankruptcy Code as to holders of Class 12 TRBP Equity Interests.

V. <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. All Classes, except for Class 12, are unimpaired under the Plan and are, therefore, conclusively presumed to

have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Class 12 has voted to accept the Plan.

      W.      <u>Treatment of Administrative Expense Claims, Professional Compensation and Reimbursement Claims, Priority Tax Claims, and DIP Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Allowed Administrative Expense Claims, Professional Compensation and Reimbursement Claims, Priority Tax Claims, and DIP Claims pursuant to Article II of the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

      X.      <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>. This requirement is inapplicable to the Plan because there is no Class of Claims impaired by the Plan.

      Y.      <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The information in the Disclosure Statement, the Supporting Declarations, and the evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, (iii) demonstrates that the consideration received for the Purchased Assets under the Plan is more than adequate to satisfy all Claims against the Debtor, with the remaining consideration available for distribution to holders of Equity Interests in the Debtor, and establishes that the Plan is feasible.

      Z.      <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. All fees currently payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Code, have been or will be paid pursuant to Section 13.1 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

      AA.      <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. Section 9.4 of the Plan provides that except and to the extent previously assumed by an order of the Court, on or before the Confirmation Date, all employee compensation and benefit plans directly

sponsored by the Debtor, including employee benefit plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Commencement Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed under the Plan and assigned to the Purchaser under the Asset Purchase Agreement. Thus, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

BB.    No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

CC.    Debtor Is Not An Individual (11 U.S.C. § 1129(a)(15)). The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

DD.    No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)). The Debtor is not a moneyed, business, or commercial corporation or trust, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

EE.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). All Classes of Claims are unimpaired and deemed to accept the Plan. Class 12 has voted to accept the Plan. Accordingly, section 1129(b) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

FF.    Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan with respect to which confirmation was sought, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

21

GG.   <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the United States Securities Act of 1933, and no governmental entity has objected to the confirmation of the Plan on any such grounds.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

HH.   <u>Debtor is Not a Small Business (11 U.S.C. § 1129(e))</u>.  The Chapter 11 Case is not a small business case, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

<b><u>Compliance with Section 1125 of the Bankruptcy Code</u></b>

II.   Based on the record before the Court in this Chapter 11 Case, including evidence presented at the Confirmation Hearing, the Debtor and its control persons, members, officers, employees, and agents, and their respective attorneys, financial advisors, and other professionals (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code.

<b><u>Plan Implementation</u></b>

JJ.   The terms of the Plan and all documents filed or executed, or to be executed, in connection therewith or transactions contemplated thereby are proper in all respects, and constitute an integral part of confirmation.

KK.   Pursuant to section 1142(a) of the Bankruptcy Code, the Plan will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.  The Debtor,

22

the Post-Effective Date Debtor, the Disbursing Agent, the Purchaser, MLB, the Lenders, the First

Lien Administrative Parties, the Second Lien Administrative Parties, Rangers Equity, the DIP

Lender, and all of their respective members, officers, directors, agents, financial advisers,

investment bankers, attorneys, employees, equity holders, partners, affiliates, and representatives

will be acting in good faith in connection with (i) the consummation of the Plan and the

agreements, settlements, transactions, transfers and documentation contemplated thereby and (ii)

the taking of any actions authorized and directed by the Confirmation Order. For the avoidance

of doubt, this finding does not relate to the prepetition conduct of any party.

      LL.     All documents necessary to implement the Plan have been negotiated in

good faith and at arms' length and shall, upon completion of documentation and execution, be

valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

### Discharge, Exculpation, and Injunctions

      MM.    The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the

United States Code to approve the discharge (to the extent applicable), exculpation, and

injunctions set forth in Article XI of the Plan. Section 11.3 of the Plan discharges Claims against

the Debtor solely to the extent such discharge is permitted by Sections 105(a) and 1141(d) of the

Bankruptcy Code. The Plan does not relieve third parties from liability for any acts or omissions

related to the Chapter 11 Case. Section 11.4 of the Plan provides for limited exculpation. The

Plan's exculpation provision is consistent with the Fifth Circuit Court of Appeals' holding in

*Bank of N.Y. Trust Co., N.A. v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*,

584 F.3d 229 (5th Cir. 2009) in that it merely provides that neither the Debtor, the Post-Effective

Date Debtor, Baseball Express, nor the Creditors' Committee (and its members) shall be liable

for actions taken since Commencement Date in connection with the Chapter 11 Case. Section

11.4 of the Plan does not violate section 524 or 1123 of the Bankruptcy Code and is within the

23

confines of the Bankruptcy Code and Fifth Circuit Court of Appeals precedent and is thus

approved. Finally, section 105(a) of the Bankruptcy Code permits issuance of the injunctions set

forth in Article XI of the Plan if, as has been established here based upon the record in the

Chapter 11 Case and the evidence presented at the Confirmation Hearing, such provisions (i)

were integral to the agreement among the various parties in interest and are essential to the

formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy

Code, (ii) confer substantial benefits on the Debtor's estate, (iii) are fair, equitable and

reasonable, and (iv) are in the best interests of the Debtor, the Debtor's estate, and parties in

interest. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a),

the injunction provisions set forth in the Plan are fair, equitable, reasonable, and in the best

interests of the Debtor, the Post-Effective Date Debtor, and its estate, creditors, and equity

security holders. Accordingly, based upon the record of this Chapter 11 Case, the

representations of the parties, and/or the evidence proffered, adduced, and/or presented at the

Confirmation Hearing, this Court finds that the injunction provisions set forth in Article XI of the

Plan are consistent with the Bankruptcy Code and applicable law and are thus approved.

## Other Findings

   NN. <u>Settlement</u>.  In consideration for the distributions and other benefits

provided under the Plan, the provisions of the Plan constitute a good faith compromise and

settlement of all Claims and controversies resolved under the Plan, and the entry of this

Confirmation Order shall constitute the Court's approval of such compromise and settlement

under Bankruptcy Rule 9019.

   OO. <u>Retention of Jurisdiction</u>.  The Court may properly, and upon the Effective

Date shall, retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Case,

including the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

**The Plan Satisfies Confirmation Requirements**

PP.     Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**CONCLUSIONS OF LAW**

1.     <u>Prior Conclusions of Law</u>.  The conclusions of law determined by this Court (i) at the June 15 Hearing, (ii) in the Disclosure Statement Order, (iii) in the June 22 Opinion, (iv) at the July Hearings, and (v) in the July 30 Opinion are hereby incorporated into the Confirmation Order.

2.     <u>Solicitation and Notice</u>.  Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Debtor's Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  The solicitation of votes on the First Amended Plan and distribution of the Ballots complied with the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and applicable nonbankruptcy law.

3.     <u>Plan Modifications</u>.  Modifications made to the First Amended Plan following the solicitation of votes thereon satisfied the requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and no further solicitation is required.

4.     <u>Confirmation of the Plan</u>.  The terms of the Plan are incorporated by reference into and are an integral part of the Confirmation Order.

US 552382v.1

5.      Objections.  All Objections, responses, statements, and comments, if any, in opposition to, the Plan and/or the Disclosure Statement, respectively, other than those specifically reserved, resolved, or withdrawn in their entirety prior to, or on the record at the Confirmation Hearing, shall be, and hereby are, overruled in their entirety for the reasons stated on the record.

6.      No Action.  Pursuant to section 1142(b) of the Bankruptcy Code, no action of the officers of the Debtor shall be required to authorize the Debtor to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

7.      Binding Effect.  Pursuant to section 1141 and the other applicable provisions of the Bankruptcy Code, subject to the occurrence of the Effective Date, the provisions of the Plan (including the exhibits and schedules thereto and all documents and agreements executed pursuant thereto or in connection therewith) and the Confirmation Order shall bind any holders of Claims against and Equity Interests in the Debtor and such holder's respective successors and assigns (irrespective of whether such Claims or Equity Interests are impaired under the Plan or whether the holders of such Claims or Equity Interests accepted or are deemed to have accepted the Plan).

8.      Bidding Procedures.  The Auction was conducted properly and in good faith, without collusion, and in accordance with the Bidding Procedures Order.

9.      Free and Clear.  Except as otherwise provided in the Plan and as contemplated under the Asset Purchase Agreement, the Debtor, as Post-Effective Date Debtor, shall continue to exist on and after the Effective Date as a separate Person with all of the powers

US 552382v.1

available to such legal entity under applicable law, without prejudice to any right to alter or

terminate such existence (whether by merger or otherwise) in accordance with applicable law.

The property of the Debtor's estate, together with any property of the Debtor that is not property

of its estate and that is not specifically disposed of pursuant to the Plan or purchased by the

Purchaser under the Asset Purchase Agreement, if any, shall vest in the Post-Effective Date

Debtor on the Effective Date.  Except as otherwise provided in the Plan, the Post-Effective Date

Debtor may operate its business and may use, acquire, and dispose of property free of any

restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Court.  As of the Effective

Date, all property of the Post-Effective Date Debtor not sold to the Purchaser shall be free and

clear of all Claims, encumbrances, charges, and Liens except as specifically provided in the Plan

or the Confirmation Order.  Without limiting the generality of the foregoing, the Post-Effective

Date Debtor may, without application to or approval by the Court, pay professional fees and

expenses incurred by the Post-Effective Date Debtor after the Effective Date.  Notwithstanding

anything to the contrary herein, the Post-Effective Date Debtor shall remain bound by the terms

of the confirmed Plan and Confirmation Order.

> 10.    <u>Valid Transfer</u>.  Prior to the transfer of the Purchased Assets, the Debtor

was the sole and lawful owner of such assets.  Except as otherwise provided in the Plan or as

contemplated under the Asset Purchase Agreement and subject to the satisfaction of the

conditions precedent to the Effective Date, the transfer of the Purchased Assets to the Purchaser

under the Asset Purchase Agreement on or after the Effective Date shall be a legal, valid, and

effective transfer of the Purchased Assets, and shall vest the Purchaser with all right, title, and

interest of the Debtor to the Purchased Assets free and clear of all liens, claims (as defined in

section 101(5) of the Bankruptcy Code, and including, without limitation, successor liability

US 552382v.1

claims), encumbrances, obligations, liabilities, demands, guarantees, options, rights, restrictions, contractual commitments, rights of first refusal, or interests of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or after the commencement of this Chapter 11 Case, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Released Liens"), including, but not limited to, (i) those that purport to give to any party a right or option to effect any forfeiture, modification or termination of the Debtor's interests in the Purchased Assets, or any similar rights, (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Property prior to the closing of the Sale, (iii) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal, or charges of any kind or nature, if any, including without limitation any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership, and (iv) those arising in connection with any agreements, acts, or failures to act, of the Debtor or any of the Debtor's predecessors, affiliates, or representatives, including, but not limited to, Released Liens arising under any bulk-transfer laws, doctrines of successor liability or similar theories.  For the further avoidance of doubt, and without limiting the effect of any of the foregoing, except as otherwise provided in the Plan or as contemplated under the Asset Purchase Agreement, the transfer, assumption and assignment, of any of the executory contracts shall be free and clear of all Released Liens.

11.     No Successor Liability.  Except as otherwise provided in the Plan or as contemplated under the Asset Purchase Agreement, the transfer of the Purchased Assets to the Purchaser under the Asset Purchase Agreement shall not result in the Purchaser having any

liability or responsibility (i) for any Claim against the Debtor or against an insider of the Debtor, (ii) to the Debtor or to third parties, or (iii) for the satisfaction in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, of any Released Liens. Without limiting the effect or scope of the foregoing, to the fullest extent permitted by law, except as otherwise provided in the Plan or as contemplated under the Asset Purchase Agreement, the transfer of the Purchased Assets from the Debtor to the Purchaser shall not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Purchased Assets) to any liability for Released Liens against the Debtor in such Purchased Assets by reason of such transfer under the laws of the United States or any state, territory, or possession thereof, or the District of Columbia, applicable to such transactions, including, without limitation, any bulk-transfer laws, successor liability, or similar theories. Notwithstanding the foregoing, liens for property taxes for the calendar year 2010 and subsequent years, not yet due and payable, have been reaffirmed by Purchaser. For the avoidance of doubt, and without limiting the effect and/or generality of any of the foregoing, except as otherwise provided in the Plan or as contemplated under the Asset Purchase Agreement, the transfer, assumption, and assignment of any of the executory contracts are free and clear of all Released Liens.

      12.    <u>No Liability Findings Needed by Purchaser</u>. The Purchaser would not have entered into the Asset Purchase Agreement and would not have consummated the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Purchased Assets to the Purchaser, and the assumption and assignment or transfer of the executory contracts, was not free and clear of all Released Liens of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Released

Liens, in each case except as otherwise provided in the Plan or as contemplated under the Asset Purchase Agreement.

13.     Claims Arising Under the DIP Facility.  On the Effective Date, that portion of the DIP Claims constituting principal and interest shall be indefeasibly paid in full in Cash from, *inter alia*, the proceeds of the Asset Purchase Agreement.  Other fees, expenses, and charges constituting DIP Claims shall be subject to Court approval.  Upon payment and satisfaction in full of all DIP Claims, the commitments under the DIP Facility shall terminate and all Liens and security interests granted to secure such obligations, whether in the Chapter 11 Case or otherwise, shall be terminated and of no further force or effect.

14.     General Corporate Actions.  Upon the Effective Date, all actions contemplated by the Plan will be deemed authorized and approved in all respects, including (i) the consummation of the Asset Purchase Agreement and (ii) all other actions contemplated by the Asset Purchase Agreement or the Plan (whether to occur before, on or after the Effective Date).  At its option, TRBP may elect to merge its wholly owned subsidiary, Rangers Ballpark LLC, into TRBP on the Effective Date, without the need for further Court approval.  All matters and transactions provided for in the Asset Purchase Agreement and the Plan concerning the structure of the Debtor or the Post-Effective Date Debtor, and any partnership action required by the Debtor or the Post-Effective Date Debtor in connection with the Asset Purchase Agreement and the Plan will be deemed to have occurred and will be in effect, without any requirement of further action by the general partner or officers of the Debtor or the Post-Effective Date Debtor.

15.     Implementation of the Asset Purchase Agreement and the Plan.  On or (as applicable) prior to the Effective Date, the general partner or the appropriate officers of the Debtor or the Post-Effective Date Debtor, as applicable, will be authorized and directed to issue,

execute, and deliver the agreements, documents, and instruments contemplated by the Asset Purchase Agreement or the Plan (or necessary or desirable to effect the transactions contemplated by the Asset Purchase Agreement or the Plan) in the name of and on behalf of the Post-Effective Date Debtor, including, without limitation, the Transition Services Agreement, and any and all other agreements, documents, and instruments related to the foregoing (including, without limitation, security documents). Such authorizations and approvals will be effective notwithstanding any requirements under non-bankruptcy law.

16. <u>Cancellation of Liens</u>. Except as provided in the Plan and in accordance with the Asset Purchase Agreement, upon the occurrence of the Effective Date, any Lien encumbering the Purchased Assets shall be deemed released, and the holder of the Claim secured by such Lien shall be authorized and directed to release any Collateral or other property of the Debtor constituting Purchased Assets (including any Cash collateral) held by such holder and to take such actions as may be requested by the Post-Effective Date Debtor or the Purchaser (to the extent the Lien encumbers Purchased Assets), to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be reasonably requested by the Post-Effective Date Debtor or the Purchaser (to the extent the Lien encumbers Purchased Assets); *provided*, *however*, that such Liens shall be released regardless of whether any such filing or recordings are made; *provided further*, that such Liens shall attach to the proceeds of the Purchased Assets with the same force and effect, priority and validity as existed with respect to the Purchased Assets and proceeds thereof prior to the Effective Date.

17. <u>Compromise of Controversies</u>. In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the

31

entry of the Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

18.    <u>Plan Distributions</u>.

(i)    On and after the Effective Date, all distributions under the Plan shall be effectuated in accordance with the Plan, including Articles IV and VII thereof.

(ii)    After the expiration of one year from the Effective Date, all unclaimed property or interests in property distributable under the Plan shall revert to the Post-Effective Date Debtor automatically and without need for a further order by the Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Person to such property or interest in such property shall be discharged and forever barred, notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.

(iii)    The provisions of Article VIII of the Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are fair and reasonable and are approved.

19.    <u>Assumption or Rejection of Contracts and Leases</u>.

(i)    <u>General</u>.  Pursuant to Section 9.1 of the Plan, except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, the Debtor shall be deemed to have assumed and assigned to the Purchaser each executory contract and unexpired lease to which it is a party, pursuant to section 365 of the Bankruptcy Code, unless such contract or lease (i) was previously assumed or rejected by the Debtor, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to reject filed by the Debtor

32

on or before the Confirmation Date, or (iv) is an Excluded Contract.  The Confirmation Order

shall constitute an order of the Court under sections 365 and 1123(b) of the Bankruptcy Code

approving the contract and lease assumptions or rejections described above, as of the Effective

Date.

        (ii)    <u>HSG Assigned Contracts</u>.  The HSG Assigned Contracts shall be

assumed by the Debtor and assigned to the Purchaser as of the Effective Date.

        (iii)    <u>Excluded Contracts and Rejected Contracts</u>.  On the Effective

Date, each Excluded Contract that is an executory contract or unexpired lease shall either be

terminated by its terms or assumed by the Post-Effective Date Debtor.  Those contracts listed on

Schedule 9.1(c) of the Plan shall be, and are hereby deemed to be, rejected by the Debtor on the

Effective Date.

        (iv)    <u>Objections to Assumption and Assignment</u>.  Any party wishing to

object to the assumption or assumption and assignment of any executory contract or unexpired

lease under the Plan was required to follow the instructions described in the Confirmation

Hearing Notice, attached as Exhibit 3 to the Disclosure Statement Order, for filing objections to

the Plan and include a copy of the executory contract or unexpired lease to which any such

objection relates or contain information sufficient to identify the executory contract or unexpired

lease to which any such objection relates.  Any counterparty that did not timely and properly

object to the assumption or assumption and assignment of its executory contract or unexpired

lease by the Debtor under the Plan, shall be deemed to have consented to such assumption or

assumption and assignment.

        20.    <u>Cure and Adequate Assurance</u>.  The Purchaser has: (i) to the extent

necessary, cured, or provided adequate assurance of cure of, any default with respect to the

executory contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the

Bankruptcy Code; and (ii) to the extent necessary, provided compensation or adequate

assurance of compensation to any party for any actual pecuniary loss to such party resulting

from a default with respect to the executory contracts, within the meaning of sections

365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code. The Purchaser's contractual obligation

to pay the cure amounts listed in the Cure Schedule (as set forth in the Confirmation Hearing

Notice and as may be amended by stipulations approved by the Court), and Purchaser's

contractual obligation to perform under the executory contracts after the closing date

constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C)

and 365(f)(2)(B) of the Bankruptcy Code. To the extent that any counterparty to an

executory contract did not object to its cure amount by the Assumption and Assignment Objection

Deadline, such counterparty is deemed to have consented to such cure amounts and the

assignments of its respective executory contracts to the Purchaser.

21. <u>Rejection Claims</u>. All Claims arising out of the rejection of executory

contracts and unexpired leases must be served upon the Post-Effective Date Debtor and its

counsel within 30 days after the earlier of (i) the date of entry of an order of the Court approving

such rejection or (ii) the Effective Date, unless such deadline has been expressly extended by

Court order for a particular Claim holder(s), in which case the deadline established by such order

shall apply to such Claim holder(s). Any Claims not filed within such time shall be forever

barred from assertion against the Debtor, the Post-Effective Date Debtor, or their respective

properties.

22. <u>Professional Compensation</u>. All Persons seeking awards by the Court of

compensation for services rendered or reimbursement of expenses incurred through and

including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or

503(b)(5) of the Bankruptcy Code, other than professionals retained in the ordinary course of

business that are not required to submit applications for compensation and reimbursement,[13]

shall (a) file, on or before the date that is ninety (90) days after the Effective Date, their

respective applications for final allowances of compensation for services rendered and

reimbursement of expenses incurred and (b) receive payment in full, in cash, of any unpaid

portion as soon as practicable after, and to the extent of, Court approval thereof.  Professionals

retained by the Debtor in the ordinary course of business that are not required to submit

applications for compensation and reimbursement shall be paid in accordance with Section 2.1 of

the Plan.   The Post-Effective Date Debtor is authorized to pay compensation for professional

services rendered and reimbursement of expenses incurred by all professionals after the Effective

Date in the ordinary course and without the need for Court approval.

      23.   <u>Exculpation Provisions</u>.  Except as otherwise specifically provided herein

or in the Plan, as of the Effective Date, neither the Debtor, the Post-Effective Date Debtor,

Baseball Express, nor the Creditors' Committee (including its members) shall have or incur any

liability for any Claim, cause of action, or other assertion of liability for any act taken or omitted

to be taken since the Commencement Date in connection with, or arising out of, the Chapter 11

Case, the formulation, dissemination, confirmation, consummation, or administration of the Plan,

---

[13] Pursuant and subject to the express terms and conditions of the Court's Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code for Authorization to (I) Employ Professionals Utilized in the Ordinary Course of Business and (II) Implement Certain Procedures to Retain, Compensate, and Reimburse Such Professionals [Docket No. 233], the Court has previously approved the compensation of and reimbursement of expenses to specified Ordinary Course Professionals (as defined in said order) who have satisfied the terms and conditions of the order.  Separately, pursuant and subject to the express terms and conditions of the Court's Order Authorizing and Approving the Employment and Retention of AlixPartners, LLP as Noticing, Claims and Balloting Agent in This Chapter 11 Case Nunc Pro Tunc to the Commencement Date [Docket No. 357], the Court has previously approved the compensation and reimbursement of AlixPartners, LLP as the noticing, clams and balloting agent appointed pursuant to 28 U.S.C. § 156(c).

property to be distributed under the Plan, or any other act or omission in connection with the

Chapter 11 Case, the Plan, the Disclosure Statement, or any contract, instrument, document or

other agreement related thereto; *provided*, *however*, that the foregoing shall not affect the

liability of any Person that would otherwise result from any such act or omission to the extent

such act or omission is determined by a Final Order to have constituted willful misconduct, gross

negligence, actual fraud, or criminal conduct, or intentional unauthorized misuse of confidential

information that causes damage.  Notwithstanding the foregoing, nothing herein or in the Plan

shall limit or affect the protections provided to the Debtor or the Post-Effective Date Debtor

under sections 524 or 1141 of the Bankruptcy Code.

24.     Term of Injunctions or Stays.  The injunctions contained in the Plan,

including, but not limited to, those provided in Section 11.6 of the Plan, are hereby authorized,

approved, and binding on all Persons described therein.  Pursuant to Section 11.6(a) of the Plan,

the Confirmation Order shall, except as otherwise expressly provided in the Plan, constitute an

injunction from and after the Effective Date, permanently enjoining all Persons who have held,

hold, or may hold Claims against the Debtor from (i) commencing or continuing in any manner

any action or other proceeding of any kind on any such Claim against the Post-Effective Date

Debtor or the Purchaser, (ii) the enforcement, attachment, collection, or recovery by any manner

or means of any judgment, award, decree, or order against the Post-Effective Date Debtor or the

Purchaser with respect to any such Claim, and (iii) creating, perfecting, or enforcing any

encumbrance of any kind against the Post-Effective Date Debtor or the Purchaser, or against the

property or interests in property of the Post-Effective Date Debtor or the Purchaser with respect

to any such Claim.  Pursuant to Section 11.6(b) of the Plan, unless otherwise provided in the

Plan, all injunctions or stays arising under or entered during the Chapter 11 Case under section

36

105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

25. <u>No Governmental Release</u>. Notwithstanding anything herein to the contrary, nothing in the Plan or the Confirmation Order shall operate as a waiver of or a release or exculpation of any claim or cause of action or action for regulatory compliance (x) held by a governmental unit against any non-Debtor, or (y) held by a governmental unit against any Debtor, other than those Claims of any governmental unit that are subject to the deadlines for filing proofs of claim (clauses (x) and (y) collectively referred to herein as the "<u>Non-Released Government Claims</u>"). Nor shall anything in the Plan or the Confirmation Order enjoin any governmental unit from bringing any claim, suit, action, or other proceeding against any party or person for liability under any Non-Released Government Claim.

26. <u>Payment of Statutory Fees</u>. All fees payable under section 1930, chapter 123, title 28, United States Code shall be paid.

27. <u>Compliance with Tax Requirements</u>. In connection with the Plan and all instruments issued in connection therewith and distributed thereunder, any party issuing any instruments or making any distribution under the Plan, including any party described in Sections 7.3 and 7.7 thereof, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Allowed Equity Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution. Any party issuing any instruments or making any

37

distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.

28. <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the Asset Purchase Agreement and any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

29. <u>Documents, Mortgages, and Instruments</u>. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and the Confirmation Order.

30. <u>Reversal/Stay/Modification/Vacatur of Order</u>. Except as otherwise provided in the Confirmation Order, if any or all of the provisions of the Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or the Post-Effective Date Debtor, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of

38

the Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, the Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of the Confirmation Order and the Plan or any amendments or modifications thereto.

31.    <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court, except as otherwise provided in the Plan or herein, may properly retain, and if appropriate, shall exercise jurisdiction over the matters arising out of, or related to, the Chapter 11 Case and the Plan, including, but not limited to, the matters set forth in Article XII of the Plan and section 1129 of the Bankruptcy Code.

32.    <u>Further Jurisdiction</u>.  To the extent consistent with the Bankruptcy Code and any prior or future order of this Court, this Court may further retain jurisdiction over the matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105 and 1142 of the Bankruptcy Code, including, but not limited to, the matters set forth in Article XII of the Plan and section 1129 of the Bankruptcy Code.

33.    <u>Modifications</u>.  Without need for further order or authorization of the Court, the Debtor or the Post-Effective Date Debtor, subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, are authorized and empowered to make any and all modifications to the Plan, and any other document that is necessary to effectuate the Plan.  Subject to section 1127 of the Bankruptcy Code, holders of Claims or Equity Interests that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, without further solicitation or notice and hearing being required pursuant to Bankruptcy Rule 3019.

US 552382v.1

34. <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>. The provisions of the Plan and the Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

35. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

36. <u>Applicable Nonbankruptcy Law</u>. Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of the Confirmation Order, the Plan, and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

37. <u>Waiver of Filings</u>. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtor to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

38. <u>Governmental Approvals Not Required</u>. The Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

39. <u>Substantial Consummation</u>. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

40. <u>Inconsistency</u>. To the extent of any inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall govern.

41. <u>No Waiver</u>. The failure to specifically include any particular provision of the Plan in the Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

### # # # END OF ORDER # # #

# EXHIBIT A

[Schedule 13.5 to Plan]

Schedule 13.5

RETAINED CAUSES OF ACTION

Pursuant to Section 13.5 of the Plan and subject to the restrictions set forth therein, any and all claims, rights or causes of action, suits and proceedings, whether in law or in equity, whether known or unknown (the "Retained Causes of Action") that the Debtor or its Estate may possess against any Person or entity (including, but not limited to, Thomas O. Hicks, BRE and the Debtor's other officers, insiders or affiliates), known or unknown, are expressly preserved. These Retained Causes of Action relate to and include, among other things, all claims and causes of action for all contract theories of recovery, including, but not limited to, contract and usury, quasi-contract claims, including quantum meruit, promissory estoppel, suit on a sworn account, money had and received; all tort theories of liability, including, but not limited to, tortuous interference, conversion, breach of fiduciary duty, fraud, bad faith, constructive eviction, wrongful eviction, malpractice, libel, slander, negligence, gross negligence, premises liability, trade-secret misappropriation, misrepresentation; breach of warranty claims and related theories of recovery; statutory claims and related theories of recovery, including, but not limited to, claims under 11 U.S.C. §§ 509, 510, 542, 543, 544, 547, 548, 549, and 550, claims pursuant to the Texas Business and Commerce Code, including fraudulent transfers under prevailing applicable law, and claims pursuant to Title 18 U.S.C.; participatory, vicarious, secondary, and related theories of liability including, without limitation, aiding and abetting, conspiracy, principal-agent, partnership, alter ego, common enterprise, joint and several liability, proportionate responsibility, contribution, ultra vires; equitable claims including claims for subordination and disgorgement; any such claim or cause of action relating to any counterclaim, demand, controversy, cost, debt, sum of money, account, reckoning, bond, bill, damage, obligation, liability, objection, legal proceeding, equitable proceeding, execution of any nature, type, or description, willful misconduct, usury, deceit, conspiracy, unconscionability, duress, defamation, control, interference with contractual and business relations, conflict of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, wrongful recoupment, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies, debt recharacterization, substantive consolidation, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach of any special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, at law or in equity, in contract, in tort, or otherwise, known or unknown, suspected or unsuspected; and any claims or causes of action related to any matter listed on the Schedules or Statement of Financial Affairs of the Debtor, including all attachments and amendments thereto.

For the avoidance of any doubt, the Retained Causes of Action include, but are not limited to the following:[1]

---

[1] The description of the Retained Causes of Action set forth on this Schedule 13.5 was prepared by the First Lien Administrative Agent, the Ad Hoc Group of First Lien Lenders and the Second Lien Administrative Agent. At this time, the Debtor takes no position regarding the existence or merits of any such Retained Cause of Action.

•       Causes of action that arise out of the negotiation of, entry into or performance under a new ballpark lease, development option, and new franchise agreement, including but not limited to, constructive and intentional fraudulent transfer, contribution, unjust enrichment, usurpation of corporate opportunity and breach of fiduciary duty.

•       Causes of action that arise out of depletion of deferred compensation escrow accounts, including but not limited to, constructive and intentional fraudulent transfer, conversion, turnover and breach of fiduciary duty.

•       Causes of action that arise out of the execution of a factoring agreement, including but not limited to, recharacterization of the payment under the factoring agreement as an equity contribution, constructive and intentional fraudulent transfer and breach of fiduciary duty.

•       Causes of action that arise out of the assumption of, negotiation of, entering into and performance under various indemnification obligations and agreements, including but not limited to, constructive and intentional fraudulent transfers and breach of fiduciary duty.

•       Causes of action relating to TRBP's entry into that certain Asset Purchase Agreement with the Purchaser, dated as of May 23, 2010, including, but not limited to, constructive and intentional fraudulent transfer and breach of fiduciary duty.

•       Causes of action relating to TRBP's entry into, transaction of and performance under certain transfers and transactions described as the Midnight Transfers or Eve of Filing Transactions (some of which are as detailed in the Joint Brief Regarding Certain Issues Related to Proposed Plan of Reorganization and Disclosure Statement, filed by the Lender Parties on June 11, 2010), including, but not limited to, constructive and intentional fraudulent transfer and breach of fiduciary duty.

•       Causes of action relating to the entry into and performance under that certain Land Sale Agreement by and among Baseball Express, BRE and TRBP dated as of May 23, 2010, which amended and restated that certain Land Sale Agreement dated as of January 23, 2010, including, but not limited to, unjust enrichment, constructive and intentional fraudulent transfer and breach of fiduciary duty.

•       Causes of action relating to TRBP's entry into and performance under any agreement with MLB giving rise to any MLB Prepetition Claim or MLB Postpetition Claim (other than claims expressly allowed under the Plan by the Bankruptcy Court), including, but not limited to, constructive and intentional fraudulent transfer and breach of fiduciary duty.

•       Causes of action relating to TRBP's entry into and performance under that certain Dispute Settlement Agreement dated as of April 27, 1999, including, but not limited to, contribution and breach of fiduciary duty.

•       Causes of action relating to TRBP's negotiation and entering into the Overdraft Protection Agreement, including recharacterization of such claim as an equity contribution, constructive and actual fraudulent transfer and breach of fiduciary duty.

•       Such other causes of action as may be identified following further investigation.

2